WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020-1095
(212) 819-8200
John K. Cunningham
Philip M. Abelson
Gregory M. Starner
Ricardo M. Pasianotto (*pro hac vice* pending)
Lilian M. Marques
Livy Mezei (*pro hac vice* pending)

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Richard S. Kebrdle (*pro hac vice* pending)

*Attorneys for Antonio Reinaldo Rabelo Filho,*
*as Petitioner and Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Case No. 23- |
| Americanas S.A., *et al.*,[1] | ) |
| | ) Chapter 15 |
| Debtors in a Foreign Proceeding. | ) (Joint Administration Requested) |
| | ) |

**PETITIONER'S DECLARATION AND VERIFIED PETITION FOR
RECOGNITION OF THE BRAZILIAN RJ PROCEEDING AND
MOTION FOR ORDER GRANTING RELATED RELIEF
PURSUANT TO 11 U.S.C. §§ 105(A), 1509, 1515, 1517, 1520, AND 1521**

---

[1]   The debtors in these chapter 15 cases, along with the last four digits of each debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Americanas S.A. (06-60 - Brazil); JSM Global S.à.r.l. (5670 – Grand Duchy of Luxemburg); and B2W Digital Lux S.à.r.l. (8659 – Grand Duchy of Luxemburg).

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................2

BACKGROUND .......................................................................................................................5

    A.    General Background and History...........................................................................5

        1.    Americanas Group's Business Overview ...................................... 5

        2.    Americanas Group's Corporate Structure and Offices .............................. 7

    B.    Connections to the United States ...........................................................................12

    C.    The Chapter 15 Debtors' Notes Obligations.........................................................12

    D.    Events Precipitating Commencement of the Brazilian RJ Proceeding.................13

        1.    The Chapter 15 Debtors were Financially Healthy Entities Prior to the Material Fact ....................................................................... 13

        2.    Financial Inconsistencies and the Resulting Financial Distress ............... 14

JURISDICTION, ELIGIBILITY AND VENUE.........................................................................16

RELIEF REQUESTED...............................................................................................................17

REQUIRED DISCLOSURES ....................................................................................................17

BASIS FOR RELIEF.................................................................................................................18

    A.    The Court has Jurisdiction to Recognize the Brazilian RJ Proceeding and Grant the Relief Requested ..................................................................................19

    B.    The Requirements of Section 1517(a) of the Bankruptcy Code Are Satisfied......21

        1.    The Brazilian RJ Proceeding is a "Foreign Proceeding" .......................... 22

        2.    The Petitioner Is a Proper "Foreign Representative".............................. 25

        3.    The Petition Was Properly Filed under Sections 1504 and 1509 and Meets the Requirements of Section 1515 and Bankruptcy Rule 1007(a)(4) ................................................................................. 27

        4.    The Brazilian RJ Proceeding Satisfies the Requirements for Recognition as a "Foreign Main Proceeding" .......................................... 28

C.    Alternatively, the Court Should Find that the Brazilian RJ Proceeding Is a
Foreign Nonmain Proceeding and Grant Discretionary Relief.............................34

NOTICE........................................................................................................................................39

NO PRIOR REQUEST.................................................................................................................39

CONCLUSION..............................................................................................................................39

## TABLE OF AUTHORITIES

## CASES

*Ad Hoc Group of Vitro Noteholders v. Vitro, S.A.B., de C.V. (In re Vitro, S.A.B.de C.V.),*
470 B.R. 408 (Bankr. N.D. Tex. 2012), *aff'd*, 701 F.3d 1031 (5th Cir. 2012) ..............................28

*CT Inv. Mgmt. Co. v. Cozumel Caribe, S.A. de C.V.,*
482 B.R. 96 (Bankr. S.D.N.Y. 2012) ...............................................................................37

*Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet),*
737 F.3d 238 (2d Cir. 2013).................................................................................17, 19

*Fairfield Sentry*, 2011 U.S. Dist. LEXIS 105770 (S.D.N.Y. 2011) ............................................35

*Hertz Corp. v. Friend*, 559 U.S. 77 (2010) .................................................................30

*In re ABC Learning Ctrs. Ltd.,*
445 B.R. 318 (Bankr. D. Del. 2010) *aff'd*, 728 F.3d 301 (3d Cir. 2013)......................................29

*In re ABC Learning Ctrs Ltd.*, 728 F.3d 301 (3d Cir. 2013) ........................................................22

*In re Artimm, S.r.l.*, 335 B.R. 149 (Bankr. C.D. Cal. 2005) ...................................................37

*In re Andrade Gutierrez Engenharia S.A.,*
645 B.R. 175 (Bankr. S.D.N.Y. 2022) .........................................................................25

*In re Avanti Commc'ns Grp. PLC,*
582 B.R. 603 (Bankr. S.D.N.Y. 2018).........................................................................17

*In re Bear Stearns,*
374 B.R. 122 (Bankr. S.D.N.Y. 2007).........................................................................27

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,*
389 B.R. 325 (S.D.N.Y. 2008)...............................................................................34

*In re Berau Capital Res. PTE Ltd.,*
540 B.R. 80 (Bankr. S.D.N.Y. 2015)...........................................................................17

*In re British Am. Ins. Co. Ltd.,*
425 B.R. 884 (Bankr. S.D. Fla. 2010)........................................................30, 34, 35, 36

*In re Cell C Proprietary Ltd.*, 571 B.R. 542 (Bankr. S.D.N.Y. 2017) .........................................20

*In re Creative Financial, Ltd.*, 543 B.R. 498 (Bankr. S.D. N.Y. 2016) .................................35, 36

*In re Fairfield Sentry Ltd.*, 714 F.3d 127 (2d Cir. 2013) .........................................................29, 30

*In re Grand Prix Assocs.*, No. 09-16545 (DHS),
2009 Bankr. LEXIS 1239 (Bankr. D.N.J. May 18, 2009) .............................................................30

*In re Inversora Eléctrica de Buenos Aires S.A.*,
560 B.R. 650 (Bankr. S.D.N.Y. 2016) ......................................................................................20

*In re Irish Bank Resolution Corp. (In Special Liquidation)*, No. 13-12159
2014 Bankr. LEXIS 1990 (Bankr. D. Del. Apr. 30, 2014) .........................................................22

*In re Millennium Glob. Emerging Credit Master Fund Ltd.*,
458 B.R. 63, 84 (Bankr. S.D. N.Y. 2011), *aff'd* 474 B.R. 88 (S.D. N.Y. 2012) ..............30, 35, 36

*In re Modern Land (China) Co., Ltd.*, 641 B.R. 768 (Bankr. S.D.N.Y. 2022) ..........................35

*In re Novonor S.A.*,
No. 19-12731 (SMB) (Bankr. S.D.N.Y. Sept. 18, 2019) .......................................................23, 24

*In re OAS S.A.*,
533 B.R. 83 (Bankr. S.D.N.Y. 2015).................................................................................. *passim*

*In re OAS S.A.*,
No. 15-10937 (SMB) (Bankr. S.D.N.Y. Aug. 3, 2015).......................................................... *passim*

*In re Odebrecht Engenharia e Construção S.A.*,
No. 20-12741 (MEW) (Bankr. S.D.N.Y. Dec. 30, 2020) ......................................................23, 25

*In re Oi Brasil Holdings Coöperatief U.A.*,
578 B.R. 169 (Bankr. S.D.N.Y. 2017).................................................................................26, 30

*In re Oi S.A.*, No. 16-11791 (SHL) (Bankr. S.D.N.Y. Jul. 22, 2016)....................................23, 25

*In re Oversight & Control Comm'n of Avánzit, S.A.*,
385 B.R. 525 (Bankr. S.D.N.Y. 2008)....................................................................................21

*In re PT Bakrie Telecom Tbk*, 601 B.R. 707 (Bankr. S.D.N.Y. 2019) .........................................20

*In re Rede Energia S.A.*,
No. 14-10078 (SCC) (Bankr. S.D.N.Y. Sept. 9, 2014)..........................................................23, 25

*In re Serviços de Petróleo Constellation S.A.*,
600 B.R. 237 (Bankr. S.D.N.Y. 2019).............................................................................23, 26, 32

*In re Serviços De Petróleo Constellation S.A.*,
613 B.R. 497 (Bankr. S.D.N.Y. 2020)....................................................................................30

*In re Serviços de Petróleo Constellation S.A.*,
No. 18-13952 (MG) (Bankr. S.D.N.Y. May 9, 2019)...........................................................23, 25

*In re SPhinX, Ltd.*,
351 B.R. 103 (Bankr. S.D.N.Y. 2006) .................................................................................29, 37

*In re Suntech Power Holdings Co*,
520 B.R. 399 (Bankr. S.D.N.Y. 2014) .................................................................................17, 31

*In re Toft*, 453 B.R. 186 (Bankr. S.D.N.Y. 2011) .......................................................................37

*In re Usina de Açúcar Santa Terezinha Ltda.*,
No. 19-11199 (MEW) (Bankr. S.D.N.Y. May 16, 2019) ......................................................23, 25

*In re Vitro, S.A.B. de C.V.*, 701 F.3d 1031 (5th Cir. 2012) .........................................................28

*Lavie v. Ran (In re Ran)*, 607 F.3d 1017 (5th Cir. 2010) ............................................................35

*Mina Tucano Ltda.*, No. 22-11198 (LGB) (Bankr. S.D.N.Y. Oct. 12, 2022) .........................24, 26

*U.S.J. – Açúcar e Álcool S.A., et al.*, No. 22-10320 (DSJ)
(Bankr. S.D.N.Y. Apr. 14, 2022) .........................................................................................22, 24

*Samarco Mineracao S.A. - Em Recuperação Judicial*, No. 21-10754 (LGB)
(Bankr. S.D.N.Y. May 13, 2021) .........................................................................................22, 24

*Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*,
714 F.3d 127 (2d Cir. 2013)...................................................................................................29

## STATUTES AND OTHER AUTHORITY

11 U.S.C. § 101 ................................................................................................. *passim*

11 U.S.C. § 105 ................................................................................................. *passim*

11 U.S.C. § 109 ................................................................................................. *passim*

11 U.S.C. § 1501 ......................................................................................................21

11 U.S.C. § 1502 ............................................................................................... *passim*

11 U.S.C. § 1504 .................................................................................................16, 27

11 U.S.C. § 1509 ............................................................................................16, 17, 27

11 U.S.C. § 1515 ............................................................................................... *passim*

11 U.S.C. § 1516 ......................................................................................................29

11 U.S.C. § 1517 ............................................................................................... *passim*

11 U.S.C. § 1520 ............................................................................................... *passim*

11 U.S.C. § 1521 ..................................................................................................... *passim*

28 U.S.C. § 157 ...................................................................................................... *passim*

28 U.S.C. § 1334 ......................................................................................................16, 21

28 U.S.C. § 1410 ................................................................................................16, 19, 21

Fed. R. Bankr. P. 1007 ......................................................................................17, 27, 28

Fed. R. Bankr. P. 7007.1 ............................................................................................28

