WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020-1095
(212) 819-8200
John K. Cunningham
Gregory M. Starner
Philip M. Abelson
Ricardo M. Pasianotto (*pro hac vice* pending)
Lilian M. Marques
Livy Mezei (*pro hac vice* pending)

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Richard S. Kebrdle (*pro hac vice* pending)

*Attorneys for Antonio Reinaldo Rabelo Filho,*
*as Petitioner and Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) |
|  | ) |
|  | ) Case No. 23- |
| Americanas S.A., *et al.*,[1] | ) |
|  | ) Chapter 15 |
| Debtors in a Foreign Proceeding. | ) (Joint Administration Requested) |
|  | ) |

**MOTION FOR PROVISIONAL RELIEF**
**PURSUANT TO 11 U.S.C. §§ 1519, 1521(a)(7), 105(a), AND 362**

---

[1]     The debtors in these chapter 15 cases, along with the last four digits of each debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Americanas S.A. (06-60 – Brazil); JSM Global S.à.r.l. (5670 – Grand Duchy of Luxembourg); and B2W Digital Lux S.à.r.l. (8659 – Grand Duchy of Luxembourg).

# TABLE OF CONTENTS

**Page(s)**

Preliminary Statement................................................................................................2

Background ................................................................................................................3

A.    The Americanas Group Operations .................................................................3

B.    General Procedural Background ......................................................................4

C.    The Chapter 15 Debtors' Debt Obligations and Assets in the United States........5

D.    Imminent Risk to the Chapter 15 Debtors' Reorganization.............................6

Jurisdiction And Venue...............................................................................................6

Relief Requested .......................................................................................................7

Basis for Relief ..........................................................................................................7

A.    The Requested Relief Is Authorized Under Sections 1519, 1521(a)(7), 105(a), and 362 ...7

B.    The Requested Relief Also Meets the Preliminary Injunction Standards.........11

    i.     Petitioner is likely to succeed on the merits.........................................12

    ii.    The Chapter 15 Debtors are at risk of irreparable harm if an injunction is not issued ……… ..................................................................................... 15

    iii.   The balance of harms weighs heavily in favor of granting the Requested Relief 17

    iv.   The public interest favors granting the requested injunctive relief..................... 17

C.    All Parties Are Sufficiently Protected............................................................18

D.    No Security is Required ................................................................................19

No Prior Request.......................................................................................................19

Conclusion ...............................................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*ACLU v. Clapper*,
    785 F.3d 787 (2d Cir. 2015)....................................................................12

*Calpine Corp. v. Nev. Power Co. (In re Calpine Corp.)*,
    354 B.R. 45 (Bankr. S.D.N.Y. 2006)........................................................12

*CT Inv. Mgmt. Co. v. Cozumel Caribe, S.A. de C.V.*,
    482 B.R. 96 (Bankr. S.D.N.Y. 2012)........................................................18

*In re Arcadia Group (USA) Limited*,
    No. 19-11650 (JLG) (Bank. S.D.N.Y. May 22, 2019) .................................7

*In re Alert Holdings, Inc.*,
    148 B.R. 194 (Bankr. S.D.N.Y. 1992)......................................................16

*In re Berau Capital Resources PTE Ltd.*,
    No. 15-11804 (MG) (Bankr. S.D.N.Y. Aug. 6, 2015)..............................15

*In re Calpine Corp.*,
    365 B.R. 401 (S.D.N.Y. 2007)...........................................................12, 15

*In re Cogent Fibre Inc.*,
    No. 15-11877 (SMB) (Bankr. S.D.N.Y. July 17, 2015) ...........................11

*In re Commonwealth Oil Ref. Co.*,
    805 F.2d 1175 (5th Cir. 1986)..................................................................11

*In re Compañía Mexicana de Aviación, S.A. de C.V.*,
    No. 10-14182 (MG) (Bankr. S.D.N.Y. Aug. 18, 2010) .............................8

*Cunard S.S. Co. v. Salen Reefer Servs. AB*,
    773 F.2d 452 (2nd Cir. 1985)...................................................................17

*In re Daewoo Corp.*,
    No. 06-12242 (REG) (Bankr. S.D.N.Y. Oct. 11, 2006).............................9

*In re Elpida Memory, Inc.*,
    No. 12-10947 (CSS), 2012 Bankr. LEXIS 5367 (Bankr. D. Del. Nov. 16, 2012) ...............7, 8

*In re Garcia Avila*,
    296 B.R. 95 (Bankr. S.D.N.Y. 2003).......................................................15

*In re Gercke*,
    122 B.R. 621 (Bankr. D.D.C. 1991) .................................................................10

*In re Hanjin Shipping Co.*,
    No. 16-27041 (JKS), 2016 Bankr. LEXIS 3986 (Bankr. D.N.J. Sept. 20, 2016) ....................8

*In re Inverness Distribution Ltd.*,
    No. 11-12106 (SCC) (Bankr. S.D.N.Y. May 18, 2011) .................................................19

*In re Japan Airlines Corp.*,
    425 B.R. 732 (Bankr. S.D.N.Y. 2010).................................................................11

*In re Lupatech*,
    No. 14-11559 (SMB) (Bankr. S.D.N.Y. May 28, 2014).................................................12

*In re Mina Tucano Ltda.*,
    No. 22-11198 (LGB) (Bankr. S.D.N.Y. Sept. 14, 2022) .......................................7, 10, 16

*In re MMG LLC*,
    256 B.R. 544 (Bankr. S.D.N.Y. 2000).................................................................10

*In re Netia Holdings S.A.*,
    278 B.R. 344 (Bankr. S.D.N.Y. 2002).................................................................15

*In re NewSat Ltd.*,
    No. 15-10810 (LSS) (Bankr. D. Del. May 1, 2015) ...................................................11

*In re OAS S.A.*,
    533 B.R. 83 (Bankr. S.D.N.Y. 2015)..................................................................10

*In re OAS S.A.*,
    No. 15-10937 (SMB) (Bankr. S.D.N.Y. Apr. 30, 2015)............................................11, 16

*In re Ocean Rig UDW INC.*,
    No. 17-10736 (MG) (Bankr. S.D.N.Y. Apr. 7, 2017).................................................10

