**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| *In Re:* | Case No. 23-10092 (MEW) |
| *Americanas S.A., et al.,*[1] | |
|  | Chapter 15 |
|  | (Jointly Administered) |
| **Debtors in a Foreign Proceeding** | |

**MOTION OF SABLON PARTNERS LTD. FOR ENTRY OF AN ORDER
PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING THE EXAMINATION
OF DEBTORS AMERICANAS AND B2W DIGITAL AND THIRD PARTIES**

TO:    THE HONORABLE MICHAEL E. WILES
      UNITED STATES BANKRUPTCY JUDGE

---

[1] According to the Foreign Representative for the debtors in these chapter 15 cases, those debtors, along with the last four digits of each debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Americanas S.A. (06-60-Brazil); JSM Global S.a.r.l (5670 – Grand Duchy of Luxemberg); and B2W Digital Lux S.a.r.l. (8659-Grand Duchy of Luxemberg)

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ........................................................................................5

II.  JURISDICTION AND VENUE ......................................................................................9

III. RELEVANT FACTS ......................................................................................................9

    A.  The Americanas Brazilian RJ Proceeding and U.S. Chapter 15 Cases ........................9

    B.  Sablon's Claim Against Americanas ..........................................................................11

    C.  Key Facts About the Fraud ........................................................................................11

    D.  The Board Committee's Investigation ......................................................................13

    E.  Creditors' Efforts to Investigate the Fraud ..............................................................15

    F.  The Rule 2004 Discovery Sablon Now Seeks ...........................................................16

    G.  Potential Actions Available to Creditors in Brazil ....................................................18

    H.  Brazilian Courts' Discovery Limitations ..................................................................19

    I.  Brazil Courts' Receptivity to Evidence Obtained Abroad..........................................20

IV.  RELIEF REQUESTED...................................................................................................21

V.   BASES FOR RELIEF REQUESTED .............................................................................22

    A.  Rule 2004 Generally .................................................................................................22

    B.  Breadth and Purpose of Rule 2004 Discovery ...........................................................22

    C.  A Creditor May Obtain Rule 2004 Discovery in a Chapter 15 Case...........................24

    D.  Good Cause Exists For Rule 2004 Discovery Here.....................................................24

    E.  Section 105 Provides an Additional Basis for Rule 2004 Discovery Here.................26

VI.  NO PRIOR REQUEST..................................................................................................27

VII. RESERVATION OF RIGHTS .......................................................................................27

VIII.  NOTICE.....................................................................................................................27

# TABLE OF AUTHORITIES

**Cases**

*In re AOG Enm't, Inc.*,
   558 B.R. 98 (Bankr. S.D.N.Y. 2016) ........................................................................ 29

*In re Atvos Agroindustrial Investimentos S.A.*,
   481 F. Supp. 3d 166 (S.D.N.Y. 2020) ...................................................................... 25

*In re Bennett Funding Grp., Inc.*,
   203 B.R. 24 (Bankr. N.D. N.Y. 1996) ...................................................................... 28

*In re Buick*,
   174 B.R. 299, 306-07 (Bankr. D. Colo. 1994) ........................................................ 29

*In re Comair Ltd.*,
   No. 21-10298 (JLG), 2021 WL 5312988 (Bankr. S.D.N.Y Nov. 14, 2021) ............. 28

*In re Countrywide Home Loans, Inc.*,
   384 B.R. 373 (Bankr. W.D. Pa. 2008) ..................................................................... 27

*In re Degens*,
   No. 20-MC-237 (JGK) (RWL), 2020 WL 4252725 (S.D.N.Y. July 24, 2020) ......... 25

*In re Dinubilo*,
   177 B.R. 932 (Bankr. E.D. Cal. 1993) ..................................................................... 28

*In re Drexel Burnham Lambert Group, Inc.*,
   123 B.R. 702 (Bankr. S.D.N.Y. 1991) ................................................................ 27, 28

*In re Enron Corp.*,
   281 B.R. 836 (Bankr. S.D.N.Y. 2002) ........................................................... 10, 27, 29

*In re Golden Sphinx Ltd.*,
   No. 2:22-BK-14320-NB, 2023 WL 2823391 (Bankr. C.D. Cal. Mar. 31, 2023) ...... 28

*In re Hilsen*,
   No. 87-11261 (JMP), 2008 WL 2945996 (Bankr. S.D.N.Y. July 25, 2008) ............. 28

*In re Ionosphere Clubs, Inc.*,

156 B.R. 414, 432 (Bankr. S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994)........................28

*In re Metiom, Inc.*,
318 B.R. 263 (Bankr. S.D.N.Y. 2004) ....................................................................................27

*In re Serignese*,
No. 19-10724 (JLG), 2019 WL 2366424 (Bankr. S.D.N.Y. June 3, 2019) ............................27

*In re Symington*,
209 B.R. 678 (Bankr. D. Md. 1997) .......................................................................................27

*In re Wilson*,
No. 07-11862, 2009 WL 304672 (Bankr. E.D. La. Feb. 6, 2009) ..........................................27

*Mgmt. Tech. Corp. v. Pardo*,
56 B.R. 377 (Bankr. D. N.J. 1985) .........................................................................................30

**Statutes**

11 U.S.C. § 105(a) ......................................................................................................................29
11 U.S.C. § 1103(c)(2) ................................................................................................................29
28 U.S.C. § 157(b)(2) ..................................................................................................................10
28 U.S.C. § 1408 .........................................................................................................................10
28 U.S.C. § 157 ...........................................................................................................................10

