**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| *In Re:* | Case No. 23-10092 (MEW) |
| *Americanas S.A., et al.,* | Chapter 15 |
|  | (Jointly Administered) |
| **Debtors in a Foreign Proceeding** |  |

**DECLARATION OF MARINA GAENSLY BLATTNER PURSUANT TO 28 U.S.C. § 1746 IN SUPPORT OF THE OBJECTION OF LTS TRADING COMPANY LLC AND CEDAR TRADE LLC TO SABLON PARTNERS LTD'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING THE EXAMINATION OF AMERICANAS AND B2W DIGITAL AND THIRD PARTIES**

I, Marina Gaensly Blattner, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States that the following is true and correct:

1.  I submit this declaration (the "**Declaration**") in support of LTS Trading Company LLC's ("**LTS Trading**"), and Cedar Trade LLC's ("**Cedar Trade**") objection to Sablon Partners Ltd.'s ("**Sablon**") Motion For Entry Of An Order Pursuant To Bankruptcy Rule 2004 Authorizing The Examination Of Debtors Americanas And B2W Digital And Third Parties (ECF No. 28) (the "**Motion**").

**I.    QUALIFICATIONS AND EXPERIENCE**

2.  I am a Brazilian citizen, an attorney licensed to practice in Brazil, and a member in good standing of the Brazilian Bar Association under registry number OAB/SP 229.618 and OAB/RJ 108.831.

3. I hold a bachelor's and a master's degree in public law from the State University of Rio de Janeiro (UERJ) and a LL.M from the London School of Economics and Political Sciences (LSE).

4. Since 2004, I practice law in Wald, Antunes, Vita e Blattner Advogados. My professional experience focuses on strategic litigation in civil and corporate cases, either before state or federal Courts, or before arbitral tribunals. I am also a member of the São Paulo Lawyers' Institute (IASP).

5. My firm and I represent the Reference Shareholders and their investment vehicles' interests in Brazil, in connection with the material fact published by Americanas S.A. ("**Americanas**") on January 11th, 2023 ("**Material Fact**").

6. I submit this Declaration to assist this Court in its consideration of LTS Trading and Cedar Trade's objection to Sablon's Motion.

7. Although Portuguese is my native language, I am fluent in English and have elected to execute and submit this Declaration in English.

8. The facts and matters contained in this Declaration are true and correct to the best of my information, knowledge, and belief. To the extent matters stated in this Declaration are statements of legal opinion, such statements represent my own views as a practicing Brazilian attorney.

9. In preparing this Declaration, I have reviewed records from the lawsuits and investigations mentioned herein, publicly available documents related to the January 11, 2023 Material Fact, and records relating to the corporate structure of the Reference Shareholders' entities.[1]

---

[1] To avoid burdening the Court and increasing translation expenses, I only attached certain referenced documents as exhibits. If it would be useful to the Court, I can make any referenced documents available upon request.

10. A copy of my *curriculum vitae* is exhibited hereto as **Appendix A**.

## II.    RELEVANT BACKGROUND

### A.  The Reference Shareholders

11. Jorge Paulo Lemann, Marcel Hermann Telles, and Carlos Alberto da Veiga Sicupira are three prominent Brazilian businessmen, who have gained a reputation for their successful business ventures and philanthropy.

12. In 1982, Mr. Lemann, Mr. Telles, and Mr. Sicupira became the controlling shareholders of Lojas Americanas. In 2006, Lojas Americanas's subsidiary dedicated to e-commerce (Americanas.com) merged with Submarino S.A. and launched B2W - Companhia Digital ("B2W Digital"). In April 2021, Lojas Americanas' board of directors approved the decision to (i) split and transfer part of Lojas Americanas's operations to B2W Digital, and (ii) rename B2W Digital as "Americanas S.A."

13. In December 2021, Americanas S.A. (formerly B2W Digital) incorporated Lojas Americanas (collectively, "Americanas"). In that restructuring transaction, Mr. Lemann, Mr. Telles, and Mr. Sicupira gave up control of the company. They still hold (either directly or indirectly) approximately 271,834,960 shares of Americanas S.A. (approximately 30.12% of outstanding shares), which is why they have been called "Reference Shareholders." The aim of the restructuring was to (i) simplify Americanas' corporate structure, (ii) increase liquidity, and (iii) improve tax efficiency.

14. Over the past 10 years, the Reference Shareholders have received R$714,000,000.00 in dividends from Americanas (approximately $143,000,000.00). In that same timeframe, they have contributed R$2,300,000,000.00 to Americanas capital increases (approximately $460,000,000.00).    Therefore, they have invested

approximately R$1.6 billion ($320 million) more in Americanas than they have received.