## OTHER AUTHORITIES

H. Rep. No. 109-31, pt. 1, 109th Cong., 1st Sess. (2005)................................29, 35, 37

Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency,
U.N. Gen. Ass., UNCITRAL 30th Sess. U.N. Doc. A/CN.9/442 (1997)......................30

I, Antonio Reinaldo Rabelo Filho (the "**Petitioner**" or the "**Foreign Representative**"), the duly-authorized foreign representative of Americanas S.A. ("**Americanas**"), JSM Global S.à.r.l. ("**JSM Global**"), and B2W Digital Lux S.à.r.l. ("**B2W Digital**," together with Americanas and JSM Global, the "**Chapter 15 Debtors**") in the jointly-administered judicial reorganization (*recuperação judicial* or "**RJ**") proceeding (the "**Brazilian RJ Proceeding**") of the Chapter 15 Debtors and certain of their affiliated debtors (collectively, the "**RJ Debtors**" or the "**Americanas Group**") commenced on January 19, 2023 pursuant to Federal Law No. 11.101 of February 9, 2005 (as modified, the "**Brazilian Bankruptcy Law**"), of the laws of the Federative Republic of Brazil ("**Brazil**"), pending before the 4th Business Court of Rio de Janeiro (the "**Brazilian RJ Court**"),[1] by and through my undersigned counsel, respectfully submit this *Petitioner's Declaration and Verified Petition for Recognition of the Brazilian RJ Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 105(a), 1509, 1515, 1517, 1520, and 1521* (the "**Verified Petition**").  This Verified Petition is filed in furtherance of each form of voluntary petition [ECF No. 1] (collectively, the "**Forms of Voluntary Petition**" and, together with this Verified Petition, the "**Petition**") filed on January 25, 2023.  The Petitioner hereby requests that the Court enter an order substantially in the form attached hereto as <u>Exhibit A</u> (the "**Proposed Order**") pursuant to sections 105(a), 1509, 1515, 1517, 1520, and 1521 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"):[2]

> (a)     granting the Petition in these chapter 15 cases (the "**Chapter 15 Cases**") and recognizing the Brazilian RJ Proceeding as the "foreign main proceeding" for each of the Chapter 15 Debtors pursuant to section 1517 of

---

[1]     The case number for the Brazilian RJ Proceeding before the Brazilian RJ Court is 0803087-20.2023.8.19.0001.

[2]     Except as otherwise indicated, section and chapter references are to the Bankruptcy Code.

the Bankruptcy Code; or in the alternative, as a "foreign nonmain proceeding" and granting appropriate relief;

(b)      finding that the Petitioner is the duly appointed "foreign representative" of the Chapter 15 Debtors within the meaning of section 101(24) of the Bankruptcy Code and is authorized to act on behalf of each of the Chapter 15 Debtors; and

(c)      granting such other and further relief as the Court deems just and proper (collectively, the "**Relief Requested**").

In support of this Verified Petition, the Petitioner relies upon and incorporates by reference the *Declaration of Francisco Satiro Pursuant to 28 U.S.C. § 1746 In Support of the Petitioner's Declaration and Verified Petition for Recognition of the Brazilian RJ Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 105(a), 1509, 1515, 1517, 1520, and 1521* (the "**Brazilian Counsel Declaration**") and the *Verification of Chapter 15 Petition* (the "**Verification**") filed substantially contemporaneously herewith.  In further support of the relief requested herein, the Petitioner respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      The Americanas Group is one of the largest retailers in Brazil that provides a broad range of goods and services to the country's general population.  Founded in 1929 in Brazil, the Americanas Group has grown to provide online and physical retail services to approximately 53 million customers, with over 3,600 physical stores and approximately 100,000 employees in Brazil as of the third quarter of 2022.  Americanas is a publicly-held company in Brazil with approximately 146,000 shareholders.

2

2.      The Americanas Group's physical retail stores comprise the following five different business formats: (i) traditional stores with multiple retail departments; (ii) express stores; (iii) local convenience stores; (iv) certain "Ame Go" stores with autonomous purchasing technology; and (v) stores that sell electronic products. The Americanas Group's digital platforms include e-commence retail businesses, digital consumer credit platforms, and other financial services.

3.      The Americanas Group has expanded its operations and grown significantly throughout the previous century by merging with various entities and innovating technologies to increase online and physical sales. Until the beginning of 2023, the Americanas Group had been a financially healthy enterprise that generated a significant amount of revenue and profits and had ample cash on hand.

4.      Entering 2023, however, Americanas identified certain accounting inconsistencies from previous years in its financial statements relating to the miscategorization of certain purchase financing debts as debts owed to suppliers. On January 11, 2023, Americanas published a "material fact" notice as required under Brazilian securities regulations (the "**Material Fact**"), informing the public that it had identified such inconsistencies in accounting entries that reduced the balance in the suppliers account related to previous fiscal years, including the fiscal year 2022. The Americanas' accounting department preliminarily estimates that the inconsistencies should be in the magnitude of R$20 billion (US$3.87 billion) as of September 30, 2022.[3]

5.      Upon the issuance of the Material Fact, certain lenders took the position that the accounting inconsistencies constituted breaches under certain restrictive covenants in several debt

---

[3]    The foreign exchange rate used in the amounts in this Verified Petition is 5.168:1 from R$ to US$ as of January 23, 2023.

instruments, triggering the acceleration of their respective obligations, as well as cross-default provisions throughout the Americanas Group's entire capital structure.  At around the same time, certain lenders froze and set off funds and sent notices of default and acceleration to the Americanas Group, requesting the immediate repayment of the outstanding balances of their claims and commenced enforcement actions against the Americanas Group.  As a result, on January 12, 2023, Americanas, JSM Global, and B2W Digital filed a preliminary injunction request before the Brazilian RJ Court (the "**Brazilian Injunction Motion**").  The Brazilian Injunction Motion sought to prevent creditors from accelerating their debt and declaring cross-defaults caused by such accounting inconsistencies, as well as to stay further enforcement actions against the Americanas Group and unwind creditor enforcement actions, including the seizure of over R$1 billion (US$193.49 million) by Banco BTG Pactual S.A. ("**BTG**").  The Brazilian RJ Court entered an order granting the request on January 13, 2023 (the "**Injunction Order**").

6.      On January 18, 2023, however, the Special Court of the State Court of Appeals of Rio de Janeiro granted a writ of *mandamus* ("**Suspension Order**") filed by BTG.  The Suspension Order freed BTG to accelerate its claims against the Americanas Group and retain over R$1 billion (US$193.49 million) of Americanas' seized funds until the final adjudication of the writ of *mandamus*.

7.      The Suspension Order had catastrophic consequences for the Americanas Group's liquidity position and its ability to conduct its business.  Within a week, Americanas' shares plummeted to approximately R$1.8 (US$0.35) per share, causing the loss of almost 80% of its market value and rating downgrades by several agencies.  In addition, upon entry of the Suspension Order, other banks began blocking Americanas' access to credit and receivables, draining an additional R$3 billion (US$580 million) of cash that would otherwise be used to fund its ordinary

4

business activities.  Thus, while the Americanas Group had approximately R$8 billion (US$1.55 billion) of available cash reserves at the end of 2022, that amount quickly shrank to a few hundred million Reais, which was insufficient to cover the Americanas Group's operating expenses. Starved of cash, the Americanas Group had no option but to urgently file a join voluntary petition (the "**RJ Petition**") commencing the Brazilian RJ Proceeding on January 19th (the "**RJ Petition Date**") to prevent the further deterioration of its financial condition and preserve ongoing operations.  The Brazilian RJ Court entered the order accepting the RJ Petition (the "**Brazilian Acceptance Order**") with respect to the Brazilian RJ Proceeding on the RJ Petition Date.

8.      Accordingly, the Petitioner now seeks recognition of the Brazilian RJ Proceeding under Chapter 15 of the Bankruptcy Code to protect the Americanas Group from further creditor actions in the United States.  Additionally, pending the recognition of the Brazilian RJ Proceeding, the Petitioner also seeks provisional relief to stay the commencement or continuation of any actions or proceedings concerning the Chapter 15 Debtors or their assets, rights, obligations, or liabilities in the United States, including by the holders of the SMJ Global Notes and the BW2 Digital Notes (each as defined below, collectively, the "**NY Notes**"), as provided under the *Motion for Provisional Relief Pursuant to 11 U.S.C. §§ 1519, 1521(a)(7), 105(a), and 362* (the "**Provisional Relief Motion**") filed substantially contemporaneously herewith.

## BACKGROUND

A.      **General Background and History**

1.      **Americanas Group's Business Overview**

9.      The Americanas Group is one of the largest retail chains in Brazil.  Americanas' predecessor, Lojas Americanas, S.A. ("**Lojas Americanas**"), was founded in 1929 in Rio de Janeiro, Brazil to explore the retail business model in Brazil for the sale of products in the "five

5

and ten cents" style, which was successful in the United States at the beginning of the twentieth century.  With the rapid growth of the business, Lojas Americanas became a joint-stock company listed on the Brazilian stock exchange in the 1940s.

10.    Throughout the 1990s and early 2000s, Lojas Americanas underwent numerous corporate reorganizations aimed at growing the reach of the Americanas Group, including the exploration of various online business platforms.  In particular, Lojas Americanas created its own website and acquired certain brands to increase its business in the e-commerce sector.  In 2006, Lojas Americanas merged with "*Submarino Finance Promotora de Crédito Ltda*," an online retail company.  Around the same time, Lojas Americanas created B2W Digital to operate its e-commerce business and expanded its operations internationally to other Latin American countries. Lojas Americanas continued to grow its business and increase its physical footprint and by 2011, Lojas Americanas achieved annual gross revenue of R$1 billion (US$193.49 million) and, by 2014, further increased it to approximately R$2.4 billion (US$464.34 million).

11.    From 2015 to 2021, Lojas Americanas continued its path of rapid growth, with large increases of capital investment, issuing bonds, launching more affiliate brands, creating logistics platforms for online sectors, and announcing partnerships with investors in Brazil, including Stone, Cielo, and Banco do Brasil.  In 2021, Lojas Americanas combined its business with B2W Digital, forming "Americanas S.A."  B2W Digital subsequently became a holding company with no actual business operations.  Currently, Americanas' business covers both physical and electronic commerce sectors.

12.    The Americanas Group's physical stores are comprised of the following business formats: (i) traditional stores that have average sales area of approximately 1,000m$^2$ for multiple retail departments; (ii) express stores with an average sales area of approximately 400m$^2$; (iii) local

convenience stores with an average sales area of approximately 100m$^2$; (iv) "Ame Go" format with an average sales area of approximately 50m$^2$ that focuses on convenience products with autonomous purchasing technology; and (v) stores that offer a mix of electronics products with an average sales area of approximately 70m$^2$.[4]

13.     The Americanas Group also has online platforms that operate together with its retail business.  The online platforms include: (i) an e-commence retail business that sells products under recognized brands in Brazil such as "Submarino," "Shoptime" and "Sou Barato;" (ii) a digital consumer credit services business;[5] (iii) AME payment services, which is a pioneer digital payment tool for the purchase of products through online stores; (iv) technology, logistics, distribution and customer service platform services; and (v) "Marketplace" platform services that connect third-party sellers and buyers.