*In re Oi S.A.*,
    No. 16-11791 (SHL) (Bankr. S.D.N.Y. June 22, 2016) .........................................passim

*In re Peraso Technologies Inc.*,
    No. 20-11354 (SHL) (Bankr. S.D.N.Y. June 10, 2020) ...............................................7

*In re Pro-Fit Holdings Ltd.*,
    391 B.R. 850 (Bankr. C.D. Cal. 2008)............................................................7, 9, 11

*In re Ran*,
    607 F.3d 1017 (5th Cir. 2010) ........................................................................8

*In re The John Forsyth Shirt Co.*,
    No. 13-10526 (SCC) (Bankr. S.D.N.Y. Feb. 27, 2013), ECF No. 16......................................7

*In re Toft*,
    453 B.R. 186 (Bankr. S.D.N.Y. 2011) ...................................................................................18

*In re Vitro*,
    455 B.R. 571 (Bankr. N.D. Tex. 2011)................................................................................8, 11

*In re Worldwide Educ. Servs., Inc.*,
    494 B.R. 494 (Bankr. C.D. Cal. 2013)....................................................................................11

*Lyondell Chem. Co. v. Centerpoint Energy Gas Servs. (In re Lyondell Chem. Co.)*,
    402 B.R. 571 (Bankr. S.D.N.Y. 2009)..............................................................................12, 15

*MF Global Holdings Ltd. v. Allied World Assur. Co. (In re MF Glob. Holdings  Ltd.)*,
    562 B.R. 55 (Bankr. S.D.N.Y. 2017) .....................................................................................12

*Richardson v. Runge Fin. Co. (In re Richardson)*,
    No. 99-20522, 2003 Bankr. LEXIS 2461 (Bankr. D. Idaho Oct. 21, 2003) ...........................19

## STATUTES AND RULES

11 U.S.C. § 101 ........................................................................................................... passim

11 U.S.C. § 103(a) ...............................................................................................................9

11 U.S.C. § 105 ........................................................................................................... passim

11 U.S.C. § 362 ........................................................................................................... passim

11 U.S.C. § 1501 .........................................................................................................10, 18

11 U.S.C. § 1502(4) ...........................................................................................................13

11 U.S.C. § 1515 .......................................................................................................1, 2, 13

11 U.S.C. § 1517 .......................................................................................................1, 2, 13

11 U.S.C. § 1519 ........................................................................................................ passim

11 U.S.C. § 1520 .......................................................................................................1, 2, 19

11 U.S.C. § 1521 ........................................................................................................ passim

11 U.S.C. § 1522(a) ...........................................................................................................18

11 U.S.C. § 1525...............................................................................................................18

28 U.S.C. § 157......................................................................................................................6

28 U.S.C. § 1334....................................................................................................................6

28 U.S.C. § 1409(a)...............................................................................................................7

28 U.S.C. § 1410....................................................................................................................7

28 U.S.C. § 1746....................................................................................................................1

Fed R. Bankr. P. 7065..........................................................................................................19

Fed. R. Civ. P. 65.................................................................................................................19

**MISCELLANEOUS**

H. Rep. No. 109-31, Pt. 1, 109th Cong., 1st Sess. 116 (2005) ..........................................18

Antonio Reinaldo Rabelo Filho (the "**Petitioner**" or the "**Foreign Representative**"), the duly-authorized foreign representative of Americanas S.A. ("**Americanas**"), JSM Global S.à.r.l. ("**JSM Global**"), and B2W Digital Lux S.à.r.l. ("**B2W Digital**," together with Americanas and JSM Global, the "**Chapter 15 Debtors**") in the jointly-administered judicial reorganization (*recuperação judicial* or "**RJ**") proceeding (the "**Brazilian RJ Proceeding**") of the Chapter 15 Debtors and certain of their affiliated debtors commenced on January 19, 2023 pursuant to Federal Law No. 11.101 of February 9, 2005 (as modified, the "**Brazilian Bankruptcy Law**"), of the laws of the Federative Republic of Brazil ("**Brazil**"), pending before the 4th Business Court of Rio de Janeiro (the "**Brazilian RJ Court**"),[1] by and through his undersigned counsel, respectfully submits this motion (the "**Motion**") seeking the entry of an order granting provisional relief (the "**Provisional Relief Order**")[2] pursuant to sections 1519, 1521(a)(7), 105(a), and 362 of title 11 of the United States Code (the "**Bankruptcy Code**")[3] in the above-captioned chapter 15 cases (the "**Chapter 15 Cases**"), pending chapter 15 recognition of the Brazilian RJ Proceeding.

In support of this Motion, the Petitioner relies upon and incorporates by reference: (i) each form of voluntary petition (collectively, the "**Forms of Voluntary Petition**") [ECF No. 1] filed by the Chapter 15 Debtors; (ii) the *Petitioner's Declaration and Verified Petition for Recognition of the Brazilian RJ Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 105(a), 1509, 1515, 1517, 1520, and 1521* (the "**Verified Petition**") [ECF No. 3];[4] and (ii) the *Declaration of Francisco Satiro Pursuant to 28 U.S.C. § 1746 in Support of the Petitioner's Declaration and Verified Petition for Recognition of the Brazilian RJ Proceeding and Motion for*

---

[1]     The case number for the Brazilian RJ Proceeding before the Brazilian RJ Court is 0803087-20.2023.8.19.0001.
[2]     A proposed version of the Provisional Relief Order granting the Petitioner's request for provisional relief is attached hereto as <u>Exhibit A</u>.
[3]     Except as otherwise indicated, section and chapter references are to the Bankruptcy Code.
[4]     Capitalized terms used but not defined herein have the meanings ascribed to them in the Verified Petition.