Sablon Partners Ltd. ("**Sablon**"), by and through its undersigned attorneys, hereby moves pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), section 105 of Title 11 of the United States Code (the "**Bankruptcy Code**"), and the Chambers Rules of the Honorable Michael E. Wiles, United States Bankruptcy Judge for the Southern District of New York, for entry of an order, substantially in the form attached hereto as Exhibit A authorizing the issuance of examination and document production subpoenas for the Debtors Americanas, S.A. ("**Americanas**") and B2W Digital Lux S.a.r.l. ("**B2W Digital**," and together with Americanas, the "**Debtors**"), as well as third-party members of the "LTS" group of companies, including LTS Investment Holdings, LLC, LTS Investments, Inc., LTS Trading Company LLC, and Cedar Trade LLC. In support of this motion Sablon respectfully states:

## I.   PRELIMINARY STATEMENT

1.      By this motion, Sablon seeks authority to take Bankruptcy Rule 2004 discovery so that Sablon and potentially other creditors can: (a) evaluate the Debtors' internal board investigation and any related determinations regarding potential causes of action; and (b) make determinations on what, if any, legal actions permitted under Brazilian law (or U.S. law to the extent applicable) should be pursued by Americanas S.A's ("**Americanas**") creditors. As set forth herein, Bankruptcy Rule 2004 discovery is the most effective and most appropriate method of discovery for creditors in these circumstances. Sablon is an appropriate person to conduct such discovery, and no other adequate investigation is currently pending in any jurisdiction.

2.      The Americanas bankruptcy cases in Brazil and these related chapter 15 cases result from a multi-billion-dollar accounting fraud and other serious misconduct (collectively, the "**Fraud**") by the Debtors and its management. The proceeds of the Fraud have likely flowed to Americanas's officers and directors in the form of substantially inflated compensation and large dividends not supported by actual earnings.

3.      In reorganization and liquidation proceedings in the United States bankruptcy context, the investigation of such a fraud and, if appropriate, pursuit of related claims, is normally the province of official committees, trustees, examiners, impacted creditors or their representatives. Such an investigation would be particularly appropriate here, where Americanas's current officers and directors (or the shareholders to whom such directors are beholden) may have received improper compensation and dividends even if they had no role in orchestrating the Fraud.

4.      To this end, while Americanas's creditors have not formed a creditors' committee, they are independently pursuing discovery in Brazil in order to investigate and potentially pursue fraudulent transfer and other actions based on or related to the Debtors' pre-bankruptcy wrongful conduct. Unlike the proceedings under the Bankruptcy Code, such actions in Brazil are not centralized in the bankruptcy court and, thus, may be sought in other courts notwithstanding the pendency of the Debtors' Brazilian bankruptcy cases.

5.      Creditors are independently pursuing such discovery actions in Brazil and now in this Court because no adequate investigation is otherwise is ongoing in Brazil. Indeed, other than government inquiries not focused on issues relevant to creditors, the only ongoing relevant investigation of the Americanas Fraud is by a Board subcommittee appointed by Americanas's Board of Directors (the "**Board Committee**") with a mandate limited to investigating the circumstances that caused Americanas's "Accounting Inconsistencies." Leaving aside other inadequacies, the investigation is far from independent. The Board Committee was appointed by the Board of Directors, the members of which may have benefitted from the Fraud through inflated compensation and/or improper dividends. Equally problematic, the Board of Directors and Americanas's in-house lawyers determine what, if any, information regarding the Fraud is released by the Board Committee to creditors. As a practical matter, this means that Americanas's creditors

do not have access to the Board Committee's investigation, and as a result they lack the ability to pursue recoupment and other claims.

6.      For these reasons, Sablon seeks authority to take Bankruptcy Rule 2004 discovery so that it and potentially other creditors can: (a) evaluate the Board Committee's investigation and any related determinations regarding potential causes of action; and (b) assess what, if any, legal actions permitted under Brazilian law (or U.S. law to the extent applicable) should be pursued by Americanas's creditors. To do so, Sablon seeks access to evidence located in the U.S. to complement other creditors' discovery actions in Brazil.

7.      The evidence Sablon seeks includes:

   a.   <u>Evidence from Debtor B2W Digital</u>. As detailed below, Sablon has reasons to believe that the Americanas Fraud started in B2W Digital's financial statements, and that Debtor B2W Digital issued notes in New York based on fraudulent financial statements and balance sheets. Sablon seeks evidence from Debtor B2W Digital and the individuals involved in the issuance of those notes.

   b.   <u>Evidence from Debtor Americanas</u>. As detailed below, Sablon has reason to believe that Americanas paid dividends based on fraudulent financial statements and balance sheets to companies located in the United States. Sablon seeks evidence concerning Americanas's current shareholders, as well as historical information regarding the payment of dividends from both Americanas and B2W Digital to companies located in the U.S.

   c.   <u>Evidence from Third Parties from the LTS Group</u>. As detailed below, Sablon has reason to believe that Americanas's Reference Shareholders actively participated in the financial management of Americanas and B2W Digital via

orders given by officers of the Reference Shareholders' holdings companies, which all start with the acronym LTS (for "Lehmann, Telles, Sicupira"), *e.g.*, LTS Investment Holdings, LLC, LTS Investments, Inc., and LTS Trading Company LLC. The LTS group of companies are Delaware-incorporated companies not subject to the Brazilian courts' jurisdiction, and therefore Sablon seeks evidence they possess in the United States.

    d.  <u>Evidence from Third Party Cedar Trade LLC</u>. Some of Americanas's Reference Shareholders hold their shares indirectly via other companies, including Cedar Trade LLC, which is organized in Delaware. Sablon seeks discovery from Cedar Trade LLC regarding (i) the dividends it received and (ii) the Reference Shareholders' participation in the financial management of Americanas and B2W Digital.