15. Mr. Lemann, Mr. Telles, and Mr. Sicupira are not employees or executives of Americanas. Mr. Sicupira is a member of Americanas' board of directors, but Mr. Lemann and Mr. Telles are not, and have not been for over 10 years. The Reference Shareholders' involvement in Americanas' day-to-day operations is limited to Mr. Sicupira's board position and their designation of certain other directors.

16. The Reference Shareholders have historically invested and conducted their businesses together through several different legal entities, including some under the "LTS" acronym, which stands for Lemann, Telles, and Sicupira. The Reference Shareholders control various entities that include the LTS acronym. However, these entities are not necessarily related or part of the same corporate family. There are several different corporate families bearing the LTS acronym.

17. The Reference Shareholders use an entity bearing the LTS acronym to support their designees to Americanas' Board of Directors. That entity is based in Brazil, has no operations or employees in the United States, and is not named in this action.

18. LTS Trading is an inactive investment vehicle that was once used for passively holding shares in several companies in which the Reference Shareholders invest. While it used to hold a small number of Americanas shares, it has not held any Americanas shares since September 2022 and is in the course of being dissolved. It is not within the same corporate family as the relevant LTS entities described in the paragraph above, and has no direct or indirect parent, subsidiary, or affiliate relationship with those entities.

19. LTS Investment Holdings, LLC and LTS Investments Inc, are completely unrelated. While those entities use an "LTS" acronym, they are not owned or controlled by the Reference Shareholders, and have no relation whatsoever to LTS and Cedar Trade.

20. Cedar Trade is an investment vehicle through which Mr. Lemann holds approximately 3% of Americanas' shares. Cedar Trade has no employees, no operations, and no involvement with the management of Americanas. Mr. Lemann is not a member of the board of directors, the board of trustees, or a controlling shareholder.

21. Americanas hold no interest in either LTS or Cedar Trade.

### B. The Accounting Inconsistencies

22. On January 11, 2023, Americanas issued a Material Fact ("Fato Relevante") reporting accounting inconsistencies amounting to at least BRL 20 billion, which is attached hereto as **Exhibit 1**.

23. On the next day, Americanas issued a second Material Fact reporting that it formed an independent committee comprised of professionals with substantial expertise, experience, and independence to investigate those inconsistencies. The Independent Committee is led by Otavio Yazbek, a renowned professor, lawyer, and former director of the Brazilian Securities and Exchange Commission (the "CVM"). Dkt. 42-7. The Independent Committee is also comprised of two other highly skilled professionals: Mr. Antonio Luiz Pizarro Manso and Mr. Eduardo Flores. Ernst & Young and the Brazilian law firm Maeda Advogados, leading firms in the fields of investigations and compliance, have been further engaged to assist the independent committee. *Id*. Americanas also engaged FTI and IBPTECH to collect and preserve potentially relevant evidence.

24. In the 15 days following the disclosure of the accounting inconsistencies, Americanas' stock price dropped significantly. The Reference Shareholders' 271,834,960 shares lost approximately $3.2 billion in value during that period.

25. Since the disclosure of the accounting inconsistencies, several Brazilian authorities have initiated investigations into these events to determine which individuals are responsible for the fraud. So far, there is no evidence indicating that the Reference Shareholders were involved in the accounting inconsistencies, let alone that they had knowledge of any wrongdoing.

### III.    AMERICANAS' RJ PROCEEDING

26. On January 12, 2023, Americanas, JSM Global S.a.r.l. ("JSM"), and BW2 Digital Lux S.a.r.l. ("B2W Lux") (together, "the Chapter 15 Debtors") filed a request for a jointly administered judicial reorganization proceeding (*recuperação judicial* or "RJ") (the "Brazilian RJ Proceeding") under Brazilian Federal Law No. 11.101/2005, before the 4th Business Court of Rio de Janeiro. Dkt. 4-3. In the request, Americanas described its substantial presence in the Brazilian market and the pivotal role in the Brazilian economy, creating jobs and generating tax revenue. *Id*. Consequently, an RJ proceeding is warranted to safeguard its operations and uphold its vital role in the Brazilian retail market.

27. On January 19, 2023, the judge of the 4th Business Court of the State of Rio de Janeiro granted the Chapter 15 Debtors' request to initiate the RJ Proceeding. That ruling is attached hereto as **Exhibit 2**. The judge highlighted the importance of Americanas recovery considering "all the social aspects this entails, given the large number of creditors, direct and indirect employees dependent on the business activity protected

herein, as well as the relevant volume of wealth and taxes generated." Exhibit 2, at 4.