### 2.    Americanas Group's Corporate Structure and Offices

14.     The Americanas Group's operational and economic activities are mainly located in Brazil,[6] and certain of their entities are public companies organized under Brazilian law.  The Americanas Group includes each of the following Chapter 15 Debtors: (i) Americanas, the parent company in Brazil, and (ii) its two wholly-owned subsidiaries based in Luxembourg, B2W Digital and JSM Global.  The Americanas Group also includes one RJ Debtor that is not a Chapter 15 Debtor—ST Importações Ltda, a logistics company for international shipment.  Further, the

---

[4]     The Americanas Group's physical stores sell approximately 60,000 SKUs across more than 45 categories of products, including candy and chocolate, fragrances, domestic appliances, toys, games, cellphones, portable household appliances, consumer electronics, books, clothing, stationery products and convenience products.

[5]     The Americanas Group provides a wide range of financial products and services to customers, including extending credit, providing credit solutions, insurance, prepaid credit cards, and other means to assist its sales business.  The Americanas Group offers online consumer credit services through the Submarino Finance and Digital Finance platforms.

[6]     The Americanas Group also expanded its business internationally through the online platform to certain Latin American countries, including Mexico, Chile and Argentina.

Americanas Group has other affiliated entities involved in financing business, logistics services, and certain other equity investment entities that are not RJ Debtors and have not otherwise sought any insolvency relief at this time.

15.    The chart below shows, in relevant part, a summary of the corporate structure of the RJ Debtors.  A detailed organizational chart of the Americanas Group and other affiliated entities is attached hereto as Exhibit C.



16.    Chapter 15 Debtor Americanas is the operating entity of the Chapter 15 Debtors and the Americanas Group.  It is a publicly-held corporation, with its headquarters and principal place of business located at Rua Sacadura Cabral, 102, Saúde, Rio de Janeiro, RJ, CEP 20081-902

("**Americanas' Headquarters**").  As noted above, Americanas directly owns 100% of the shares of B2W Digital and JSM Global.

17.    Chapter 15 Debtor B2W Digital is a limited liability company incorporated by the Americanas Group under the laws of the Grand Duchy of Luxembourg, with registered offices in Luxembourg at 16 Rue Eugene Ruppert L-2453 Luxembourg, Grand Duchy of Luxembourg. B2W is managed by two classes of managers, and one class of management members resides in Brazil, with their business address at the Americanas' Headquarters.  *See* B2W Digital Lux S.à.r.l., Confidential Offering Memorandum 4.750% Senior Notes due 2030, 161 (Sept. 29, 2020) ("**B2W Digital Offering Memorandum**"), attached hereto as <u>Exhibit D</u>, p. 133.  The meetings of the managers of B2W Digital are all held at the Americanas' Headquarters in Brazil, where the corporate decisions for B2W Digital are made.  It does not have any subsidiaries or equity investments.  *Id.*  After the merger between Loja Americanas and B2W Digital, B2W Digital no longer had any operating business and its only purpose was to support Americanas' business in Brazil.[7]  Accordingly, any value attributed to the B2W Digital Notes derives from the performance of Americanas' business in Brazil and are affected by fluctuations in the Brazilian economy, the outlook of Americanas' digital platform and other business opportunities in Brazil, liquidity constraints in Brazil, Brazilian data protection laws or other relevant regulations, and other factors in Brazil.  B2W Digital Offering Memorandum, pp. 36-63.

18.    Chapter 15 Debtor JSM Global is a limited liability company incorporated by the Americanas Group under the laws of the Grand Duchy of Luxembourg and with registered offices in Luxembourg at 16 Rue Eugene Ruppert L-2453 Luxembourg, Grand Duchy of Luxembourg.

---

[7]    *See* Brazilian Counsel Decl. Ex. A. ¶ 21 ("The obligations of B2W and JSM, although contracted abroad, are fulfilled, only and exclusively, with the generation of cash flow of the Americanas Group in Brazil, since there is no operation outside the national territory.").

JSM Global is managed by two classes of managers, and one class of management members resides in Brazil with their business address at the Americanas' Headquarters. *See* J.S.M. Global S.à.r.l., Confidential Offering Memorandum 4.375% Senior Notes due 2030, 185 (Nov. 18, 2020) ("**JSM Offering Memorandum**"), attached hereto as <u>Exhibit E</u>, p. 153. The meetings of the managers are all held in Brazil, where the corporate decisions for JSG Global are made. JSM Global does not engage in any business other than to finance the operations of Americanas. *Id.* at p. 183. Similar to the B2W Digital Notes, the value of the JSM Global derives from the performance of Americanas' business in Brazil and are affected by fluctuations in the Brazilian economy, the outlook of Americanas' digital platform and other business opportunities in Brazil, liquidity constraints in Brazil, Brazilian data protection laws or other relevant regulations, and other factors in Brazil. JSM Offering Memorandum, pp. 35-63.

19.    ST Importações Ltda., the remaining RJ Debtor, is not included as a Chapter 15 Debtor at this time because it does not own assets in the United States, it does not owe debts governed by U.S. law or otherwise have any significant ties to the United States that would require the protection of this Court.

20.    As shown above, the Americanas Group is an economically and operationally integrated group, whose operational activities are focused on Brazil. Indeed, the Americanas Group's operational activities are in Brazil, as are its operational management centers. The Americanas Group's staff in charge of operational matters as well as the Americanas Group's legal and human resources are based out of the Americanas' Headquarters in Rio de Janeiro. Although

JSM Global and B2W Digital are incorporated in Luxembourg, they have no operating business and their management team in Brazil makes corporate decisions.

21.     Indeed, the NY Notes issued by JSM Global and B2W Digital are heavily influenced by the Brazilian economy, and in the event of insolvency, a bankruptcy proceeding would likely commence in Brazil and be subject to Brazilian law for Americanas, as guarantor of the NY Notes, as well as for B2W Digital and JSM Global, as the issuers of each series of NY Notes.  JSM Global Offering Memorandum, p. 61; B2W Offering Memorandum, p. 61.  Some of the risk factors described in the offering memoranda include:

(a) the effect of the COVID pandemic on the Brazilian market and the effect on Americanas' business caused by the Brazilian government's response to the COVID pandemic;

(b) the fluctuations in retail operations based on seasonal sales activity in Brazil and the potential deceleration of the Brazilian economy;

(c) the Americanas' growth strategy, the development of Americanas' business' digital platform and other business opportunities;

(d) certain regulatory changes in Brazil;

(e) any material change to Americanas' distribution centers in Brazil;

(f) risks caused by non-compliance with data protection laws in Brazil; and

(g) the potential effect on the Brazilian economy caused by political instability, variations in the foreign exchange rates, inflation and economic uncertainty, and the liquidity constraints in Brazil.

B2W Offering Memorandum, pp. 36-63; JSM Offering Memorandum, pp. 35-63.

22.     In sum, the operations and services of the Chapter 15 Debtors are highly interdependent, they operate as a single, integrated economic unit headquartered and managed from the Americanas' Headquarters in Rio de Janiero, which is where every aspect of the Americanas Group's operations, finances, corporate management, employee management and payroll, and short- and long-term strategic planning is directed.

11

B. **Connections to the United States**

23.    While substantially all of the Chapter 15 Debtors' assets are located in Brazil, some of their assets are located in the United States.  The Chapter 15 Debtors have contract rights relating to the NY Notes governed by New York law indentures: the B2W Digital Notes and the JSM Global Notes (each as defined below), each in the principal amount of US$500 million. Additionally, the Chapter 15 Debtors hold cash in a trust account in the borough of Manhattan in the City of New York, New York with White & Case LLP, the Chapter 15 Debtors' U.S. counsel, in connection with the filing of these Chapter 15 Cases, with an aggregate balance of US$15,000 (the "**New York Escrow Account**").

24.    Further, JSM Global and B2W Digital each maintain bank accounts in the United States.  In particular, JSM Global has an account at Bank of America, New York Branch with cash in the amount of US$2,482.22 (the "**JSM Global Account**"), and B2W Digital has an account at Bank of America, New York branch with cash in the amount of US$27,126.76 (the "**B2W Digital Account**").

C. **The Chapter 15 Debtors' Notes Obligations**

25.    The Chapter 15 Debtors are liable for the following NY Notes issuances denominated in U.S. Dollars and governed by New York law indentures:

(1) 4.375% Notes due 2030: The senior notes issued by B2W Digital in the aggregate principal amount of US$500,000,000 (the "**B2W Digital Notes**"), which are governed by that certain indenture dated as of November 24, 2020 (the "**B2W Indenture**") by and between B2W Digital, as issuer, B2W - Companhia Digital (later acquired by Americanas), as guarantor, and Deutsche Bank Trust Company Americas ("**Deutsche Bank**" or "**Indenture Trustee**") as trustee, registrar, paying agent, and transfer agent. The B2W Digital Notes mature on December 20, 2030 and are guaranteed by Americanas.

(2) 4.750 % Notes due 2030: The senior notes issued by JSM Global in the aggregate principal amount of US$500,000,000 (the "**JSM Global Notes**"), which are governed by that certain indenture dated October 6, 2020 (the "**JSM Indenture**" and together

12

with the B2W Indenture, the "**Notes Indentures**") by and between JSM Global, Americanas, as guarantor, and Deutsche Bank, as trustee, registrar, paying agent, and transfer agent. The JSM Global Notes mature October 20, 2030 and are guaranteed by Americanas.

26.     Americanas also owes other debts and outstanding payments to its employees and trade creditors located in Brazil, and are generally subject to the Brazilian RJ Proceeding.

D.     **Events Precipitating Commencement of the Brazilian RJ Proceeding**

1.     **The Chapter 15 Debtors were Financially Healthy Entities Prior to the Material Fact**

27.     As described in detail above, the Americanas Group is one of the largest retail enterprises in Brazil, historically operating with sufficient cash reserves and generally in a financially healthy condition. Until the end of 2022, the Americanas Group was current on its payroll, financial, operational and tax obligations and, to date, had produced more than 100,000 jobs.

28.     Historically, the Americanas Group generated significant profits. In 2021, the Americanas Group's gross revenue was approximately R$32.187 billion (US$6.23 billion), the adjusted EBITDA was R$3.303 billion (US$639 million), with net profits of R$731 million (US$141.45 million). In the third quarter of 2022, the Americanas Group's net revenue amounted to approximately R$27 billion (US$5.22 billion), with an adjusted EBITDA of R$3.157 billion (US$610.87 million). The Americanas Group's total debt was approximately R$20.7 billion (US$4 billion), 89% of which is long-term debt, and the Americanas Group had total cash in the amount of approximately R$8 billion (US$1.55 billion), exceeding the Americanas Group's short-term debt by almost 6.4 times as of the third quarter of 2022.

29.     Despite the positive results of the Chapter 15 Debtors in the past two years, the retail industry was faced with significant challenges in 2022. Inflationary pressure and higher

13

interest rates on consumer debt resulted in a sharp decline in customers' purchasing capacity. As a result, business growth was slower in the third quarter of 2022, during which the Americanas Group suffered a decline of 14.5% of gross revenue and a total net revenue result of -R$211.6 million (US$40.94 million). Nonetheless, the Americanas Group maintained its position as the leading enterprise in the industry.