*Order Granting Related Relief Pursuant to 11 U.S.C. §§ 105(a), 1509, 1515, 1517, 1520, and 1521* (the "**Brazilian Counsel Declaration**") [ECF No. 4], each of which were filed concurrently herewith.  In further support of this Motion, the Petitioner respectfully represents to the Court as follows:

## PRELIMINARY STATEMENT

1.    On January 19, 2023 (the "**RJ Petition Date**"), each of the Chapter 15 Debtors and ST Importações Ltda (collectively, the "**RJ Debtors**" or the "**Americanas Group**") filed a voluntary petition for relief with the Brazilian RJ Court under the Brazilian Bankruptcy Law.  On the same date, the Brazilian RJ Court entered the order accepting the RJ Debtors' petition (the "**Brazilian Acceptance Order**"), admitting the RJ Debtors into judicial reorganization under the Brazilian Bankruptcy Law.  The RJ Debtors are operating their business under the supervision of the Brazilian RJ Court.  As set forth in greater detail in the Verified Petition, the RJ Debtors commenced the Brazilian RJ Proceeding to stabilize their business and encourage further negotiations with their creditors with respect to a value-maximizing restructuring solution.

2.    Upon the commencement of the Brazilian RJ Proceeding, the Chapter 15 Debtors have become vulnerable to potential adverse creditor actions in the United States.  In particular, US$1 billion of New York law governed notes issued or guaranteed by the Chapter 15 Debtors have been accelerated by the commencement of the Brazilian RJ Proceeding, and the holders of these NY Notes (as defined below) may commence costly litigation against the Chapter 15 Debtors or their property located in (or arguably located) in the United States.  If the Chapter 15 Debtors are forced to defend themselves against litigation brought by their creditors in the U.S., they will need to divert funds and efforts that would otherwise be employed in negotiating a successful reorganization in Brazil. Moreover, holders of the NY Notes may attempt to argue that they can

2

attach certain of the Chapter 15 Debtors' property under applicable New York law in an attempt to gain leverage over other creditors in the Brazilian RJ Proceeding. Accordingly, the risk of litigation in the United States could undermine the Americanas Group's reorganization efforts in Brazil, resulting in irreparable harm to the Chapter 15 Debtors. Given these risks to the Chapter 15 Debtors in the United States, the Petitioner commenced these Chapter 15 Cases on January 25, 2023 seeking, among other related relief, recognition of the Brazilian RJ Proceeding as the Chapter 15 Debtors' foreign main proceeding.

3.       In light of this potential for irreparable harm, and to aid the Chapter 15 Debtors' reorganization in Brazil, the Petitioner respectfully requests provisional relief from this Court to apply the stay under section 362 of the Bankruptcy Code to maintain the *status quo ante* pending a ruling by this Court on recognition of the Brazilian RJ Proceeding. Importantly, the relief sought herein seeks only to maintain the *status quo* until the Court can consider, and rule on, the Verified Petition. The Petitioner respectfully submits that such provisional relief is urgently needed to protect the Chapter 15 Debtors and their assets located within the territorial jurisdiction of the United States, will ensure fair treatment of creditors, will not harm the parties impacted by the stay, and is consistent with public policy and the goals of chapter 15. Absent such relief, the restructuring sought in the Brazilian RJ Proceeding could be undermined causing irreparable harm to the Chapter 15 Debtors, the Americanas Group, and their creditors.

## BACKGROUND

### A.       The Americanas Group Operations

4.       The Americanas Group is one of the largest retail chains in Brazil. Americanas' predecessor, Lojas Americanas, S.A. ("**Lojas Americanas**"), was founded in 1929 in Rio de Janeiro, Brazil to explore the retail business model in Brazil for the sale of products in the "five

3

and ten cents" style, which was successful in the United States at the beginning of the twentieth century. With the rapid growth of the business, Lojas Americanas became a joint-stock company listed on the Brazilian stock exchange in the 1940s.

5.      Throughout the 1990s and early 2000s, Lojas Americanas underwent numerous corporate reorganizations aimed at the economic growth of the Americanas Group and explored various online business platforms. In 2021, Lojas Americanas combined its business with B2W Digital, forming Americanas. B2W Digital subsequently became a holding company with no actual business operations. Currently, Americanas' business covers both physical and electronic commerce sectors.

6.      Additional factual background information relating to the Chapter 15 Debtors is set forth in detail in the Verified Petition, including their business operations and their corporate and capital structure.

**B.      General Procedural Background**

7.      On January 19, 2023, the RJ Debtors filed a voluntary petition for relief with the Brazilian RJ Court under the Brazilian Bankruptcy Law. *See* Brazilian Counsel Decl., Ex. C. On the same date, the Brazilian RJ Court entered the Brazilian Acceptance Order, thereby admitting the RJ Debtors into judicial reorganization under the Brazilian Bankruptcy Law. *See id.*, Ex. D. The RJ Debtors are operating their business under the supervision of the Brazilian RJ Court.[5] The Brazilian RJ Proceeding is intended to protect the RJ Debtors so that they may continue to operate their business and negotiate a value-maximizing resolution for all parties. *See* Verified Petition ¶ 55.

---

[5]      *See* Brazilian Counsel Decl. ¶ 22 (noting that "the officers and directors of a debtor remain duly authorized to act on the debtor's behalf in the [j]udicial [r]eorganization, in a manner . . . similar to the authorities of officers, directors, or authorized representatives of a debtor-in-possession under the bankruptcy code in the United States.").

8.      On January 25, 2023 (the "**Chapter 15 Petition Date**"), the Petitioner filed the petitions for the Chapter 15 Debtors commencing these Chapter 15 Cases.

9.      Additional factual background information regarding the events leading to the commencement of these Chapter 15 Cases and the facts and circumstances surrounding the Brazilian RJ Proceeding are set forth in detail in the Verified Petition and the Brazilian Counsel Declaration.

**C.      The Chapter 15 Debtors' Debt Obligations and Assets in the United States**

10.      The Chapter 15 Debtors are liable under the following two unsecured notes issuances denominated in U.S. Dollars with an aggregate principal amount of US$1 billion (plus accrued interest) and governed by New York law indentures (collectively, the "**NY Notes**"):

(1) 4.375% Notes due 2030: The senior notes issued by B2W Digital in the aggregate principal amount of US$500,000,000 (the "**B2W Digital Notes**"), which are governed by that certain Indenture dated as of November 24, 2020 (the "**B2W Indenture**") by and between B2W Digital, as issuer, B2W - Companhia Digital (later acquired by Americanas), as guarantor, and Deutsche Bank Trust Company Americas ("**Deutsche Bank**" or "**Indenture Trustee**") as trustee, registrar, paying agent, and transfer agent. The B2W Digital Notes mature on December 20, 2030 and are guaranteed by Americanas.