8.    This application fits squarely within the intended use of Rule 2004 of "discovering assets, examining transactions, and determining whether wrongdoing has occurred." *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (citation omitted).

9.    Rule 2004 discovery would be in aid of and facilitate the Americanas's judicial restructuring in Brazil by providing Americanas's creditors with information critical to negotiating a recovery plan in Brazil and to potentially identifying and pursuing sources of recovery on their substantial claims that otherwise are likely to remain unsatisfied.

10.    The Debtors chose to avail themselves of the benefits of chapter 15, which includes the protections of the automatic stay and other substantial relief. In so doing, the Bankruptcy Code permits creditors, such as Sablon, to use the provisions of the Code and the applicable Bankruptcy

Rules to investigate the financial affairs of the Debtors and related parties. Such relief is necessary here given the inadequate investigatory remedies elsewhere.

11.    Consequently, Sablon's Rule 2004 motion should be granted.

**II.    JURISDICTION AND VENUE**

12.    This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431 from the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief sought herein are section 105 of the Bankruptcy Code and Bankruptcy Rules 2004 and 9016.

**III.    RELEVANT FACTS**

**A.    The Americanas Brazilian RJ Proceeding and U.S. Chapter 15 Cases**

13.    Debtor Americanas S.A. was formed in 2021 via the merger of Lojas Americanas S.A. ("**LASA**"), which encompassed Americanas's brick-and-mortar business, and Debtor B2W Digital, which encompassed Americana's e-commerce business. After that merger in 2021, B2W Digital became a holding company with no operating business. Declaration of Alexandre Fidalgo ("**Fidalgo Decl.**"), ¶ 17. B2W Digital is now a wholly owned subsidiary of Americanas (ECF No. 3 at 8.) Debtor JSM Global S.a.r.l ("**JSM Global**") is also a wholly owned subsidiary of Americanas S.A. (*Id.*)

14.    Americanas's corporate governance structure is currently composed of: (a) a seven-member Board of Directors; (b) advisory committees, which have internal regulations that govern the committee's activities and existence; and (c) an Audit Committee. Fidalgo Decl. ¶ 18.

15.     Americanas is a publicly listed company controlled by a group of shareholders,
commonly referred to as the "**Reference Shareholders**," consisting of individuals Jorge Paulo
Lemann, Marcel Hermann Telles and Carlos Alberto da Veiga Sicupira. Fidalgo Decl. ¶ 19.

16.     Of the seven members of Americanas's Board of Directors, three are "independent"
members, nominated in accordance with the Brazilian Listing Regulation, and the four others are
chosen by the Reference Shareholders. The Reference Shareholders "have the power to influence
or interfere in [Americanas's] decision making by, for example, approving or determining its
commercial strategy, choosing or dismissing the managers of the business." Fidalgo Decl. ¶ 21.

17.     On January 25, 2023, Antonio Reinaldo Rabelo Filho (the "**Petitioner**" or
"**Foreign Representative**") filed a Declaration and Verified Petition for Recognition of the
Brazilian RJ Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§
105(A), 1509, 1515, 1517, 1520, and 1521, Dkt. No. 3 (the "**Chapter 15 Petition**"). According to
the Chapter 15 Petition:

> "The Americanas Group is one of the largest retail chains in Brazil."
>
> "Chapter 15 Debtor Americanas is the operating entity of the
> Chapter 15 Debtors and the Americanas Group."
>
> "[O]n January 11, 2023, Americanas published the Material Fact, as
> required under Brazilian securities regulations, informing its
> stakeholders and the market that it has identified certain
> inconsistencies in accounting entries that reduced the balance in the
> suppliers account related to previous fiscal years, including the
> fiscal year 2022. The Americanas' accounting department
> preliminarily estimates that the inconsistencies should be in the
> magnitude of R$20 billion (US$3.87 billion) as of September 30,
> 2022. Brazilian Counsel Decl. ¶ 51. Along with the disclosure of the
> Material Fact, on January 11, 2023, Americanas' former CEO
> Sergio Rial and investor relations officer Andre Covre also tendered
> their resignations, and the board of [Directors] of Americanas
> appointed . . . [the Board Committee] to investigate the
> circumstances that caused the foregoing accounting
> inconsistencies."

10

"On January 19, 2023, Americanas filed the RJ Petition . . . thereby commencing the Brazilian RJ Proceeding. Brazilian Counsel Decl. ¶ 57. The Brazilian RJ Court entered the Brazilian Acceptance Order on the same day. Brazilian Counsel Decl. ¶ 58."

On January 25, 2023, "[t]hese Chapter 15 Cases were commenced with respect to the Chapter 15 Debtors . . . by the filing of the Petition."

"The Petitioner is the . . . 'foreign representative' of the Brazilian RJ Proceeding."

Chapter 15 Petition ¶¶ 9, 16, 30, 34, 36, and 56.

18.     By order (ECF No. 32), dated March 3, 2023, this Court, *inter alia*, granted the Chapter 15 Petition and granted recognition of the Brazilian RJ Proceeding as the foreign main proceeding for each of the Chapter 15 Debtors.