28. The RJ judge noted that he was not oblivious to allegations of fraud and bad faith, but explained that the liability for the accounting inconsistencies "should be ascertained in the proper forum to identify the potential responsible parties . . . in these proceedings any responsibilities and acts performed by managers and/or controllers cannot be confused with the necessary protection of the economic activity of the companies, which aims to ensure the maintenance of the production source, of the tens of thousands of direct and indirect jobs and, of course, the creditors' own interest, preserving the company, its corporate purpose and stimulating productive economic activity, all pursuant to Article 47 of Law No. 11,101/2005." *Id*. The Court thus made it clear that the purpose of the RJ Proceeding was to preserve the company and the jobs, and not to hold parties liable for the accounting inconsistencies.

29. The RJ Court appointed two independent third parties to help oversee the RJ proceeding, *Preserva-Ação Administração Judicial* and *Escritório de Advocacia Zveiter* law firm (the "Judicial Administrators"). *Id*.

30. Considering the complexity of the questions to be dealt with in Americanas' RJ proceeding, the RJ Judge "concluded of paramount relevance the reunion and careful analysis of all possible information to help creditors and interested parties during the RJ period". *Id*. The instrument chosen for that end was a periodic report to creditors and parties in interest, compiling all data provided by the company on both a weekly and monthly basis.

31. On March 20, 2023, the Judicial Administrators issued a 452-page report regarding the accounting inconsistencies. Dkt. 42-6. The Judicial Administrators reviewed over

38,000 pages of documents filed in the RJ Proceeding, as well as information provided by Americanas and third parties upon the Judicial Administrators' request. *Id.* The Judicial Administrators conducted a thorough analysis of Americanas' corporate governance, the relationship between Americanas and external accounting firms, and the dealings with the relevant financial institutions. The Judicial Administrator concluded that Americanas had appropriate corporate governance systems in place and did not point out any wrongdoing by the Reference Shareholders. *Id.*

32. On March 20, 2023, Americanas presented its judicial reorganization plan (roughly equivalent to a Chapter 11 plan in the U.S.) (the "RJ Plan") and a list of its creditors.[2] The RJ Plan states that the judicial reorganization of Americanas would be carried out in four parts. Americanas would conduct a capital increase of BRL 10 billion, to ensure the minimum resources necessary for the restructuring of its credits. The retailer would then restructure the credits, considering different types of creditors and adapting them to their payment capacity, by changing the term, charges, and payment method. Americanas also proposed the disposal of permanent assets and rights to raise additional resources. Finally, Americanas would approve a corporate reorganization among the companies within its group. The RJ Plan was supported by expert reports attesting that Americanas is economically viable and has the economic means to overcoming its financial crisis.

33. On November 16, 2023, Americanas requested a December 19, 2023, date for the Creditor's Meeting.[3]

34. On November 21, 2023, Safra requested that the date be rejected.[4]

---

[2] This document can be made available upon request.
[3] This document can be made available upon request.
[4] This document can be made available upon request.

35. On November 21, 2023, Americanas published a notice summoning all creditors and interested parties to attend a General Creditors' Meeting to deliberate on the RJ Plan.[5] On the same date, the RJ judge scheduled the General Creditors' Meeting for December 19, 2023.  Safra asked the RJ court to reconsider that ruling on November 22, 2023, but the RJ judge rejected Safra's request on December 1, 2023, maintaining the December 19, 2023 date.[6]

36. On November 27, 2023, the Debtors in the RJ Proceeding, the Reference Shareholders, and Americanas' 4 largest creditors[7] holding a total of 35% of claims executed an agreement in support of Americanas' RJ Proceeding (the "Plan Support Agreement" or "PSA")[8], committing to approve a new version of RJ Plan attached thereto. On the same day, Americanas presented its the revised plan in the RJ Proceedings. Other creditors, who have also participated in the recent negotiations, have already indicated their intention to support the RJ Plan; therefore, the reorganization plan is likely to be approved.

37. Theoretically, Sablon—or any other creditors—could still pursue claims against third parties if it individualizes its vote and votes against the plan. However, Sablon failed to indicate that it has individualized its vote, which was due 20 days before the Dec. 19, 2023's General Creditors' Meeting. Sablon has also not filed any requests to delay the Creditor's Meeting, or any objections to the proposed restructuring plan.