### 2. Financial Inconsistencies and the Resulting Financial Distress

30.     As noted above, on January 11, 2023, Americanas published the Material Fact, as required under Brazilian securities regulations, informing its stakeholders and the market that it has identified certain inconsistencies in accounting entries that reduced the balance in the suppliers account related to previous fiscal years, including the fiscal year 2022. The Americanas' accounting department preliminarily estimates that the inconsistencies should be in the magnitude of R$20 billion (US$3.87 billion) as of September 30, 2022. Brazilian Counsel Decl. ¶ 51. Along with the disclosure of the Material Fact, on January 11, 2023, Americanas' former CEO Sérgio Rial and investor relations officer André Covre also tendered their resignations, and the board of officers of Americanas appointed an independent committee to investigate the circumstances that caused the foregoing accounting inconsistencies.

31.     Although the Americanas Group had made progress in negotiations with lenders, some creditors have already sent notices of default and acceleration of their claims in response to the Material Fact.

32.     To prevent further loss of value and ensure that the Americanas Group's operations are preserved, on January 12, 2023, the Chapter 15 Debtors filed the Brazilian Injunction Motion before the Brazilian RJ Court in preparation of a judicial reorganization proceeding. Brazilian Counsel Decl. ¶ 54. Such request sought certain protective measures, including, among other

14

things, to suspend the effects of all acceleration provisions in the Chapter 15 Debtors' debt documents and lift the seizure of bank accounts and any other assets by any creditor as a result of the Material Fact and events in connection therewith (including the seizure of over R$1 billion (US$193.49 million) by BTG as well as stay enforcement actions against the Americanas Group and its assets for claims subject to a potential RJ proceeding).  *Id.*  On January 13, 2023, the Brazilian RJ Court provisionally granted the Injunction Order.  Brazilian Counsel Decl. ¶ 55.

33.    On January 18, 2023, the Special Court of the State Court of Appeals of Rio de Janeiro entered the Suspension Order granting BTG's writ of *mandamus* staying the effects of the Injunction Order.  The Suspension Order freed BTG to accelerate its claims against the Americanas Group and retain over R$1 billion (US$193.49 million) of Americanas' seized funds until the final adjudication of the writ of *mandamus*.  Brazilian Counsel Decl. ¶ 56.  The Suspension Order had serious consequences for the Americanas Group's liquidity position and its ability to conduct its business.  Within a week, Americanas' shares plummeted to approximately R$1.8 (US$0.35) per share, causing the loss of almost 80% of its market value and rating downgrades by several agencies.  In addition, upon entry of the Suspension Order, other banks began blocking Americanas' access to credit and receivables, draining an additional R$3 billion (US580 million) of cash that would otherwise be used to fund its ordinary business activities.  Thus, while the Americanas Group had approximately R$8 billion (US$1.55 billion) of available cash reserves at the end of 2022, that amount quickly shrank to a few hundred million Reais, which was insufficient to cover the Americanas Group's operating expenses.

34.    Due to the catastrophic effect of the Suspension Order, Americanas immediately engaged with local counsel and filed the RJ Petition on the RJ Petition Date thereby commencing the Brazilian RJ Proceeding.  Brazilian Counsel Decl. ¶ 57.  The Brazilian RJ Court entered the

Brazilian Acceptance Order on the same day.  Brazilian Counsel Decl. ¶ 58.  The Brazilian

Acceptance Order upheld most of the protective measures granted in the Injunction Order on a

final basis, including the suspension of the effects of all acceleration provisions in the Chapter 15

Debtors' debt documents and a stay against any enforcement actions and orders attaching assets

or rights of the RJ Debtors.  The Brazilian RJ Court, however, did not unwind certain enforcement

actions by creditors and did not stay the effect of the Suspension Order.  *Id.*  Indeed, the Brazilian

RJ Court held that all appellate or special court orders entered in any appeals filed by the RJ

Debtors' creditors should remain in effect, including the Suspension Order that froze the funds of

the RJ Debtors pending the final adjudication of BTG's writ of *mandamus*.  *Id.*

## JURISDICTION, ELIGIBILITY AND VENUE

35.    This Court has jurisdiction to consider the Verified Petition pursuant to sections

157 and 1334 of title 28 of the United States Code, as well as the Amended Standing Order of

Reference dated January 31, 2012, Reference M-431, *In re Standing Order of Reference Re:  Title

11*, 12 Misc. 00032 (S.D.N.Y. Feb. 2, 2012) (Preska, C.J.) (the "**Amended Standing Order**").

36.    These Chapter 15 Cases have been properly commenced with respect to the Chapter

15 Debtors in accordance with sections 1504 and 1509(a) of the Bankruptcy Code by the filing of

the Petition.  This is a core proceeding pursuant to section 157(b)(2)(P) of title 28 of the United

States Code.

37.    Venue is proper in this Court pursuant to section 1410(1) of title 28 of the United

States Code, as the principal U.S. assets of the Chapter 15 Debtors are located within New York

County and thus within this District.

38.    The presence of assets within the United States renders the Chapter 15 Debtors

eligible to file these Chapter 15 Cases pursuant to section 109(a) of the Bankruptcy Code.  *See In*

*re Suntech Power Holdings Co*, 520 B.R. 399, 411 (Bankr. S.D.N.Y. 2014); *Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 247-51 (2d Cir. 2013) (applying section 109(a)'s local property requirement to chapter 15 cases).[8]

## RELIEF REQUESTED

39.    The Petitioner requests that this Court enter an order, substantially in the form of the Proposed Order attached hereto and pursuant to sections 105(a), 1509, 1515, 1517, 1520, and 1521 the Bankruptcy Code:

(a)    granting the Petition in these chapter 15 cases (the "**Chapter 15 Cases**") and recognizing the Brazilian RJ Proceeding as the "foreign main proceeding" for each of the Chapter 15 Debtors pursuant to section 1517 of the Bankruptcy Code; or in the alternative, recognizing the Brazilian RJ Proceeding as a "foreign nonmain proceeding" and granting appropriate relief;

(b)    finding that the Petitioner is the duly appointed "foreign representative" of each of the Chapter 15 Debtors within the meaning of section 101(24) of the Bankruptcy Code and is authorized to act on behalf of each Chapter 15 Debtor; and

(c)    granting such other and further relief as the Court deems just and proper.

## REQUIRED DISCLOSURES

40.    The Petitioner hereby provides the following disclosures in accordance with Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"):

(a)    the following disclosure identifies any corporation, other than a governmental unit, that directly or indirectly owns 10% or more of any class of each of the Chapter 15 Debtors' equity interests as of the commencement of these Chapter 15 Cases:

(i)    100% of JSM Global's equity is directly owned by Americanas;

(ii)    100% of B2W Digital's equity is directly owned by Americanas.; and

(iii)    the following are the only corporations that own 10% or more of Americanas' equity:

---

[8]    *See also In re Avanti Commc'ns Grp. PLC*, 582 B.R. 603, 611 (Bankr. S.D.N.Y. 2018) (finding that the "property in the United States" requirement of section 109(a) is satisfied by a New York law-governed indenture); *In re Berau Capital Res. PTE Ltd.*, 540 B.R. 80, 84 (Bankr. S.D.N.Y. 2015) (same).

- 15.20% of Americanas' equity is directly owned by S-Velame S.à.r.l.;

- 11.58% of Americanas' equity is directly owned by BRC S.à.r.l.;

(b)    Other than the Petition, the Chapter 15 Debtors have no pending petition with this Court for relief under any chapter of the Bankruptcy Code;

(c)    The Brazilian RJ Proceeding is the only foreign proceeding, as that term is defined in section 101(23) of the Bankruptcy Code, currently pending with respect to each Chapter 15 Debtor as of the commencement of these Chapter 15 Cases;

(d)    In the Brazilian RJ Proceeding, the Chapter 15 Debtors will remain in possession of their assets and attend to their own affairs, and aside from the Petitioner with respect to these Chapter 15 Cases (and the attorneys of record from law-firms Basilio Advogados and Salomão, Kaiuca, Abrahão, Raposo e Cotta – Sociedade de Advogados ("**Brazilian Counsel**") with respect to the Brazilian RJ Proceeding), no other persons are presently authorized to administer foreign proceedings of the Chapter 15 Debtors at this time;

(e)    The Chapter 15 Debtors are not a party to any litigation in the United States that has been identified by the Company pending as of the date of the commencement of these Chapter 15 Cases; and

(f)    In conjunction with this Verified Petition, the Petitioner is also seeking provisional stay relief under section 1519 of the Bankruptcy Code against any entity that may otherwise take any action proscribed by section 362 of the Bankruptcy Code against any Chapter 15 Debtor within the territorial jurisdiction of the United States, pursuant to the Provisional Relief Motion filed substantially contemporaneously herewith.

## **BASIS FOR RELIEF**

41.    The Court should grant the Verified Petition and recognize the Brazilian RJ Proceeding as the foreign main proceeding for each of the Chapter 15 Debtors. As is set out below, each of the procedural requirements of section 1517(a) of the Bankruptcy Code are satisfied. Notably, the Court has jurisdiction to hear and determine these Chapter 15 Cases, as each of the Chapter 15 Debtors has assets in the United States and is thus eligible to be a debtor under chapter 15 of the Bankruptcy Code in accordance with section 109(a) of the Bankruptcy Code. Additionally, the Petitioner is the duly-appointed "foreign representative" of the Brazilian RJ Proceeding with respect to each of the Chapter 15 Debtors, and the Brazilian RJ Proceeding

satisfies the standard to be considered a "foreign main proceeding" for the purposes of chapter 15 because the center of main interests for each of the Chapter 15 Debtors is in Brazil. A finding that each of the Chapter 15 Debtors' center of main interests is located in Brazil also aligns with the expectations of the Chapter 15 Debtors' creditors. *See* B2W Digital Offering Memorandum, pp. 36-63; JSM Global Offering Memorandum, pp. 35-63. Further, as explained below, the Petition meets the requirements of section 1515.

42.     In the alternative, if this Court declines to recognize the Brazilian RJ Proceeding as the foreign main proceeding for any of the Chapter 15 Debtors, those Chapter 15 Debtors are eligible for non-main recognition and relief, on the basis set out in Section I.C below, to ensure a comprehensive restructuring of the Americanas Group.

### A. The Court has Jurisdiction to Recognize the Brazilian RJ Proceeding and Grant the Relief Requested

43.     This Court has jurisdiction to hear and determine these Chapter 15 Cases, as each of the Chapter 15 Debtors has assets in the United States and is thus eligible to be a debtor under chapter 15 of the Bankruptcy Code in accordance with section 109(a) of the Bankruptcy Code. *See Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 250-51 (2d Cir. 2013). The Chapter 15 Debtors' property in the United States includes the New York contractual rights under the New York law governed NY Notes. Further, the Chapter 15 Debtors hold cash in an account with White & Case LLP, the Chapter 15 Debtors' U.S. counsel in connection with the filing of these Chapter 15 Cases. Additionally, JSM has US$2,482.22 in the JSM Global Account and B2W Digital has US$27,126.76 in the B2W Digital Account, both of which are held in New York.