(2) 4.750 % Notes due 2030: The senior notes issued by JSM Global in the aggregate principal amount of US$500,000,000 (the "**JSM Global Notes**"), which are governed by that certain Indenture dated October 6, 2020 (the "**JSM Indenture**" and together with the B2W Indenture, the "**Notes Indentures**") by and between JSM Global, Americanas, as guarantor, and Deutsche Bank, as trustee, registrar, paying agent, and transfer agent. The JSM Global Notes mature October 20, 2030 and are guaranteed by Americanas.

11.      Further, section 11.07(a) of each of the New York law-governed Notes Indentures contain forum-selection clauses in which the obligors consent to the jurisdiction of New York State courts and U.S. federal courts sitting in New York. Likewise, Deutsche Bank, serving as trustee, paying agent, registrar and transfer agent under each of the NY Notes, is based in U.S. The

5

Indenture Trustee can seek to pursue any proceeding to enforce performance of any provision in the NY Notes.

### D.    Imminent Risk to the Chapter 15 Debtors' Reorganization

12.    As described above, the NY Notes are governed by New York state law and have been automatically accelerated by the commencement of the Brazilian RJ Proceeding.  Thus, the Chapter 15 Debtors are vulnerable to enforcement actions by the holders of NY Notes in the New York state courts or U.S. federal courts in New York seeking repayment of their NY Notes and attachment of assets.

13.    Indeed, these potential adverse actions could negatively impact the Brazilian RJ Proceeding and undermine the equal treatment of similarly situated creditors required under the Brazilian Bankruptcy Law, by advantaging opportunistic creditors.  Moreover, forcing the Chapter 15 Debtors to defend themselves and their assets in a foreign location would unnecessarily deplete resources available for distribution to all creditors, as well as distract the Americanas Group and its management from the more important task of formulating and soliciting support for a reorganization plan in the Brazilian RJ Proceeding.

14.    Thus, the failure to obtain the Requested Relief may result in irreparable harm to the Chapter 15 Debtors, their various stakeholders, and their reorganization efforts in the Brazilian RJ Proceeding.

### JURISDICTION AND VENUE

15.    This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157, 1334, as well as the Amended Standing Order of Reference dated January 31, 2012, Reference M-431, *In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Feb. 2, 2012)

(Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1409(a) and 1410.

## RELIEF REQUESTED

16.    By this Motion, and pursuant to sections 1519, 1521(a)(7), 105(a), and 362 of the Bankruptcy Code, the Petitioner seeks entry of the Provisional Relief Order (the "**Requested Relief**"), granting the following provisional relief pending recognition of the Brazilian RJ Proceeding:

> (a) providing that section 362 of the Bankruptcy Code applies with respect to each of the Chapter 15 Debtors and its property within the territorial jurisdiction of the United States; and
>
> (b) granting such other and further relief as the Court deems just and proper.

## BASIS FOR RELIEF

### A.    The Requested Relief Is Authorized Under Sections 1519, 1521(a)(7), 105(a), and 362

17.    Unlike plenary proceedings under other chapters of the Bankruptcy Code, the statutory stay under section 362 is not automatically triggered by the commencement of a chapter 15 case.  *See In re Pro-Fit Holdings Ltd.*, 391 B.R. 850, 864 (Bankr. C.D. Cal. 2008).  Instead, section 1519 provides the Court with broad discretion to grant provisional relief during the period between the filing of a chapter 15 petition and the court's ruling on that petition.  *See In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 Bankr. LEXIS 5367, at *27 (Bankr. D. Del. Nov. 16, 2012) ("Sections 1507, 1519, 1521, and 1522 provide the Court with broad discretion to grant any appropriate relief."); *see also In re Mina Tucano Ltda.*, No. 22-11198 (LGB) (Bankr. S.D.N.Y. Sept. 14, 2022), ECF No. 19; *In re Peraso Technologies Inc.*, No. 20-11354 (SHL) (Bankr. S.D.N.Y. June 10, 2020), ECF No. 22; *In re Arcadia Group (USA) Limited*, No. 19-11650 (JLG) (Bank. S.D.N.Y. May 22, 2019), ECF No. 16; *In re The John Forsyth Shirt Co.,* No. 13-10526

7

(SCC) (Bankr. S.D.N.Y. Feb. 27, 2013), ECF No. 16; *In re Compañía Mexicana de Aviación, S.A. de C.V.*, No. 10-14182 (MG) (Bankr. S.D.N.Y. Aug. 18, 2010), ECF No. 140; *In re Hanjin Shipping Co.*, No. 16-27041 (JKS), 2016 Bankr. LEXIS 3986 at *18 (Bankr. D.N.J. Sept. 20, 2016); *In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 Bankr. LEXIS 5367 at *27 (Bankr. D. Del. Nov. 16, 2012). Specifically, section 1519(a) of the Bankruptcy Code permits the Court "from the time of filing a petition for recognition until [it] rules on the petition" to grant provisional relief where it is "urgently needed to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1519(a).

18.    Here, the request for a provisional application of section 362 of the Bankruptcy Code to the Chapter 15 Debtors and their property located within the United States falls squarely within the ambit of the relief available under section 1519(a) of the Bankruptcy Code. *First*, section 1519(a)(1) specifically empowers the Court to issue a provisional order "staying execution against the debtor's assets[.]" 11 U.S.C. § 1519(a)(1). *Second*, section 1521(a)(7) of the Bankruptcy Code, as incorporated by section 1519(a)(3),[6] permits the Court to grant (with exceptions not relevant here) "any additional relief that may be available to a trustee," provided that the Court determines that such relief is necessary to effectuate the purpose of chapter 15 and to protect the assets of the Chapter 15 Debtors or the interests of their creditors. 11 U.S.C. §§ 1519(a)(3), 1521(a)(7). Thus, provisional relief under section 362 is also available to a foreign representative under section 1521(a)(7), as made applicable here under section 1519(a)(3).