**B.   Sablon's Claim Against Americanas**

19.     Sablon is a company organized in the British Virgin Islands that is a creditor of Americanas. Sablon holds one million U.S. dollars of senior unsecured notes issued by Debtor JSM Global S.a.r.l. Declaration of Elias Victor Nigri ("**Nigri Decl.**"), ¶¶ 6-9

**C.   Key Facts About the Fraud**

20.     When it filed the Brazilian RJ Proceeding, Americanas claimed to have identified "accounting inconsistencies" in its past financial statements as the cause of its financial distress. ECF No. 3, ¶¶ 4, 5, 30. Since then, Americanas's Board of Directors has acknowledged that massive fraud (*i.e.*, the Fraud) has pervaded its financial statements for several years. Fidalgo Decl. ¶ 23. Indeed, Americanas has notified the market of the following: (i) "[Americanas's] financial statements were being fraudulently altered by the previous board of officers of Americanas"; and (ii) the Fraud involved, among other things, manufacturing false advertising agreements and executing financing agreements without the required corporate approvals, which were then

11

inappropriately recorded in Americanas's financial statements. Fidalgo Decl. ¶ 24. The Fraud: (a) increased Americanas's results over time by approximately BRL 25.3 billion, *i.e.*, approximately US$4.9 billion;[2] and (b) reduced Americanas's gross financial debt by approximately BRL 20.6 billion, US$4 billion.[3] *Id.*

21.    Americanas has preliminarily indicated that the following individuals participated in the Fraud: (i) its former CEO of 20 years, Miguel Gutierrez, (ii) former officers Anna Christina Ramos Saicali, José Timótheo de Barros, and Márcio Cruz Meirelles, and (iii) former executives Fábio da Silva Abrate, Flávia Carneiro, and Marcelo da Silva Nunes (the "**Fraud Participants**"). Fidalgo Decl. ¶ 24.

22.    Over the past 10 years (as the Fraud was ongoing): (i) Americanas's shareholders received a total of BRL 1.8 billion, US$348 million,[4] in dividends (of which over BRL 330 million was paid in 2022 alone); and (ii) its officers received over BRL 700 million, US$136 million,[5] in compensation, including from bonuses based on the company's financial performance as reflected in the fraudulent financial statements. Fidalgo Decl. ¶ 25. Meanwhile, between August and October 2022, a few months before the Fraud was disclosed publicly, Americanas's officers sold BRL 241 million, US$46 million, in Americanas shares. *Id.*

23.    The former CEO of Americanas, Mr. Miguel Gutierrez, has stated that the Fraud likely started at Debtor B2W Digital. Mr. Gutierrez explained that before becoming Americanas's CEO, he was the CEO of Americanas's predecessor LASA, which was a financially healthy company until 2021, when it was merged with B2W Digital to form Americanas. Fidalgo

---

[2] Amount calculated pursuant to the exchange rate of October 5, 2023 of 1 USD = 5,1713 Real/BRL.
[3] Amount calculated pursuant to the exchange rate of October 5, 2023 of 1 USD = 5,1713 Real/BRL.
[4] Amount calculated pursuant to the exchange rate of October 5, 2023 of 1 USD = 5,1713 Real/BRL.
[5] Amount calculated pursuant to the exchange rate of October 5, 2023 of 1 USD = 5,1713 Real/BRL.

Decl. ¶ 33. According to Mr. Gutierrez, Americanas's financial problems stem from B2W Digital, a company with which he was not involved. *Id.*

24.      Exhibit D of the Chapter 15 Petition shows that in November 2020, Debtor B2W Digital issued to the United States' qualified institutional buyers (as defined by Rule 144A) in compliance with Rule 144A and to non-U.S. persons in offshore transactions, bonds called the B2W Digital Notes, raising U.S. 500,000,000 in capital, which issuance was possibly based on fraudulent financial statements and balance sheets. ECF No. 3-4 at 3.

25.      Mr. Gutierrez has also stated that the Reference Shareholders had control over the business and day-to-day management of Americanas and that he believes the Reference Shareholders were aware of the Fraud as it was in progress. Fidalgo Decl. ¶ 33.

26.      Ms. Carla Bellangero, a partner at KPMG and one of Americanas's independent auditors, has similarly stated her belief that the Board of Directors was aware of the Fraud since at least 2019. According to Ms. Bellangero, while independently auditing Americanas in 2019, KPMG notified Americanas that it had identified "deficiencies" in the company's advertising agreements (one of the types of agreements through which the Fraud was perpetrated) and that Americanas terminated its agreement with KPMG six days after receipt of the notice, in the middle of the audit. Fidalgo Decl. ¶¶ 34-35.

### D. **The Board Committee's Investigation**

27.      On January 12, 2023, Americanas's Board of Directors established the Board Committee to investigate "the circumstances that caused" the accounting inconsistencies, which are now known to be the result of the Fraud. Fidalgo Decl. ¶ 23. The Board of Directors appointed the Board Committee's three members, defined the scope of the investigation, and required the Board Committee solely to report to the Board. Fidalgo Decl. ¶ 27.

28.     The Board Committee has made clear it will not share its findings with anyone unless so directed by the Board. Fidalgo Decl. ¶ 29. In fact, on July 27, 2023, the Board Committee confirmed it would not release the results of its work to the public: "[a]s it is an advisory committee of the Board of Directors, the [Board] Committee reports its works to that body." *Id.* Nor has the Board agreed to share the Committee's report, findings or evidence.

29.     So far, the Board Committee has refused to grant creditors access to the investigation materials it is reviewing. The Board Committee has noted that, to date: (i) it collected and preserved "about 200 Terabytes of data" from Americanas; (ii) it "received information from other sources;" and (iii) it is "conducting interviews with employees and former employees of [Americanas] to better clarify the facts, as well as the processes and procedures adopted by [Americanas]." Fidalgo Decl. ¶ 31.