## IV.    OTHER CREDITORS HAVE SOUGHT DOCUMENTS IN BRAZIL

---

[5]  This document can be made available upon request.
[6]  This document can be made available upon request.
[7] Banco Bradesco S.A.; Itaú Unibanco S.A. (and Itaú Unibanco Nassau Branch), Banco Santander (Brasil) S.A., and Banco BTG Pactual S.A. (and BTG Pactual Seguros S.A).
[8]  This document can be made available upon request.

38. On January 23, 2023, Banco Bradesco S/A ("Bradesco") filed a preliminary evidence production lawsuit (*ação de produção antecipada de provas)* against Americanas and B2W, before one of São Paulo's civil courts[9], seeking access to all correspondence and evidence that Americanas' board members, committee members, C-suite officers and other employees have exchanged or produced in the last ten years regarding the alleged "accounting inconsistencies" and the testimony of Miguel Gutierrez (Americanas' CEO from 2003 to December 2022), Sergio Rial (Americanas' CEO from January 1, 2023 to January 11, 2023), and Andre Covre (Americanas' CFO from January 1, 2023 to January 11, 2023).

39. On January 26, 2023, the judge of the 2nd Business Court of the State of São Paulo granted the requests for the production of documents, but denied the requests for testimony, and ordered the seizure of all institutional mailboxes for the past 10 years of (i) the members of Americanas' board of Directors and Audit Committee, and (ii) the accounting and finance employees of Americanas.[10] The evidence was collected and submitted to an expert appointed by the court.

40. In October, the parties engaged in negotiating a settlement agreement, which is why Americanas informed the district court judge, on October 17, 2023, that it had made substantial advances in the negotiation with its creditors, so the preliminary evidence production lawsuit would be stayed.[11]  On the same date, Bradesco informed the court that it agreed with the request. On October 19, 2023, in light of the settlement negotiations, the judge granted the request to stay the lawsuit.[12]

---

[9] Case n. 1000147-05.2023.8.26.0260/TJSP. This document can be made available upon request.
[10]  This document can be made available upon request.
[11]  This document can be made available upon request.
[12]  This document can be made available upon request.

41. On January 23, 2023, Banco Santander (Brasil) S.A. ("Santander") also filed a preliminary evidence production lawsuit against Americanas, before one of São Paulo's civil courts[13], seeking (i) access to all correspondence and evidence that Americanas' board members, the controlling shareholders, committee members, C-suite officers and other employees have exchanged or produced in the last ten years regarding the factoring operations, the alleged "accounting inconsistencies," the financial statements and the distribution of profits/dividends to the shareholders/directors/officers; (ii) access to all communication exchanged with between Americanas and the Independent Committee; (iii) the testimony of: (a) the Reference Shareholders, (b) Anna Christina Ramos Saicali, (c) Miguel Gutierrez, (d) Roberto Thompson, (e) Mauro Muratorio Not, (f) Fabio Abrate, (g) Eduardo Saggioro Garcia, (h) Sergio Rial, (i) Vanessa Claro Lopes. On January 27, 2023, the judge of the 43rd Civil Court of the State of São Paulo partially granted Santander's request for the collection of communications from the board, directors, fiscal committee, audit committee and financing officers for the past ten years, but rejected the requests for testimony.[14] On April 11, 2023, Americanas and Santander jointly requested the court to stay the evidence production lawsuit, which was granted by the judge on April 12, 2023.[15]

42. On January 24, 2023, Banco Safra S/A ("Safra") also filed a preliminary evidence production lawsuit against Americanas and B2W, before one of São Paulo's civil courts[16], seeking access to all correspondence and evidence that Americanas' board members, committee members, C-suite officers and other employees exchanged or

---

[13] Case n. 1007039-22.2023.8.26.0100/TJSP. This document can be made available upon request.
[14] This document can be made available upon request.
[15] This document can be made available upon request.
[16] Case n. 1000151-42.2023.8.26.0260/TJSP. This document can be made available upon request.

produced in the last ten years regarding the alleged "accounting inconsistencies." Due to the settlement negotiations, Safra requested to stay the proceeding on April 4, 2023, but requested to resume it on August 15, 2023.[17] No decision has been rendered on Safra's request.

43. On February 16, 2023, several investment funds administered by Itaú Unibanco Asset Management Ltda. (the "Itaú Funds") initiated a lawsuit for production of evidence against the Reference Shareholders[18]. The Itaú Funds sought the presentation of Americanas' balance sheets, fiscal books and audit reports, and other related evidence. The Itaú Funds also requested access to "all messages exchanged with employees and executives of the company, its Reference Shareholders, and their related parties, involving the financial statements of Americanas S/A and Lojas Americanas S/A, during the periods in which they held their respective positions in the company's direction and audit committee", and testimony of the Reference Shareholders about issues related to the accounting inconsistencies.