44.     The Chapter 15 Debtors' principal assets in the United States are located in this district and, accordingly, venue is also proper here. 28 U.S.C. § 1410(1). The Chapter 15 Debtors

19

have no employees or operations in the United States and are not a party to any lawsuits in the

United States. The Chapter 15 Debtors have no United States affiliates. The Chapter 15 Debtors'

connections to the United States are the funds deposited in the New York Escrow Account, the

JSM Global Account and the B2W Digital Account, all of which are located in the borough of

Manhattan in the City of New York, New York, as well as the contractual rights relating to the

JSM Global Notes and the B2W Digital Notes, both of which are U.S. dollar denominated

obligations governed by New York law. The Notes Indentures contain forum-selection clauses in

which the obligors, *i.e.*, the Chapter 15 Debtors, consent to the jurisdiction of New York State

courts and U.S. federal courts sitting in New York.

45. This Court previously held that a chapter 15 debtor is able to meet the debtor

eligibility requirement under section 109(a) of the Bankruptcy Code if it has debt instruments that

are governed by New York law and contain New York forum selection provisions. *See In re Berau*

*Cap. Res. Pte Ltd*, 540 B.R. 80, 84 (Bankr. S.D.N.Y. 2015) ("The Court concludes that the

presence of the New York choice of law and forum selection clauses in the Berau indenture

satisfies the section 109(a) 'property in the United States' eligibility requirement"); *In re PT Bakrie*

*Telecom Tbk*, 601 B.R. 707, 715 (Bankr. S.D.N.Y. 2019) ("An indenture subject to New York

governing law and containing New York forum selection clauses constitutes property in the United

States and thereby satisfies Section 109's eligibility requirement"); *In re Cell C Proprietary Ltd.*,

571 B.R. 542, 551 (Bankr. S.D.N.Y. 2017) (holding that presence of "debt subject to New York

governing law and a New York forum selection clause constitutes property in the United States,"

thereby satisfying the requirement under section 109(a)); *In re Inversora Eléctrica de Buenos Aires*

*S.A.*, 560 B.R. 650, 655 (Bankr. S.D.N.Y. 2016) ("[D]ollar-denominated debt subject to New York

governing law and a New York forum selection clause is independently sufficient to form the basis

20

for jurisdiction").

46.    Here, even if the Chapter 15 Debtors did not have any cash or physical property in the U.S., the two series of the NY Notes issued by the Chapter 15 Debtors independently satisfy the requirement under section 109(a), and establish the basis for this Court to exercise jurisdiction over the Chapter 15 Debtors.  Moreover, aside from the Indenture Trustee and certain holders of the NY Notes that may have corporate offices in New York, the Chapter 15 Debtors are not aware of other creditors located in the United States.  Furthermore, the Chapter 15 Debtors' undersigned counsel is located in New York, closer to this Court.  Accordingly, the Chapter 15 Debtors believe that the interests of justice are served by establishing venue in this District.  28 U.S.C. § 1410(3).

47.    Accordingly, the Petitioner respectfully submits that (i) this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2)(P) and 1334 of title 28 of the United States Code and section 1501 of the Bankruptcy Code as well as the Amended Standing Order and (ii) venue in this District is consistent with the interests of justice and the convenience of the parties and is proper pursuant to 28 U.S.C. §§ 1410(1) and 1410(3).

**B.  The Requirements of Section 1517(a) of the Bankruptcy Code Are Satisfied**

48.    Section 1517(a) of the Bankruptcy Code provides that, after notice and a hearing, the Court shall enter an order recognizing a foreign proceeding as a foreign main proceeding if each of the following three requirements are met: (1) such foreign proceeding is a "foreign main proceeding" within the meaning of section 1502 of the Bankruptcy Code; (2) the foreign representative applying for recognition is a person or body; and (3) such foreign proceeding is a foreign main proceeding or nonmain proceeding within the meaning of section 1502 of the Bankruptcy Code.  *See* 11 U.S.C. § 1517(a); *In re Oversight & Control Comm'n of Avánzit, S.A.*, 385 B.R. 525, 532 (Bankr. S.D.N.Y. 2008).  These foregoing requirements are satisfied with

21

respect to the Brazilian RJ Proceeding, the Petitioner, and the Verified Petition.  Therefore, the Brazilian RJ Proceeding should be recognized as the foreign main proceeding of the Chapter 15 Debtors.

### 1.    The Brazilian RJ Proceeding is a "Foreign Proceeding"

49.    The Brazilian RJ Proceeding satisfies the general definition of "foreign proceeding" as set forth in section 101(23) of the Bankruptcy Code.  Section 101(23) requires that a "foreign proceeding" be: (i) either judicial or administrative in character; (ii) collective in nature; (iii) pending in a foreign country and authorized or conducted under a law related to insolvency or the adjustment of debts; (iv) a proceeding in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and (v) for the purpose of reorganizing or liquidating the assets and affairs of the debtor.  *See* 11 U.S.C. § 101(23); *see also In re ABC Learning Ctrs Ltd.*, 728 F.3d 301, 308 (3d Cir. 2013); *In re Irish Bank Resolution Corp. (In Special Liquidation)*, 2014 Bankr. LEXIS 1990, at \*39-40 (Bankr. D. Del. Apr. 30, 2014).  The Bankruptcy Code defines "foreign court" as "a judicial or other authority competent to control or supervise a foreign proceeding."  11 U.S.C. § 1502(3).

50.    **First**, the Brazilian RJ Proceeding is a judicial proceeding in that, on the RJ Petition Date, the RJ Debtors commenced the Brazilian RJ Proceeding by filing the RJ Petition with the Brazilian RJ Court.  Brazilian Counsel Decl.¶ 57.  On that same day, the Brazilian RJ Court entered the Brazilian Acceptance Order.  Brazilian Counsel Decl. ¶ 58.  Thus, the Brazilian RJ Proceeding has been properly commenced before a foreign court.  *See, e.g.*, *U.S.J. – Açúcar e Álcool S.A., et al.*, No. 22-10320 (DSJ) (Bankr. S.D.N.Y. Apr. 14, 2022) [ECF No. 21] (recognizing as a foreign main proceeding a case filed pursuant to in-court reorganization section of the Brazilian Bankruptcy Law); *Samarco Mineracao S.A. - Em Recuperação Judicial*, No. 21-10754 (LGB)

22

(Bankr. S.D.N.Y. May 13, 2021) [ECF No. 22] (recognizing as a foreign main proceeding a case filed pursuant to the in-court reorganization section of the Brazilian Bankruptcy Law); *In re Odebrecht Engenharia e Construção S.A.*, No. 20-12741 (MEW) (Bankr. S.D.N.Y. Dec. 30, 2020) [ECF No. 15] (recognizing as a foreign main proceeding a case filed pursuant to the out-of-court reorganization section of the Brazilian Bankruptcy Law); *In re Usina de Açúcar Santa Terezinha Ltda.*, No. 19-11199 (MEW) (Bankr. S.D.N.Y. May 16, 2019) [ECF No. 30] (recognizing as a foreign main proceeding a case filed pursuant to the in-court reorganization section of the Brazilian Bankruptcy Law); *In re Novonor S.A.*, No. 19-12731 (SMB) (Bankr. S.D.N.Y. Sept. 18, 2019) [ECF No. 22] (same); *In re Serviços de Petróleo Constellation S.A.*, No. 18-13952 (MG) (Bankr. S.D.N.Y. May 9, 2019) [ECF No. 86] (same); *In re Oi S.A.*, No. 16-11791 (SHL) (Bankr. S.D.N.Y. Jul. 22, 2016) [ECF No. 38] (same); *In re OAS S.A.*, No. 15-10937 (SMB) (Bankr. S.D.N.Y. Aug. 3, 2015) [ECF No. 85] (same); *In re Rede Energia S.A.*, No. 14-10078 (SCC) [ECF No. 36] (Bankr. S.D.N.Y. Sept. 9, 2014) (same).

51.    **Second**, the Brazilian RJ Proceeding is also "collective," in that it "considers the rights and obligations of all creditors" in a single proceeding. *In re Servicos de Petroleo Constellation S.A.*, 600 B.R. 237, 263 (Bankr. S.D.N.Y. 2019) (holding that courts in the Second Circuit have long agreed that a Brazilian RJ process satisfies the standards for a "foreign proceeding," including being a collective proceeding); *In re Betcorp Ltd.*, 400 B.R. 266, 281 (Bankr. D. Nev. 2009). Indeed, its purpose is to create a forum for the orderly administration of the RJ Debtors' debts and assets, giving creditors the ability to file proofs of claims, participate in the plan process, and voice their positions throughout the proceedings, including by filing objections and appeals. Brazilian Counsel Decl.¶ ¶ 40-44.

52.    **Third**, the Brazilian RJ Proceeding is pending in a foreign country—Brazil—under

a law relating to insolvency, the Brazilian Bankruptcy Law.  Brazilian Counsel Decl. ¶¶ 9-10.

53.     **Fourth**, throughout the Brazilian RJ Proceeding, the assets and affairs of the Chapter 15 Debtors are subject to the control and supervision of the Brazilian RJ Court.  Brazilian Counsel Decl. ¶¶17-18.  For instance, with the entry of the Brazilian Acceptance Order by the Brazilian RJ Court, the Chapter 15 Debtors are no longer allowed to dispose or encumber its fixed assets without prior authorization from the Brazilian bankruptcy court as provided in the plan of reorganization approved by creditors and the Brazilian bankruptcy court.  *Id*. ¶ 18.  The Brazilian RJ Court's oversight of the RJ Debtors' assets and affairs will continue until such time as the RJ Debtors' reorganization is complete, or up to two (2) years from the confirmation of the applicable plan of reorganization.  *Id.* ¶¶ 37-39.

54.     **Fifth**, the Brazilian RJ Proceeding is a judicial proceeding commenced for the purpose of reorganization of the RJ Debtors, including the Chapter 15 Debtors.  *Id.* ¶¶ 9-10.  As set forth in the Brazilian Counsel Declaration, the Brazilian RJ Proceeding is intended to protect the RJ Debtors so that they may continue to operate their business and negotiate a value-maximizing resolution for all parties.  *Id.* ¶¶ 22-23.