19.    Moreover, the Court's authority to issue provisional relief under section 1519(a) is not limited to the remedies specified in subsections (a)(1) through (a)(3),[7] and the Court may also

---

[6]    Section 1519(a)(3) provides that the Court may grant, on a provisional basis, "any relief referred to in paragraph (3), (4), or (7) of section 1521(a)." 11 U.S.C. § 1519(a)(3).

[7]    *See, e.g., In re Ran*, 607 F.3d 1017, 1021 (5th Cir. 2010) (Sections 1519(a)(1)-(3) represent a "non-exhaustive list of relief available to a foreign proceeding's representative in a Chapter 15 case"); *In re Vitro*, 455 B.R. 571, 579 (Bankr.

8

look to section 105(a) of the Bankruptcy Code as a separate basis for fashioning relief as is necessary to protect chapter 15 debtors and their creditors.[8] *See In re Pro-Fit Holdings Ltd.*, 391 B.R. 850, 867 (Bankr. C.D. Cal. 2008) (holding that section 362 could immediately apply to chapter 15 under sections 1519(a), 105(a), and 105(d) of the Bankruptcy Code). Thus, the Court has discretion under both sections 1519(a) and 105(a) to order the Requested Relief in these Chapter 15 Cases.

20.    In addition, as required by section 1519(a) of the Bankruptcy Code, the Requested Relief is urgently needed to protect the Chapter 15 Debtors' assets and the interests of creditors as a whole. Absent the stay, the Chapter 15 Debtors and their assets would be at risk of adverse creditor actions in the United States that could undermine the plenary, judicially-supervised reorganization proceeding underway in Brazil and irreparably harm the interests of the Chapter 15 Debtors' creditors. The chapter 15 cases of *Oi* and *OAS* before this Court are illustrative. In the *Oi* case, prior to the commencement of its restructuring, the Oi Group had already engaged with its key creditors to negotiate a consensual solution for all stakeholders. Certain creditors, however, demanded concessions and other terms that were not feasible or acceptable to the Oi Group. In response, such creditors sent letters to the Oi Group threatening to bring costly and disruptive litigation. When the Oi Group did not submit to the threats and demands of such creditors, they commenced legal action against the Oi Group and its directors in the Netherlands, causing great costs and expenses to the Oi Group and significant disruptions to its restructuring negotiations.

---

N.D. Tex. 2011) ("[T]he relief enumerated in section 1519 is not all-inclusive" and "[t]he plain language of section 1519 of the Bankruptcy Code does not contain a limitation on the Court's authority to issue a stay or injunction, and that is where the Court's analysis must end."); Hr'g Tr., *In re Daewoo Corp.*, No. 06-12242 (REG) (Bankr. S.D.N.Y. Oct. 11, 2006), ECF No. 24 (interpreting section 1519(a)'s use of "including" to mean the list that follows is not exhaustive).

[8]    Section 105(a) of the Bankruptcy Code, which allows this Court to, among other things, "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]", is made applicable in chapter 15 cases by section 103(a) of the Bankruptcy Code. *See* 11 U.S.C. § 103(a) (applying chapter 1 to proceedings under chapter 15).

9

*See* Motion for Provisional Relief, *In re Oi S.A.*, No. 16- 11791 (SHL) (Bankr. S.D.N.Y. 2016),

ECF No. 7; Order Granting Provisional Relief, *In re Oi S.A.*, No. 16-11791 (SHL) (Bankr.

S.D.N.Y. 2016), ECF No. 22. Similarly, in the *OAS* case, certain bondholders petitioned for and

obtained attachment orders on cash and intangible assets against the OAS Group, both before and

during its chapter 15 case. *See In re OAS S.A.*, 533 B.R. 83, 89 (noting that certain holders of New

York law-governed bonds issued by the foreign debtor company had "sought and obtained an ex

parte order of attachment" in state court).

     21.    Adverse creditor action in the United States would also harm the Chapter 15

Debtors by unduly consuming time, money, attention, and other resources. The litigation that

would likely ensue (both in the United States and Brazil) would be costly and "[divert] funds

needed for the purpose of maximizing value" for the equitable benefit of the Chapter 15 Debtors'

creditors. *In re Gercke*, 122 B.R. 621, 626 (Bankr. D.D.C. 1991); *cf. In re MMG LLC*, 256 B.R.

544, 555 (Bankr. S.D.N.Y. 2000) (noting that "forc[ing a foreign representative] to participate in

expensive litigation that threatens to drain the assets of the estate" may result in irreparable harm).[9]

     22.    U.S. bankruptcy courts routinely impose the section 362 stay on a provisional basis

or order similar provisional relief in chapter 15 cases to maintain the *status quo* pending the court's

decision on the recognition petition. *See, e.g.*, *In re Mina Tucano Ltda.*, No. 22-11198 (LGB)

(Bankr. S.D.N.Y. Oct. 12, 2022), ECF No. 19 (entering an order provisionally imposing a section

362 stay to protect the debtors' U.S.-located assets); *In re Ocean Rig UDW INC.*, No. 17-10736

(MG) (Bankr. S.D.N.Y. Apr. 7, 2017), ECF Nos. 12 & 41 (entering an *ex parte* temporary

---

[9]    Moreover, the Requested Relief is also appropriate because, among other things, it will promote (a) the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the [D]ebtor[s]," (b) the "protection and maximization of the value of the [D]ebtor[s'] assets," and (c) the "facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment," as intended by section 1501 of the Bankruptcy Code. *See* 11 U.S.C. § 1501(a).

restraining order imposing section 362 stay and provisionally granting stay with respect to the

debtors and their U.S.-located assets pursuant to section 362); *In re Oi S.A.*, No. 16-11791 (SHL)

(Bankr. S.D.N.Y. June 22, 2016), ECF No. 22 (provisionally imposing section 362 stay); *In re*

*Cogent Fibre Inc.*, No. 15-11877 (SMB) (Bankr. S.D.N.Y. July 17, 2015), ECF Nos. 11 & 13

(entering an *ex parte* temporary restraining order imposing section 362 stay and provisionally

imposing section 362 stay); *In re NewSat Ltd.*, No. 15-10810 (LSS) (Bankr. D. Del. May 1, 2015),

ECF No. 80 (provisionally applying section 362 "in its entirety"); *In re OAS S.A.*, No. 15-10937

(SMB) (Bankr. S.D.N.Y. Apr. 30, 2015), ECF No. 33 (same); *In re Japan Airlines Corp.*, 425 B.R.