30.     To the extent there has been any disclosure related to the investigation, it has been limited. Specifically, the Board Committee has shared evidence with the Board of Directors, the controlling Reference Shareholders, and their counsel. Fidalgo Decl. ¶ 32. On June 13, 2023, attorneys for the Board of Directors presented to the Board, and later to the public, a report based on the Committee's evidence (the "**Board Legal Report**"). *Id.* In the Board Legal Report, the Board's counsel purported to exempt all the members of the Board from any liability or responsibility for the Fraud supposedly based on a handful of documents for which only quoted excerpts were provided. *Id.*

31.     In addition to the Board Committee's investigation, there are other government-sponsored investigations currently taking place in Brazil. Fidalgo Decl. ¶¶ 36-41. These investigations, however: (i) are not oriented towards creditor concerns such as seeking recoveries to help replenish the Debtors' estates and repay creditors; (ii) are not assessing the Board of

Directors' or Reference Shareholders' involvement in the Fraud; and (iii) have either been recently

terminated or will be concluded soon without reaching any meaningful conclusion. *See* Fidalgo

Decl. ¶¶ 36-37;

### E. Creditors' Efforts to Investigate the Fraud

32.     To safeguard their rights, and in light of the concerns described above regarding

the current Fraud investigations, Americanas's creditors are taking independent actions to

investigate the Fraud. Under Brazilian law, actions for discovery of evidence or recoupment of a

debtor's assets are normally not centralized in, or stayed due to, a RJ Proceeding and may be

brought in parallel with it. Fidalgo Decl. ¶ 52. Further, such investigations and actions in Brazil

are normally individually sought, rather than through the creation of a creditors' committee. *Id.*

33.     As the Debtors' Brazilian Counsel explains, "[i]n practice, creditors rarely seek the

formation of a creditors' committee." *Declaration of Francisco Satiro Pursuant to 28 U.S.C. §*

*1746 in Support of the Petitioner's Declaration and Verified Petition for Recognition of the*

*Brazilian RJ Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§*

*105 (A), 1509, 1515, 1517, 1520, and 1521* (the **"Brazilian Counsel Declaration"**), ECF No. 4,

¶ 23. No such committee has been formed in the Debtors' Brazilian bankruptcy cases. Fidalgo

Decl. ¶ 16.

34.     The Debtors' Brazilian counsel has further acknowledged that, under Brazilian

bankruptcy law, individual creditors may bring actions to avoid a debtor's pre-bankruptcy transfers

and such actions are not stayed during the Debtor's Brazilian bankruptcy case:

> Although the Brazilian Bankruptcy Law does not govern avoidance
> actions in Judicial Reorganization proceedings, <u>creditors are</u>
> <u>generally permitted to bring actions to avoid transfers made by the</u>
> <u>debtor under the Brazilian Civil Code</u>, which provides that the
> following actions be considered fraud against creditors: (i) a

gratuitous transfer of assets that leads to or occurs during the debtor's insolvency; or (ii) any onerous transactions entered into by an insolvent debtor and a third party for fraudulent purposes, if causing damage to the creditors. In each of the above cases, the damaged creditors are entitled to file a lawsuit in a civil court to have the transaction declared void within four (4) years of the transaction. <u>These lawsuits will generally not be enjoined as a result of the RJ Stay applicable in a defendant's or debtor's Judicial Reorganization proceeding.</u>

If a debtor has been declared bankrupt and a liquidation proceeding has been commenced, <u>any creditor</u>, the Public Prosecutor, or the Judicial Administrator <u>may bring actions to avoid transfers made to third parties with the intent to harm creditors or damage the debtor's estate.</u> In this case, the court may also declare such transfers void *sua sponte* unless intent to defraud is a disputed question of fact, in which case an action must be commenced by one of the parties above.

<u>Moreover, some transfers are subject to avoidance within a bankruptcy liquidation proceeding as a matter of law</u> if they were made during the "legal term," a period set by the judge and beginning not more than ninety (90) days before the liquidation petition or the date of the first protest (official declaration of default) by a creditor, and ending on the petition date, during which such transfers by the debtor are subject to scrutiny. Such transfers include payments of debts not yet due, payments of debts that were due but were enforceable in any way not provided for in the agreement memorializing the debt, and the creation of liens or any other *in rem* property interest in connection with a previously incurred debt.

Brazilian Counsel Declaration, ¶¶ 45-47 (emphasis added).

### F.    **The Rule 2004 Discovery Sablon Now Seeks**

35.    Sablon seeks evidence in the United States to complement other creditors' discovery efforts in Brazil. The discovery sought in this motion relates to: (i) evidence from entities that are not subject to the Brazilian courts' jurisdiction to compel discovery; (ii) evidence related to actions that took place in the U.S.; and (iii) evidence that has not been sought in Brazil. The evidence Sablon seeks includes:

a. <u>Evidence from Debtor B2W Digital</u>: As discussed in paragraphs 23 and 24 above and in paragraph 33 of the Fidalgo Decl. Americanas's former CEO's declaration gives Sablon reasons to believe that the Fraud started in B2W Digital's financial statements. Sablon seeks evidence from B2W Digital and the individuals involved in the issuance of the B2W Digital Notes.

b. <u>Evidence from Debtor Americanas</u>: Sablon seeks evidence concerning Americanas's current shareholders, as well as historical information regarding the payment of dividends from both Americanas and B2W Digital to companies located in the U.S., to trace payments based on the Fraud. Sablon has reason to believe that Americanas's shares (and former LASA and B2W Digital's shares) are held in part by companies located in the U.S., including LTS Trading Company LLC, Cedar Trade LLC, Cathos Holding LLC, and Invesco Ltd. Fidalgo Decl. ¶ 48.

c. <u>Evidence from the LTS companies</u>. Americanas's former CEO has claimed that the Reference Shareholders actively participated in the financial management of Americanas and B2W Digital via orders they gave to officers of their holding company, LTS. The companies in the LTS group (in which the acronym LTS stands for "Lehmann, Telles, Sicupira")—*e.g.*, LTS Investment Holdings, LLC, LTS Investments, Inc., and LTS Trading Company LLC—are all registered in the state of Delaware. Fidalgo Decl. ¶ 49.

d. <u>Evidence from Third Party Cedar Trade LLC</u>. Some of Americanas's Reference Shareholders hold their shares indirectly via other companies, including a Delaware company called Cedar Trade LLC. Fidalgo Decl. ¶ 50. Sablon seeks

discovery from Cedar Trade LLC regarding (i) the dividends it received and (ii) the Reference Shareholders' participation in the financial management of Americanas and B2W Digital.