44. The Itaú Funds also filed similar proceedings against Americanas' board of directors and its executives[19].  All three proceedings are currently stayed at the request of the parties, also due to their engagement in the settlement negotiations. No decision regarding any of the Plaintiffs' merit requests has been rendered in these cases so far.

45. Itaú Unibanco S/A also initiated a lawsuit against Americanas, before one of São Paulo's civil courts[20], seeking documents and testimony regarding the accounting inconsistencies, including the testimony of Mr. Sicupira. The district court judge

---

[17]  This document can be made available upon request.
[18]  Case n. 1018365-76.2023.8.26.0100. This document can be made available upon request.
[19]  Case n. 1034937-10.2023.8.26.0100 and 1039059-66.2023.8.26.0100. These documents can be made available upon request.
[20]  Case n. 1007203-84.2023.8.26.0100. This document can be made available upon request.

denied all requests, but the Court of Appeals granted a preliminary injunction to solely allow the production of documents and an expert examination. However, the Court of Appeals did not reverse the denial of the request for Mr. Sicupira's testimony. Nonetheless, no documents have been produced so far. The proceeding is suspended before the district court judge.

46. All preliminary evidence production proceedings have been stayed given the settlement negotiations between Americanas and its creditors, although Safra has requested that the stay on its proceeding be lifted.

## V.    LAWSUITS SEEKING TO ESTABLISH STANDING AS LABOR CREDITORS

47. On January 25, 2023, eight labor union entities[21] filed a class action against Americanas and the Reference Shareholders requesting: (a) "the piercing of Americanas' corporate veil and the declaration of the Reference Shareholders' responsibility for any and all credits" relating to labor claims, past, present and future; and (b) the seizure of R$ 1.53 billion in assets held by the Reference Shareholders. The same requests were made both as an injunction, as well as a final request for relief. Through these lawsuits, the labor unions sought to have their labor creditor claims recognized for use in the RJ Proceedings.

48. The injunction was denied by the reporting judge, who reasoned that: (a) "despite the great national repercussion [of the Americanas case], the fraud allegations are hypothetical, since there is no concrete evidence on the management power or on the responsibility of the Reference Shareholders for being involved in the accounting inconsistencies"; and (b) "there is no evidence in the case files of default of labor

---

[21] Case n. 0000062-12.2023.5.10.0008 allotted to the 8th Labor Court Division of Brasília. This document can be made available upon request.

credits or mass lay-offs". **<u>Exhibit 3</u>**. The labor union entities appealed that decision by filing a writ of *mandamus* before the 10th Labor Appellate Court[22], which was also dismissed.

49. On June 19, 2023, the judge of the 8th Labor Court Division of Brasília dismissed the class action.[23]  The case is currently awaiting judgment of the appeals.

50. In addition to the class action, twenty-two individuals have filed labor claims requesting that the Reference Shareholders be held liable for Americanas' labor debts. In some cases, plaintiffs have included some of the Reference Shareholders' investment vehicles and other companies in which they invest as defendants.

51. In three of these cases, the request for holding the Reference Shareholders liable for the claims was expressly rejected[24]; the main reasons for denying the request were (a) lack of evidence that the Reference Shareholders committed any unlawful act or violated Americanas' bylaws; (b) lack of evidence that Americanas' assets are not sufficient to cover these specific labor claims; (c) lack of evidence that the Reference Shareholders' investment vehicles or other companies in which they invest have any relation to Americanas.

52. To date, there have been no decisions finding that the Reference Shareholders are responsible for any of Americanas' labor debts arising out of or in connection with the accounting inconsistencies or any other facts revealed in the Material Fact.

## VI.    THE REFERENCE SHAREHOLDERS' COMMITMENT TO RESCUE AMERICANAS

---

[22]   Case n. 0000086-64.2023.5.10.0000/TRT-10. This document can be made available upon request.
[23]   This document can be made available upon request.
[24]   Case n.  0000784-43.2022.5.08.0006/TRT-8,  0000217-36.2023.5.08.0019/TRT-8,  0000253-08.2022.5.05.0016/TRT-8. These documents can be made available upon request.

53. The Reference Shareholders are committed to support Americanas' debt restructuring.

54. Even before signing the PSA, the Reference Shareholders publicly disclosed their intention to inject new capital in the company, having funded its debtor-in-possession financing of approximately US$ 303 million[25]. This financing permitted Americanas to continue its economic activity throughout the year, and funded Americanas' request to the RJ Judge to ensure that all employees and small creditors get immediately paid in full[26].