55.     Bankruptcy courts, including Courts in this district, have repeatedly held that restructuring proceedings under the Brazilian Bankruptcy Law are "foreign proceedings."  *See, e.g.*, *Mina Tucano Ltda.*, No. 22-11198 (LGB) (Bankr. S.D.N.Y. Oct. 12, 2022) [ECF No. 26]; *U.S.J. – Açúcar e Álcool S.A., et al.*, No. 22-10320 (DSJ) (Bankr. S.D.N.Y. April 14, 2022) [ECF No. 21] (recognizing as a foreign main proceeding a case filed pursuant to in-court reorganization section of the Brazilian Bankruptcy Law); *Samarco Mineracao S.A. - Em Recuperação Judicial*, No. 21-10754 (LGB) (Bankr. S.D.N.Y. May 13, 2021) [ECF No. 22] (recognizing as a foreign main proceeding a case filed pursuant to the in-court reorganization section of the Brazilian

24

Bankruptcy Law); *In re Odebrecht Engenharia e Construção S.A.*, No. 20-12741 (MEW) (Bankr. S.D.N.Y. Dec. 30, 2020) [ECF No. 15] (recognizing as a foreign main proceeding a case filed pursuant to the out-of-court reorganization section of the Brazilian Bankruptcy Law); *In re Usina de Açúcar Santa Terezinha Ltda.*, No. 19-11199 (MEW) (Bankr. S.D.N.Y. May 16, 2019) [ECF No. 30] (recognizing as a foreign main proceeding a case filed pursuant to the in-court reorganization section of the Brazilian Bankruptcy Law); *In re Novonor S.A.*, No. 19-12731 (SMB) (Bankr. S.D.N.Y. Sept. 18, 2019) [ECF No. 22] (same); *In re Serviços de Petróleo Constellation S.A.*, No. 18-13952 (MG) (Bankr. S.D.N.Y. May 9, 2019) [ECF No. 86] (same); *In re Oi S.A.*, No. 16-11791 (SHL) (Bankr. S.D.N.Y. Jul. 22, 2016) [ECF No. 38] (same); *In re OAS S.A.*, No. 15-10937 (SMB) (Bankr. S.D.N.Y. Aug. 3, 2015) [ECF No. 85] (same); *In re Rede Energia S.A.*, No. 14-10078 (SCC) [ECF No. 36] (Bankr. S.D.N.Y. Sept. 9, 2014) (same).

### 2.    The Petitioner Is a Proper "Foreign Representative"

56.    The Petitioner is the proper "foreign representative" of the Brazilian RJ Proceeding, thereby satisfying sections 101(24) and 1517(a)(2) of the Bankruptcy Code.

57.    Section 101(24) of the Bankruptcy Code provides that "the term 'foreign representative' means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24). The Bankruptcy Code does not require that the foreign representative be appointed by the foreign court. Instead, a debtor may appoint a foreign representative pursuant to corporate authorizations passed in accordance with local law. *See, e.g.*, *In re Andrade Gutierrez Engenharia S.A.*, 645 B.R. 175, 183 (Bankr. S.D.N.Y. 2022) (holding that the foreign representative duly authorized by the chapter 15 debtors' board was a foreign representative within 11 U.S.C. §101(24)

25

and citing Collier on Bankruptcy ¶ 13.04 (16th ed. 2022.) "[w]here the debtor remains in charge of its own affairs, the debtor itself might be able to appoint its own representative for this purpose, without express court sanction"); *In re Servicos de Petroleo Constellation S.A.*, 600 B.R. 237, 270 (Bankr. S.D.N.Y. 2019) (recognizing as proper foreign representative authorized under resolutions to commence a chapter 15 case on behalf of each of the debtors); *In re Oi Brasil Holdings Coöperatief U.A.*, 578 B.R. 169, 183 (Bankr. S.D.N.Y. 2017) (recognizing appointment of foreign representative "pursuant to resolutions and powers of attorney signed by authorized representatives of" the foreign debtors); *In re OAS S.A.*, 533 B.R. 83, 95 (Bankr. S.D.N.Y. 2015) (holding that the "Bankruptcy Code does not require the judicial authorization or appointment of the foreign representative").

58.    Here, the Petitioner is an individual who has been duly appointed by the Chapter 15 Debtors as their foreign representative in accordance with section 101(24) of the Bankruptcy Code and has been granted authority to commence these Chapter 15 Cases by appropriate corporate approvals under applicable law. *See* Exhibit B to the Forms of Voluntary Petition. As explained in the Brazilian Counsel Declaration, the Brazilian Bankruptcy Law authorizes the Chapter 15 Debtors' management to continue to administer the reorganization of their assets and affairs. Brazilian Counsel Decl. ¶ 22. This Court has recognized that the appointment of foreign representatives in similar manners is acceptable for purposes of commencing chapter 15 cases. *See, e.g.*, *In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237, 270 (Bankr. S.D.N.Y. 2019) (finding a foreign representative appointed pursuant to resolution of the debtors' boards is a proper "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code and thus meets the requirements of 1517(a)(2) of the Bankruptcy Code); *In re Mina Tucano Ltda.*, No. 22-11198 (LGB) (Bankr. S.D.N.Y. Oct. 12, 2022) [ECF No. 26] (approving the verified petition

where the foreign representative was authorized by chapter 15 debtors' corporate resolution).

**3.      The Petition Was Properly Filed under Sections 1504 and 1509 and
Meets the Requirements of Section 1515 and Bankruptcy Rule
1007(a)(4)**

59.      The third and final requirement for recognition of a foreign proceeding under

section 1517(a) of the Bankruptcy Code is that the petition for recognition meet the procedural

requirements of section 1515 of the Bankruptcy Code.  *See* 11 U.S.C. § 1517(a)(3).  Here, all of

section 1515's procedural requirements are satisfied.

60.      **First**, the Petitioner duly and properly commenced these Chapter 15 Cases in

accordance with sections 1504 and 1509(a) of the Bankruptcy Code by filing the Petition with all

the documents and information required by sections 1515(b) and 1515(c).  *See In re Bear Stearns*,

374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007) ("A case under chapter 15 is commenced by a foreign

representative filing a petition for recognition of a foreign proceeding under section 1515 of the

Bankruptcy Code.") ("***Bear Stearns I***").

61.      **Second**, in accordance with sections 1515(b)(1)-(2) and (d) of the Bankruptcy

Code, the Petitioner has submitted evidence of the existence of the Brazilian RJ Proceeding and

the appointment of the foreign representative.  *See* Exhibits C and D[9] attached to the Brazilian

Counsel Declaration (containing copies of the RJ Petition filed in the Brazilian RJ Proceeding and

the Brazilian Acceptance Order) and Exhibit B attached to each of the Forms of Voluntary Petition

(containing copies of the corporate resolutions authorizing the Petitioner to file this Verified

Petition and to act on behalf of each of the Chapter 15 Debtors in these Chapter 15 Cases as their

foreign representative).  As explained in the Brazilian Counsel Declaration, the Brazilian

---

[9]    Certified translations of the initial petition of the Brazilian RJ Proceeding and the Brazilian Acceptance Order
have been procured by the Petitioner and will be filed in these Chapter 15 Cases as soon as they are finalized.

Bankruptcy Law authorizes the RJ Debtors to administer the reorganization of its assets and affairs. Brazilian Counsel Decl. ¶ 22.  As such, the Petitioner satisfies sections 101(24) and 1517(a)(2) of the Bankruptcy Code.  *See, e.g.*, *Ad Hoc Group of Vitro Noteholders v. Vitro, S.A.B., de C.V. (In re Vitro, S.A.B. de C.V.)*, 470 B.R. 408 (Bankr. N.D. Tex. 2012), *aff'd*, 701 F.3d 1031 (5th Cir. 2012) (holding that an individual appointed as foreign representative by the debtor's board in anticipation of a Mexican concurso proceeding, which contemplates "self-management" during the proceeding similar to that of a debtor in possession, fit within the scope of the Bankruptcy Code's definition of "foreign representative," and recognizing the individual as the foreign representative); *see also OAS S.A.*, 553 B.R. 83, 93 (Bankr. S.D.N.Y 2015) (*citing In re Vitro, S.A.B. de C.V.*, 701 F.3d 1031, 1046 (5th Cir. 2012)).

62.    **Third**, in accordance with section 1515(c) of the Bankruptcy Code, this Verified Petition contains a statement identifying the Brazilian RJ Proceeding as the only foreign proceeding currently pending with respect to the Chapter 15 Debtors.  *See supra* ¶ 40.

63.    **Fourth**, the Foreign Representative has also satisfied the additional requirements set forth in Rule 1007(a)(4) of the Bankruptcy Rules by: (a) including corporate ownership statements containing the information described in Bankruptcy Rule 7007.1, with respect to each of the Chapter 15 Debtors, in this Verified Petition; and (b) filing a list containing the names and addresses of all person or bodies authorized to administer the foreign proceedings of the Chapter 15 Debtors and all parties to litigation pending in the U.S. in which the Chapter 15 Debtors are a party at the time of the filing of the Petitions.  *See supra* ¶ 40.

### 4.    The Brazilian RJ Proceeding Satisfies the Requirements for Recognition as a "Foreign Main Proceeding"

64.    With respect to the Chapter 15 Debtors, the Brazilian RJ Proceeding is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code.  A "foreign

28

main proceeding" is defined in the Bankruptcy Code as a "foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). While the Bankruptcy Code does not define a debtor's center of main interests ("**COMI**"), section 1516(c) provides that, in the absence of evidence to the contrary, a debtor's registered offices or habitual residence "is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c). The legislative history indicates that this rebuttable presumption was "designed to make recognition as simple and expedient as possible" in cases where the "COMI" of a debtor is not controversial. H. Rep. No. 109-31, pt. 1, at 112-13 (2005).

65.     In assessing whether the registered office statutory presumption withstands scrutiny, courts have developed a list of non-exclusive factors for determining COMI, which, while not to be applied mechanically, are helpful in assessing an entity's COMI. *See In re ABC Learning Ctrs. Ltd.*, 445 B.R. 318, 333 (Bankr. D. Del. 2010) *aff'd*, 728 F.3d 301 (3d Cir. 2013) (citation omitted); *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137-38 (2d Cir. 2013) (referring to the COMI factors developed by the court in *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006)).

66.     Those factors include: (i) the location of the debtor's headquarters; (ii) the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); (iii) the location of the debtor's primary assets; (iv) the location of the majority of the debtor's creditors or a majority of the creditors who would be affected by the case; and (v) the jurisdiction whose law would apply to most disputes. *See In re Fairfield Sentry Ltd.*, 714 F.3d at 137.

67.     Some courts have also employed the concept of "principal place of business" to guide their COMI analysis and, accordingly, have applied the Supreme Court's definition of that

29

concept in the context of subject matter jurisdiction, which looks at a corporation's "nerve center," *i.e.*, "where a corporation's officers direct, control, and coordinate the corporation's activities." *See In re Fairfield Sentry Ltd.*, 714 F.3d at 138 n.10 (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 91 (2010)). Given Congress's choice to use "COMI" instead of "principal place of business" in chapter 15, the "nerve center" concept does not control, "[b]ut to the extent that the concepts are similar, a court may certainly consider a debtor's 'nerve center,' including from where the debtor's activities are directed and controlled, in determining a debtor's COMI." *Id.*

68.    In addition, courts have placed emphasis on the need for the debtor's COMI to be readily ascertainable by third parties. *See In re British Am. Ins. Co. Ltd.*, 425 B.R. 884, 912 (Bankr. S.D. Fla. 2010) ("The location of a debtor's COMI should be readily ascertainable by third parties."); *see also In re Grand Prix Assocs.*, No. 09-16545 (DHS), 2009 Bankr. LEXIS 1239, at \*20 (Bankr. D.N.J. May 18, 2009) (the Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency explained that the COMI was modeled after the European Union Convention on Insolvency Proceedings, which states: "the place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties") (citations omitted).