732 (Bankr. S.D.N.Y. 2010) (same); *In re Pro-Fit Int'l Ltd.*, 391 B.R. at 864-65 (same).  Petitioner

respectfully submits that the Relief Requested is both necessary and appropriate in these Chapter

15 Cases to preserve the *status quo* while the Verified Petition is pending.

### B.    The Requested Relief Also Meets the Preliminary Injunction Standards

23.    Section 1519(e) of the Bankruptcy Code generally requires a foreign representative

to satisfy the general standards for injunctive relief.  *See* 11 U.S.C. § 1519(e) ("The standards,

procedures, and limitations applicable to an injunction shall apply to relief under [1519]"); *In re*

*Worldwide Educ. Servs., Inc.*, 494 B.R. 494, 498 (Bankr. C.D. Cal. 2013) (holding that 1519(e)

"generally applies to all relief sought pursuant to Section 1519, including imposition of the

automatic stay"); *see also Vitro*, 455 B.R. at 580 ("Injunctions issued under 11 U.S.C.S. § 105

outside of a plan of reorganization may be granted only under the usual rules for the issuance of

an injunction.") (citing *In re Commonwealth Oil Ref. Co.*, 805 F.2d 1175, 1190 (5th Cir. 1986)).[10]

---

[10]    *But see Pro-Fit Int'l*, 391 B.R. at 855 (holding that the standards, procedures, and limitations for issuing an injunction should not apply to relief under section 1519 when the relief sought is the imposition of the automatic stay on an interim basis).

24.    An injunction should be issued if the following elements are satisfied:  (1) there is

a likelihood of successful reorganization; (2) there is an imminent irreparable harm to the debtor

in the absence of an injunction; (3) the balance of harms tips in favor of the moving party; and

(4) the public interest weighs in favor of an injunction.  *See Lyondell Chem. Co. v. Centerpoint*

*Energy Gas Servs. (In re Lyondell Chem. Co.)*, 402 B.R. 571, 588-589 (Bankr. S.D.N.Y. 2009);

*see also Calpine Corp. v. Nev. Power Co. (In re Calpine Corp.)*, 354 B.R. 45, 48-50 (Bankr.

S.D.N.Y. 2006), *aff'd* 365 B.R. 401 (S.D.N.Y. 2007).  Courts in the Second Circuit require

movants to show all four of these factors or, in the alternative, to "show irreparable harm and either

a likelihood of success on the merits or sufficiently serious questions going to the merits to make

them a fair ground for litigation and a balance of hardships tipping decidedly toward the party

requesting the preliminary relief."  *MF Global Holdings Ltd. v. Allied World Assur. Co. (In re MF*

*Glob. Holdings Ltd.)*, 562 B.R. 55, 64 (Bankr. S.D.N.Y. 2017) (citing *ACLU v. Clapper*, 785 F.3d

787, 825 (2d Cir. 2015)).  In evaluating these factors, courts take a "flexible approach and no one

factor is determinative."  *In re Calpine Corp.*, 365 B.R. at 409 (certain internal citations omitted).

Here, the Petitioner's request for a provisional *status quo* stay in these Chapter 15 Cases easily

satisfies this standard.

        *i.    Petitioner is likely to succeed on the merits*

25.    In the context of a chapter 15 case, demonstrating a likelihood of success on the

merits requires the petitioner to show that he or she is likely to obtain recognition of the foreign

proceeding.  *See Oi S.A.*, No. 16-11791 (SHL) (Bankr. S.D.N.Y. June 22, 2016), ECF No. 22 at 3

("Based on the pleadings filed to date, the [c]ourt concludes that the [p]etitioner has demonstrated

a likelihood that [p]etitioner will be able to . . . obtain recognition of the [foreign proceeding.]");

*see also In re Lupatech*, No. 14-11559 (SMB) (Bankr. S.D.N.Y. May 28, 2014), ECF No. 15 at 3

("The [f]oreign [r]epresentative has demonstrated a substantial likelihood of success on the merits

that . . . all statutory elements for recognition of the Foreign Proceeding are satisfied[.]").  Notably,

the "success on the merits" standard has been interpreted by courts to apply to recognition *whether*

*main or nonmain.  See, e.g., Oi S.A.*, No. 16-11791 (SHL) (Bankr. S.D.N.Y. June 22, 2016), ECF

No. 22 at ¶ G (describing the "success on the merits" standard as having been met where the

petitioner had demonstrated a likelihood that that the foreign proceeding would be recognized as

"either a foreign main proceeding or foreign nonmain proceeding").

26.     For the reasons set forth in the Verified Petition, the Petitioner has demonstrated

that all of the statutory elements under section 1517(a) of the Bankruptcy Code for recognition of

the Brazilian RJ Proceeding with respect to each of the Chapter 15 Debtors – whether as the foreign

main proceeding or a foreign nonmain proceeding – have been satisfied.   Specifically, the

Petitioner has demonstrated that: (a) the Brazilian RJ Proceeding satisfies the elements of a

"foreign proceeding" (as defined under section 101(23) of the Bankruptcy Code) with respect to

each of the Chapter 15 Debtors[11] (*see* Verified Petition ¶¶ 50-56); (b) the Petitioner is the duly-

authorized foreign representative (within the meaning of section 101(24) of the Bankruptcy Code)

of the Brazilian RJ Proceeding for purposes of these Chapter 15 Cases (*see id.* ¶¶ 57-59); and (c)

the Verified Petition and accompanying documents meet the procedural requirements of section

1515 of the Bankruptcy Code (*see id.* ¶¶ 60-64).

27.     The Petitioner has also sufficiently demonstrated that the Brazilian RJ Proceeding

is the "foreign main proceeding" (as that term is defined in section 1502(4) of the Bankruptcy

Code) of each of the Chapter 15 Debtors.  *See id.* ¶¶ 65-77.  As described in detail in the Verified

---

[11]     Notably, every U.S. court to consider the question has found that the Brazilian *recuperação judicial* process constitutes
a foreign proceeding for purposes of the Bankruptcy Code.  *See* Verified Petition ¶ 56.