**G.  Potential Actions Available to Creditors in Brazil**

36.    As explained above, under Brazilian law, actions for recoupment of a debtor's assets are normally not centralized in or enjoined because of a RJ proceeding, but may be brought in parallel with it by creditors, who have standing to bring a variety of actions to recoup a debtor's assets. Fidalgo Decl. ¶ 52.

37.    Correspondingly, as Americanas's Brazilian Counsel makes clear, in Brazil creditors are generally permitted to bring actions to avoid transfers or transactions that are considered fraud against creditors, including: "(i) a gratuitous transfer of assets that leads to or occurs during the debtor's insolvency; or (ii) any onerous transactions entered into by an insolvent debtor and a third party for fraudulent purposes, if causing damage to the creditors." Brazilian Counsel Declaration, ¶¶ 45-47.

38.    Brazilian law also enables creditors to bring the following actions:

a.    Piercing of the Corporate Veil. A creditor may seek to pierce the corporate veil of a corporation upon a showing the shareholders or administrators abused the corporation's patrimonial separation to harm creditors. Such an action is brought directly against a company's shareholders and administrators and is independent from a JR proceeding. Fidalgo Decl. ¶ 53.

b.    Recoup Losses from Controlling Shareholders. A creditor may recoup losses from controlling shareholders when those losses are caused by the controlling shareholders' abuse of power. Fidalgo Decl. ¶ 53.

    c.   <u>Recoup Losses from Managers and/or Administrators</u>. Any injured third-party, including a creditor, may recoup losses from a corporation's managers and/or administrators upon a showing that the manager's actions or omissions caused the third-party's harm. Fidalgo Decl. ¶ 53. Such an action may be brought directly against controlling shareholders in a forum independent from a RJ proceeding. Fidalgo Decl. ¶ 53.

### H. Brazilian Courts' Discovery Limitations

39.     The discovery Sablon seeks here is not available in Brazil because of the limited jurisdictional reach of the courts in Brazil and the discovery limitations under Brazil's rules of civil procedure. Brazilian bankruptcy law does not provide for any type of evidence production within a main proceeding. Fidalgo Decl. ¶ 42-45. Instead, to obtain evidence in Brazil, Sablon would be required to start a separate action before a Brazilian court with jurisdiction over any discovery targets. Regardless, this approach would not address the discovery sought in this motion as there are at least two significant limitations upon Sablon's ability to obtain evidence in Brazil.

40.     First, while a Brazilian court would have jurisdiction over the Brazilian Americanas Debtor, it lacks authority under Brazilian law to order those located outside Brazil to produce documents and testimony. Fidalgo Decl. ¶ 55. Those include the Luxemburg Debtor B2W Digital, the LTS group of companies, and Cedar Trade LLC. In theory, Sablon could ask the Brazilian courts to issue letters rogatory, but that is not a viable option for Sablon here because the letters rogatory procedure is typically very slow. *Id.*

41.     Second, discovery was historically a concept foreign to Brazilian civil procedure, under which each side is expected to support its case on the basis of evidence that is available to it. Fidalgo Decl. ¶ 56. Under that traditional approach, courts would sometimes order a party to

disclose a specific document, but only upon a detailed identification of the document sought. This made it difficult, if not impossible to discover evidence that the person seeking discovery does not already know about, a particularly difficult limitation in a case of fraud. *Id.*

42.    Brazil recently instituted discovery actions that are somewhat similar to U.S. discovery via the revision of Article 397 of the Brazilian Civil Procedure Code in August 2021. Fidalgo Decl. ¶ 52. Under Article 397, litigants are now allowed to ask for categories of documents instead of identifying specific documents. Fidalgo Decl. ¶ 57. But discovery in Brazil remains a novel concept that still imposes significant challenges for discovery petitioners.

## I.    Brazil Courts' Receptivity to Evidence Obtained Abroad

43.    Despite the differences in discovery between Brazil and the United States, courts in Brazil, including the RJ Judge, would admit and welcome evidence obtained in the United States through Rule 2004. The Brazilian Legislator has made it clear that evidence lawfully collected abroad is admissible. Pursuant to Article 13 of the Law of Introduction to the Rules of Brazilian Law ("**LINDB**"), Brazilian courts will admit evidence collected in a foreign country if its collection has not violated public policy. Fidalgo Decl. ¶ 58-59. Thus, there is no legal basis for a judge to find evidence obtained through Rule 2004 inadmissible under Brazilian law. *Id.* Consequently, a Brazilian court would find the discovery Sablon now seeks to be admissible.[6] That is because judges in Brazil understand the cross-border nature of many disputes before them and