55. Since providing that financing, the Reference Shareholders have participated in negotiations with Americanas' largest creditors in order to reach a long-term solution.

56. In the PSA, the Reference Shareholders also assumed obligations to, under the conditions set forth therein, fund another debtor-in-possession financing, of approximately US$ 710.9 million[27], as well as to fund a capital increase. In total, if the plan is approved in the general meeting of creditors scheduled for December 19, 2023, their contribution will amount to US$ 2.43 billion[28].

## VII.    ONGOING INVESTIGATIONS

### A.  The Parliamentary Committee of Inquiry

57. On April 26, 2023, the Brazilian Congress formed a Parliamentary Committee of Inquiry ("CPI") to investigate Americanas' accounting inconsistencies.  The CPI heard 16 specialists and 9 witnesses, including Sérgio Rial and Andre Covre,

---

[25] Originally R$ 1,5 billion, converted by the exchange rate of December 1, 2023.
[26] The request was initially granted, and an expressive part of employers and small suppliers was fully paid. In response to a request from one of the banks, a court decision suspended payments before the general meeting of creditors.
[27] Originally R$ 3,5 billion, converted by the exchange rate of December 1, 2023.
[28] Originally R$ 12 billion, converted by the exchange rate of December 1, 2023.

respectively the former CEO and CFO of Americana's who uncovered the accounting inconsistencies, as well as Leonardo Pereira, Americanas' current CEO.

58. On June 13, 2023, Mr. Pereira gave a presentation to the CPI outlining concrete evidence that the Independent Committee gathered and shared with Americanas during its investigations. The evidence indicated that the accounting inconsistencies were orchestrated by Miguel Gutierrez, the Company's former CEO, and six other former executives. In his presentation, Mr. Pereira presented, for example, emails and WhatsApp exchanges between the former executives demonstrating that Americanas' executives even prepared two versions of Americanas' financial statements. The first version was labeled "internal" and showed that Americanas had in 2021 a R$733 million financial loss. The second version was labeled "board of directors," and showed a R$2.8 billion profit in the same period. The Reference Shareholders only received the version that showed that Americanas was profitable. The presentation included internal Whatsapp conversations between the former executives demonstrating that they were aware of the company's real financial situation and discussed that Americanas' real leverage "could not be disclosed to the board or to the market," and that doing so would result in "sudden death." In other words, the evidence showed that there was a sophisticated scheme in place to hide the accounting inconsistencies from the governance structures that the Reference Shareholders had put in place. Following Mr. Pereira's presentation, which is attached hereto as **Exhibit 4**, Americanas released a material fact to the market identifying Gutierrez and the six former executives as the architects of the fraud.

59. Carla Bellangero, a partner at KPMG, also testified before the CPI on August 1, 2023. A testimony of her transcript is publicly available. Neither the transcript of her

testimony, nor the article Mr. Fidalgo cited as Exhibit I to his declaration support the proposition that Ms. Bellangero testified that "the Board of Directors was aware of the Fraud since at least 2019." Mot. at 26. Instead, Ms. Bellangero's testimony and Exhibit I simply show that Ms. Bellangero's testified that KPMG identified and reported in 2017 and 2018 the existence of significant deficiencies in Americanas' internal controls. In addition to failing to provide any evidence that the identification of significant deficiencies was in fact reported to the Board, Ms. Bellangero states verbatim that "nothing, nothing indicated a fraud, no document suggested this situation of an intentional act. Therefore, in none of the years was it appropriate to issue a report with reservations, but rather a warning, in the main audit issues, about the deficiency in internal controls."

60. On August 22, 2023, Mr. Rial testified before the CPI. In his sworn testimony before the CPI, Mr. Rial—who was an outside hire to Americanas' CEO position in January 1, 2023—stated that there was no evidence of the involvement of the Reference Shareholders in the accounting issues.

61. On September 4, 2023, the CPI disclosed its final report. The report concluded that it was not possible to define "in a precise way the authorship of the identified facts, nor to attribute criminal, civil or administrative responsibility to determined people or institutions". The CPI did not recommend any charges against the Reference Shareholders.

62. Mr. Gutierrez had been subpoenaed to testify in the CPI. Mr. Gutierrez's testimony was scheduled for August 1, 2023. However, Mr. Gutierrez requested that the Brazilian Supreme Court excuse him from testifying on the grounds that the scope of his requested testimony encompassed matters over which he has a constitutional right

to remain silent.[29]  The Brazilian Supreme Court partially denied Mr. Gutierrez's request, and held that Mr. Gutierrez was required to appear in the CPI, although he had the right to remain silent in response to questioning.[30] Notwithstanding this decision, Mr. Gutierrez did not testify in person, claiming to have been affected by health issues on a trip to Spain. Instead, Mr. Gutierrez submitted a letter underlying his version of the events leading to the accounting inconsistencies. Dkt. 42-13. Mr Gutierrez's letter did not include any evidence that the Reference Shareholders were aware of the accounting inconsistencies, and did not rebut any of the evidence presented by Mr. Pereira on June 13, 2023.