69.    Similarly, some courts also look to the expectations of creditors, which can be "evaluated through examination of the public documents and information available to guide creditor understanding of the nature and risks of their investments." *In re Serviços De Petróleo Constellation S.A.*, 613 B.R. 497, 508 (Bankr. S.D.N.Y. 2020) citing *In re Oi Brasil Holdings Coöperatief U.A.*, 578 B.R. at 228)); *In re OAS S.A.*, 533 B.R. at 101-03 (reviewing offering memorandum to establish noteholder expectations as part of a COMI analysis); *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 474 B.R. 88, 93-94 (S.D.N.Y. 2012) (same); *In re*

*Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 418 (Bankr. S.D.N.Y. 2014) (considering terms of indenture to establish creditor expectations regarding likely location of a restructuring as part of a COMI analysis).

70.     For the reasons set forth below, the COMI for the Chapter 15 Debtors is Brazil.  As previously stated, Americanas, the main operating entity for the Americanas Group and the only Chapter 15 Debtor that has operations, is incorporated in Brazil and, at all times since its incorporation, has maintained its registered offices and employees in Brazil.  *Supra*, ¶¶ 16-22.  As discussed earlier, Americanas and the other Chapter 15 Debtors are jointly managed out of the Americanas Headquarters in the State of Rio de Janeiro in Brazil and are subject to combined cash management and accounting functions there.  *Id.*

71.     Additionally, the holders of the NY Notes expect that the value of those NY Notes derives from Americanas' business in Brazil.  The offering memoranda of both NY Notes issuances provide that the main responsible party for generating income to satisfy the NY Notes is the Brazilian parent, Americanas, which conducts most of its business in Brazil.  *See generally* JSM Offering Memorandum; B2W Offering Memorandum.  Further, as described above, the risk factors in the offering memoranda highlight that the NY Notes are heavily influenced by the Brazilian economy, and that in the event of insolvency, a bankruptcy proceeding would likely commence in Brazil and be subject to Brazilian law for Americanas, as guarantor of the NY Notes, as well as for B2W Digital and JSM Global, as the issuers of each series of the NY Notes Indentures.  B2W Offering Memorandum, pp. 36-63; JSM Offering Memorandum, pp. 35-63.  The noteholders are aware that their investment directly relies on the parent entity—Americanas' business operation in Brazil.

72.     Further, although B2W Digital and JSM Global are incorporated and have their

registered offices in Luxembourg, both entities have members of their respective managers who reside in Brazil and all of their corporate decisions are made at Americanas' Headquarters in Brazil. This Court previously found in other chapter 15 cases that a chapter 15 debtor's COMI may be different from the location of its registered offices. *See, e.g.*, *In re Servicos de Petroleo Constellation S.A.*, 600 B.R. 237 (Bankr. S.D.N.Y. 2019) (finding that the COMI for several entities incorporated outside Brazil was Brazil considering different factors and ties between such entities); *In re OAS S.A.*, 533 B.R. 83, 95 (Bankr. S.D.N.Y. 2015) (recognizing the Brazilian RJ proceeding as the foreign main proceeding for a group of chapter 15 debtors, including certain debtors that were incorporated outside of Brazil, noting that the COMI for each of them was in Brazil).

73.    Here, the Americanas Group's principal place of business is in Brazil. Americanas is the main operating entity of the group, while B2W Digital and JSM Global both function solely for the purpose of supporting the business of Americanas. Indeed, both B2W Digital and JSM Global are wholly-owned subsidiaries of Americanas and do not have any operating assets or otherwise perform any operational business activities outside of Brazil. Furthermore, the meetings of the managers of B2W Digital and JSM Global, and all corporate decisions of each of these entities are made in Brazil. *See supra* ¶¶ 16-22.

74.    Accordingly, all of the main business decisions with respect to the each of the Chapter 15 Debtors are made in Brazil. Indeed, the Chapter 15 Debtors have the following connections to Brazil:

(a)    the Chapter 15 Debtors' operations are managed and directed from Americanas' Headquarters and are carried out across Brazil;

(b)    corporate governance for the Chapter 15 Debtors is directed from the State of Rio de Janeiro;

32

(c)    in-person meetings of the managers of the Chapter 15 Debtors are held in the State of Rio de Janeiro;

(d)    Americanas' Board of Officers maintain their offices in the State of Rio de Janeiro, while both B2W Digital and JSM Global have board members who reside in Brazil and maintain business office in the State of Rio de Janeiro;

(e)    strategic and key operating and policy decisions for each of the Chapter 15 Debtors are made by management located in the State of Rio de Janeiro;

(f)    Americanas' corporate accounting, accounts payable, insurance procurement, accounts receivable, financial planning, internal auditing, marketing, treasury, real estate, research and development, and tax services are provided in the State of Rio de Janeiro;

(g)    Americanas Group's finance, legal, human resources, payroll, billing and procurement are carried out in the State of Rio de Janeiro;

(h)    key information technology and systems used by Americanas are provided from the State of Rio de Janeiro;

(i)    Americanas' cash management functions are maintained and directed from the State of Rio de Janeiro;

(j)    management and senior staff of the Chapter 15 Debtors regularly attend meetings in the State of Rio de Janeiro;

(k)    Americanas' assets, including their physical stores are located in Brazil;

(l)    capital expenditure decisions affecting the Chapter 15 Debtors are managed in the State of Rio de Janeiro; and

(m)    the majority of the Americanas' creditors, both in number and amount, are located in Brazil.

75.    Indeed, in the Brazilian RJ Proceeding, the Brazilian RJ Court made a similar finding with respect to the principal place of business of the RJ Debtors, holding that B2W Digital and JSM Global are part of the Americanas Group whose principal place of business is in Brazil, and therefore they are eligible to commence the RJ proceeding. *See* Brazilian Counsel Decl. Ex. D. The Brazilian RJ Court additionally held that, despite B2W Digital and JSM Global having registered addresses in Luxembourg, the execution and satisfaction of the respective Note Indentures are made possible by the generation of cash flows by the Americanas Group in

33

Brazil.  *Id.*

76.    Accordingly, the COMI for the Chapter 15 Debtors is in Brazil, and therefore, the Brazilian RJ Proceeding is, and should be recognized as, the foreign main proceeding for each of the Chapter 15 Debtors, pursuant to section 1517(b)(1) of the Bankruptcy Code.

**C.    Alternatively, the Court Should Find that the Brazilian RJ Proceeding Is a Foreign Nonmain Proceeding and Grant Discretionary Relief**

77.    As demonstrated above, the Brazilian RJ Proceeding should be recognized as the "foreign main proceeding" for each of the Chapter 15 Debtors.  Should this Court conclude, however, that the Brazilian RJ Proceeding is not qualified as the foreign main proceeding of B2W Digital or JSM Global, the Foreign Representative submits that, in the alternative, the Brazilian RJ Proceeding should be recognized as a "foreign nonmain proceeding" within the meaning of section 1502(5) for any such Chapter 15 Debtors pursuant to section 1517(b)(2) of the Bankruptcy Code, and that discretionary relief, namely, the application of a protective stay to the full extent set forth in section 362, should be granted with respect to such debtors and their U.S.-located property.  11 U.S.C. §§ 1517(b)(2), 1521(a).

78.    Courts will recognize a foreign proceeding as a "foreign nonmain proceeding" if "the debtor has an establishment within the meaning of section 1502 in the foreign country where the proceeding is pending."  11 U.S.C. § 1517(b)(2).  Unlike COMI, chapter 15 provides no evidentiary presumption as to whether a debtor has an establishment in a particular jurisdiction. *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 338 (S.D.N.Y. 2008) ("***Bear Stearns II***").  Thus, whether an establishment exists in a particular location is "essentially a factual question," *id.* at 338, and the petitioner bears the burden of proof.  *British Am.*, 425 B.R. at 915.  Importantly, section 1502 of the Bankruptcy Code defines an

"establishment" as "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. § 1502(2).

79.    The Bankruptcy Code does not define "nontransitory economic activity," and, as this Court has noted, "[t]here is relatively little U.S. authority construing the term 'establishment' as it is used in chapter 15." *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 84 (Bankr. S.D. N.Y. 2011), *aff'd* 474 B.R. 88 (S.D. N.Y. 2012). Indeed, "[n]either [c]hapter 15 nor its legislative history explain what it means for a debtor to have 'any place of operations' or to have 'been carrying on a nontransitory economic activity' in a location." *Lavie v. Ran (In re Ran)*, 607 F.3d 1017, 1027 (5th Cir. 2010) (citing H. Rep. No. 109-31, Pt. 1, at 107).

80.    Accordingly, U.S. courts have interpreted the meaning of "establishment" in the context of the purpose of chapter 15 and the Model Law, and by looking to the meaning ascribed to such term by foreign courts. *See, e.g.*, *Millennium Glob.*, 458 B.R. at 84 n.49; *Bear Stearns I*, 374 B.R. at 131 n.12. The limited number of U.S. courts to consider the question have determined a debtor has an "establishment" in a place where it has operations, conducts business, or otherwise carries out a nontransitory economic activity in that jurisdiction. *See, e.g.*, *Fairfield Sentry*, 2011 U.S. Dist. LEXIS 105770 at *29-30 n.8 (describing an establishment as "a local place of business"); *Bear Stearns I*, 374 B.R. at 131; *In re Creative Financial, Ltd.*, 543 B.R. 498, 520 (Bankr. S.D. N.Y. 2016); *British Am.*, 425 B.R. at 916. Several factors "contribute to identifying an establishment: the economic impact of the debtor's operations on the market, the maintenance of a 'minimum level of organization' for a period of time, and the objective appearance to creditors whether the debtor has a local presence." *Millennium Glob.*, 458 B.R. at 85; *see In re Modern Land (China) Co., Ltd.*, 641 B.R. 768, 784 (Bankr. S.D.N.Y. 2022). A showing of economic impact of the debtor's activities on the local market involves a "showing of a local effect on the

35

marketplace," *Creative Fin.*, 543 B.R. at 520; *British Am.*, 425 B.R. at 915 (same), evidenced by, among other things, "engagement of local counsel and commitment of capital to local banks." *Millennium Glob.*, 458 B.R. at 85.

81.     In this case, even if the Court were to find that Brazil is not the COMI for B2W Digital or JSM Global, the Court should still find that B2W Digital and JSM Global each has an establishment in Brazil for purposes of chapter 15 recognition. The Petitioner submits that the foregoing evidence in support of finding that the COMI of each of the Chapter 15 Debtors is in Brazil also provides sufficient evidence that each of B2W Digital or JSM Global has an impact on the Brazilian marketplace and therefore maintains an establishment in that jurisdiction. *See supra* ¶ 21.