Petition, the Americanas Group is an economically and operationally integrated group, whose operational activities are focused on Brazil. The Chapter 15 Debtors are jointly managed out of the Americanas Headquarters in the State of Rio de Janeiro in Brazil and are subject to combined cash management and accounting functions there. Brazil is therefore the Chapter 15 Debtors' center of main interests. *See* Verified Petition ¶¶ 71-77.[12] Should this Court find that the center of main interests of any of the Chapter 15 Debtors lies outside of Brazil, however, the Petitioner has demonstrated in the alternative that the Brazilian RJ Proceeding qualifies as a "foreign nonmain proceeding" (as that term is defined in section 1502(5) of the Bankruptcy Code) with respect to such Chapter 15 Debtors. Each of the Chapter 15 Debtors partakes in nontransitory economic activity located in Brazil, the primary location of the Company's employees and operations and the ultimate source of revenue for each Chapter 15 Debtor. Each of the Chapter 15 Debtors therefore at a minimum has an "establishment" located in Brazil for purposes of chapter 15 recognition, *see* 11 U.S.C. § 1502(2)(2),[13] and, as a result, the Brazilian RJ Proceeding would also qualify as a foreign nonmain proceeding. *See* Verified Petition ¶¶ 78-87.

28.    Accordingly, as there is a strong likelihood that the Court will recognize the Brazilian RJ Proceeding as the foreign main proceeding (or, at the least as a foreign nonmain proceeding) with respect to each of the Chapter 15 Debtors, the Petitioner has demonstrated a substantial likelihood of success on the merits.

---

[12]    If the Court declines to recognize the Brazilian RJ Proceeding as a foreign main proceeding with respect to B2W Digital and JSM Global, it would still meet the required standard for recognition as a foreign non-main proceeding.

[13]    Section 1502(2) of the Bankruptcy Code defines "establishment" as "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. § 1502(2).

        ii.     *The Chapter 15 Debtors are at risk of irreparable harm if an injunction is not issued*

29.     In the bankruptcy context, irreparable harm exists where the conduct to be enjoined would, if not stayed, interfere with the reorganization process. *In re Calpine Corp.*, 365 B.R. at 409 (internal citations omitted) (a court may issue a "preliminary injunction in the bankruptcy context where the action to be enjoined is one that threatens the reorganization process"); *see also Lyondell Chem. Co.*, 402 B.R. at 590.

30.     In the chapter 15 context, irreparable harm exists when the failure to enjoin local actions could disrupt the orderly restructuring of a foreign debtor and undermine the fair distribution of assets, or where creditor actions would pose the threat of dissipating such assets. *See, e.g., In re Garcia Avila*, 296 B.R. 95, 114 (Bankr. S.D.N.Y. 2003) (recognizing irreparable harm if creditors were permitted to pursue their individual remedies and thereby "diminish the recovery available to other creditors and possibly wreck the [foreign debtor's] reorganization efforts"); *In re Berau Capital Resources PTE Ltd.*, No. 15-11804 (MG) (Bankr. S.D.N.Y. Aug. 6, 2015), ECF No. 20 at 3 (granting provisional relief where failure to enjoin could cause harm to foreign debtor from, *inter alia*, interference with efforts to restructure its operations pursuant to a foreign proceeding and "undermin[e] the [f]oreign [r]epresentative's efforts to achieve an equitable result for the benefit of all of the [f]oreign [d]ebtor's creditors and interest holders"); *In re Netia Holdings S.A.*, 278 B.R. 344, 352 (Bankr. S.D.N.Y. 2002) (finding irreparable injury in the "dissipation of the finite resources of an insolvent estate"). That is precisely the risk here. If individual creditors were permitted to commence individual enforcement actions in New York, the Chapter 15 Debtors' ability to maximize and maintain value for distribution through the Brazilian RJ Proceeding would be severely undermined and the value available for such distribution could be diminished.

15

31.     Indeed, the NY Notes are governed by New York law and the parties selected New York state court or federal courts located in New York as the forum to adjudicate disputes.  If the Requested Relief is not granted and the Chapter 15 Debtors continue to face the risk of adverse creditor action, the Americanas Group could have to spend extraordinary amounts of resources defending actions in two separate jurisdictions, and may create unfair results to the creditors in Brazil that are subject to the Brazilian RJ Proceeding.  Given the Chapter 15 Debtors are facing severe liquidity constraints and early repayment risks, their assets located in the United States should be protected from adverse creditor actions and be available for use in the ordinary course.

32.     As such, the Petitioner respectfully submits that it is imperative that the Court grant the Requested Relief to maintain the *status quo* while the Verified Petition is pending.  Absent this relief, the Chapter 15 Debtors may suffer irreparable harm to its reorganization efforts in the Brazilian RJ Proceeding for the equitable benefit of all creditors and may have to spend the limited liquidity that may be critical to the success of such restructuring into separate adverse creditor actions.  *See, e.g.*, Order Granting Provisional Relief, *In re Mina Tucano Ltda.*, No. 22-11198 (LGB) (Bankr. S.D.N.Y. Oct. 12, 2022), ECF No. 19; Order Granting Provisional Relief, *Oi S.A.*, No. 16-11791 (SHL) (Bankr. S.D.N.Y. June 22, 2016), ECF No. 22; Order Granting Provisional Relief, *OAS S.A.*, No. 15-10937 (SMB) (Bankr. S.D.N.Y. Apr. 30, 2015), ECF No. 33.