---

[6] *See In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 177 (S.D.N.Y. 2020) ("Applicant has made a showing that the Brazilian courts would be receptive to evidence obtained through the [section 1782] Application . . . . Thus, the *Intel* second factor weighs in favor of granting the Application."); *Ex parte Abdalla*, No. 20-MC-727 (PKC), 2021 WL 168469, at *5 (S.D.N.Y. Jan. 19, 2021) ("There is no evidence before this Court suggesting that Brazil or Brazilian Courts are unreceptive to requests by U.S. persons for judicial assistance. Courts in this district recently have granted requests for section 1782 discovery for use in Brazilian proceedings."); *In re Degens*, No. 20-MC-237 (JGK) (RWL), 2020 WL 4252725, at *4 (S.D.N.Y. July 24, 2020) ("There is no reason to believe the Brazilian Court would not be receptive to evidence gathered under § 1782, and no Brazilian rule, policy, or law prohibits or discourages the Brazilian Court from considering such evidence.").

are interested in any evidence that is relevant to the resolution of the disputes before them, even if that evidence could not be obtained in Brazil. This is especially the case here, where they must adjudicate disputes arising out of one of the largest fraud scandals in the history of Brazil.

## IV.     **RELIEF REQUESTED**

44.     Sablon respectfully requests entry of the proposed order annexed hereto as **Exhibit A** authorizing Sablon to conduct an examination of Debtor B2W Digital; Debtor Americanas; third parties from the LTS Group; third party Cedar Trade LLC, and other third parties located in the U.S. as necessary and revealed through the evidence initially obtained.

45.     The documents requests and proposed examinations will be issued substantially in the form annexed hereto as **Exhibits B** and **C**.

### V.    BASES FOR RELIEF REQUESTED

#### A.    Rule 2004 Generally

46.    Bankruptcy Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Pursuant to Bankruptcy Rule 2004(b), a party in interest may seek both document and oral discovery related to "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, . . .."

47.    Under Bankruptcy Rule 2004(c), the "attendance of an entity for examination and the production of documents . . . may be compelled in the manner provided in Bankruptcy Rule 9016 for the attendance of witnesses at a hearing or trial." In turn, Bankruptcy Rule 9016 makes Federal Rule of Civil Procedure 45 (governing subpoenas) applicable in cases under the Bankruptcy Code.

#### B.    Breadth and Purpose of Rule 2004 Discovery

48.    Unlike discovery under the Federal Rules of Civil Procedure, discovery under Bankruptcy Rule 2004 may be used as a "pre-litigation discovery device." *In re Wilson*, No. 07-11862, 2009 WL 304672, at *5 (Bankr. E.D. La. Feb. 6, 2009). As such, a Bankruptcy Rule 2004 motion need not be tied to specific factual allegations at issue between parties. See *In re Symington*, 209 B.R. 678, 683 (Bankr. D. Md. 1997) (Rule 2004 permits "examination of any party without the requirement of a pending adversary proceeding or contested matter").

49.    Correspondingly, the scope of a Bankruptcy Rule 2004 examination "is broader than discovery under the Federal Rules of Civil Procedure . . ." or the Bankruptcy Rules governing adversary proceedings. *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991). In fact, courts recognize that Bankruptcy Rule 2004 examinations may be "broad"

and "unfettered," and legitimately in the nature of a "fishing expedition." *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 400 (Bankr. W.D. Pa. 2008).

50.    "As a general proposition, Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate and for 'discovering assets, examining transactions, and determining whatever wrongdoing has occurred.'" *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (citation omitted); *See also In re Serignese*, No. 19-10724 (JLG), 2019 WL 2366424, at *2 (Bankr. S.D.N.Y. June 3, 2019). Courts authorize discovery under Bankruptcy Rule 2004 to assist in recovering assets for the benefit of a debtor's creditors. *See In re Metiom, Inc.*, 318 B.R. 263, 270 n.6 (Bankr. S.D.N.Y. 2004) (quoting *In re Dinubilo*, 177 B.R. 932, 940 (Bankr. E.D. Cal. 1993) ("The purpose of a Rule 2004 examination is to [] 'learn quickly about the debtor entity' [to] 'maximize the realization of the debtor's estate' and 'discover the existence and location of assets of the estate.'"); *In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 28 (Bankr. N.D. N.Y. 1996) (citing *In re Drexel Burnham Lambert Group, Inc.,* 123 B.R. 702, 708 (Bankr. S.D.N.Y. 1991)) ("The purpose of such a broad discovery tool is to assist . . . in revealing the nature and extent of the estate, and to discover assets of the debtor which may have been intentionally or unintentionally concealed.").

51.    Recognizing the broad scope of Bankruptcy Rule 2004, courts allow examinations of "[a]ny third party who has a relationship with a debtor." *In re Hilsen*, No. 87-11261 (JMP), 2008 WL 2945996, at *4 (Bankr. S.D.N.Y. July 25, 2008). "Because the purpose of the Rule 2004 investigation is to aid in the discovery of assets, any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation." *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 432 (Bankr. S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

### C. **A Creditor May Obtain Rule 2004 Discovery in a Chapter 15 Case**

52.      Courts consistently find that Rule 2004 applies in chapter 15 cases. *See, e.g., In re Golden Sphinx Ltd.*, No. 2:22-BK-14320-NB, 2023 WL 2823391, at *2 (Bankr. C.D. Cal. Mar. 31, 2023) (citing supporting cases); *In re Comair Ltd.*, No. 21-10298 (JLG), 2021 WL 5312988, at *9 (Bankr. S.D.N.Y Nov. 14, 2021), *appeal dismissed*, No. 21 CIV. 10146 (AT), 2023 WL 171892 (S.D.N.Y. Jan. 12, 2023) (citing supporting cases but finding the issue unnecessary to resolving that case). Creditors may use Rule 2004 discovery in a chapter 15 case when such discovery "would further [the chapter 15] Court's assistance of the foreign main proceeding." *Golden Sphinx,* 2023 WL 2823391 at *3. Among such circumstances are: (1) a request by the court overseeing the foreign main proceeding; (2) relevance to a pending contested matter involving the chapter 15 petition; (3) when the creditor is defending against a motion or adversary proceeding brought by the foreign representative; and (4) when there "is grounds to suspect the existence of a fraudulent transfer claim that the foreign representatives were wrongfully refusing to pursue." *Id.* (Emphasis added). *See also In re Buick*, 174 B.R. 299, 306-07 (Bankr. D. Colo. 1994) (finding Rule 2004 discovery appropriate in a chapter 7 case when "a trustee refuses, fails, or is unable to pursue certain claims.").