63. On September 27, 2023, the CPI issued an amended report in which it considered and rejected Gutierrez's letter. **Exhibit 6**.[31] The amended final report noted that Gutierrez failed to add any new evidence to the CPI's records and that Gutierrez's letter did not change the outcome of the CPI.  The CPI was concluded on that same date.

## B.  The CVM Investigations

64. There are also investigations conducted by CVM (the Brazilian Securities and Exchange Commission), with the collection of documents and hearing of witnesses. To this moment, there are no formal accusations against the investigated parties regarding the accounting inconsistencies.

## C.  Americanas' Independent Committee

65. Several measures were undertaken within Americanas to preserve data of relevant people related to the investigated facts. About 200 Gigabytes of data have been processed and shared for later analysis of the Independent Committee. The Committee

---

[29] This document can be made available upon request.
[30] This document can be made available upon request.
[31] A full translation of the CPI final report can be made available upon request.

has also been conducting interviews with employees and former employees of Americanas. Despite having given Americanas access to 600 pieces of evidence that it considered relevant in the course of its investigations, which served as the basis for the presentation made by Americanas' current CEO to the CPI, the Committee has not yet issued any report of its conclusions, and their work is still ongoing. There is no estimate as to when it will be concluded.

### D.  The Brazilian Public Prosecutor's Office Investigations

66. Regarding the investigations conducted by the Brazilian Public Prosecutor's Office, two plea bargains were signed by former executives of Americanas. The documents are still under seal, but some details have been reported by the press, mainly focusing on Mr. Gutierrez, Americanas' former CEO, and other former executives of his team, as participants in the fraud that led to the accounting inconsistencies[32].

### VIII.    INFORMATION ABOUT DIVIDENDS ARE PUBLIC IN BRAZIL

67. Notwithstanding Sablon's request for information about the dividends Cedar Trade received from Americanas, this information can be readily obtained from publicly available sources.

68. According to Americanas' bylaws, authorization for the payment of dividends (or interest in equity, "juros sobre capital próprio") is attributed to the Board of Directors,

---

[32] O Globo, "Justiça do Rio homologa delação de dois ex-executivos da Americanas, que miram o mesmo alvo", 08.09.2023; available on https://oglobo.globo.com/blogs/malu-gaspar/post/2023/08/justica-do-rio-homologa-delacao-de-dois-ex-executivos-da-americanas-que-miram-o-mesmo-alvo.ghtml.          Valor Econômico, "Justiça homologa delação premiada de ex -executivos da Americanas, diz jornal", 15.08.2023; available on https://valor.globo.com/empresas/noticia/2023/08/15/justica-homologa-delacao-premiada-de-ex-executivos-da-americanas-diz-jornal.ghtml. O Globo, "As delações das Americanas, os diretores implicados nela e o esquema de sigilo das fraudes"; available on https://oglobo.globo.com/blogs/lauro-jardim/post/2023/08/as-delacoes-da-americanas-os-diretores-implicados-nela-e-o-esquema-de-sigilo-das-fraudes.ghtml. Valor Econômico, "Delações da Americanas implicam diretamente Miguel Gutierrez e ex-diretores,           diz           jornal",           16.08.2023;           available           on https://valor.globo.com/empresas/noticia/2023/08/16/delaes-da-americanas-implicam-diretamente-miguel-gutierrez-e-ex-diretores-diz-jornal.ghtml.

whose meetings are formalized in minutes made available on the company's website. They can also be found at CVM's website or at B3's (Brazilian stock exchange) website. Therefore, the amount of dividends paid per share is publicly available, so there is no need for discovery.

69. As a second step, the number of shares held by major shareholders (such as Cedar) is also public and can be found in Americanas' periodic filings before CVM, such as *Formulário Eletrônico de Referência* (Electronic Reference Form), and *Valores Mobiliários negociados e detidos* (consolidated data on negotiated and held securities). Processed data can be obtained from paid (although widely available) services, such as Economatica[33].

70. For that reason, it should suffice to multiply the amount of shares held by the dividends paid for each individual share.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in São Paulo, Brazil, on December 5th, 2023.