82.     Regardless of whether the Court finds that the Brazilian RJ Proceeding is a main proceeding or nonmain proceeding with respect to B2W Digital or JSM Global, the Petitioner requests that the Court grant discretionary relief with respect to each Chapter 15 Debtor and their U.S.-located property pursuant to section 1521 of the Bankruptcy Code. Specifically, the Petitioner requests that any protective relief that is the subject of the Provisional Relief Motion be extended pursuant to section 1521(a)(6) of the Bankruptcy Code,[10] including the continued application of the section 362 stay with respect to any such Chapter 15 Debtor and its property within the territorial jurisdiction of the United States.[11] *See* 11 U.S.C. 1521(a)(6); Provisional

---

[10]     Section 1521(a) provides that, upon recognition of a foreign main proceeding or nonmain proceeding and at the request of the foreign representative, a court may grant (with exceptions not here relevant) "any appropriate relief" necessary to effectuate the purpose of chapter 15 and to protect the assets of the debtor or the interests of the creditors, including "extending relief granted under section 1519(a)." 11 U.S.C. § 1521(a)(6). Even if this Court does recognize the Brazilian RJ Proceeding as a foreign nonmain proceeding with respect to any of the Chapter 15 Debtors, section 1521 relief is available where "the relief relates to assets that, under the law of the United States, should be administered in the foreign nonmain proceeding or concerns information required in that proceeding." 11 U.S.C. § 1521(c).

[11]     Notably, the Petitioner is entitled to the continued application of the protective stay even if the Court were to recognize the Brazilian RJ Proceeding as a foreign nonmain proceeding with respect to any of the Chapter 15

Relief Mot. ¶ 16.  The Petitioner submits that the foregoing evidence concerning B2W Digital and

JSM Global and their integral role within the Americanas Group justifies such discretionary relief,

which is critical for the maintenance of the status quo and the preservation of the Chapter 15

Debtors' going-concern value.

83.    To exercise its discretionary powers under section 1521, the Court must ensure that

"the interests of the creditors and other interested entities, including the debtor, are sufficiently

protected."  11 U.S.C. § 1522(a) (adopting Article 22 of the Model Law).  Relief under section

1521 will not be permitted if "it is shown that the foreign proceeding is seriously and unjustifiably

injuring United States creditors."  H. Rep. No. 109-31, Pt. 1, at 116.  A determination of sufficient

protection requires a balancing of the respective parties' interests.  *CT Inv. Mgmt. Co. v. Cozumel

Caribe, S.A. de C.V.*, 482 B.R. 96, 108 (Bankr. S.D.N.Y. 2012); *see In re Toft*, 453 B.R. 186, 196

n.11 (Bankr. S.D.N.Y. 2011) ("[A] court should tailor relief balancing the interest of the foreign

representative and those affected by the relief.").[12]

84.    Here, the balance of interests weighs in favor of granting the relief requested.  *First*,

recognition and the application of the stay will allow for the efficient and orderly administration

of the Chapter 15 Debtors' assets and affairs in a centralized, organized proceeding (*i.e.*, the

---

Debtors because "chapter [15] gives the bankruptcy court the ability grant substantially the same types of relief in assistance of foreign nonmain proceedings as main proceedings."  *SPhinX*, 351 B.R. at 116.

[12]    The analysis of whether the relief sought provides sufficient protection requires a balancing of the interests of the debtor and other affected parties to ensure that the relief does not "impinge excessively on any one entity's interests" and that "each entity must receive at least some protection."  *See Jaffe v. Samsung Elecs. Co.*, 737 F.3d 14, 27-28 (4th Cir. 2013) ("The analysis required by § 1522(a) is . . . best done by balancing the respective interests based on the relative harms and benefits in light of the circumstances presented, thus inherently calling for application of a balancing test").  Importantly, courts recognize that interests of the various parties are often at odds with one another and "protection of one side might well come at some expense to the other."  *Id.*, 737 F.3d at 27.  A balancing test requires the court to consider "the just treatment of all holders of claims against the bankruptcy estate, the protection of U.S. claimants against prejudice and inconvenience in the processing of claims in the [foreign] proceeding, and the distribution of proceeds of the [foreign] estate substantially in accordance with the order prescribed by U.S. law."  *In re Artimm, S.r.l.*, 335 B.R. 149, 160 (Bankr. C.D. Cal. 2005).

Brazilian RJ Proceeding), thus protecting the interests of all creditors and maximizing the value of assets by ensuring their equitable distribution and preventing certain opportunistic creditors from circumventing the Brazilian RJ Proceeding and commencing actions in the United States at the expense of the broader process.

85.     Furthermore, interested parties will have the ability to participate in the Brazilian RJ Proceeding and assert their claims therein along with all similarly situated creditors.  As set forth in the Brazilian Counsel Declaration, the Brazilian RJ Proceeding provides creditors and stakeholders with many of the same procedural safeguards present in chapter 11 of the Bankruptcy Code thereby ensuring a fair and equitable process.  *See* Brazilian Counsel Decl. ¶¶ 40-50.  The stay will not bar or otherwise disenfranchise parties from participating in the Brazilian RJ Proceeding, where each creditor's right to be heard will remain unaffected.  Nor will the requested stay preclude a creditor that feels unduly burdened by the Court's grant of the requested relief to seek to lift the stay for "cause."  *See generally* 11 U.S.C. § 362(d).  Instead, the Petitioner merely seeks to prevent creditors from attempting to end-run the Brazilian RJ Proceeding.  Accordingly, any prejudice to creditors caused by the discretionary relief requested is extremely limited.

86.     In contrast, failure to grant the discretionary relief requested will cause tremendous harm to the Chapter 15 Debtors and their stakeholders.  As detailed more fully in the Petitioner's Provisional Relief Motion, absent relief, the Chapter 15 Debtors are at risk of adverse creditor action that could threaten their ability to continue as a going concern.  Provisional Relief Mot. ¶¶ 20-21.  Accordingly, the balance between the minimal harm to those seeking to bring adverse actions against the Chapter 15 Debtors, and the potential harm to the Chapter 15 Debtors and the orderly administration of the Chapter 15 Debtors' assets, tips in favor of granting the discretionary

relief requested.[13]

\*        \*        \*

87.        For all of the reasons set forth above, the Petitioner respectfully submits that all of the requirements of section 1517(a) have been satisfied and that the Chapter 15 Debtors are entitled to the relief provided by section 1520 of the Bankruptcy Code.  Thus, the Court should enter the Proposed Order attached hereto as <u>Exhibit A</u> recognizing the Brazilian RJ Proceeding as the foreign main proceeding.

## NOTICE

88.        Notice of the Verified Petition has been provided to the parties (the "**Notice Parties**") set forth in <u>Exhibit B</u> attached hereto (the "**Notice List**").  The Petitioner respectfully submits that no other or further notice is required.

## NO PRIOR REQUEST

89.        No previous request for the relief requested herein has been made by the Chapter 15 Debtors to this or any other court.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Petitioner respectfully requests that the Court:  (i) grant the Verified Petition and enter the Proposed Order annexed hereto as <u>Exhibit A</u> recognizing the Brazilian RJ Proceeding as the foreign main proceeding for the Chapter

---

[13]    Further, the Petitioner demonstrated in detail in the Provisional Relief Motion that all parties in interest will be sufficiently protected in the Court's grant of the discretionary relief requested.  *See* Provisional Relief Motion ¶¶ 36-37.

15 Debtors and granting the related relief in connection therewith; and (ii) grant such other and

further relief as the Court deems just and proper.

Dated: January 25, 2023

Respectfully submitted,                      WHITE & CASE LLP

                                             By:   */s/ John K. Cunningham*
                                                   John K. Cunningham

                                             WHITE & CASE LLP
                                             1221 Avenue of the Americas
                                             New York, New York 10020
                                             (212) 819-8200
                                             John K. Cunningham
                                             Philip M. Abelson
                                             Gregory M. Starner
                                             Ricardo M. Pasianotto (*pro hac vice* pending)
                                             Lilian M. Marques
                                             Livy Mezei (*pro hac vice* pending)
                                             jcunningham@whitecase.com
                                             philip.abelson@whitecase.com
                                             gstarner@whitecase.com
                                             ricardo.pasianotto@whitecase.com
                                             lilian.marques@whitecase.com
                                             livy.mezei@whitecase.com

                                             200 South Biscayne Boulevard, Suite 4900
                                             Miami, Florida 33131
                                             (305) 371-2700
                                             Richard S. Kebrdle (*pro hac vice* pending)
                                             rkebrdle@whitecase.com

                                             *Attorneys for Antonio Reinaldo Rabelo Filho,*
                                             *as Petitioner and Foreign Representative*

## <u>VERIFICATION OF CHAPTER 15 PETITION</u>

Pursuant to 28 U.S.C. § 1746, I, Antonio Reinaldo Rabelo Filho, declare under penalty of perjury under the laws of the United States of America as follows:

I am the authorized foreign representative of the Chapter 15 Debtors with respect to the Brazilian RJ Proceeding for purposes of these Chapter 15 Cases.  I declare under penalty of perjury that the factual contents of the foregoing Verified Petition, as well as the factual contents of each of the attachments and appendices thereto, are true and accurate to the best of my knowledge, information, and belief, and I respectfully represent as follows:

I reside at Rua Barão da Torre, 550, Apt. 201, Ipanema, Brazil.  I hold a law degree from the Federal University of Bahia, a post-graduate degree in business law from IBMEC/RJ and a Master's degree in tax law from Pontifical Catholic University of São Paulo.  I began my career at PWC Brasil, from where I left to work for the Oi Group ("**Oi**") in 2000.  In Oi, I held positions in the financial and legal departments and served on the tax legal board from 2007 to 2017.  Since 2017, I started my own law firm practice.  Additionally, I participated in the Board of Directors of the Main Technical Associations of the Telecommunications Sector.  I am also a member of the National and State Commissions of Tax Law and Judicial Reorganization and Bankruptcy of the Brazilian Bar Association.

In particular, I served as the foreign representative of Oi's chapter 15 proceeding in front of this Court and the judicial reorganization proceeding in front of the United Kingdom court, where I negotiated with various creditors and implemented Oi's restructuring plan internationally in Brazil, USA, Netherlands and Portugal.  Between 2019 and 2021, I worked as the Chief Legal Office of Oi, where I participated in negotiations with creditors and stakeholders regarding Oi's

restructuring plan in a Brazilian RJ proceeding initiated in 2020, and such plan was approved by the Brazilian court on that same year.

On January 23, 2023, each of the Chapter 15 Debtors appointed me as the foreign representative of the Brazilian RJ Proceeding and authorized me to file the Verified Petition and to act on its behalf in these Chapter 15 Cases.  Accordingly, I am fully authorized and take related action as the Foreign Representative.

Unless otherwise indicated, all facts set forth in this Verified Petition are based upon: (a) my review of relevant information, data and documents (including oral information) furnished to me by the Chapter 15 Debtors and its legal advisors; (b) information supplied to me by the Chapter 15 Debtors' officers, directors, employees, and professionals; or (c) my analyses of the information I have received on the Chapter 15 Debtors' operations and financial condition.  I have also been kept abreast of major discussions with stakeholders, including the Chapter 15 Debtors' primary financial creditors and its shareholders.  I am an individual over the age of 18.  If I am called to testify, I will do so competently and based on the facts set forth herein.

*[Remainder of Page Left Intentionally Blank; Signature Page to Follow]*

Dated: January 25, 2023

Respectfully submitted,

_____
*Representative of the Chapter 15 Debtors*