33.     Further, courts have held that having to fend off litigation while attempting to reorganize through a judicial proceeding constitutes irreparable harm.  *See In re Alert Holdings, Inc.*, 148 B.R. 194, 200 (Bankr. S.D.N.Y. 1992) ("Where . . . the action sought to be enjoined would embarrass, burden, delay or otherwise impede the reorganization proceedings . . . the [U.S. b]ankruptcy [c]ourt may issue injunctive relief.").

iii.    *The balance of harms weighs heavily in favor of granting the Requested Relief*

34.    The balance of harms also weighs in favor of granting the Requested Relief and imposing the section 362 stay. The stay will merely preserve the *status quo* on a temporary basis pending a determination by this Court of whether the Brazilian RJ Proceeding should be recognized. The stay will not bar or otherwise disenfranchise parties from participating in the Brazilian RJ Proceeding, where each creditor's right to be heard will remain unaffected. Nor will the requested stay preclude a creditor that feels unduly burdened by the Court's granting of the Requested Relief to seek to lift the stay for "cause." *See* 11 U.S.C. § 362(d). Instead, the Petitioner merely seeks to prevent creditors from attempting to end-run around the Brazilian RJ Proceeding by commencing and continuing enforcement actions against the Chapter 15 Debtors and their assets in the United States. On the other hand, as shown above, the harm to the Chapter 15 Debtors in the absence of the Requested Relief could be severe.

iv.    *The public interest favors granting the requested injunctive relief*

35.    Granting the Requested Relief is also consistent with the public policies of chapter 15 by avoiding piecemeal litigation and depletion of a debtor's estate and the attendant inequitable distribution of property among claimholders. *See Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 459 (2d Cir. 1985) (noting in a case under former section 304 of the Bankruptcy Code the strong "public interest in the fair and efficient distribution of assets in a bankruptcy"). Moreover, the Requested Relief promotes the purposes of chapter 15, including: (i) providing greater legal certainty for trade and investment; (ii) fostering fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested parties, including the Chapter 15 Debtors; (iii) protecting and maximizing the value of the Chapter 15 Debtors' assets; (iv) facilitating the rescue of financially troubled businesses, thereby protecting

17

investments and preserving employment; and (v) promoting cooperation between the courts in the United States with those in foreign jurisdictions involved in cross-border insolvency cases. *See* 11 U.S.C. §§ 1501(a), 1525.

### C.    All Parties Are Sufficiently Protected

36.    As required under section 1522(a) of the Bankruptcy Code, all parties are "sufficiently protected" for this Court to grant the Requested Relief.  11 U.S.C. §1522(a); *see SPhinX, Ltd.*, 351 B.R. at 112-13 (holding that section 1522 provides that the Court may grant or modify interim relief under section 1519 only if the interests of all parties are "sufficiently protected").  Relief under section 1519 of the Bankruptcy Code should be denied for a lack of sufficient protection only "if it is shown that the foreign proceeding is seriously and unjustifiably injuring United States creditors." H. Rep. No. 109-31, Pt. 1, 109th Cong., 1st Sess. 116 (2005). A determination of sufficient protection requires a balancing of the respective parties' interests. *CT Inv. Mgmt. Co. v. Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96, 108 (Bankr. S.D.N.Y. 2012); *See In re Toft*, 453 B.R. 186, 196 n.11 (Bankr. S.D.N.Y. 2011) ("[A] court should tailor relief balancing the interest of the foreign representative and those affected by the relief.").[14]

37.    Here, all parties are sufficiently protected.  As shown above, the narrowly tailored, *status quo* relief requested herein will impose no hardship on any party that is not significantly outweighed by the benefits to the Chapter 15 Debtors and all parties in interest. *See supra* ¶ 34. To the contrary, the Requested Relief will merely preserve the *status quo* for all parties pending the recognition hearing.  In addition, the Brazilian assets are already subject to the limitations pursuant to Brazilian Bankruptcy Law, and the section 362 stay in the United States is

---

[14]    The standard for determining whether the parties are sufficiently protected under section 1522(a) of the Bankruptcy Code thus mirrors the balance of hardships inquiry under the general standards for injunctive relief discussed above.

accompanied by its own protections and framework for modification. Creditors or contract counterparties can always seek relief from the protective stay. Such parties therefore benefit from protections provided by courts in Brazil and the United States.

**D.      No Security is Required**

38.     No security is required for the Requested Relief in accordance with Rule 7065 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). *See* Bankr. R. 7065; *see also Richardson v. Runge Fin. Co. (In re Richardson)*, No. 99-20522, 2003 Bankr. LEXIS 2461, *17 n.14 (Bankr. D. Idaho Oct. 21, 2003) (noting that Bankruptcy Rule 7065 waives the requirements under Rule 65(c) of the Federal Rules of Civil Procedure "if the order is sought by a debtor, trustee or debtor in possession"). At any rate, requiring security would be unwarranted in the present circumstances, as the Chapter 15 Debtors' primary assets are under the jurisdiction of the Brazilian RJ Court and the Requested Relief would last only until this Court's ruling on the Verified Petition. *See* 11 U.S.C. § 1520(a)(1).[15]

**NO PRIOR REQUEST**

39.     No previous request for the relief requested herein has been made to this or any other court.

**CONCLUSION**

40.     Based on the foregoing, the Petitioner respectfully requests that the Court grant the Motion, including entry of (i) the Provisional Relief Order, substantially in the form attached hereto as Exhibit A; and (ii) such other and further relief as the Court deems just and proper.

---

[15]     Indeed, many courts, including this Court, have generally waived the security provisions of Rule 65(c) of the Federal Rules of Civil Procedure in chapter 15 cases. *See, e.g.*, Order Granting Preliminary Injunction, *In re Inverness Distribution Ltd.*, No. 11-12106 (SCC) (Bankr. S.D.N.Y. May 18, 2011), ECF No. 21 at 5 ("Pursuant to Bankruptcy Rule 7065, the security provisions of Rule 65(c) of the Federal Rules of Civil Procedure are waived.").

Dated: January 25, 2023

New York, New York

Respectfully submitted,

WHITE & CASE LLP

By: */s/ John K. Cunningham*
John K. Cunningham

WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020-1095
(212) 819-8200
John K. Cunningham
Philip M. Abelson
Gregory M. Starner
Ricardo M. Pasianotto (pro hac vice pending)
Lilian M. Marques
Livy Mezei (pro hac vice pending)
jcunningham@whitecase.com
philip.abelson@whitecase.com
gstarner@whitecase.com
ricardo.pasianotto@whitecase.com
lilian.marques@whitecase.com
livy.mezei@whitecase.com

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Richard S. Kebrdle (*pro hac vice* pending)
rkebrdle@whitecase.com

*Attorneys for Antonio Reinaldo Rabelo Filho,*
*as Petitioner and Foreign Representative*