### D. **Good Cause Exists For Rule 2004 Discovery Here**

53.      The party seeking discovery under Bankruptcy Rule 2004 bears the burden of showing "good cause" for the examination it seeks. *See In re AOG Enm't, Inc.*, 558 B.R. 98, 109 (Bankr. S.D.N.Y. 2016); *In re Metiom, Inc.*, 318 B.R. at 268. Good cause is shown if the moving party demonstrates Bankruptcy Rule 2004 discovery "is necessary to establish the claim of the party seeking the examination or if denial of such request would cause the examiner undue hardship or injustice." *Id.* at 268.

24

54.     Once the burden of good cause is met, the bankruptcy court must then "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." *In re Drexel Burnham,* 123 B.R. at 712. The decision whether to authorize discovery requested under Bankruptcy Rule 2004 rests within a bankruptcy court's sound discretion. *See In re Enron Corp.*, 281 B.R. at 840 ("As the permissive language of the rule suggests, the Court has the discretion to grant a request for a 2004 examination . . . .") (citation omitted).

55.     Here Sablon has demonstrated good cause for examination of parties and production of documents that falls squarely within the scope of Rule 2004. Granting the requested relief would effectuate chapter 15's purpose by protecting the Debtors' assets and their creditors' interests. The proposed scope of Sablon's examination relates to the financial affairs of the Debtors that led directly to the Brazilian bankruptcy filings and these cases and, therefore, appropriate areas for examination under Rule 2004. Indeed, the purposes of chapter 15 include the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor" and the "protection and maximization of the value of the debtor's assets." 11 U.S.C. § 1501(a)(3)(4).

56.     Additionally, creditors' efforts to investigate the Fraud and potential claims arising therefrom could substantially enhance the Debtors' estates and/or substantially reduce the claims against those estates. Hence, the requested Rule 2004 discovery would aid the Debtors' main Brazil bankruptcy proceedings.

57.     Moreover, to the best of Sablon's knowledge, neither Americanas nor its Foreign Representative have to date initiated actions seeking pursue recovery of ill-gotten payments. Fidalgo Decl. ¶ 51.

### E. **Section 105 Provides an Additional Basis for Rule 2004 Discovery Here**

58.     Bankruptcy Code section 105(a) authorizes the Court to "issue any order . . . that is necessary or appropriate to carry out provisions of this title." 11 U.S.C. § 105(a).

59.     The purpose of section 105(a) is to "assure Bankruptcy Court's power to take whatever action is appropriate or necessary to aid in the exercise of its jurisdiction." *Collier on Bankruptcy,* ¶ 105.01, at 105-3 (15th ed. 1996). Thus, section 105(a) essentially codifies the bankruptcy court's inherent equitable powers. *See Mgmt. Tech. Corp. v. Pardo,* 56 B.R. 377, 339 (Bankr. D. N.J. 1985) (court's equitable power derived from section 105).

60.     As no creditors' committee is in place here, Sablon's investigation would, as a practical matter, discharge the obligation a creditors' committee would have to "investigate the acts, conduct, assets, liabilities, and financial condition of the [d]ebtor." 11 U.S.C. § 1103(c)(2). The relief this motion requests would help all of Americanas' creditors by developing evidence that could enhance recovery for all, but at the private expense of Sablon.

61.     Based on the foregoing, the Court should grant this motion.

### VI.    **NO PRIOR REQUEST**

62.     No prior request for the relief sought in this motion has been made to this or any other court.

### VII.    **RESERVATION OF RIGHTS**

63.     Sablon reserves all rights to request additional documents or examinations upon review of the documents produced in connection with this Motion or otherwise.

### VIII.    **NOTICE**

64.     Notice of this motion shall be provided to: (a) the Office of the United States Trustee for the Southern District of New York; (b) the Debtors' Foreign Representative; (c) the third-party discovery targets LTS Investment Holdings, LLC, LTS Investments, Inc., LTS Trading Company LLC, and Cedar Trade LLC; and (d) all parties entitled to notice pursuant to Bankruptcy Rule 2002. Due to the nature of the relief requested herein, Sablon respectfully submits that no further notice of this motion is required.

## **CONCLUSION**

WHEREFORE, Sablon respectfully requests that this Court: (i) enter an order,

substantially in the form attached hereto as **Exhibit A**, granting the relief sought herein; and

(ii) grant Sablon such other and further relief as the Court may deem proper.


Dated: November 10, 2023                    Respectfully submitted,
      New York, New York

                                          */s/ James N. Lawlor*
                                          James N. Lawlor
                                          Hunter G. Waters

                                          WOLLMUTH MAHER & DEUTSCH LLP
                                          500 Fifth Avenue
                                          New York, NY 10110
                                          Telephone: (212) 382-3300
                                          Facsimile: (212) 382-0050
                                          jlawlor@wmd-law.com
                                          hwaters@wmd-law.com

                                          *Counsel for Sablon Partners Ltd.*