**MARINA GAENSLY BLATTNER**

**OAB/SP 229.618-A**

---

[33] A data mining platform focused on Brazilian and American publicly traded companies, with inputs from official sources, such as CVM, B3, and ANBIMA (Associação Brasileira das Entidades dos Mercados Financeiro e de Capitais).

**Annex A**

Resume

# MARINA GAENSLY BLATTNER

Av. Pres. Juscelino Kubitschek, 510, 8º floor, 04543-000, São Paulo, Brazil
Phone number: +55(11)3074-6000– E-mail: marina@wald.com.br

## PROFISSIONAL EXPERIENCE

**WALD, ANTUNES, VITA E BLATTNER ADVOGADOS**                    2004 – present
Partner

**LUÍS ROBERTO BARROSO & ASSOCIADOS**                    June 1997 – April 2003
Associate

## EDUCATION

**The London School of Economics and Political Science**
Master of Laws – LLM

**Faculdade de Direito da Universidade do Estado do Rio de Janeiro**
Master's Degree

**Faculdade de Direito da Universidade do Estado do Rio de Janeiro**
Bachelor's Degree

**Harvard University –** United States, USA
Advanced Mediation: Mediating Complex Disputes

## PUBLICATIONS

**An Example of the Application of the Law on Repetitive Appeals.** Published in Revista de Direito Bancário e do Mercado de Capitais, vol. 46, p. 317-319, out./dez. 2009. Em coautoria com Arnoldo Wald.

**Swap Contracts:** Bilateral and Signaling Character. Brazilian Central Bank Intervention in the Respondent Financial Institution. Material and Legal Impossibility for the Financial Institution under Intervention to Fulfill its Obligations. Anticipated Default. Resolution. Breach of Reciprocity Inherent in the Swap Contract. Loss of Object. Analogous Application of Express Contractual Resolutive Clause. Adhesion Contract. Principle of Isonomy. Contractual Balance. Unenforceability of Any Benefit from the Date of Termination. Unfulfilled Contract Exception. Published in Revista de Direito Bancário e do Mercado de Capitais, vol. 28, p. 309-320, abr./jun. 2005 | Em coautoria com Arnoldo Wald Filho e Mariana Antunes Tavares.

**Corporate Restructuring Operation of Grupo Ipiranga:** Merger of Shares by Ultrapar and Subsequent Segregation of Assets between Ultrapar, Braskem and Petrobras. Exchange of Shares of the Shareholders of the Companies of Grupo Ipiranga for Shares of Ultrapar, a Public Company with Great Liquidity and Recognized Corporate Governance. Interlocutory Appeal with Suspensive Effect Request. Published in Revista de Direito Bancário e do Mercado de Capitais, vol. 40, p. 369-386, abr./jun. 2008. Em coautoria com Arnoldo Wald, Alexandre de M. Wald e Mariana Tavares Antunes.

**Personal Loan. Bank credit bill.** *Back to back operations.* **Answer presented on revocation actions**. Published in Revista de Direito Bancário e do Mercado de Capitais, vol. 41, p. 364, jul. 2008. Em coautoria com Arnoldo Wald, Alexandre de M. Wald e Mariana Tavares Antunes.

**Highway Concessions and the Principles of the Supremacy of the Public Interest, Affordability and the Economic and Financial Balance of the Contract.** Published in Revista dos Tribunais, vol. 877, p. 11-26, nov. 2008. Em coautoria com Arnoldo Wald.

**Arbitral Proceedings with Public Authorities**. In: Arnoldo Wald, Riccardo Giuliano Figueira Torre & Letícia Zuccolo Paschoal da Costa Daniel (Coords.). Os Desafios da Modernização da Arbitragem e da Mediação no Século XXI. São Paulo: Quartier Latin, 2023. Em coautoria com Felipe Fernandes dos Santos.

**Class arbitration in the United Kingdom**. In: Arnoldo Wald, Riccardo Giuliano Figueira Torre & Letícia Zuccolo Paschoal da Costa Daniel (Coords.). Os Desafios da Modernização da Arbitragem e da Mediação no Século XXI. São Paulo: Quartier Latin, 2023.

**The right to maintain tender conditions in oil and natural gas concessions.** In: COELHO, Fábio Ulhoa; TEPEDINO, Gustavo; LEMES, Selma Ferreira (Coord.). A evolução do Direito no século XXI. Seus princípios e valores (ESG, Liberdade, Regulação, Igualdade e Segurança Jurídica). Homenagem ao Professor Arnoldo Wald. São Paulo: Editora IASP, 2022. Em coautoria com Mariana Tavares Antunes.