**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| *In re:* | |
| *Americanas S.A. et al.,*[1] | Case No. 23-10092 (MEW) |
|  | Chapter 15 |
|  | (Jointly Administered) |
| **Debtors in a Foreign Proceeding** | |

**DECLARATION OF JOSÉ ALEXANDRE TAVARES GUERREIRO**

## I.     INTRODUCTION

I, José Alexandre Tavares Guerreiro, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States as follows:

1.     I submit this declaration in support of LTS Trading Company LLC's ("**LTS**"), and Cedar Trade LLC's ("**Cedar Trade**" and, together with LTS, the "**Reference Shareholders**") objection to Sablon Partners Ltd.'s ("**Sablon**") Motion For Entry Of An Order Pursuant To Bankruptcy Rule 2004 Authorizing The Examination Of Debtors Americanas And B2W Digital And Third Parties (ECF No. 28) (the "**Motion**").

2.     All of the facts set forth herein are based on my personal knowledge and review of the relevant documents.

## II.     PROFESSIONAL BACKGROUND

3.     I have been admitted to the Bar Association of Brazil, São Paulo Section, since 1968.  My professional activity is focused on Private Law, with an emphasis on Corporate Law,

---

[1]     According to the Foreign Representative for the debtors in these chapter 15 cases, those debtors, along with the last four digits of each debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Americanas S.A. (06-60-Brazil); JSM Global S.a.r.l (5670 – Grand Duchy of Luxemberg); and B2W Digital Lux S.a.r.l. (8659-Grand Duchy of Luxemberg).

Securities Market Regulation, Contract Law, Arbitration and Bankruptcy Law.  Currently, I am a partner at the law firm Tavares Guerreiro Advogados, and act as a legal consulting and expert.  I also act as arbitrator in arbitration proceedings.

4.    From 1970 to 1977, I acted as in-house counsel to Ford Motor Brazil.  Since 1982, I have been a partner to Tavares Guerreiro Advogados.

5.    I am currently a Senior Professor of Commercial Law (Business and Corporate Law) at the University of São Paulo.  I taught courses at the graduate and level and currently I teach courses at the post-graduate level at the same University.

6.    I earned my law degree, master's degree, and doctorate degree at the University of São Paulo Law School.

7.    I am the author of law books on corporate and arbitration matters, including "*Regime Jurídico do Capital Autorizado*" (1984); "*Fundamentos da Arbitragem do Comércio Internacional*" (1993).  I am the co-author of a standard two-volume treatise on Brazilian corporate law, titled "*Sociedades Anônimas no Direito Brasileiro*", written together with Egberto Lacerda Teixeira (1979).  I am the author of articles and essays in various law reviews and collective works.

8.    I have attached a copy of my CV as published in the "Plataforma Lattes".

### III.    SUMMARY OF DECLARATION

9.    I have been asked to review Sablon's Motion and the Fidalgo declaration attached thereto, and to testify regarding three topics: (1) Whether the Rule 2004 Discovery can be used in the foreign main proceeding, which is a *recuperação judicial* proceeding ("**Judicial Reorganization**" or "**RJ**"); (2) Whether the brazilian bankruptcy court (the "**Bankruptcy Court**") responsible for the RJ proceeding (the "**RJ Court**") has the authority to grant the discovery Sablon is seeking, or whether Sablon would need to seek such discovery in collateral civil suits in Brazil;

and (3) Whether Sablon has standing to bring the alleged potential actions available to creditors within the Fidalgo declaration, and whether Sablon can state a claim for any of those potential actions.

10.     First, Section A of my analysis explains the legal framework of a judicial restructuring proceeding under Brazilian law, and describes the types of restructuring and bankruptcy proceedings available to debtors.  After providing the legal framework, I explain that because the foreign main proceeding in this case is an *recuperação judicial* ("**Judicial Reorganization**" or "**RJ**")  proceeding rather than a *falência* proceeding, (i) Sablon cannot use the Rule 2004 discovery in that proceeding, (ii) the RJ Court is not the proper forum for litigating potential liability of the Reference Shareholders, and (iii) Sablon cannot introduce evidence within that proceeding.

11.     Second, Section B of my analysis explains that due to the limitations set forth above, the RJ court does not have authority to grant the discovery Sablon is seeking within that proceeding.  However, the discovery Sablon is seeking is available to it through separate civil proceedings that it could have initiated in Brazil, just as many other creditors have.

12.     Third, Section C of my analysis provides an assessment of the four categories of claims Sablon alleges are available to creditors under Brazilian law: (i) claims to pierce the corporate veil, (ii) claims to recoup losses from controlling shareholders' abuse of power under Article 117 of the Brazilian Corporate Law, (iii) claims to recoup losses from managers and administrators under Article 159 of the Brazilian Corporate Law, and (iv) actions to avoid fraudulent transfers.  I explain that Sablon, as a creditor, does not have standing to bring claims to recoup losses from controlling shareholders or from managers and administrators under Articles 117 and 159 of the Brazilian Corporate Law, because those claims are available only to the

3

corporation itself, or its shareholders through a derivative action.  However, those claims are not available to creditors.  Additionally, I explain that, in any event, Sablon cannot state a claim for any of the four categories of actions it asserts are available.

IV.    **ANALYSIS**

> A.  **Legal Framework of a Judicial Restructuring Proceeding under Brazilian law**

13.    The primary question on which my opinion is being provided is whether a discovery proceeding under Rule 2004 sought by Sablon would result in the production of evidence that could be introduced in an RJ proceeding in Brazil.

14.    There are two types of bankruptcy proceedings in Brazil: *recuperação judicial* (RJ) proceedings, and *falência* proceedings. Pursuant to Federal Law No. 11.101 of February 9, 2005 (as modified, the "**Brazilian Bankruptcy Law**" or, hereinafter, simply "**LRF**"), a creditor cannot commence a discovery proceeding to establish the liability of the debtor and of the debtor's shareholders in the context of a RJ proceeding before the RJ Court.

15.    This is because an RJ proceeding does not provide for liquidation of the assets, displacement of the debtor, or investigation on the origins of the crisis, which are features of a *falência* proceeding under Brazilian law.  The RJ proceeding and the *falência* proceeding are totally different, despite the fact that both are governed by the same Brazilian Bankruptcy Law. Measures aimed at investigating the reasons for the crisis of a debtor could be part of a *falência* proceeding in Brazil but not of an RJ proceeding.

16.    There are fundamental differences between the RJ proceeding and the *falência* proceeding with respect to (i) the ability to initiate each of these proceedings, (ii) the outcome arising from each of them; and (iii) the power of the debtor to dispose of its assets and continue its activities under the RJ proceeding and under the *falência* proceeding.  The differences between

these proceedings are consistent with the different scope of the investigation into the origins of the crisis conducted under the RJ Court oversight in a RJ proceeding and in a *falência* proceeding.

*i.    Ability to initiate the RJ proceeding and debtors subject to the proceeding*

17.    The RJ proceeding can only be initiated by a debtor in crisis (LRF, art. 48, *caput*[2]), not by its creditors.  Moreover, the Brazilian Bankruptcy Law is applicable to all entrepreneur debtors (LRF, art. 1[3]), but not all entrepreneur debtors can avail themselves of the RJ proceeding. Only entrepreneur debtors that meet specific requirements provided for by the law, such as, for instance, the exercise of activities for at least two (2) years can initiate a RJ proceeding (LRF, art. 48[4]).  The RJ proceeding is thus voluntary and can only be initiated by some debtors.

18.    In contrast, the *falência* proceeding can be initiated not only by the debtor, but also (and this is of paramount importance) by its creditors (LRF, art. 97[5]).  The *falência* proceeding is

---

[2] <u>Free translation into English</u>: "LRF, Art. 48. A debtor may petition for a judicial reorganization if, at the time of the petition, the debtor has been regularly carrying out business activities for more than two (2) years and meets the following requirements, cumulatively: […]"
<u>Original text in Portuguese</u>: "LRF, Art. 48. Poderá requerer recuperação judicial o devedor que, no momento do pedido, exerça regularmente suas atividades há mais de 2 (dois) anos e que atenda aos seguintes requisitos, cumulativamente: […]"

[3] <u>Free translation into English</u>: "LRF, Art. 1. This Law governs the judicial reorganization, the out-of-court reorganization and the bankruptcy of entrepreneurs and business companies, hereinafter referred to simply as debtors."
<u>Original text in Portuguese</u>: "LRF, Art. 1º Esta Lei disciplina a recuperação judicial, a recuperação extrajudicial e a falência do empresário e da sociedade empresária, doravante referidos simplesmente como devedor."

[4] <u>Free translation into English</u>: "LRF, Art. 48. A debtor may petition for a judicial reorganization if, at the time of the petition, the debtor has been regularly carrying out business activities for more than two (2) years and meets the following requirements, cumulatively: I - the debtor is not bankrupt and, if he is, the resulting liabilities have been declared extinct by a final and unappealable judgment; II - the debtor has not been granted judicial reorganization for less than five (5) years; III - the debtor has not been granted judicial reorganization for less than five (5) years based on the special plan referred to in Section V of this Chapter; IV - the debtor has not been convicted or does not have, as a manager or a controlling shareholder, a person convicted of any of the crimes provided for in this Law."
<u>Original text in Portuguese</u>: "LRF, Art. 48. Poderá requerer recuperação judicial o devedor que, no momento do pedido, exerça regularmente suas atividades há mais de 2 (dois) anos e que atenda aos seguintes requisitos, cumulativamente: I – não ser falido e, se o foi, estejam declaradas extintas, por sentença transitada em julgado, as responsabilidades daí decorrentes; II – não ter, há menos de 5 (cinco) anos, obtido concessão de recuperação judicial; III - não ter, há menos de 5 (cinco) anos, obtido concessão de recuperação judicial com base no plano especial de que trata a Seção V deste Capítulo; IV – não ter sido condenado ou não ter, como administrador ou sócio controlador, pessoa condenada por qualquer dos crimes previstos nesta Lei."

[5] <u>Free translation into English</u>: "LRF, Art. 97. The following may file for the debtor's bankruptcy: I - the debtor himself, pursuant to the provisions of Arts. 105 to 107 hereof; II - the surviving spouse, any heir of the debtor or the executor of the estate; III - the debtor's shareholder or stockholder pursuant to the law or the company's articles of incorporation; IV - any creditor."

also not restricted to some categories of debtors, since all entrepreneur debtors are subject to the *falência* proceeding (LRF, art. 1[6]). The *falência* proceeding is thus not strictly voluntary to the debtor (it can be initiated by the creditors against the will of the debtor) and all entrepreneur debtors are subject to it.

ii.     *Objective of each proceeding*

19.     The RJ proceeding is structured to promote a rapid negotiation between the debtor and its creditors with the aim of approving new conditions for the debts (LRF, art. 50, I[7]) or other measures accepted by the creditors such as the conversion of debt into share capital (LRF, art. 50, XVII[8]).

20.     In the RJ proceeding, the debtor must submit the proposal of a judicial reorganization plan (the "**RJ Plan**") within sixty (60) days of the publication of the decision

---

Original text in Portuguese: "LRF, Art. 97. Podem requerer a falência do devedor: I – o próprio devedor, na forma do disposto nos arts. 105 a 107 desta Lei; II – o cônjuge sobrevivente, qualquer herdeiro do devedor ou o inventariante; III – o cotista ou o acionista do devedor na forma da lei ou do ato constitutivo da sociedade; IV – qualquer credor."

[6] Free translation into English: "LRF, Art. 1. This Law governs the judicial reorganization, the out-of-court reorganization and the bankruptcy of entrepreneurs and business companies, hereinafter referred to simply as debtors."
Original text in Portuguese: "LRF, Art. 1º Esta Lei disciplina a recuperação judicial, a recuperação extrajudicial e a falência do empresário e da sociedade empresária, doravante referidos simplesmente como devedor."

[7] Free translation into English: "LRF, Art. 50. The following, among others, constitute means of judicial reorganization, with due regard for the relevant legislation in each case: I - granting of special terms and conditions for payment of matured or maturing obligations. […]"
Original text in Portuguese: "LRF, Art. 50. Constituem meios de recuperação judicial, observada a legislação pertinente a cada caso, dentre outros: […] I – concessão de prazos e condições especiais para pagamento das obrigações vencidas ou vincendas. […]"

[8] Free translation into English: "LRF, Art. 50. The following, among others, constitute means of judicial reorganization, with due regard for the relevant legislation in each case: […] XVII - conversion of debt into share capital;"
Original text in Portuguese: "LRF, Art. 50. Constituem meios de recuperação judicial, observada a legislação pertinente a cada caso, dentre outros: XVII - conversão de dívida em capital social;"

accepting the beginning of the RJ proceeding (LRF, art. 53[9]).  If the debtor fails to submit a RJ

Plan, the RJ proceeding is converted into a Bankruptcy proceeding (LRF, art. 73, II[10]).

21.     The RJ Plan can regulate the order of payment of the creditors without following a

strict hierarchy among the creditors, i.e., in an RJ Plan senior creditors (as per their ranking in a

Bankruptcy proceeding set forth by LRF, art. 83[11]) will not necessarily receive payment in full

before junior creditors.

22.     If an RJ Plan is proposed, creditors can oppose the approval of the plan within thirty

(30) days (LRF, art. 55[12]).  If there is an opposition to the approval of the RJ Plan by any creditor,

a general meeting of creditors (the "**General Creditors' Meeting**") shall be convened to vote on

the RJ Plan proposed by the debtor (LRF, art. 56[13]).  Absent extensions, the date set for the General

Creditors' Meeting shall not exceed 150 (one hundred fifty) days from the decision that allows the

beginning of the RJ proceeding (LRF, art. 56, §1º[14]).

---

[9] Free translation into English: "LRF, Art. 53: The reorganization plan shall be submitted by the debtor to the court within a maximum period of 60 (sixty) days from the publication of the decision granting the judicial reorganization, under penalty of it being converted into bankruptcy, and shall set forth: […]"
Original text in Portuguese: "LRF, Art. 53. O plano de recuperação será apresentado pelo devedor em juízo no prazo improrrogável de 60 (sessenta) dias da publicação da decisão que deferir o processamento da recuperação judicial, sob pena de convolação em falência, e deverá conter: […]"
[10] Free translation into English: "LRF, Art. 73: The court shall decree the bankruptcy during the judicial reorganization process: […] II - by the debtor's failure to submit the reorganization plan within the period provided for in Art. 53 hereof;"
Original text in Portugue: "LRF, Art. 73. O juiz decretará a falência durante o processo de recuperação judicial: [...] II – pela não apresentação, pelo devedor, do plano de recuperação no prazo do art. 53 desta Lei;"
[11] Free translation into English: "LRF, Art. 83: The classification of claims in bankruptcy shall follow the order below: […]"
Original text in Portuguese: "LRF, Art. 83. A classificação dos créditos na falência obedece à seguinte ordem: […]"
[12] Free translation into English: "LRF, Art. 55: Any creditor may oppose to the judicial reorganization plan before the court within 30 (thirty) days of the publication of the list of creditors referred to in § 2 of Art. 7 of this Law."
Original text in Portuguese: "LRF, Art. 55. Qualquer credor poderá manifestar ao juiz sua objeção ao plano de recuperação judicial no prazo de 30 (trinta) dias contado da publicação da relação de credores de que trata o § 2º do art. 7º desta Lei."
[13] Free translation into English: "LRF, Art. 56. If any creditor opposes the judicial reorganization plan, the court will call a general meeting of creditors to decide on the reorganization plan."
Original text in Portuguese: "LRF, Art. 56. Havendo objeção de qualquer credor ao plano de recuperação judicial, o juiz convocará a assembléia-geral de credores para deliberar sobre o plano de recuperação."
[14] Free translation into English: "LRF, Art. 56. If any creditor opposes the judicial reorganization plan, the court will call a general meeting of creditors to decide on the reorganization plan. §1. The date set for the general meeting shall not exceed 150 (one hundred and fifty) days from the granting of the judicial reorganization."

23.     In the General Creditors' Meeting, an RJ Plan will be approved, rejected, or modified (LRF, art. 35, I, "a"[15]).  If the RJ Plan is rejected by the majority of the creditors, the creditors in the General Creditors' Meeting may approve a period of 30 (thirty) days for the creditors to submit an alternative RJ Plan. If the RJ Plan proposed by the debtor or by the creditors is then rejected or if there is no granting of a period of 30 (thirty) additional days for the submission of a new RJ Plan by creditors, the RJ Court shall convert the RJ proceeding into a *falência* proceeding (LRF, art. 58-A[16]).

24.     The whole negotiation of an RJ Plan should take 180 (one hundred and eighty) days, which is also the period during which the Brazilian Bankruptcy Law establishes an automatic stay protection (LRF, art. 6, I to III and §4[17]).

---

Original text in Portuguese: "LRF, Art. 56. Havendo objeção de qualquer credor ao plano de recuperação judicial, o juiz convocará a assembléia-geral de credores para deliberar sobre o plano de recuperação. § 1º A data designada para a realização da assembléia-geral não excederá 150 (cento e cinqüenta) dias contados do deferimento do processamento da recuperação judicial."

[15] Free translation into English: "LRF, Art. 35: The General Creditors' Meeting has the power to decide upon: I - in judicial reorganization: a) approval, rejection or amendment of the judicial reorganization plan submitted by the debtor; […]"
Original text in Portuguese: "LRF, Art. 35. A assembléia-geral de credores terá por atribuições deliberar sobre: I – na recuperação judicial: a) aprovação, rejeição ou modificação do plano de recuperação judicial apresentado pelo devedor; […]"

[16] Free translation into English: "LRF, Article 58-A. If the reorganization plan submitted by the debtor or the creditors is rejected and the requirements set forth in Paragraph 1 of Article 58 of this Law are not met, the court shall convert the judicial reorganization into bankruptcy."
Original text in Portuguese: "LRF, Art. 58-A. Rejeitado o plano de recuperação proposto pelo devedor ou pelos credores e não preenchidos os requisitos estabelecidos no § 1º do art. 58 desta Lei, o juiz convolará a recuperação judicial em falência."

[17] Free translation into English: "LRF, Art. 6. The decree of bankruptcy or the granting of judicial reorganization shall lead to: I - suspension of the running of the statute of limitations on the debtor's obligations that are subject to the provisions of this Law; II - suspension of any executions filed against the debtor, including those of the private creditors of the joint partner, relating to claims or obligations subject to judicial reorganization or bankruptcy; III - prohibition of any form of retention, seizure, attachment, garnishment, search and seizure and judicial or extrajudicial constriction on the debtor's assets, arising from judicial or extrajudicial claims whose claims or obligations are subject to judicial reorganization or bankruptcy. [...] §4. In a judicial reorganization, the suspensions and prohibitions referred to in items I, II and III of the main body of this article shall last for a period of 180 (one hundred and eighty) days, as from the granting of the reorganization, extendable for an equal period, once only, on an exceptional basis, provided that the debtor has not contributed to the exceeding of the time limit."
Original text in Portuguese: "LRF, Art. 6º A decretação da falência ou o deferimento do processamento da recuperação judicial implica: I - suspensão do curso da prescrição das obrigações do devedor sujeitas ao regime desta Lei; II - suspensão das execuções ajuizadas contra o devedor, inclusive daquelas dos credores particulares do sócio solidário, relativas a créditos ou obrigações sujeitos à recuperação judicial ou à falência; III - proibição de qualquer forma de retenção, arresto, penhora, sequestro, busca e apreensão e constrição judicial ou extrajudicial sobre os bens do devedor,

25.    A *falência* proceeding, in contrast, is aimed at promoting a liquidation of the enterprise (LRF, art. 75, II[18]) through the removal of the debtor from the management of its activities (LRF, art. 75, *caput*[19]). An *administrador judicial* (the "**Trustee**") is appointed by the Bankruptcy Court in the *falência* proceeding to replace the debtor with the power to (i) undertake all acts to seize the debtor's assets and documents (LRF, art. 22, III, "f"[20]), (ii) proceed with the sale of all the assets of the bankrupt estate within a maximum of 180 (one hundred and eighty)

---

oriunda de demandas judiciais ou extrajudiciais cujos créditos ou obrigações sujeitem-se à recuperação judicial ou à falência. [...] § 4º Na recuperação judicial, as suspensões e a proibição de que tratam os incisos I, II e III do **caput** deste artigo perdurarão pelo prazo de 180 (cento e oitenta) dias, contado do deferimento do processamento da recuperação, prorrogável por igual período, uma única vez, em caráter excepcional, desde que o devedor não haja concorrido com a superação do lapso temporal."

[18] <u>Free translation into English</u>: "LRF, Art. 75: Bankruptcy, by removing the debtor from its activities, aims to: [...] II - allow the rapid liquidation of unviable companies, in order to efficiently reallocate resources in the economy; and [...]"

<u>Original text in Portuguese</u>: "LRF, Art. 75. A falência, ao promover o afastamento do devedor de suas atividades, visa a: [...] II - permitir a liquidação célere das empresas inviáveis, com vistas à realocação eficiente de recursos na economia; e [...]"

[19] <u>Free translation into English</u>: "LRF, Art. 75: Bankruptcy, by removing the debtor from its activities, aims to:"

<u>Original text in Portuguese</u>: "LRF, Art. 75. A falência, ao promover o afastamento do devedor de suas atividades, visa a:"

[20] <u>Free translation into English</u>: "LRF, Art. 22: It shall be the trustee's duty, under the control of the court and the creditors' committee, in addition to other duties imposed by this Law: [...] III - in bankruptcy: [...] f) to seize the debtor's assets and documents and prepare the bill of seizure, pursuant to arts. 108 and 110 hereof;"

<u>Original text in Portuguese</u>: "LRF, Art. 22. Ao administrador judicial compete, sob a fiscalização do juiz e do Comitê, além de outros deveres que esta Lei lhe impõe: [...] III – na falência: [...] f) arrecadar os bens e documentos do devedor e elaborar o auto de arrecadação, nos termos dos arts. 108 e 110 desta Lei;"

days (LRF, art. 22, III, "j"[21] and art. 139[22] *et* ss), and (iii) pay the creditors (LRF, art. 22, III, "i"[23] and art. 149[24] *et* ss).

26.    In a *falência* proceeding, creditors are paid according to a strict hierarchy (LRF, art. 83[25]).

27.    An RJ proceeding is thus aimed at structuring a judicially overseen negotiation procedure while the *falência* proceeding is aimed at the liquidation of assets for the payment of the creditors.

   iii. *Debtor's power to dispose of its assets and continue its activities*

---

[21] <u>Free translation into English</u>: "LRF, Art. 22: It shall be the trustee's duty, under the control of the court and the creditors' committee, in addition to other duties imposed by this Law: […] III - in bankruptcy: […] j) undertake the sale of all the assets of the bankrupt estate within a maximum period of 180 (one hundred and eighty) days, counting from the date on which the record of collection is submitted, under penalty of removal from office, except in the event of justified impossibility, recognized by court decision;
<u>Original text in Portuguese</u>: "LRF, Art. 22. Ao administrador judicial compete, sob a fiscalização do juiz e do Comitê, além de outros deveres que esta Lei lhe impõe: […] III – na falência: […] j) proceder à venda de todos os bens da massa falida no prazo máximo de 180 (cento e oitenta) dias, contado da data da juntada do auto de arrecadação, sob pena de destituição, salvo por impossibilidade fundamentada, reconhecida por decisão judicial;"
[22] <u>Free translation into English</u>: LRF, Art. 139. As soon as the assets have been seized, with the respective record being submitted to the bankruptcy proceedings, the liquidation of the assets shall begin."
<u>Original text in Portuguese</u>: "LRF, Art. 139. Logo após a arrecadação dos bens, com a juntada do respectivo auto ao processo de falência, será iniciada a realização do ativo."
[23] <u>Free translation into English</u>: "LRF, Art. 22: It shall be the trustee's duty, under the control of the court and the creditors' committee, in addition to other duties imposed by this Law: […] III - in bankruptcy: […] i) undertake the acts necessary to liquidate the assets and pay the creditors;"
<u>Original text in Portuguese</u>: "LRF, Art. 22. Ao administrador judicial compete, sob a fiscalização do juiz e do Comitê, além de outros deveres que esta Lei lhe impõe: […] III – na falência: […] i) praticar os atos necessários à realização do ativo e ao pagamento dos credores;"
[24] <u>Free translation into English</u>: "LRF, Art. 149. Once the restitutions have been completed, the priority claims have been paid in accordance with Art. 84 hereof, and the general list of creditors has been consolidated, the amounts received from the liquidation of the assets shall be used to pay the creditors, in accordance with the classification provided for in Art. 83 of this Law, with due regard for the other provisions of this Law and the court decisions that determine the reservation of amounts."
<u>Original text in Portuguese</u>: "LRF, Art. 149. Realizadas as restituições, pagos os créditos extraconcursais, na forma do art. 84 desta Lei, e consolidado o quadro-geral de credores, as importâncias recebidas com a realização do ativo serão destinadas ao pagamento dos credores, atendendo à classificação prevista no art. 83 desta Lei, respeitados os demais dispositivos desta Lei e as decisões judiciais que determinam reserva de importâncias."
[25] <u>Free translation into English</u>: "LRF, Art. 83: The classification of claims in bankruptcy shall follow the order below:"
<u>Original text in Portuguese</u>: "LRF, Art. 83. A classificação dos créditos na falência obedece à seguinte ordem:"

28.     In an RJ proceeding the debtor remains in possession of its assets (LRF, art. 64, *caput*[26]) and can continue to manage its activities, since the objective of the RJ proceeding is to preserve the enterprise deemed to be viable (LRF, art. 47[27]).  If the debtor is a corporation, its management remains in place (LRF, art. 64, *caput*[28]).

29.     Since an RJ proceeding is a court-supervised proceeding, limits are imposed on the debtor's power to manage its assets freely.  The debtor cannot dispose of some assets without authorization by the RJ Court (LRF, art. 66, *caput*[29]) and its management personnel will be removed if they commit some determined acts set forth by the law (LRF, art. 64, sole paragraph[30]).

---

[26] Free translation into English: "LRF, Art. 64. Throughout the judicial reorganization proceeding, the debtor or its managers shall remain in charge of the business activity, under the oversight of the Committee, if any, and of the Trustee, unless any of them: […] "
Original text in Portuguese: "LRF, Art. 64. Durante o procedimento de recuperação judicial, o devedor ou seus administradores serão mantidos na condução da atividade empresarial, sob fiscalização do Comitê, se houver, e do administrador judicial, salvo se qualquer deles: […]"

[27] Free translation into English: "LRF, Art. 47: The purpose of judicial reorganization is to enable the debtor's economic and financial crisis to be overcome, in order to maintain the production source, the jobs of workers and the interests of creditors, thus promoting the preservation of the company, its social function and stimulating economic activity."
Original text in Portuguese: "LRF, Art. 47. A recuperação judicial tem por objetivo viabilizar a superação da situação de crise econômico-financeira do devedor, a fim de permitir a manutenção da fonte produtora, do emprego dos trabalhadores e dos interesses dos credores, promovendo, assim, a preservação da empresa, sua função social e o estímulo à atividade econômica."

[28] Free translation into English: "LRF, Art. 64. Throughout the judicial reorganization proceeding, the debtor or its managers shall remain in charge of the business activity, under the oversight of the Committee, if any, and of the Trustee, unless any of them: […] "
Original text in Portuguese: "LRF, Art. 64. Durante o procedimento de recuperação judicial, o devedor ou seus administradores serão mantidos na condução da atividade empresarial, sob fiscalização do Comitê, se houver, e do administrador judicial, salvo se qualquer deles: […]"

[29] Free translation into English: "LRF, Art. 66: After the request for judicial reorganization has been filed, the debtor may not sell or encumber assets or rights from its noncurrent assets, including for the purposes provided for in art. 67 of this Law, except with the approval of the court, after hearing the Committee of Creditors, if there is one, with the exception of assets or rights previously authorized in the judicial reorganization plan."
Original text in Portuguese: "LRF, Art. 66. Após a distribuição do pedido de recuperação judicial, o devedor não poderá alienar ou onerar bens ou direitos de seu ativo não circulante, inclusive para os fins previstos no art. 67 desta Lei, salvo mediante autorização do juiz, depois de ouvido o Comitê de Credores, se houver, com exceção daqueles previamente autorizados no plano de recuperação judicial."

[30] Free translation into English: "LRF, Article 64. Throughout the judicial reorganization proceeding, the debtor or its managers shall remain in charge of the business activity, under the oversight of the Committee, if any, and of the Trustee, unless any of them: [...] Sole Paragraph. If any of the hypotheses in the main section of this article is established, the court shall remove the manager, who shall be replaced in the manner established in the debtor's articles of association or in the judicial reorganization plan."
Original text in Portuguese: "LRF, Art. 64. Durante o procedimento de recuperação judicial, o devedor ou seus administradores serão mantidos na condução da atividade empresarial, sob fiscalização do Comitê, se houver, e do

In the RJ proceeding, a Trustee is appointed by the RJ Court. But the role of the Trustee in the RJ proceeding is not to replace the debtor. Instead, the Trustee monitors the activities of the debtor (LRF, art. 22, II, "a"[31]). The activities of the debtor are also monitored by the creditors' committee, if one is in place (LRF, art. 27, II, "a"[32]).

30.    In a *falência* proceeding the debtor loses the power to dispose of its assets. The Trustee seizes all assets and documents of the Bankruptcy estate (LRF, art. 108[33]). The provisional continuation of the debtor's activities is possible only under the authority of the Trustee and it is not the general rule, since it depends on approval by the *falência* Court (LRF, art. 99, XI[34]).

31.    The *falência* proceeding thus aims at seizing the debtor's assets, liquidating these assets, and paying creditors. The RJ proceeding allows the continuation of activities under the

---

administrador judicial, salvo se qualquer deles: [...] Parágrafo único. Verificada qualquer das hipóteses do **caput** deste artigo, o juiz destituirá o administrador, que será substituído na forma prevista nos atos constitutivos do devedor ou do plano de recuperação judicial."

[31] Free translation into English: "LRF, Art. 22: It shall be the trustee's duty, under the control of the court and the creditors' committee, in addition to other duties imposed by this Law: [...] II - in the judicial reorganization: a) to monitor the debtor's activities and compliance with the judicial reorganization plan;"
Original text in Portuguese: "LRF, Art. 22. Ao administrador judicial compete, sob a fiscalização do juiz e do Comitê, além de outros deveres que esta Lei lhe impõe: [...] II – na recuperação judicial: a) fiscalizar as atividades do devedor e o cumprimento do plano de recuperação judicial;"

[32] Free translation into English: "LRF, Art. 27: The Creditors' Committee shall have the following responsibilities, in addition to others provided for in this Law: [...] II - in judicial reorganization: [...] a) to monitor the management of the debtor's activities, presenting a report on its situation every 30 (thirty) days;"
Original text in Portuguese: "LRF, Art. 27. O Comitê de Credores terá as seguintes atribuições, além de outras previstas nesta Lei: [...] II – na recuperação judicial: [...] a) fiscalizar a administração das atividades do devedor, apresentando, a cada 30 (trinta) dias, relatório de sua situação;"

[33] Free translation into English: "LRF, Art. 108. As soon as the deed of commitment has been signed, the trustee shall collect the assets and documents and appraise the assets, separately or as a whole, at the place where they are located, requesting the necessary measures from the court for these purposes."
Original text in Portuguese: "LRF, Art. 108. Ato contínuo à assinatura do termo de compromisso, o administrador judicial efetuará a arrecadação dos bens e documentos e a avaliação dos bens, separadamente ou em bloco, no local em que se encontrem, requerendo ao juiz, para esses fins, as medidas necessárias."

[34] Free translation into English: "LRF, Art. 99. The ruling that declares the debtor bankrupt, among other determinations: [...] XI - shall rule on the provisional continuation of the bankrupt's activities under the authority of the trustee or on the sealing of premises, with due regard for the provisions of Art. 109 hereof;"
Original text in Portuguese: "LRF, Art. 99. A sentença que decretar a falência do devedor, dentre outras determinações: [...] XI – pronunciar-se-á a respeito da continuação provisória das atividades do falido com o administrador judicial ou da lacração dos estabelecimentos, observado o disposto no art. 109 desta Lei;"

authority of the debtor, allows the debtor to continue managing its assets, and allows the debtor to

negotiate with creditors.

> iv.    *Sablon cannot use the Rule 2004 Discovery in the RJ Proceeding.*

32.    Since an RJ proceeding and a *falência* proceeding are very different from one

another, the Brazilian Bankruptcy Law sets forth different rules in each proceeding regarding the

investigation of the origins of the crisis.

33.    In an RJ proceeding, the initial petition shall explain the causes of the debtor's

financial situation (LRF, art. 51, I[35]).  The RJ Court does not, however, investigate the origins of

the crisis in the RJ proceeding.

34.    In a *falência* proceeding, on the other hand, the court-appointed Trustee shall

submit a report on the causes and circumstances that led to the bankruptcy scenario within forty

(40) days, and the Trustee shall point out the liability (civil and criminal) of those involved (LRF,

art. 22, II, "h"[36]).  In the *falência* proceeding, the bankruptcy estate, represented by the Trustee,

can pursue the civil liability of managers, partners, or shareholders of the debtor entity (LRF, art.

---

[35] Free translation into English: " LRF, Art. 51: The initial petition for judicial reorganization shall be submitted together with: I - a presentation of the concrete causes of the debtor's financial situation and the reasons for the economic and financial crisis; […]"
Original text in Portuguese: "LRF, Art. 51. A petição inicial de recuperação judicial será instruída com: I – a exposição das causas concretas da situação patrimonial do devedor e das razões da crise econômico-financeira; […]"

[36] Free translation into English: "LRF, Art. 22: It shall be the trustee's duty, under the control of the court and the creditors' committee, in addition to other duties imposed by this Law: […] II - in the judicial reorganization: […] h) present a monthly report on the debtor's activities and a report on the judicial reorganization plan, to be filed with the case records and published at the specific electronic address, within a period of up to 15 (fifteen) days from the presentation of the plan, verifying the correctness and compliance of the information provided by the debtor, in addition to reporting any occurrence of any conduct provided for in Article 64 of this Law;"
Original text in Portuguese: "LRF, Art. 22. Ao administrador judicial compete, sob a fiscalização do juiz e do Comitê, além de outros deveres que esta Lei lhe impõe: [...] II – na recuperação judicial: [...] h) apresentar, para juntada aos autos, e publicar no endereço eletrônico específico relatório mensal das atividades do devedor e relatório sobre o plano de recuperação judicial, no prazo de até 15 (quinze) dias contado da apresentação do plano, fiscalizando a veracidade e a conformidade das informações prestadas pelo devedor, além de informar eventual ocorrência das condutas previstas no art. 64 desta Lei;"

82[37]), can seek to pierce the corporate veil to impose liability to third parties (LRF, art. 82-A[38]) and can declare that the debtor's past legal acts are considered ineffective (LRF, art. 129[39]) or revoked (LRF, art. 130[40]).

35.     One cannot intend to apply to RJ proceedings rules that are applicable only to *falência* proceedings, which is exactly what Sablon is trying to do. For instance, a creditor is not allowed to pursue within an RJ proceeding (i) an investigation on the origins of the crisis, (ii) measures to establish the civil or criminal liability of partners of the debtor or of its management, (iii) a claim to pierce the corporate veil, and (iv) the nullity or revocation of acts presumably or

---

[37] <u>Free translation into English</u>: "LRF, Art. 82. The personal liability of the limited partners, controlling shareholders and managers of the bankrupt corporation, as established in the respective laws, shall be established by the bankruptcy court itself, regardless of the liquidation of the assets and proof of their inability to cover the liabilities, in compliance with the ordinary procedure established in the Code of Civil Procedure."
<u>Original text in Portuguese</u>: "LRF, Art. 82. A responsabilidade pessoal dos sócios de responsabilidade limitada, dos controladores e dos administradores da sociedade falida, estabelecida nas respectivas leis, será apurada no próprio juízo da falência, independentemente da realização do ativo e da prova da sua insuficiência para cobrir o passivo, observado o procedimento ordinário previsto no Código de Processo Civil."

[38] <u>Free translation into English</u>: "LRF, Art. 82-A. The bankruptcy or its effects may not be extended, in whole or in part, to the limited partners, controlling shareholders and managers of the bankrupt company, but the piercing of the corporate veil may be admitted. Sole paragraph. The piercing of the bankrupt entity's corporate veil, for the purposes of holding third parties, groups, partners or managers liable for the latter's obligations, may only be granted by the bankruptcy court in compliance with article 50 of Law no. 10. 406, of January 10, 2002 (Civil Code) and articles 133, 134, 135, 136 and 137 of Law 13105, of March 16, 2015 (Code of Civil Procedure), without applying the suspension referred to in paragraph 3 of article 134 of Law 13105, of March 16, 2015 (Code of Civil Procedure)."
<u>Original text in Portuguese</u>: "LRF, Art. 82-A. É vedada a extensão da falência ou de seus efeitos, no todo ou em parte, aos sócios de responsabilidade limitada, aos controladores e aos administradores da sociedade falida, admitida, contudo, a desconsideração da personalidade jurídica. Parágrafo único. A desconsideração da personalidade jurídica da sociedade falida, para fins de responsabilização de terceiros, grupo, sócio ou administrador por obrigação desta, somente pode ser decretada pelo juízo falimentar com a observância do art. 50 da Lei nº 10.406, de 10 de janeiro de 2002 (Código Civil) e dos arts. 133, 134, 135, 136 e 137 da Lei nº 13.105, de 16 de março de 2015 (Código de Processo Civil), não aplicada a suspensão de que trata o §3º do art. 134 da Lei nº 13.105, de 16 de março de 2015 (Código de Processo Civil)."

[39] <u>Free translation into English</u>: "LRF, Art. 129. The following are ineffective in relation to the bankrupt estate, whether or not the contractor is aware of the debtor's state of economic and financial crisis, and whether or not the debtor intends to defraud creditors: [...]"
<u>Original text in Portuguese</u>: "LRF, Art. 129. São ineficazes em relação à massa falida, tenha ou não o contratante conhecimento do estado de crise econômico-financeira do devedor, seja ou não intenção deste fraudar credores: [...]"

[40] <u>Free translation into English</u>: "LRF, Art. 130. The acts and contracts carried out with the intention of harming creditors can be revoked if fraudulent conspiracy between the debtor and the third party contracting with him and the actual loss suffered by the bankrupt estate are proven."
<u>Original text in Portuguese</u>: "LRF, Art. 130. São revogáveis os atos praticados com a intenção de prejudicar credores, provando-se o conluio fraudulento entre o devedor e o terceiro que com ele contratar e o efetivo prejuízo sofrido pela massa falida."

actually taken in the detriment of the creditors, because those measures are only available within a *falência* proceeding.

36.    Thus, the text of the Law is consistent with the main objective of the RJ proceeding, which is to promote the negotiation between the debtor and its creditors, allowing the debtor to continue its activities.  The nonexistence of a procedure to investigate the origins of the crisis during the RJ proceeding and to impose liability for the crisis is also consistent with (i) the voluntary nature of the RJ procedure that can only be initiated by some sort of debtors, (ii) the purpose of encouraging debtors to seek the RJ proceeding in order to avoid an insolvency scenario, (iii) the short extension envisaged by the Brazilian Bankruptcy Law for the duration of RJ proceeding, which is focused on the attainment of an agreement between debtor and creditors on new debt conditions, in order to allow the continuation of activities by the debtors.

37.    In view of foregoing, the discovery proceeding sought by Sablon would generate evidence that could not be introduced in any RJ proceedings in Brazil, since there is no procedural avenue in the RJ proceeding, as established by the Brazilian Bankruptcy Law, for the investigation of the origins of the crisis, which shall be pursued by the creditors in other venues, , such as through separate lawsuits in civil court or through arbitrations, as appropriate.

     *v.*    *The RJ Court is not the proper forum for litigating potential liability of the Reference Shareholders*

38.    As explained above, the scope of an RJ proceeding is to promote a rapid structured negotiation between the debtor and creditors under judicial oversight.  Coherently, the RJ Court does not have jurisdiction to rule on all matters concerning the assets, interests and businesses of the debtor in the RJ proceeding. The Brazilian Bankruptcy Law clearly states that all non-

liquidated claims remain under the jurisdiction of courts other than the RJ Court (see LRF, art. 6, §1[41]).

39.    The jurisdiction of the RJ Court is not all-encompassing (*universal*).  During an RJ proceeding, the RJ Court has jurisdiction only for the cases set forth by the law. Such jurisdiction encompasses the authority to rule on constrictive measures regarding the debtor's assets, as the approval of an RJ proceeding (LRF, art. 6, I to III[42]) will determine an automatic stay on any seizure claims against the debtors' assets.

40.    In a *falência* proceeding, on the other hand, the jurisdiction of the *falência* Court is the general rule. The *falência* Court has "indivisible" (*indivisível*) jurisdiction (LRF, art. 76[43]) to handle all actions concerning the assets, interests, and businesses of the debtor, except in the cases provided for by the law. Moreover, specific provisions in the law state that the *falência* Court has jurisdiction over proceedings regarding (i) the liability of managers and shareholders (LRF, art.

---

[41] <u>Free translation into English</u>: "LRF, Art. 6. The decree of bankruptcy or the granting of judicial reorganization shall lead to: […] §1. The action demanding an illiquid sum will continue with the court in which it is being heard."
<u>Original text in Portuguese</u>: "LRF, Art. 6º A decretação da falência ou o deferimento do processamento da recuperação judicial implica: [...] § 1º Terá prosseguimento no juízo no qual estiver se processando a ação que demandar quantia ilíquida."

[42] <u>Free translation into English</u>: "LRF, Art. 6. The decree of bankruptcy or the granting of judicial reorganization shall lead to: I - suspension of the running of the statute of limitations on the debtor's obligations that are subject to the provisions of this Law; II - suspension of any executions filed against the debtor, including those of the private creditors of the joint partner, relating to claims or obligations subject to judicial reorganization or bankruptcy; III - prohibition of any form of retention, seizure, attachment, garnishment, search and seizure and judicial or extrajudicial constriction on the debtor's assets, arising from judicial or extrajudicial claims whose claims or obligations are subject to judicial reorganization or bankruptcy."
<u>Original text in Portuguese</u>: "LRF, Art. 6º A decretação da falência ou o deferimento do processamento da recuperação judicial implica: I - suspensão do curso da prescrição das obrigações do devedor sujeitas ao regime desta Lei; II - suspensão das execuções ajuizadas contra o devedor, inclusive daquelas dos credores particulares do sócio solidário, relativas a créditos ou obrigações sujeitos à recuperação judicial ou à falência; III - proibição de qualquer forma de retenção, arresto, penhora, sequestro, busca e apreensão e constrição judicial ou extrajudicial sobre os bens do devedor, oriunda de demandas judiciais ou extrajudiciais cujos créditos ou obrigações sujeitem-se à recuperação judicial ou à falência."

[43] <u>Free translation into English</u>: "LRF, Art. 76. The bankruptcy court is indivisible and has jurisdiction to hear all actions concerning the bankrupt's assets, interests and business, with the exception of labor and tax cases and those not regulated herein in which the bankrupt is a plaintiff or co-plaintiff."
<u>Original text in Portuguese</u>: "LRF, Art. 76. O juízo da falência é indivisível e competente para conhecer todas as ações sobre bens, interesses e negócios do falido, ressalvadas as causas trabalhistas, fiscais e aquelas não reguladas nesta Lei em que o falido figurar como autor ou litisconsorte ativo."

82[44]), (ii) piercing the corporate veil (LRF, art. 82-A[45]), and (iii) claims for the nullity and revocation of juridical acts concerning the bankruptcy estate (LRF, arts. 129[46] and 130[47]).  Those provisions relate only to the *falência* proceeding and are not applicable to the RJ proceeding.

41.    According to Sablon, the following causes of action are potentially available to creditors in general (and also to Sablon): (i) a creditor may seek to pierce the corporate veil of a corporation (Sablon Motion, ¶38, a), (ii) a creditor may recoup losses from controlling shareholders (Sablon Motion, ¶38, b), (iii) a creditor may recoup losses from managers (Sablon

---

[44] Free translation into English: "LRF, Art. 82. The personal liability of the limited partners, controlling shareholders and managers of the bankrupt corporation, as established in the respective laws, shall be established by the bankruptcy court itself, regardless of the liquidation of the assets and proof of their inability to cover the liabilities, in compliance with the ordinary procedure established in the Code of Civil Procedure."
Original text in Portuguese: "LRF, Art. 82. A responsabilidade pessoal dos sócios de responsabilidade limitada, dos controladores e dos administradores da sociedade falida, estabelecida nas respectivas leis, será apurada no próprio juízo da falência, independentemente da realização do ativo e da prova da sua insuficiência para cobrir o passivo, observado o procedimento ordinário previsto no Código de Processo Civil."

[45] Free translation into English: "LRF, Art. 82-A. The bankruptcy or its effects may not be extended, in whole or in part, to the limited partners, controlling shareholders and managers of the bankrupt company, but the piercing of the corporate veil may be admitted. Sole paragraph. The piercing of the bankrupt entity's corporate veil, for the purposes of holding third parties, groups, partners or managers liable for the latter's obligations, may only be granted by the bankruptcy court in compliance with article 50 of Law no. 10. 406, of January 10, 2002 (Civil Code) and articles 133, 134, 135, 136 and 137 of Law 13105, of March 16, 2015 (Code of Civil Procedure), without applying the suspension referred to in paragraph 3 of article 134 of Law 13105, of March 16, 2015 (Code of Civil Procedure)."
Original text in Portuguese: "LRF, Art. 82-A. É vedada a extensão da falência ou de seus efeitos, no todo ou em parte, aos sócios de responsabilidade limitada, aos controladores e aos administradores da sociedade falida, admitida, contudo, a desconsideração da personalidade jurídica. Parágrafo único. A desconsideração da personalidade jurídica da sociedade falida, para fins de responsabilização de terceiros, grupo, sócio ou administrador por obrigação desta, somente pode ser decretada pelo juízo falimentar com a observância do art. 50 da Lei nº 10.406, de 10 de janeiro de 2002 (Código Civil) e dos arts. 133, 134, 135, 136 e 137 da Lei nº 13.105, de 16 de março de 2015 (Código de Processo Civil), não aplicada a suspensão de que trata o §3º do art. 134 da Lei nº 13.105, de 16 de março de 2015 (Código de Processo Civil)."

[46] Free translation into English: "LRF, Art. 129. The following are ineffective in relation to the bankrupt estate, whether or not the contractor is aware of the debtor's state of economic and financial crisis, and whether or not the debtor intends to defraud creditors: […]"
Original text in Portuguese: "LRF, Art. 129. São ineficazes em relação à massa falida, tenha ou não o contratante conhecimento do estado de crise econômico-financeira do devedor, seja ou não intenção deste fraudar credores: […]"

[47] Free translation into English: "LRF, Article 130. The acts and contracts carried out with the intention of harming creditors can be revoked if fraudulent conspiracy between the debtor and the third party contracting with him and the actual loss suffered by the bankrupt estate are proven."
Original text in Portuguese: "LRF, Art. 130. São revogáveis os atos praticados com a intenção de prejudicar credores, provando-se o conluio fraudulento entre o devedor e o terceiro que com ele contratar e o efetivo prejuízo sofrido pela massa falida."

Motion, ¶38, c), or (iv) a creditor is permitted to bring actions to avoid transfers or transactions that are considered a fraud against creditors (Sablon Motion, ¶37).

42.    The claims available to the creditors according to Sablon would thus not be litigated before the RJ Court during a RJ proceeding, because as explained, the first three categories of actions are available only in *falência* proceedings, and neither an RJ Court nor a *falência* Court have jurisdiction over actions to avoid transfers or transactions considered a fraud against creditors, which claim can only be heard by a civil court.

> vi.    *Sablon cannot introduce the evidence sought in Discovery in the RJ Proceeding*

43.    As stated above, Sablon cannot initiate an investigation into the origins Americanas' crisis within the RJ proceeding and the RJ Court is not the proper forum to litigate the liability of shareholders or managers, to pierce the corporate veil or to seek the annulment of fraudulent acts.

44.    Even if a creditor had plausible basis to (i) initiate a discovery proceeding before a civil court in order to request the production of evidence and, if it is the case, (ii) seek a court order to disregard the corporate veil in order to extend liability for the default of the payment on third parties, or (iii) request the annulment of acts in fraud of creditors, these claims would be litigated in civil courts, thus falling outside the jurisdiction of the RJ Court.

45.    Hence, Sablon would not be able to bring evidence of the acts that have given rise to the crisis before the RJ Court and, if the RJ Court were to receive this evidence, no creditor could pursue any of the claims mentioned in Sablon's Motion in the RJ proceeding.

**B.  The RJ Court does not have authority to grant the discovery Sablon is seeking and Sablon can seek the Rule 2004 evidence in a separate lawsuit in Brazil**

46.    The discovery Sablon seeks is a measure that the RJ Court in Brazil would not have the authority to grant within a Brazilian RJ proceeding.

47.    Sablon or any other creditor may seek the taking of evidence through a separate and autonomous lawsuit before a civil court. Accordingly, creditors can avail themselves of a proceeding aimed to the preliminary taking of evidence – the *produção antecipada de provas* – which is set forth under the Brazilian Civil Procedure Code (the "**Brazilian Civil Procedure Code**" or "**CPC**"– CPC, art. 381 ss.[48]).  Moreover, the Brazilian Civil Procedure Code sets for a proceeding in which the party can request the production of documents or things under the possession of another party, in a proceeding called *exibição de documento ou coisa* (CPC, art. 396 ss.[49]).

48.    As Sablon recognizes, some lawsuits for the preliminary taking of evidence have been presented by some creditors against Americanas S.A. ("**Americanas**") and B2W Digital Lux S.à.r.L. (the "**Debtors**") (Sablon Motion, ¶4), all of them before Brazilian civil courts and are currently being litigated outside the RJ Court.

49.    Those facts reinforce the idea that there are similar functional equivalents to the Rule 2004 Discovery in Brazil and that those proceedings for the taking of evidence can be sought by Sablon before a Brazilian civil court and not before a RJ Court.

### C.  The "Potential Actions" contemplated by Sablon fail as a matter of law

50.    Sablon has requested the production of evidence involving the Debtors and third parties. Those requests are based on the allegation that Sablon, as a creditor, would be entitled to

---

[48] <u>Free translation into English</u>: "CPC, Art. 381. The early production of evidence shall be admissible in cases in which: […]"
<u>Original text in Portuguese</u>: "CPC, Art. 381. A produção antecipada da prova será admitida nos casos em que: [...]"
[49] <u>Free translation into English</u>: "CPC, Art. 396. A judge may order a party to disclose a document or thing that is in the latter's possession."
<u>Original text in Portuguese</u>: "CPC, Art. 396. O juiz pode ordenar que a parte exiba documento ou coisa que se encontre em seu poder."

seek discovery to assess which, if any, legal actions permitted under Brazilian Law should be pursued by creditors (Sablon Motion, ¶6).

51.    According to Sablon, as stated above, the following causes of action are potentially available to creditors in general: (i) a creditor may seek to pierce the corporate veil of a corporation (Sablon Motion, ¶38, a), (ii) a creditor may recoup losses from controlling shareholders (Sablon Motion, ¶38, b), (iii) a creditor may recoup losses from managers (Sablon Motion, ¶38, c), or (iv) a creditor is permitted to bring actions to avoid transfers or transactions that are considered a fraud against creditors (Sablon Motion, ¶37).

52.    Sablon has not, however, demonstrated that any creditor (or Sablon itself) has a plausible claim under any of the causes of action mentioned by Sablon to the extent it even has standing to bring those claims, as will be seen below.

> i.    *Sablon does not have standing to brings claims under article 117 of the Brazilian Corporate Law*

53.    Sablon does not have legal standing to bring claims under article 117 of the Law No. 6,404, of December 15, 1976 (the "**Brazilian Corporate Law**" or, hereinafter, simply "**LSA**") because it is not the company or a shareholder of the company.

54.     A controlling shareholder is liable to the company for any unlawful acts, characterized as abuse of control, that cause damages to the company (LSA, art. 116[50] and 117[51]).

55.     Brazilian Corporate Law requires controlling shareholders to exert their power in order to make the corporation achieve its purpose and fulfill its social function, and controlling shareholders owe duties and responsibilities to (i) the corporations' other shareholders, (ii) the corporation's employees, and (iii) the community where the corporation operates, whose rights and interests the controlling shareholder must loyally respect and promote (LSA, art. 116, sole paragraph).[52] The controlling shareholder is liable for damages caused by acts carried out with abuse of control (LSA, art. 117).[53]

---

[50] Free translation into English: "LSA, Art. 116. A controlling shareholder is a natural person or corporate entity, or a group of persons bound by a voting agreement, or under common control, who: a) holds the shareholder's rights that permanently ensure them a majority of votes in general meetings and the power to elect a majority of the company's managers; and b) effectively uses their power to direct the company's activities and guide the functioning of the company's bodies. Sole paragraph. The controlling shareholder must use his power with the aim of making the company achieve its purpose and fulfill its social function, and has duties and responsibilities towards the company's other shareholders, those who work for it and the community in which it operates, whose rights and interests he must loyally respect and attend to."

Original text in Portuguese: "LSA, Art. 116. Entende-se por acionista controlador a pessoa, natural ou jurídica, ou o grupo de pessoas vinculadas por acordo de voto, ou sob controle comum, que: a) é titular de direitos de sócio que lhe assegurem, de modo permanente, a maioria dos votos nas deliberações da assembléia-geral e o poder de eleger a maioria dos administradores da companhia; e b) usa efetivamente seu poder para dirigir as atividades sociais e orientar o funcionamento dos órgãos da companhia. Parágrafo único. O acionista controlador deve usar o poder com o fim de fazer a companhia realizar o seu objeto e cumprir sua função social, e tem deveres e responsabilidades para com os demais acionistas da empresa, os que nela trabalham e para com a comunidade em que atua, cujos direitos e interesses deve lealmente respeitar e atender."

[51] Free translation into English: "LSA, Art. 117. The controlling shareholder is liable for damages caused by acts carried out with abuse of power."

Original text in Portuguese: "LSA, Art. 117. O acionista controlador responde pelos danos causados por atos praticados com abuso de poder."

[52] Free translation into English: "LSA, Art. 116. […] Sole paragraph. The controlling shareholder must use his power with the aim of making the company achieve its purpose and fulfill its social function, and has duties and responsibilities towards the company's other shareholders, those who work for it and the community in which it operates, whose rights and interests he must loyally respect and attend to.

Original text in Portuguese: "LSA, Art. 116. […] Parágrafo único. O acionista controlador deve usar o poder com o fim de fazer a companhia realizar o seu objeto e cumprir sua função social, e tem deveres e responsabilidades para com os demais acionistas da empresa, os que nela trabalham e para com a comunidade em que atua, cujos direitos e interesses deve lealmente respeitar e atender."

[53] Free translation into English: "LSA, Art. 117. The controlling shareholder is liable for damages caused by acts carried out with abuse of power."

Original text in Portuguese: "LSA, Art. 117. O acionista controlador responde pelos danos causados por atos praticados com abuso de poder."

56.    If a controlling shareholder fails to comply with his duties and causes damages to the corporation, the controlling shareholder must indemnify these damages (LSA, art. 246, caput[54]).

57.    As a general rule, the corporation itself has standing to seek indemnification for the damages caused by the controlling shareholder (CPC, art. 18, caput[55]).  If the corporation suffers damages as a result of a wrongful act committed by the controlling shareholder, in principle the corporation should file a claim for damages against the controlling shareholder.

58.    Alternatively, an action for damages caused by the controlling shareholder may be brought by other persons, in the event of procedural substitution authorized by law (CPC, art. 18, sole paragraph).  The Brazilian Corporate Law provides for a derivative suit that can be brought against the controlling shareholder by shareholders representing more than 5% of the stock capital (LSA, art. 246, §1º, "a"[56])[57] or by any shareholder, provided that the shareholder provides security for costs and lawyer's fees (LSA, art. 246, §1º, b[58]).  The Brazilian Corporate Law does not allow

---

[54] Free translation into English: "LSA, Art. 246. The controlling company shall be obliged to indemnify any damage caused to the company by acts carried out in breach of the provisions of articles 116 and 117."
Original text in Portuguese: "LSA, Art. 246. A sociedade controladora será obrigada a reparar os danos que causar à companhia por atos praticados com infração ao disposto nos artigos 116 e 117."
[55] Free translation into English: "CPC, Art. 18. Nobody can claim the rights of others in their own name, except when authorized by the legal system."
Original text in Portuguese: "CPC, Art. 18. Ninguém poderá pleitear direito alheio em nome próprio, salvo quando autorizado pelo ordenamento jurídico."
[56] Free translation into English: "LSA, Art. 246. The controlling company shall be obliged to indemnify any damage caused to the company by acts carried out in breach of the provisions of articles 116 and 117. §1. The action for indemnification shall be brought by: a) shareholders representing 5% (five percent) or more of the stock capital; […]"
Original text in Portuguese: "LSA, Art. 246. A sociedade controladora será obrigada a reparar os danos que causar à companhia por atos praticados com infração ao disposto nos artigos 116 e 117. §1. A ação para haver reparação cabe: a) a acionistas que representem 5% (cinco por cento) ou mais do capital social;"
[57] This percentage has been reduced to publicly-held companies by the Resolução CVM No. 70, of March 22, 2002.
[58] Free translation into English: "LSA, Art. 246. The controlling company shall be obliged to indemnify any damage caused to the company by acts carried out in breach of the provisions of articles 116 and 117. §1. The action for indemnification shall be brought by: b) to any shareholder, provided that they provide security for the costs and lawyer's fees due in the event that the action is dismissed."
Original text in Portuguese: "LSA, Art. 246. A sociedade controladora será obrigada a reparar os danos que causar à companhia por atos praticados com infração ao disposto nos artigos 116 e 117. §1. A ação para haver reparação cabe: [...] b) a qualquer acionista, desde que preste caução pelas custas e honorários de advogado devidos no caso de vir a ação ser julgada improcedente".

for the possibility that any third party, including creditors, can bring a derivative claim in name of the company.

59.     Only the corporations' shareholders have standing to bring claims under articles 116 and 117 of Brazilian Corporate Law (as well as claims against managers under article 159[59]). Such sections of the law (art. 117 and 159) shall necessarily be read in the context of the Brazilian Corporate Law, which is a statute providing exclusively for the organization of the corporation, the structure and the functioning of the corporation and the internal relations between the corporation and its respective shareholders.

60.     The duties and responsibilities imposed on the controlling shareholders of the corporation are therefore set forth under said Brazilian Corporate Law to the benefit and to the interest of the corporation itself.

61.     The interest of the corporation and the respective shareholders is commonly referred to as "corporate interest" (*interesse social*), as a central point of all decisions and resolutions passed by the corporation internal bodies, which clearly indicates that a definite border line exists between the corporate (internal) legal organization of the corporation and the respective projections to the outside (external).

62.     The Brazilian Corporate Law therefore is not a general law destined to govern any and all general business of the corporation or of its members, which are subject to other segments of Brazilian legislation, such, as the case may be, the Law No. 10,406, of January 10, 2002 (the "**Brazilian Civil Code**" or "**CC**") or the Brazilian Bankruptcy Law.

---

[59] <u>Free translation into English</u>: "LSA, Art. 159: The company shall be entitled, by prior resolution of the general meeting, to file an action for civil liability against a manager for damages caused to its assets."
<u>Original text in Portuguese</u>: "LSA, Art. 159. Compete à companhia, mediante prévia deliberação da assembléia-geral, a ação de responsabilidade civil contra o administrador, pelos prejuízos causados ao seu patrimônio."

63.     It is true that the Brazilian Corporate Law provides protection to corporate creditors, but only to determine that the corporation stock capital or reserves cannot be paid back to shareholders under conditions other than those allowed by the Law, and to the unlawful detriment of creditors.  It is also true that the Brazilian Corporate Law provides for general protection of the stock capital of the corporation in order to assure that the stock capital is continuously outstanding, as a common guarantee of all creditors.

64.     However, claims under articles 116 or 117 LSA, thus, have one and only purpose, within the system of Brazilian Corporate Law – to protect the interests of the corporation itself, and the prerogative of placing those claims is attributed to the corporation or to the shareholders through a derivative suit.  These powers are not assigned by law to third parties, as the case of creditors may be, in other specified cases, under general statutes, other than the Brazilian Corporate Law.

65.     Creditors are thus not allowed to bring claims against the controlling shareholder based on a purported violation to articles 116 or 117 of the Brazilian Corporate Law, so the second category of claims Sablon suggests it could bring are unavailbe to it, *see* Fidalgo Decl. ¶53. II.

      ii.   *Sablon does not have standing to bring claims under article 159 of the Brazilian Corporate Law*

66.     Sablon also states that a creditor may obtain indemnification from the company's management if it demonstrates that the conduct of the managers caused damage to the third party (Sablon Motion, ¶38, c; Fidalgo Decl., ¶53, III), as per article 159 of the Brazilian Corporate Law. However, Sablon does not have standing to bring claims under Article 159 of the Brazilian Corporate Law because it is not the company or a shareholder of the company.

67.     Company managers are subject to duties, which apply to both members of the board of directors and officers (LSA, art. 145[60]). Directors and officers must, among other things, act diligently (LSA, art. 153[61]) and serve the company loyally (LSA, art. 154[62] and art. 155[63]).

68.     If a manager causes damage to the corporation, the corporation may bring a liability claim against the manager (director or officer) (LSA, art. 159[64]).  To this end, a resolution must be passed at a general meeting (LSA, art. 159, §1[65]).  If the resolution is approved, the corporation must bring the action and, if it does not bring the action, any shareholder may do so after a period of 3 (three) months (LSA, art. 159, §3[66]).  If the resolution is not approved, the action may be

---

[60] Free translation into English: "LSA, Art. 145. The rules on the requirements, impediments, appointment, compensation, duties and liability of managers apply to directors and officers."
Original text in Portuguese: "LSA, Art. 145. As normas relativas a requisitos, impedimentos, investidura, remuneração, deveres e responsabilidade dos administradores aplicam-se a conselheiros e diretores."
[61] Free translation into English: "LSA, Art. 153. In performing his duties, the corporate manager must exercise the care and diligence that every active and honest man is accustomed to employ in the management of his own affairs."
Original text in Portuguese: "LSA, Art. 153. O administrador da companhia deve empregar, no exercício de suas funções, o cuidado e diligência que todo homem ativo e probo costuma empregar na administração dos seus próprios negócios."
[62] Free translation into English: "LSA, Art. 154. The manager must exercise the powers conferred on him by law and the articles of association in order to achieve the company's purposes and in its interests, while ensuring that the demands of the public good and the company's corporate social function are met."
Original text in Portuguese: "LSA, Art. 154. O administrador deve exercer as atribuições que a lei e o estatuto lhe conferem para lograr os fins e no interesse da companhia, satisfeitas as exigências do bem público e da função social da empresa."
[63] Free translation into English: "LSA, Art. 155. The manager must loyally serve the company and keep its affairs confidential. It is prohibited: […]"
Original text in Portuguese: "LSA, Art. 155. O administrador deve servir com lealdade à companhia e manter reserva sobre os seus negócios, sendo-lhe vedado: [...]"
[64] Free translation into English: "LSA, Art. 159: The company shall be entitled, by prior resolution of the general meeting, to file an action for civil liability against a manager for damages caused to its assets."
Original text in Portuguese: "LSA, Art. 159. Compete à companhia, mediante prévia deliberação da assembléia-geral, a ação de responsabilidade civil contra o administrador, pelos prejuízos causados ao seu patrimônio."
[65] Free translation into English: "LSA, Art. 159: The company shall be entitled, by prior resolution of the general meeting, to file an action for civil liability against a manager for damages caused to its assets. §1. The resolution may be taken at an ordinary general meeting and, if provided for in the agenda, or if it is a direct consequence of a matter included therein, at an extraordinary general meeting."
Original text in Portuguese: "LSA, Art. 159. Compete à companhia, mediante prévia deliberação da assembléia-geral, a ação de responsabilidade civil contra o administrador, pelos prejuízos causados ao seu patrimônio. §1º A deliberação poderá ser tomada em assembléia-geral ordinária e, se prevista na ordem do dia, ou em conseqüência direta de assunto nela incluído, em assembléia-geral extraordinária."
[66] Free translation into English: "LSA, Art. 159: The company shall be entitled, by prior resolution of the general meeting, to file an action for civil liability against a manager for damages caused to its assets. §3. Any shareholder may initiate the action if the action is not commenced within 3 (three) months of the resolution of the general meeting."

brought derivatively by shareholders representing at least 5% (five percent) of the share capital (LSA, art. 159, §4)[67].

69.     An action for the liability of directors and officers for damages caused to the corporation can therefore only be brought by the corporation itself, which is the holder of the right, or by shareholders, acting as procedural substitutes of the corporation.

70.     Sablon is not a shareholder of Americanas. It is a creditor. A creditor cannot bring a liability action against managers. Accordingly, the third category of claims Sablon asserts it could bring are unavailable to it. *See* Fidalgo Decl. ¶54.III.

> iii.    *Sablon does not describe facts sufficient to substantiate a claim for (i) liability under articles 117 and 159 of the Brazilian Corporate Law; (ii) action to avoid fraudulent transfers; (iii) piercing of the corporate veil*

71.     **Claims under articles 117 and 159 of the Brazilian Corporate Law**. Even if Sablon had standing to bring claims under Articles 117 or 159 of the Brazilian Corporate Law for abuse by controlling shareholders or managers, Sablon cannot state a claim under either article.

72.     Sablon claims that the former CEO of Americanas allegedly stated that the reference shareholders took part in the financial life of Americanas through the issuance of orders to the directors (Sablon Motion, ¶35, c; Fidalgo Decl., ¶33 and ¶49).  These facts, even if true, do not give rise to a controlling shareholder's liability under either Article 117 or 159.

---

Original text in Portuguese: "LSA, Art. 159. Compete à companhia, mediante prévia deliberação da assembléia-geral, a ação de responsabilidade civil contra o administrador, pelos prejuízos causados ao seu patrimônio. § 3º Qualquer acionista poderá promover a ação, se não for proposta no prazo de 3 (três) meses da deliberação da assembléia-geral."

[67] Free translation into English: "LSA, Art. 159: The company shall be entitled, by prior resolution of the general meeting, to file an action for civil liability against a manager for damages caused to its assets. §4. If the shareholders' meeting resolves not to promote the action, it may be initiated by shareholders representing at least 5% (five percent) of the stock capital."

Original text in Portuguese: "LSA, Art. 159. Compete à companhia, mediante prévia deliberação da assembléia-geral, a ação de responsabilidade civil contra o administrador, pelos prejuízos causados ao seu patrimônio. § 3º Se a assembléia deliberar não promover a ação, poderá ela ser proposta por acionistas que representem 5% (cinco por cento), pelo menos, do capital social."

73.     Participating in the financial life of a company does not mean a controlling shareholder is necessarily involved in any allegedly illegal acts. To the contrary, according to the Brazilian Corporate Law, the controlling shareholder must use his controlling power to direct the corporation's activities and guide the functioning of the corporation 's bodies (LSA, art. 116, "b"[68]) and the presence of controlling shareholder in the life of the corporation is regular. There is no illicit act in using power to guide the functioning of the company's bodies but the fulfillment of a legal duty.

74.     The controlling shareholder is only liable if he commits an illegality in the exercise of controlling power. The law sets out examples of ways in which controlling power can be abused (LSA, art. 117, §1[69]), including, among others, electing a director or member of a supervising council whom the controlling shareholder knows to be morally or technically unfit (LSA, art. 117, §1, "d"[70]) or inducing or attempting to induce a director or member of a supervising council to carry out an illegal act (LSA, art. 117, §1, "e"[71]). There is no *per se* wrongdoing in guiding the actions of directors in accordance with Brazilian law.

---

[68] Free translation into English: "LSA, Art. 116. A controlling shareholder is a natural or corporate entity, or a group of persons bound by a voting agreement, or under common control, who: […] b) effectively uses their power to direct the company's activities and guide the functioning of the company's bodies."
Original text in Portuguese: "LSA, Art. 116. Entende-se por acionista controlador a pessoa, natural ou jurídica, ou o grupo de pessoas vinculadas por acordo de voto, ou sob controle comum, que: […] b) usa efetivamente seu poder para dirigir as atividades sociais e orientar o funcionamento dos órgãos da companhia."
[69] Free translation into English: "LSA, Art. 117. The controlling shareholder is responsible for damages caused by acts carried out with abuse of power. §1. The following are types of abusive exercise of power: […]"
Original text in Portuguese: "LSA, Art. 117. O acionista controlador responde pelos danos causados por atos praticados com abuso de poder. § 1º São modalidades de exercício abusivo de poder: […]"
[70] Free translation into English: "LSA, Art. 117. The controlling shareholder is responsible for damages caused by acts carried out with abuse of power. §1. The following are types of abusive exercise of power: […] d) appoints a director or auditor whom it knows to be morally or technically unfit;"
Original text in Portuguese: "LSA, Art. 117. O acionista controlador responde pelos danos causados por atos praticados com abuso de poder. § 1º São modalidades de exercício abusivo de poder: […] d) eleger administrador ou fiscal que sabe inapto, moral ou tecnicamente;"
[71] Free translation into English: "LSA, Art. 117. The controlling shareholder is responsible for damages caused by acts carried out with abuse of power. §1. The following are types of abusive exercise of power: […] e) inducing, or attempting to induce, a director or auditor to carry out an illegal act, or, in breach of their duties as defined in this Law and in the bylaws, to promote, against the interests of the company, its ratification by the general meeting of shareholders;"

75.     Sablon also claims that Americanas' former CEO, Mr. Gutierrez, believed that the Reference Shareholders would have knowledge of some wrongdoing (Sablon Motion, ¶25), referring to Fidalgo Decl. ¶33. However, the Fidalgo Decl. does not state at ¶33 that Mr. Gutierrez accused the Reference Shareholders of having knowledge of any wrongdoing.

76.     In any event, even if the former CEO of Americanas, Mr. Gutierrez, were to claim that the Reference Shareholders knew about the alleged fraud, he should provide evidence in order to substantiate the responsibility of any shareholder, but this does not alter or impact any of the conclusions set forth above, i.e., that Sablon is not entitled to bring any of these claims before the RJ Court. Rather, Sablon can only bring these claims in separate civil actions that are not under the jurisdiction of the RJ Court.

77.     **Actions to avoid fraudulent transfers.**  Sablon also states that creditors could file an action to annul acts of disposition carried out by the debtor, or to avoid fraudulent transfers. However, there is no indication in Sablon's petition as to which of the Debtor's acts of disposition could be annulled.

78.     As pointed out above, the Brazilian Bankruptcy Law does not govern actions for nullity or revocation in the RJ proceeding (articles 129 and 130 of the Brazilian Bankruptcy Law apply only to Bankruptcy proceedings). According to the general rule laid down in the Brazilian Civil Code, unsecured creditors can only annul gratuitous transfers of assets or debt forgiveness acts carried out by a debtor who is insolvent or reduced to insolvency by a gratuitous transfer (CC, art. 158[72]) in civil court. Creditors can also seek annulment in civil court of onerous contracts of

---

Original text in Portuguese: "LSA, Art. 117. O acionista controlador responde pelos danos causados por atos praticados com abuso de poder. §1º São modalidades de exercício abusivo de poder: […] e) induzir, ou tentar induzir, administrador ou fiscal a praticar ato ilegal, ou, descumprindo seus deveres definidos nesta Lei e no estatuto, promover, contra o interesse da companhia, sua ratificação pela assembléia-geral;"

[72] Free translation into English: "CC, Art. 158 Transfers of assets or waivers of debts carried out free of charge by a debtor who is already insolvent or who has been reduced to insolvency by such transactions, even if the debtor is unaware of the fact, may be annulled by unsecured creditors as being detrimental to their rights."

the insolvent debtor, when the insolvency is notorious or there is reason for the insolvency to be known to the other contracting party (CC, art. 159[73]).

79.     Also, there is no indication in Sablon's declaration of any gratuitous act or debt waiver that would have been carried out by the Debtors. Nor is there any indication of an onerous act that should be annulled because it was carried out by the Debtors when the Debtors were notoriously insolvent.  It is worth noting that the fact that the Debtors have initiated a RJ proceeding does not mean that the Debtors have become insolvent, much less that any insolvency was prior known to any contracting third party.

80.     An allegation of fraud brought by creditors in which the unsecured creditor does not indicate which fraudulent act was carried out by the debtor or that does not demonstrate that the debtor in question was notoriously insolvent cannot survive.

81.     **Actions to pierce the corporate veil.**  Sablon also states that creditors could seek the disregard of the corporate veil of the Debtors.  But none of the standards set forth by Brazilian law were demonstrated by Sablon.

82.     The legal entity has an autonomous "corporate personality" that is to be distinguished from the one of its partners, associates, founders or managers, as the Brazilian Civil Code didactically states (CC, art. 49-A[74]).  The mere existence of an economic group (CC, art. 50,

---

Original text in Portuguese: "CC, Art. 158. Os negócios de transmissão gratuita de bens ou remissão de dívida, se os praticar o devedor já insolvente, ou por eles reduzido à insolvência, ainda quando o ignore, poderão ser anulados pelos credores quirografários, como lesivos dos seus direitos."

[73] Free translation into English: "CC, Art. 159. The onerous contracts of an insolvent debtor are also voidable when the insolvency is notorious or there is reason for it to be known to the other contracting party."
Original text in Portuguese: "CC, Art. 159. Serão igualmente anuláveis os contratos onerosos do devedor insolvente, quando a insolvência for notória, ou houver motivo para ser conhecida do outro contratante."

[74] Free translation into English: "CC, Art. 49-A. A legal entity shall not be confused with its partners, members, founders or managers."
Original text in Portuguese: "CC, Art. 49-A. A pessoa jurídica não se confunde com os seus sócios, associados, instituidores ou administradores."

§4[75]) or the fact that the company has a controlling shareholder is not sufficient to pierce the corporate veil or disregard the corporate personality.

83.    Abuse of the corporate personality is not automatically established even if the legal entity commits an illegal act, or when a fraud is committed within the legal entity to the detriment of creditors.  The legal entity has autonomy in relation to the shareholders, and the unlawful act carried out by the legal entity cannot be attributed to the shareholders.  The commission of illicit acts by a corporation, and even the perpetration of fraudulent acts by its employees, must lead to the application of the specific legal consequences provided for such an illicit act, to the exact extent that would occur with any other subject of law.

84.    The disregard of the corporate personality can only be applied in the event of abuse of the legal personality, which is established when there is deviation from the purpose of the legal entity or a confusion of assets so that the effects of certain and specific legal relationships are extended to the private assets of managers or partners of the legal entity who benefited directly or indirectly from the abuse (CC, art. 50, caput[76]).

---

[75] Free translation into English: "CC, Art. 50. […] §4. The mere existence of an economic group without the presence of the requirements referred to in the head of this article does not authorize the disregard of the legal entity's personality."
Original text in Portuguese: "CC, Art. 50. […] §4º A mera existência de grupo econômico sem a presença dos requisitos de que trata o caput deste artigo não autoriza a desconsideração da personalidade da pessoa jurídica."

[76] Free translation into English: "CC, Art. 50. In cases of abuse of corporate personality, characterized by deviation of purpose or by asset commingling, a judge may, upon request from a party or the Public Prosecutor when applicable in the process, disregard the corporate entity. This is to extend the effects of certain and specific obligation relationships to the personal assets of managers or partners of the legal entity who directly or indirectly benefited from the abuse."
Original text in Portuguese: "CC, Art. 50. Em caso de abuso da personalidade jurídica, caracterizado pelo desvio de finalidade ou pela confusão patrimonial, pode o juiz, a requerimento da parte, ou do Ministério Público quando lhe couber intervir no processo, desconsiderá-la para que os efeitos de certas e determinadas relações de obrigações sejam estendidos aos bens particulares de administradores ou de sócios da pessoa jurídica beneficiados direta ou indiretamente pelo abuso."

85.     Since there was no confusion of assets in the case at hand, one should consider the possibility of any creditor alleging that an abuse of legal personality occurred due to the deviation of the purpose of the corporation.

86.     The deviation from the corporate purpose consists of using the legal entity for the purpose of harming creditors and committing illegal acts of any kind (CC, art. 50, §1[77]).

87.     The purpose of harming creditors must be assessed objectively.  Thus, any action or omission attributed to a shareholder, whether affirmative actions or omissions, will only be grounds for disregarding the legal personality if this act or omission was aimed at harming the corporation's creditors, and this purpose is verified based on the objective conditions and circumstances of the specific case.

88.     Moreover, to establish the deviation from the corporate purpose the claimant must show that (i) the partner or manager has been committed unlawful conduct; and (ii) causation between this behavior by the partner or manager and the loss suffered by the creditor.

89.     The disregard of corporate personality, if ordered, leads to the extension of the effects of certain obligations to the private assets of managers or shareholders of the legal entity who have benefited directly or indirectly from the abuse (CC, art. 50, *caput*[78]).

---

[77] Free translation into English: "CC, Art. 50. […] §1. For the purposes of this article, deviation of purpose is the use of the corporate entity with the intent to harm creditors and for the commission of illicit acts of any nature."
Original text in Portuguese: "CC, Art. 50. […] § 1º. Para os fins do disposto neste artigo, desvio de finalidade é a utilização da pessoa jurídica com o propósito de lesar credores e para a prática de atos ilícitos de qualquer natureza."
[78] Free translation into English: "CC, Art. 50. In cases of abuse of corporate personality, characterized by deviation of purpose or by asset commingling, a judge may, upon request from a party or the Public Prosecutor when applicable in the process, disregard the corporate entity. This is to extend the effects of certain and specific obligation relationships to the personal assets of managers or partners of the legal entity who directly or indirectly benefited from the abuse."
Original text in Portuguese: "CC, Art. 50. Em caso de abuso da personalidade jurídica, caracterizado pelo desvio de finalidade ou pela confusão patrimonial, pode o juiz, a requerimento da parte, ou do Ministério Público quando lhe couber intervir no processo, desconsiderá-la para que os efeitos de certas e determinadas relações de obrigações sejam estendidos aos bens particulares de administradores ou de sócios da pessoa jurídica beneficiados direta ou indiretamente pelo abuso."

90. The act carried out with the purpose of harming creditors must thus lead to a direct or indirect benefit for the shareholder so that the creditor is able to claim that the effects of such relations are extended to the shareholders or directors, establishing a necessary causal relationship between, on the one hand, the objectively verifiable purpose of harming creditors through omissive or commissive conduct and, on the other hand, the benefit obtained by the person to whom the legal entity's obligations are intended to be attributed as a consequence of the act carried out with the purpose of harming creditors.

91. There is no extension of effects if it is not proven that the manager or shareholder directly or indirectly benefited from the abuse. To an even greater degree, the requisites for the piercing of the corporate veil are not established if it is proven that the reference shareholders of Americanas suffered a loss and were harmed as a consequence of the investigated fraud.

92. Sablon's allegations thus do not describe facts sufficient to substantiate a claim for the piercing of the corporate veil.

Executed on December 5, 2023 in New York, NY, United States of America.

Respectfully submitted,

**José Alexandre Tavares Guerreiro**

**Annex A**

Resume



## José Alexandre Tavares Guerreiro

has graduation at Direito by Universidade de São Paulo (1967) , master's at Direito by Universidade de São Paulo (1983) and Ph.D. at Direito Comercial by Universidade de São Paulo (1989) . Currently is of Universidade de São Paulo. Has experience in the area of Law , with emphasis on Direito Privado. Focused, mainly, in the subjects: Arbitragem, Comércio Internacional.
**(Text automatically generated by the application CVLattes)**
04/12/2023

**Last updated 12/04/2023**
Address to access this CV:
http://lattes.cnpq.br/3072681408731956

---

### Personal Information

| | |
|---|---|
| **Name** | José Alexandre Tavares Guerreiro |
| **Bibliographic Citation** | GUERREIRO, José Alexandre Tavares |
| **Professional Address** | Universidade de São Paulo, Faculdade de Direito. |
| | Largo São Francisco, 95 |
| | Centro |
| | 01005-010 - Sao Paulo, SP - Brasil |
| | Phone: (11) 32850613 Fax: (11) 32539359 |

---

### Formal Education/Degree

**1985 - 1989**  Ph.D. in Direito Comercial .
Universidade de São Paulo, USP, Brasil. *Year of degree:* 1989.
*Advisor:* Prof. Dr. Luiz Gastão Paes de Barros Leães.
*Keywords:* Arbitragem; Comércio Internacional.
*Major Area:* Applied Social Sciences.

**1982 - 1983**  Master´s in Direito .
Universidade de São Paulo, USP, Brasil. *Year of degree:* 1983.
*Advisor:* Prof. Dr. Mauro Brandão Lopes.
*Keywords:* Regime Jurídico; Capital.
*Major Area:* Applied Social Sciences.

**1964 - 1967**  Graduation in Direito .
Universidade de São Paulo, USP, Brasil.

---

### Complementary Education

---

### Professional Experience

**Universidade de São Paulo, USP, Brasil.**

**Contract**

**2003 - Present**  Type of contract: Government Employee, Functional Placement: , Exclusive Dedication.

**Activities**

**08/2005 - 12/2005**  Teaching, Direito, Degree: Graduation.

Disciplines Taught
Direito dos Seguros Privados e Gestão Atuarial II

**03/2005 - 07/2005**  Teaching, Direito, Degree: Graduation.

Disciplines Taught
Teoria Geral do Direito Comercial - Direito Comercial I (Noturno)

**08/2004 - 12/2004**  Teaching, Direito, Degree: Graduation.

Disciplines Taught
Direito dos Seguros Privados e Gestão Atuarial II (Noturno)

03/2004 - 07/2004   Teaching, Direito, Degree: Graduation.

Disciplines Taught
Direito dos Seguros Privados e Gestão Atuarial I

---

## Areas of Expertise

1.   *Major Area:* Applied Social Sciences / *Area:* Law / *Subarea:* Direito Privado / *Specialty:* Direito Comercial.

---

## Languages

**German**   Comprehends Well, Speaks Well, Reads Well, Writes Well.

**English**   Comprehends Well, Speaks Well, Reads Well, Writes Well.

**French**   Comprehends Well, Speaks Well, Reads Well, Writes Well.

**Italian**   Comprehends Well, Speaks Well, Reads Well, Writes Well.

**Spanish**   Comprehends Well, Speaks Well, Reads Well, Writes Well.

---

## Scientific, Technological, Artistic and Cultural Production

### Bibliographical Production

### Articles in Scientific Journals

1.   GUERREIRO, José Alexandre Tavares ; BUSCHINELLI, Gabriel Saad Kik . Deveres dos Administradores em Operações Societárias. REVISTA DE DIREITO DAS SOCIEDADES E DOS VALORES MOBILIÁRIOS, v. 2, p. 107-122, 2021.

2.   GUERREIRO, José Alexandre Tavares . A CVM está indo além do que permite a lei ao estabelecer que os conselheiros se manifestem sobre a OPA?. Revista Capital Aberto, v. 1, p. 46, 2010.

3.   GUERREIRO, José Alexandre Tavares . Dividendos de ações ordinárias e reservas de capital.. RSDE. Revista Semestral de Direito Empresarial, v. 6, p. 22-32, 2010.

4.   GUERREIRO, José Alexandre Tavares . Sociedade Anônima. Reorganização Societária. Alienação de ações. Alienação de controle direta e indireta: Inaplicabilidade do artigo 254 A da Lei das Sociedades Anônimas. REVISTA DE DIREITO BANCÁRIO E DO MERCADO DE CAPITAIS, v. 12, p. 207-224, 2009.

5.   GUERREIRO, José Alexandre Tavares . Direito de retirada: um limite ao princípio majoritário na sociedade anônima.. REVISTA DE DIREITO MERCANTIL INDUSTRIAL, ECONÔMICO E FINANCEIRO, v. 151, p. 13-21, 2009.

6.   GUERREIRO, José Alexandre Tavares . Regime jurídico do consórcio: o Código Civil e a Lei de Sociedades por Ações. REVISTA DE DIREITO MERCANTIL INDUSTRIAL, ECONÔMICO E FINANCEIRO, v. 138, p. 202, 2005.

7.   GUERREIRO, José Alexandre Tavares . Philippe Fouchard: Jurista Sorridente. Revista de Arbitragem e Mediação, v. 1, p. 23, 2004.

8.   GUERREIRO, José Alexandre Tavares . Invenção da economia. Revista Brasileira de Filosofia, v. 1, p. 76-79, 1995.

9.   GUERREIRO, José Alexandre Tavares . Sociedade anônima, assembléia geral extraordinária de debêntures, emissão, conversão em ações preferenciais com e sem direito de voto, direito de recesso dos acionistas minoritários. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 33, p. 114-122, 1994.

10.   GUERREIRO, José Alexandre Tavares . Sociedade por quotas: quotas preferenciais. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 33, p. 28-34, 1994.

11.   GUERREIRO, José Alexandre Tavares . Regulamento e seus pretextos. Revista Trimestral de Direito Público, v. 1, p. 303-308, 1993.

12.   GUERREIRO, José Alexandre Tavares . Regulamento e seus pretextos. Revista Trimestral de Direito Civil, v. 1, p. 303, 1993.

13.   REALE JUNIOR, M. ; GRINOVER, A. P. ; DOTTI, R. A. ; SOUZA, H. D. ; GUERREIRO, José Alexandre Tavares ; AZEVEDO, D. T. . Crimes Tributários. REVISTA BRASILEIRA DE CIÊNCIAS CRIMINAIS, v. 3, p. 299, 1993.

14.   GUERREIRO, José Alexandre Tavares . Debêntures com garantia flutuante e concordata preventiva. Revista do Advogado (São Paulo), v. 1, p. 59-64, 1992.

15.   GUERREIRO, José Alexandre Tavares . Dante por Kelsen. Revista Brasileira de Filosofia, v. 1, p. 61-66, 1991.

16.   GUERREIRO, José Alexandre Tavares . Sociologia do poder da sociedade anônima. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 50, 1990.

17.   GUERREIRO, José Alexandre Tavares . Execução judicial de decisões arbitrais. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 31, 1989.

18.   GUERREIRO, José Alexandre Tavares . Formas de abuso de poder econômico. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 41, 1987.

**19.** GUERREIRO, José Alexandre Tavares . Cheque visado. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 17-24, 1986.

**20.** GUERREIRO, José Alexandre Tavares . Direito das minorias na sociedade anônima. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 106, 1986.

**21.** GUERREIRO, José Alexandre Tavares . Função registrária das sociedades anônimas. Revista dos Tribunais (São Paulo), v. 1, p. 1, 1985.

**22.** GUERREIRO, José Alexandre Tavares . Comentários sobre: correção monetária - repetição do indébito procedente - inaplicabilidade da analogia - verba indevida - embargos infringentes rejeitados. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 119, 1984.

**23.** GUERREIRO, José Alexandre Tavares . Sociedade anônima: poder e dominação. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 72, 1984.

**24.** GUERREIRO, José Alexandre Tavares . Sobre a interpretação do objeto social. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 67, 1984.

**25.** GUERREIRO, José Alexandre Tavares . Comentários sobre: sociedade comercial - conta de participação - dissolução - possibilidade de recurso ao Judiciário. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 126, 1984.

**26.** GUERREIRO, José Alexandre Tavares . Contrato mercantil - proposta - aceitação - inexistência de manifestação expressa - Art. 1.079 do CC - Silêncio circunstanciado que significa manifestação tácita da vontade - Cobrança precedente - Recurso não provido. REVISTA DE DIREITO MERCANTIL INDUSTRIAL, ECONÔMICO E FINANCEIRO, v. 53, p. 119, 1984.

**27.** GUERREIRO, José Alexandre Tavares . Aplicação analógica da lei dos revendedores. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 34, 1983.

**28.** GUERREIRO, José Alexandre Tavares . Comentários sobre: execução - penhora - incidência sobre quotas de sociedade por quotas de responsabilidade limitada - execução aforada contra sócio, por obrigação sua e não da sociedade - admissibilidade - recurso não provido. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 123, 1983.

**29.** GUERREIRO, José Alexandre Tavares . Conflitos de interesse entre sociedade controladora e controlada e entre coligadas, no exercício do voto em assembléias gerais e reuniões sociais. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 29, 1983.

**30.** GUERREIRO, José Alexandre Tavares . Problemas atuais das debêntures. REVISTA DE DIREITO MERCANTIL INDUSTRIAL, ECONÔMICO E FINANCEIRO, v. 1, p. 128, 1983.

**31.** GUERREIRO, José Alexandre Tavares . Problemas atuais de direito cambiário. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 64, 1983.

**32.** GUERREIRO, José Alexandre Tavares . O conselho fiscal e o direito à informação. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 29, 1982.

**33.** GUERREIRO, José Alexandre Tavares . Comentários sobre: mandado de segurança - autoridade coatora - Junta Comercial do Estado - julgamento afeto à Justiça Comum Estadual - preliminar de incompetência rejeitada - sociedade anônima - reserva de capital - descaracterização - correção monetária do capital realizado - aplicação de parte à compensação de prejuízos e parte para elevação do capital - inadmissibilidade. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 69, 1982.

**34.** GUERREIRO, José Alexandre Tavares . Aquisição de quotas da própria sociedade. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 23, 1982.

**35.** GUERREIRO, José Alexandre Tavares . Impedimento de administrador em ação social 'Ut Singuli'. REVISTA DE DIREITO MERCANTIL INDUSTRIAL, ECONÔMICO E FINANCEIRO, v. 1, p. 23, 1982.

**36.** GUERREIRO, José Alexandre Tavares . Conferência de bens. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 16, 1982.

**37.** GUERREIRO, José Alexandre Tavares . Comentários sobre: Prova - testemunha - impedimento - diispensa pelo juíz - sociedade comercial - anônima - assembléia geral - contas da administração - aprovação fraudulenta - nulidade. Revista de direito mercantil, industrial, econômico e financeiro, v. 47, p. 61, 1982.

**38.** GUERREIRO, José Alexandre Tavares . Execução específica de acordo de acionistas. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 40, 1981.

**39.** GUERREIRO, José Alexandre Tavares . Convocação de assembléia geral por acionista. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 153, 1981.

**40.** GUERREIRO, José Alexandre Tavares . Responsabilidade dos administradores de sociedades anônimas. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 69, 1981.

**41.** GUERREIRO, José Alexandre Tavares . O poder disciplinar da CVM. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 64, 1981.

**42.** GUERREIRO, José Alexandre Tavares . Tributário - imposto de renda - dissolução e liquidação de sociedade comercial - distribuição do acervo social entre os sócios. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 94, 1981.

**43.** GUERREIRO, José Alexandre Tavares . Direito de retirada e poder de retratação. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 22, 1981.

**44.** GUERREIRO, José Alexandre Tavares . Comentários sobre: título extrajudicial - notas promissórias - execução contra avalista que pretende chamamento ao processo do emitente dos títulos - indeferimento - aplicabilidade do princípio da solidariedade cambial - agravo conhecido e não provido. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 155, 1980.

**45.** GUERREIRO, José Alexandre Tavares . O usufruto de ações ao portador e a posição da companhia emissora. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 84, 1980.

**46.** GUERREIRO, José Alexandre Tavares . A opção de compra de ações. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 226, 1980.

**47.** GUERREIRO, José Alexandre Tavares . Comentários sobre: sociedade por quotas de responsabilidade limitada - sociedade civil - prestação suplementar - déficit da empresa - responsabilidade subsidiária do sócio pelas obrigações sociais - adoção, em face do art. 1396 do CC - recurso extraordinário não conhecido. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 192, 1980.

**48.** GUERREIRO, José Alexandre Tavares . Comentários sobre: falência - requerimento que empresta função de cobrança irregular ao instituto falimentar, desviando-o de sua função específica e constrangendo ilicitamente o devedor - indeferimento da petição inicial, que se restabelece - recurso extraordinário conhecido e provido. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 132, 1980.

**49.** GUERREIRO, José Alexandre Tavares . Aquisição de quotas da própria sociedade. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 49, 1979.

**50.** GUERREIRO, José Alexandre Tavares . Arnoldo Wald - Estudos e pareceres de direito comercial - Problemas comerciais e fiscais da empresa contemporânea. Revista de direito mercantil, industrial, econômico e financeiro, v. 33, p. 134, 1979.

**51.** GUERREIRO, José Alexandre Tavares . Nilton Latorraca - Legislação tributária - Uma introdução ao planejamento tributário. Revista de direito mercantil, industrial, econômico e financeiro, v. 34, p. 121, 1979.

**52.** GUERREIRO, José Alexandre Tavares . Alienação de controle da companhia aberta. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 115, 1978.

**53.** GUERREIRO, José Alexandre Tavares . O Estado e a economia dos contratos privados. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 77, 1978.

**54.** GUERREIRO, José Alexandre Tavares . Comentários sobre: imposto - serviços de qualquer natureza - locação de bens (filmes para televisão) - base de cálculo - abrangência de todo valor cobrado pelo serviço, independente da rubrica adotada pela fatura - validade da lei municipal reguladora do imposto - recursos providos para declarar improcedente a ação. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 85, 1975.

**55.** GUERREIRO, José Alexandre Tavares . Comentários sobre: repetição de indébito - ação do contribuinte procedente - correção monetária indevida. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 88, 1975.

**56.** GUERREIRO, José Alexandre Tavares . Comentários sobre: sociedade anônima - alienação de bem por diretor, sem autorização da assembléia geral - aplicação do decreto-lei 2627/1940, art. 119 - ação anulatória procedente. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 88, 1975.

**57.** GUERREIRO, José Alexandre Tavares . Comentários sobre: cambial - nota promissória - emissão de moeda estrangeira - validade, no caso, face ao disposto no art. 2, n. IV do decreto-lei 857, de 1969 - conversão em cruzeiros, à taxa cambial da época do pagamento - apelação provida apenas para redução da verba honorária. Revista de Direito Mercantil Industrial, Econômico e Financeiro, v. 1, p. 101, 1973.

### Book Published/Organized

**1.** GUERREIRO, José Alexandre Tavares . . São Paulo/SP: Saraiva, 2003. v. 12.

**2.** GUERREIRO, José Alexandre Tavares . . 2. ed. Rio de Janeiro/RJ: Forense, 2002. 584 p.

**3.** GUERREIRO, José Alexandre Tavares . . São Paulo/SP: Saraiva, 1993. 149 p.

**4.** GUERREIRO, José Alexandre Tavares . . São Paulo/SP: Saraiva, 1989. 337 p.

**5.** GUERREIRO, José Alexandre Tavares (Org.) ; LESGUILLONS, Henry (Org.) . . São Paulo/SP: Feduci, 1985.

**6.** GUERREIRO, José Alexandre Tavares . . São Paulo/SP: Saraiva, 1984.

**7.** GUERREIRO, José Alexandre Tavares ; TEIXEIRA, Egberto Lacerda . . São Paulo/SP: Bushatsky, 1979.

### Book Chapter Published

**1.** GUERREIRO, José Alexandre Tavares ; BUSCHINELLI, Gabriel Saad Kik . . In: Gustavo Machado Gonzalez. (Org.). Processo sancionador nos mercados financeiro e de capitais. 1 ed. São Paulo: Revista dos Tribunais, 2023, v. , p. 573-612.

**2.** GUERREIRO, José Alexandre Tavares ; BUSCHINELLI, Gabriel Saad Kik . . In: Fernando Kuyven. (Org.). Direito dos Fundos de Investimento. 1 ed. São Paulo: Revista dos Tribunais, 2023, v. , p. 529-542.

**3.** GUERREIRO, José Alexandre Tavares . . Novas Perspectivas do Direito Empresarial: 90 anos do Prof. Modesto Carvalhosa. 1 ed. São Paulo: Quartier Latin, 2023, v. 1, p. 367-382.

**4.** GUERREIRO, José Alexandre Tavares ; BUSCHINELLI, Gabriel Saad Kik . . In: Carlos Portugal Gouvêa; Mariana Pargendler; Maurizio Levi-Minzi. (Org.). Fusões e aquisições: pareceres. 1 ed. São Paulo: Almedina, 2022, v. , p. 121-142.

**5.** GUERREIRO, José Alexandre Tavares . . In: José Roberto de Castro Neves. (Org.). Música e direito. 1 ed. Rio de Janeiro: Nova Fronteira, 2022, v. , p. 409-420.

**6.** GUERREIRO, José Alexandre Tavares ; GUERREIRO, C. D. T. . . In: José Augusto Bitencourt Machado Filho; Guilherme Enrique Malosso Quintana; Gustavo Gonzalez Ramos; Luiz Felipe Ferreira Baquedano; Daniel Mendes Bioza; Pedro Teixeira Mendes Parizotto. (Org.). Arbitragem e Processo: homenagem ao Professor Carlos Alberto Carmona. 1 ed. São Paulo: Quartier Latin, 2022, v. 2, p. 55-62.

7. GUERREIRO, José Alexandre Tavares . . In: Fábio Ulhoa Coelho; Gustavo Tepedino; Selma Ferreira Lemes. (Org.). A evolução do direito no século XXI: seus princípios e valores (esg, liberdade, regulação, igualdade e segurança jurídica) - Homenagem ao professor Arnoldo Wald. 1 ed. São Paulo: IASP, 2022, v. 1, p. 105-112.

8. GUERREIRO, José Alexandre Tavares . . In: Ana Frazão; Rodrigo R. Monteiro de Castro; Sérgio Campinho. (Org.). Direito Empresarial e suas interfaces: homenagem a Fábio Ulhoa Coelho. 1 ed. São Paulo: Quartier Latin, 2022, v. 2, p. 463-470.

9. GUERREIRO, José Alexandre Tavares ; GUERREIRO, C. D. T. . . In: Sidnei Beneti; Roberto Rosas. (Org.). Entre a Magistratura e a Advocacia: escritos em Homenagem a Rubens Ferraz de Oliveira Lima. 1 ed. Rio de Janeiro: GZ Editora, 2021, v. , p. 257-266.

10. GUERREIRO, José Alexandre Tavares . . In: Henrique Barbosa; Jorge Cesa Ferreira Da Silva. (Org.). A Evolução do Direito Empresarial e Obrigacional:18 Anos do Código Civil. 1 ed. São Paulo: Quartier Latin, 2021, v. , p. 195-206.

11. GUERREIRO, José Alexandre Tavares ; BUSCHINELLI, Gabriel Saad Kik . . In: Alexandre Evaristo Pinto; Pedro Eroles; Roberto Quiroga Mosquera. (Org.). Criptoativos: estudos regulatórios e tributários. 1 ed. São Paulo: Quartier Latin, 2021, v. , p. 455-486.

12. GUERREIRO, José Alexandre Tavares . . In: Arruda Alvim; Eduardo Arruda Alvim; Flavio Galdino. (Org.). Uma vida dedicada ao direito: estudos em homenagem a Roberto Rosas. 1 ed. Rio de Janeiro: GZ Editora, 2020, v. , p. 411-416.

13. GUERREIRO, José Alexandre Tavares . . In: Rodrigo Rocha Monteiro de Castro; Luis Andre Azevedo; Marcus de Freitas Henriques. (Org.). Direito Societário, Mercado de Capitais, Arbitragem e Outros Temas. 1 ed. São Paulo: Quartier Latin, 2020, v. 3, p. 341-348.

14. GUERREIRO, José Alexandre Tavares . . In: José Roberto de Castro Neves. (Org.). O que os grandes livros ensinam sobre justiça. 1 ed. Rio de Janeiro: Nova Fronteira, 2019, v. , p. 673-686.

15. GUERREIRO, José Alexandre Tavares . . In: Maria Lucia Cantidiano; Igor Muniz; Isabel Cantidiano. (Org.). Sociedades anônimas, mercados de capitais e outros estudos: homenagem a Luiz Leonardo Cantidiano. 1 ed. São Paulo: Quartier Latin, 2019, v. , p. 6-15.

16. GUERREIRO, José Alexandre Tavares . . In: Edmar Bacha; Joaquim Falcão; José Murilo de Carvalho; Marcelo Fernandez Trindade; Pedro S. Malan; Simon Schwartzman. (Org.). 130 anos: Em busca da República. 1 ed. Rio de Janeiro: Intrínseca, 2019, v. , p. 44-47.

17. GUERREIRO, José Alexandre Tavares . . In: José Roberto de Castro Neves. (Org.). Os grandes julgamentos da História. 1 ed. Rio de Janeiro: Nova Fronteira, 2018, v. , p. 617-625.

18. GUERREIRO, José Alexandre Tavares . . In: Alberto Venancio Filho; Carlos Augusto da Silveira Lobo; Luiz Alberto Colonna Rosman. (Org.). Lei das S. A. em seus 40 anos. 1 ed. Rio de Janeiro: Forense, 2017, v. , p. 199-216.

19. GUERREIRO, José Alexandre Tavares . . In: José Roberto de Castro Neves. (Org.). Ele, Shakespeare, visto por nós, os advogados. 1 ed. Rio de Janeiro: Edições de Janeiro, 2017, v. , p. 145-151.

20. GUERREIRO, José Alexandre Tavares . . In: Pierre Moreau. (Org.). Grandes Crimes. 1 ed. São Paulo: Três Estrelas, 2017, v. , p. 86-91.

21. GUERREIRO, José Alexandre Tavares . . In: Renato Berger; Rafael Villac Vicente de Carvalho; Leonardo Barém Leite. (Org.). 40 anos da Lei das S.A.: experiências, histórias e homenagens. 1 ed. São Paulo: Quartier Latin, 2016, v. , p. 89-92.

22. GUERREIRO, José Alexandre Tavares . . In: Sérgio Botrel; Henrique Barbosa. (Org.). Finanças corporativas: aspectos jurídicos e estratégicos. 1 ed. São Paulo: Atlas, 2016, v. , p. 143-152.

23. GUERREIRO, José Alexandre Tavares . . In: Erasmo Valladão Azevedo e Novaes França; Marcelo Vieira von Adamek. (Org.). Temas de direito empresarial e outros estudos: em homenagem ao professor Luiz Gastão Paes de Barros Leães. 1 ed. São Paulo: Malheiros, 2014, v. , p. 124-141.

24. GUERREIRO, José Alexandre Tavares . . In: José Augusto Fontoura Costa; José Maria Arruda de Andrade; Alexandra Mery Hansen Matsuo. (Org.). Direito: teoria e experiência: estudos em homenagem ao Eros Roberto Grau. 1 ed. São Paulo: Malheiros, 2013, v. 1, p. 804-814.

25. GUERREIRO, José Alexandre Tavares . . In: Alexandre Couto Silva. (Org.). Direito societário: estudos sobre a lei de sociedades por ações. 1 ed. São Paulo: Saraiva, 2013, v. , p. 11-17.

26. GUERREIRO, José Alexandre Tavares . . In: Pierre Moreau. (Org.). As letras da Lei. 1 ed. Rio de Janeiro: Casa da Palavra, 2013, v. , p. 5-15.

27. GUERREIRO, José Alexandre Tavares . . In: Gilberto Gomes Bruschi; Mônica Bonetti Couto; Ruth Maria Junqueira de A. Pereira e Silva; Thomaz Henrique Junqueira de A. Pereira. (Org.). Direito processual empresarial: estudos em homenagem a Manoel de Queiroz Pereira Calças. 1 ed. Rio de Janeiro: Elsevier, 2012, v. , p. 409-419.

28. GUERREIRO, José Alexandre Tavares . . In: Luiz Fernando Martins Kuyven. (Org.). Temas essenciais de direito empresarial: estudos em homenagem a Modesto Carvalhosa. 1 ed. São Paulo: Saraiva, 2012, v. , p. 681-692.

29. GUERREIRO, José Alexandre Tavares . . In: Flávio Luiz Yarshell; Guilherme Setoguti J. Pereira. (Org.). Processo Societário. 1 ed. São Paulo: Quartier Latin, 2012, v. , p. 371-382.

30. GUERREIRO, José Alexandre Tavares . . In: Marcelo Vieira von Adamek. (Org.). Temas de direito societário e empresarial contemporâneos: Liber Amicorum Prof. Dr. Erasmo Valladão Azevedo e Novaes França. 1 ed. São Paulo: Malheiros, 2011, v. , p. 388-408.

31. GUERREIRO, José Alexandre Tavares . . In: Nelson Nery Junior; Rosa Maria de Andrade Nery. (Org.). Doutrinas Essenciais de Responsabilidade Civil. 1 ed. São Paulo: Revista dos Tribunais, 2010, v. 2, p. 61-66.

32. GUERREIRO, José Alexandre Tavares . . In: Rodrigo R. Monteiro de Castro;Luís André N. de Moura Azevedo. (Org.). Poder de Controle e Outros Temas de Direito Societário e Mercado de Capitais. 1 ed. São Paulo: Quartier Latin, 2009, v. 1, p. -.

33. GUERREIRO, José Alexandre Tavares . . In: Elizabeth Accioly. (Org.). Direito no Século XXI - Em homenagem ao Professor Werter Faria. 1 ed. Curitiba,PR: Juruá, 2008, v. 1, p. 198-287.

**34.** GUERREIRO, José Alexandre Tavares . . In: Heleno Taveira Torres; Mary Elbe Queiroz. (Org.). Desconsideração da personalidade jurídica em matéria tributária. São Paulo/SP: Quartier Latin, 2005, v. , p. 303-321.

**35.** GUERREIRO, José Alexandre Tavares . . In: Francisco Sátiro de Souza Júnior; Antônio Sérgio Altieri de Moraes Pitombo. (Org.). Comentários à lei de recuperação de empresas e falência: lei 11.101/2005. São Paulo/SP: Revista dos Tribunais, 2005, v. , p. 144-162.

**36.** GUERREIRO, José Alexandre Tavares . . In: Jorge Lobo. (Org.). Reforma da Lei das Sociedades Anônimas: inovações e questões controvertidas da Lei nº 10.303, de 31.10.2001. 1 ed. Rio de Janeiro: Forense, 2002, v. , p. 51-59.

**37.** GUERREIRO, José Alexandre Tavares . . In: José Cretella Júnior; René Ariel Dotti; Geraldo Magela Alves. (Org.). Comentários ao Código do Consumidor. 1 ed. Rio de Janeiro: Forense, 1992, v. , p. 111-147.

**38.** GUERREIRO, José Alexandre Tavares . . In: Arnoldo Wald. (Org.). Direito na década de 80: estudos jurídicos em homenagem à Hely Lopes Meirelles. São Paulo/SP: Revista dos Tribunais, 1985, v. , p. 143-149.

### Complete works published in proceedings of conferences

**1.** GUERREIRO, José Alexandre Tavares . Execução judicial de decisões arbitrais, 1988, São Paulo/SP. Anais da conferência arbitragem comercial internacional. São Paulo/SP, 1988. p. 1-22.

### Other Kinds of Bibliographical Production a

**1.** GUERREIRO, José Alexandre Tavares . . São Paulo, 2023. (Preface, Postface/Preface).

**2.** GUERREIRO, José Alexandre Tavares . . São Paulo, 2022. (Preface, Postface/Preface).

**3.** GUERREIRO, José Alexandre Tavares . . São Paulo, 2022. (Preface, Postface/Preface).

**4.** GUERREIRO, José Alexandre Tavares . . Rio de Janeiro, 2016. (Preface, Postface/Preface).

**5.** GUERREIRO, José Alexandre Tavares . Crítica em: O processo do capitão Dreyfus. São Paulo/SP: Giordano, 1994 (Crítica).

**6.** GUERREIRO, José Alexandre Tavares . . Belo Horizonte/MG, 1993. (Preface, Postface/Preface).

### Technical Production

### Other Kinds of Technical Production

**1.** GUERREIRO, José Alexandre Tavares . . 2010. (Palestra).

**2.** GUERREIRO, José Alexandre Tavares . . 2010. (Palestra).

**3.** GUERREIRO, José Alexandre Tavares . . 2010. (Palestra).

**4.** GUERREIRO, José Alexandre Tavares . . 2009. (Palestra).

**5.** GUERREIRO, José Alexandre Tavares . . 2009. (Palestra).

**6.** GUERREIRO, José Alexandre Tavares . . 2009. (Palestra).

**7.** GUERREIRO, José Alexandre Tavares . . 2009. (Painel).

**8.** GUERREIRO, José Alexandre Tavares . . 2009. (Palestra).

**9.** GUERREIRO, José Alexandre Tavares . . 2009. (Palestra).

**10.** GUERREIRO, José Alexandre Tavares . . 2009. (Palestra).

**11.** GUERREIRO, José Alexandre Tavares . . 2008. (Palestra).

**12.** GUERREIRO, José Alexandre Tavares . . 2008. (Palestra).

**13.** GUERREIRO, José Alexandre Tavares . . 2008. (Palestra).

**14.** GUERREIRO, José Alexandre Tavares . . 2008. (Palestra).

**15.** GUERREIRO, José Alexandre Tavares . . 2006. (Palestra).

**16.** GUERREIRO, José Alexandre Tavares . . 2006. (Aula).

**17.** GUERREIRO, José Alexandre Tavares . . 2006. (Palestra).

**18.** GUERREIRO, José Alexandre Tavares . . 2005. (Palestra).

**19.** GUERREIRO, José Alexandre Tavares . . 2005. (Palestra).

**20.** GUERREIRO, José Alexandre Tavares . . 2005. (Aula).

**21.** GUERREIRO, José Alexandre Tavares . . 2005. (Palestra).

**22.** GUERREIRO, José Alexandre Tavares . . 2005. (Palestra).

23. GUERREIRO, José Alexandre Tavares . . 2005. (Aula).

24. GUERREIRO, José Alexandre Tavares . . 2005. (Palestra).

25. GUERREIRO, José Alexandre Tavares . . 2005. (Palestra).

26. GUERREIRO, José Alexandre Tavares . . 2005. (Painel).

27. GUERREIRO, José Alexandre Tavares . . 2004. (Palestra).

28. GUERREIRO, José Alexandre Tavares . . 2004. (Palestra).

29. GUERREIRO, José Alexandre Tavares . . 2004. (Palestra).

30. GUERREIRO, José Alexandre Tavares . . 2004. (Palestra).

31. GUERREIRO, José Alexandre Tavares . . 2004. (Palestra).

32. GUERREIRO, José Alexandre Tavares . . 2004. (Palestra).

33. GUERREIRO, José Alexandre Tavares . . 2004. (Palestra).

34. GUERREIRO, José Alexandre Tavares . . 2004. (Palestra).

35. GUERREIRO, José Alexandre Tavares . . 2004. (Aula).

36. GUERREIRO, José Alexandre Tavares . . 2004. (Palestra).

37. GUERREIRO, José Alexandre Tavares . . 2004. (Aula).

38. GUERREIRO, José Alexandre Tavares . . 2004. (Palestra).

## Boards

**Participation in Course Completion Works Examination Boards**

### Dissertation

1. CEREZETTI, S. C. N.; BUSCHINELLI, Gabriel Saad Kik; DINIZ, G. S.; GUERREIRO, José Alexandre Tavares. Participation In Board of Nicole Raca Bromberg. 2023 - Faculdade de Direito da USP.

2. DIAS, L. P.; BUSCHINELLI, Gabriel Saad Kik; PELA, J. K.; GUERREIRO, José Alexandre Tavares. Participation In Board of Roberta Marques de Moraes Tucci. 2023.

3. COSTA, I. S.; DIAS, L. P.; PELA, J. K.; GUERREIRO, José Alexandre Tavares. Participation In Board of Ana Thereza Mantovanini Aguiar. 2023 - Faculdade de Direito da USP.

4. CEREZETTI, S. C. N.; GUERREIRO, José Alexandre Tavares. Participation In Board of Rafaela Parizotto Lacaz Martins. 2021 - Faculdade de Direito da USP.

5. BUSCHINELLI, Gabriel Saad Kik; GONCALVES, D. M. C.; PROENCA, J. M. M.; GUERREIRO, José Alexandre Tavares. Participation In Board of Diego Gonçalves Coelho. 2020 - Faculdade de Direito da USP.

6. MUNHOZ, E. S.; PATELLA, L. A.; YAZBEK, O.; GUERREIRO, José Alexandre Tavares. Participation In Board of Fabiana Mendonça Martins de Almeida. 2020.

7. LEMES, S. M. F.; ROSALBA, V. M. P.; MENDES, R. O. B.; GUERREIRO, José Alexandre Tavares. Participation In Board of Amanda Cristina Siqueira da Costa Vilela. 2019 - Faculdade de Direito da USP.

8. FONSECA, P. M. P. C.; CASTRO, R. R. M.; PRADO, R. N.; GUERREIRO, José Alexandre Tavares. Participation In Board of Tiago Angelo de Lima. 2019.

9. MATTOS FILHO, A. O.; PELA, J. K.; YAZBEK, O.; GUERREIRO, José Alexandre Tavares. Participation In Board of Julia Souza Corrêa. 2019.

10. MUNHOZ, E. S.; JUSTEN FILHO, M.; PINTO JUNIOR, M. E.; GUERREIRO, José Alexandre Tavares. Participation In Board of Mayara Gasparoto Tonin. 2018.

11. MUNHOZ, E. S.; PONTES, E. F.; YAZBEK, O.; GUERREIRO, José Alexandre Tavares. Participation In Board of Alex Sandro Hatanaka. 2018 - Faculdade de Direito da USP.

12. PELA, J. K.; PITTA, A. G.; YAZBEK, O.; GUERREIRO, José Alexandre Tavares. Participation In Board of Tiago Molina Ferreira. 2018 - Faculdade de Direito da USP.

13. SOUZA JUNIOR, F. S.; YAZBEK, O.; ROSALBA, V. M. P.; GUERREIRO, José Alexandre Tavares. Participation In Board of Rodrigo Vinícius Dufloth. 2017.

14. FORGIONI, P. A.; ROSALBA, V. M. P.; GUERREIRO, José Alexandre Tavares. Participation In Board of Rafael Helou Bresciani. 2017.

**15.** SOUZA JUNIOR, F. S.; YAZBEK, O.; GUERREIRO, José Alexandre Tavares. Participation In Board of Julya Sotto Mayor Wellisch. 2016.

**16.** SOUZA JUNIOR, F. S.; ARAGAO, A. S.; GUERREIRO, José Alexandre Tavares. Participation In Board of Astrid Monteiro de Carvalho Guimarães de Lima Rocha. 2016.

**17.** FONSECA, P. M. P. C.; GUERREIRO, José Alexandre Tavares. Participation In Board of Lívia Garcia Kerr do Amaral Caselta. 2016 - Faculdade de Direito da USP.

**18.** FRANCA, E. V. A. E N.; ADAMEK, M. V. V.; GUERREIRO, José Alexandre Tavares. Participation In Board of Tatiana Flores Gaspar Serafim. 2016 - Faculdade de Direito da USP.

**19.** ROSALBA, V. M. P.; MENDES, R. O. B.; GUERREIRO, José Alexandre Tavares. Participation In Board of Michelle Sopper. 2015.

**20.** YAZBEK, O.; CEREZETTI, S. C. N.; GUERREIRO, José Alexandre Tavares. Participation In Board of Guilherme Frazão Nadalin. 2015.

**21.** SALLES, Marcos Paulo de Almeida; TEPEDINO, G. J. M.; GUERREIRO, José Alexandre Tavares. Participation In Board of Marcelo Borja Veiga. 2015 - Faculdade de Direito da USP.

**22.** SOUZA JUNIOR, F. S.; YAZBEK, O.; GUERREIRO, José Alexandre Tavares. Participation In Board of Pedro Darahem Mafud. 2014.

**23.** FRANCA, E. V. A. E N.; YAZBEK, O.; GUERREIRO, José Alexandre Tavares. Participation In Board of Luiz Eduardo Malta Corradini. 2014.

**24.** NANNI, G. E.; SOUZA JUNIOR, F. S.; GUERREIRO, José Alexandre Tavares. Participation In Board of Ana Carolina Devito Dearo Zanetti. 2014.

**25.** FRONTINI, P. S.; PELA, J. K.; GUERREIRO, José Alexandre Tavares. Participation In Board of Maria Fernanda Calado de Aguiar Ribeiro Cury. 2014 - Faculdade de Direito da USP.

**26.** SOUZA JUNIOR, F. S.; YAZBEK, O.; GUERREIRO, José Alexandre Tavares. Participation In Board of Vinícius Krüger Chalub Fadanelli. 2013.

**27.** ROSALBA, V. M. P.; MENDES, R. O. B.; GUERREIRO, José Alexandre Tavares. Participation In Board of Laila Cristina Duarte Ferreira. 2013.

**28.** YAZBEK, O.; MENDES, R. O. B.; GUERREIRO, José Alexandre Tavares. Participation In Board of Joana Mota Scarpa. 2013.

**29.** PROENCA, J. M. M.; PRADO, R. N.; GUERREIRO, José Alexandre Tavares. Participation In Board of Eduardo Henrique Pinto de Carvalho. 2013.

**30.** FONSECA, P. M. P. C.; PRADO, R. N.; GUERREIRO, José Alexandre Tavares. Participation In Board of Vitor dos Santos Henriques. 2013 - Faculdade de Direito da USP.

**31.** FONSECA, P. M. P. C.; PRADO, R. N.; GUERREIRO, José Alexandre Tavares. Participation In Board of Tatiana Cardoso Abrahão. 2013 - Faculdade de Direito da USP.

**32.** CHIARA, José Tadeu; MASSO, F. D.; GUERREIRO, José Alexandre Tavares. Participation In Board of Marina Palma Copola. 2013 - Faculdade de Direito da USP.

**33.** TOLEDO, P. F. C. S.; YAZBEK, O.; GUERREIRO, José Alexandre Tavares. Participation In Board of Gabriela Bonini Codorniz. 2013 - Faculdade de Direito da USP.

**34.** PROENCA, J. M. M.; NAJJARIAN, I. P. N.; GUERREIRO, José Alexandre Tavares. Participation In Board of Fernando de Andrade Mota. 2013.

**35.** MUNHOZ, E. S.; YAZBEK, O.; GUERREIRO, José Alexandre Tavares. Participation In Board of Ferdinando Cesar Lunardi Filho. 2013 - Faculdade de Direito da USP.

**36.** LOPES, J. R. L.; MARQUESE, R. B.; GUERREIRO, José Alexandre Tavares. Participation In Board of André Javier Pereira Payar. 2012.

**37.** SOUZA JUNIOR, F. S.; PRADO, R. N.; GUERREIRO, José Alexandre Tavares. Participation In Board of Paloma dos Reis Coimbra de Souza. 2011.

**38.** SOUZA JUNIOR, F. S.; GUEDES, G. S. C. C.; GUERREIRO, José Alexandre Tavares. Participation In Board of Felipe Campana Padin Iglesias. 2011.

**39.** CORREA, A. R.; GUEDES, G. S. C. C.; GUERREIRO, José Alexandre Tavares. Participation In Board of Handemba Mutana Poli dos Santos. 2011 - Fundação Getúlio Vargas.

**40.** GUERREIRO, José Alexandre Tavares. Participation In Board of Daniel Kalansky Ponczekl. 2010. Dissertation (Master's in Mestrado em Direio) - Faculdade de Direito da Universidade de São Paulo.

**41.** GUERREIRO, José Alexandre Tavares. Participation In Board of Anna Beatriz Alvez Margoni. 2010. Dissertation (Master's in Mestrado em Direito) - Faculdade de Direito da Universidade de São Paulo.

**42.** GUERREIRO, José Alexandre Tavares. Participation In Board of Alexandre Hildebrand Garcia. 2009. Dissertation (Master's in Mestrado em Direito) - Faculdade de Direito da Universidade de São Paulo.

**43.** FORGIONI, P. A.; BERCOVICI, G.; GUERREIRO, José Alexandre Tavares. Participation In Board of Mariana Conti Craveiro. 2006 - Faculdade de Direito da USP.

**44.** GUERREIRO, José Alexandre Tavares. Participation In Board of Juliana de Carvalho Ortolani. 2004. Dissertation (Master's in Direito) - Universidade de São Paulo.

**45.** MATTIA, Fábio Maria de; LOPEZ, Teresa Ancona; GUERREIRO, José Alexandre Tavares. Participation In Board of Fernando Campos Scaff. 1995. Dissertation (Master's in Direito) - Universidade de São Paulo.

## Ph.D. Thesis

**1.** PELA, J. K.; ADAMEK, M. V. V.; PARGENDLER, M. S.; VIO, D. A.; PATELLA, L. A.; GUERREIRO, José Alexandre Tavares. Participation In Board of Renata Nascimento de Carvalho. 2023 - Faculdade de Direito da USP.

**2.** MUNHOZ, E. S.; SACRAMONE, M. B.; SHIMURA, S. S.; PONCZEK, D. K.; ROSALBA, V. M. P.; GUERREIRO, José Alexandre Tavares. Participation In Board of Renato Vilela. 2023 - Faculdade de Direito da USP.

**3.** PELA, J. K.; ADAMEK, M. V. V.; BUSCHINELLI, Gabriel Saad Kik; PATELLA, L. A.; PARGENDLER, M. S.; GUERREIRO, José Alexandre Tavares. Participation In Board of Renato Berger. 2023 - Faculdade de Direito da USP.

**4.** MUNHOZ, E. S.; GUERREIRO, José Alexandre Tavares. Participation In Board of Mariana Martins-Costa Ferreira. 2022 - Faculdade de Direito da USP.

**5.** FONSECA, P. M. P. C.; FRANCA, E. V. A. E. N.; CARVALHO, A. G.; DINIZ, G. S.; GUERREIRO, José Alexandre Tavares. Participation In Board of Raphael Andrade Silva. 2021 - Faculdade de Direito da USP.

**6.** YAZBEK, O.; TEPEDINO, G. J. M.; PELA, J. K.; CEREZETTI, S. C. N.; PIRES, C. L. M.; GUERREIRO, José Alexandre Tavares. Participation In Board of Ana Carolina Weber. 2020 - Faculdade de Direito da USP.

**7.** VERCOSA, H. M. D.; BUSCHINELLI, Gabriel Saad Kik; MATTOS FILHO, A. O.; PINTO JUNIOR, M. E.; SOUZA JUNIOR, F. S.; GUERREIRO, José Alexandre Tavares. Participation In Board of Daniel Kalansky Ponczek. 2020.

**8.** FONSECA, P. M. P. C.; FRANCA, E. V. A. E. N.; GUERREIRO, José Alexandre Tavares. Participation In Board of Raphael Andrade Silva. 2020 - Faculdade de Direito da USP.

**9.** SOUZA JUNIOR, F. S.; ROSALBA, V. M. P.; MATTOS FILHO, A. O.; BUSCHINELLI, Gabriel Saad Kik; GUERREIRO, José Alexandre Tavares. Participation In Board of Denis Morelli. 2019.

**10.** PROENCA, J. M. M.; CEREZETTI, S. C. N.; NAJJARIAN, I. P. N.; PINTO JUNIOR, M. E.; GUERREIRO, José Alexandre Tavares. Participation In Board of Fernando de Andrade Mota. 2018.

**11.** BERCOVICI, G.; BALTAR, C. T.; CHIARA, José Tadeu; LAPLANE, M. F.; GUERREIRO, José Alexandre Tavares. Participation In Board of Bruno Ferraz Basso. 2018.

**12.** BERCOVICI, G.; BALTAR, C. T.; CHIARA, J. T.; LAPLANE, M. F.; GUERREIRO, José Alexandre Tavares. Participation In Board of Bruno Ferraz Basso. 2018 - Faculdade de Direito da USP.

**13.** MUNHOZ, E. S.; COSTA, J. H. M.; FRANCA, E. V. A. E. N.; MATTOS FILHO, A. O.; GUERREIRO, José Alexandre Tavares. Participation In Board of Gabriel Saad Kik Buschinelli. 2017.

**14.** FRANCA, E. V. A. E. N.; ADAMEK, M. V. V.; MUNHOZ, E. S.; YAZBEK, O.; GUERREIRO, José Alexandre Tavares. Participation In Board of Thiago Saddi Tannous. 2017 - Faculdade de Direito da USP.

**15.** SOUZA JUNIOR, F. S.; SOARES, A. A. S.; PELA, J. K.; YAZBEK, O.; PRADO, V. M.; GUERREIRO, José Alexandre Tavares. Participation In Board of André Grünspun Pitta. 2017 - Faculdade de Direito da USP.

**16.** SOUZA JUNIOR, F. S.; YAZBEK, O.; MATTOS FILHO, A. O.; FORGIONI, P. A.; GUERREIRO, José Alexandre Tavares. Participation In Board of Angela Rita Franco Donaggio. 2016.

**17.** MUNHOZ, E. S.; PARGENDLER, M. S.; SOUZA JUNIOR, F. S.; ZANINI, C. K.; GUERREIRO, José Alexandre Tavares. Participation In Board of Luís André Negrelli de Moura Azevedo. 2016 - Faculdade de Direito da USP.

**18.** MUNHOZ, E. S.; GUERREIRO, José Alexandre Tavares. Participation In Board of Henrique Cunha Barbosa. 2016 - Faculdade de Direito da USP.

**19.** GUERREIRO, José Alexandre Tavares. Participation In Board of Angela Rita Franco Donaggio. 2016.

**20.** FRANCA, E. V. A. E. N.; ADAMEK, M. V. V.; MARINO, F. P. C.; VIO, D. A.; GUERREIRO, José Alexandre Tavares. Participation In Board of Luiz Daniel Rodrigues Haj Mussi. 2015 - Faculdade de Direito da USP.

**21.** MUNHOZ, E. S.; HADDAD, L. G.; SOUZA JUNIOR, F. S.; YAZBEK, O.; GUERREIRO, José Alexandre Tavares. Participation In Board of Laura Amaral Patella. 2015 - Faculdade de Direito da USP.

**22.** SALOMAO FILHO, C.; PEREIRA NETO, C. M. S.; SALAMA, B. M.; SOUZA JUNIOR, F. S.; GUERREIRO, José Alexandre Tavares. Participation In Board of Luciana Pires Dias. 2014 - Faculdade de Direito da USP.

**23.** FRANCA, E. V. A. E. N.; ADAMEK, M. V. V.; DINIZ, G. S.; YARSHELL, F. L.; GUERREIRO, José Alexandre Tavares. Participation In Board of João Pedro de Souza Scalzilli. 2014 - Faculdade de Direito da USP.

**24.** FONSECA, P. M. P. C.; ALMEIDA, M. E. M.; CAMARGO, A. A. S.; TOLEDO, P. F. C. S.; GUERREIRO, José Alexandre Tavares. Participation In Board of Andréia Cristina Bezerra. 2014 - Faculdade de Direito da USP.

**25.** MUNHOZ, E. S.; FRANCA, E. V. A. E. N.; PINTO, M. B.; ZANINI, C. K.; GUERREIRO, José Alexandre Tavares. Participation In Board of Bruno Robert. 2014.

**26.** FRANCA, E. V. A. E. N.; ADAMEK, M. V. V.; BEZERRA FILHO, M. J.; SOUZA JUNIOR, F. S.; GUERREIRO, José Alexandre Tavares. Participation In Board of André Antunes Soares de Camargo. 2012 - Faculdade de Direito da USP.

**27.** SALLES, Marcos Paulo de Almeida; FRANCA, E. V. A. E. N.; LOTUFO, R.; SADDI, J. S.; GUERREIRO, José Alexandre Tavares. Participation In Board of Marcelo Barbosa Sacramone. 2012 - Faculdade de Direito da USP.

**28.** FORGIONI, P. A.; BARRIONUEVO FILHO, A.; CRUZ, H. N.; PROENCA, J. M. M.; GUERREIRO, José Alexandre Tavares.

Participation In Board of Lie Uema do Carmo. 2012 - Faculdade de Direito da USP.

29. SZTAJN, Rachel; PELA, J. K.; FARINA, E. M. M. Q.; GORGA, C. R.; GUERREIRO, José Alexandre Tavares. Participation In Board of José Inácio Ferraz de Almeida Prado Filho. 2011.

30. GUERREIRO, José Alexandre Tavares. Participation In Board of Mario Engler Pinto Junior. 2009. Thesis (Ph.D. in Doutorado em Direito) - Faculdade de Direito da Universidade de São Paulo.

31. ALVES, A. F. A.; ALMEIDA, J. G. L. P. A.; LIMA, O. B. C.; MIGUEL, P. C.; GUERREIRO, José Alexandre Tavares. Participation In Board of Maurício Moreira Mendonça de Menezes. 2009 - Faculdade de Direito da USP.

32. SALOMAO FILHO, C.; FRANCA, E. V. A. E. N.; OLIVEIRA, F. A. A.; SUNDFELD, C. A. V.; GUERREIRO, José Alexandre Tavares. Participation In Board of Mario Engler Pinto Junior. 2009 - Faculdade de Direito da USP.

33. TOLEDO, P. F. C. S.; LABRUNIE, J.; PRADO, V. M.; SILVEIRA, N.; GUERREIRO, José Alexandre Tavares. Participation In Board of Ana Claudia Karam Abdallah dos Santos. 2009 - Faculdade de Direito da USP.

34. GUERREIRO, José Alexandre Tavares. Participation In Board of Écio Perin Júnior. 2006. Thesis (Ph.D. in Direito) - Pontifícia Universidade Católica de São Paulo.

35. LIMA, O. B. C.; THEODORO JUNIOR, H.; CASTRO, M. A. S.; FRANCA, E. V. A. E. N.; FORGIONI, P. A.; DINIZ, A. J. A.; GUERREIRO, José Alexandre Tavares. Participation In Board of Rodrigo Ferraz Pimenta da Cunha. 2005 - Universidade Federal de Minas Gerais.

36. BULGARELLI, W.; GUERREIRO, José Alexandre Tavares. Participation In Board of Francisco Sátiro de Souza Júnior. 2002. Thesis (Ph.D. in Direito) - Universidade de São Paulo.

### Ph.D. Qualification

1. PELA, J. K.; OLIVA, M. D.; GUERREIRO, José Alexandre Tavares. Participation In Board of Marina Palma Copola de Carvalho. 2023 - Faculdade de Direito da USP.

2. BUSCHINELLI, Gabriel Saad Kik; PELA, J. K.; GUERREIRO, José Alexandre Tavares. Participation In Board of Juliana Paiva Franco Netto da Costa. 2023 - Faculdade de Direito da Universidade de São Paulo.

3. PELA, J. K.; PARGENDLER, M. S.; GUERREIRO, José Alexandre Tavares. Participation In Board of Gabriela Bonini Codorniz. 2023 - Faculdade de Direito da Universidade de São Paulo.

4. SOUZA JUNIOR, F. S.; PELA, J. K.; GUERREIRO, José Alexandre Tavares. Participation In Board of Luís Felipe Ferrari Bedendi. 2023 - Faculdade de Direito da Universidade de São Paulo.

5. YAZBEK, O.; PARGENDLER, M. S.; GUERREIRO, José Alexandre Tavares. Participation In Board of Adriano Helena Sasseron. 2023 - Faculdade de Direito da USP.

6. ADAMEK, M. V. V.; PEREIRA, G. S. J.; GUERREIRO, José Alexandre Tavares. Participation In Board of Ana Carolina Costa Barbosa Musa. 2022.

7. GUERREIRO, José Alexandre Tavares. Participation In Board of Nicole Raca Bromberg. 2021 - Faculdade de Direito da USP.

8. FORGIONI, P. A.; GUERREIRO, José Alexandre Tavares. Participation In Board of Maria do Céu Marques Rosado. 2019 - Faculdade de Direito da USP.

9. GUERREIRO, José Alexandre Tavares. Participation In Board of Breno Casiuch. 2019 - Faculdade de Direito da USP.

10. GUERREIRO, José Alexandre Tavares. Participation In Board of Maria Beatriz de Mello Grella Vieira Terra. 2019.

11. GUERREIRO, José Alexandre Tavares. Participation In Board of Ana Thereza Mantovanini Aguiar. 2018 - Faculdade de Direito da USP.

12. PELA, J. K.; YAZBEK, O.; GUERREIRO, José Alexandre Tavares. Participation In Board of Renata Nascimento de Carvalho. 2018 - Faculdade de Direito da USP.

13. GUERREIRO, José Alexandre Tavares. Participation In Board of Ana Carolina Weber. 2018 - Faculdade de Direito da USP.

14. GUERREIRO, José Alexandre Tavares. Participation In Board of Julia Souza Corrêa. 2017 - Faculdade de Direito da USP.

15. GUERREIRO, José Alexandre Tavares. Participation In Board of Amanda Cristina Siqueira da Costa. 2017 - Faculdade de Direito da USP.

16. GUERREIRO, José Alexandre Tavares. Participation In Board of Lucas Fulanete Gonçalves Bento. 2017 - Faculdade de Direito da USP.

17. GUERREIRO, José Alexandre Tavares. Participation In Board of Ana Carolina Devito Dearo Zanetti. 2017 - Faculdade de Direito da USP.

18. TOLEDO, P. F. C. S.; GOUVEA, C. P. B. P.; GUERREIRO, José Alexandre Tavares. Participation In Board of Vinícius Spaggiari Silva. 2016 - Faculdade de Direito da USP.

19. FRANCA, E. V. A. E. N.; ADAMEK, M. V. V.; GUERREIRO, José Alexandre Tavares. Participation In Board of Eduardo Matzenbacher Zarpelon. 2016 - Faculdade de Direito da USP.

20. FRANCA, E. V. A. E. N.; ADAMEK, M. V. V.; GUERREIRO, José Alexandre Tavares. Participation In Board of Eduardo Matzenbacher Zarpelon. 2016 - Faculdade de Direito da USP.

21. MARCHI, E. C. S. V.; NERO, J. A. S.; GUERREIRO, José Alexandre Tavares. Participation In Board of Dilson Jatahy Fonseca Neto. 2016 - Faculdade de Direito da USP.

22. FRANCA, E. V. A. E. N.; ADAMEK, M. V. V.; GUERREIRO, José Alexandre Tavares. Participation In Board of Rodrigo Barreira Roso. 2016 - Faculdade de Direito da USP.

23. SOUZA JUNIOR, F. S.; CAVALLI, C. M.; GUERREIRO, José Alexandre Tavares. Participation In Board of Fernando William Bunemer Nahas. 2016.

24. GUERREIRO, José Alexandre Tavares. Participation In Board of Julia Souza Corrêa. 2015 - Faculdade de Direito da USP.

25. FRANCA, E. V. A. E. N.; GUERREIRO, José Alexandre Tavares. Participation In Board of Thiago Saddi Tannous. 2015.

26. FONSECA, P. M. P. C.; TOLEDO, P. F. C. S.; GUERREIRO, José Alexandre Tavares. Participation In Board of Livia Garcia Keer do Amaral Caselta. 2015.

27. MUNHOZ, E. S.; FRANCA, E. V. A. E. N.; GUERREIRO, José Alexandre Tavares. Participation In Board of Gabriel Saad Kik Buschinelli. 2015 - Faculdade de Direito da USP.

28. MUNHOZ, E. S.; PELA, J. K.; GUERREIRO, José Alexandre Tavares. Participation In Board of José Eduardo Carneiro Queiroz. 2014 - Faculdade de Direito da USP.

29. SALLES, Marcos Paulo de Almeida; VERCOSA, H. M. D.; GUERREIRO, José Alexandre Tavares. Participation In Board of Marcelo Borja Veiga. 2014.

30. GUERREIRO, José Alexandre Tavares. Participation In Board of Julya Sotto Mayor Wellisch. 2014.

31. SOUZA JUNIOR, F. S.; YAZBEK, O.; GUERREIRO, José Alexandre Tavares. Participation In Board of Angela Rita Franco Donaggio. 2014 - Faculdade de Direito da USP.

32. MUNHOZ, E. S.; GOUVEA, C. P. B. P.; GUERREIRO, José Alexandre Tavares. Participation In Board of Mariana Silveira Martins Jost. 2014 - Faculdade de Direito da USP.

33. PROENCA, J. M. M.; CEREZETTI, S. C. N.; GUERREIRO, José Alexandre Tavares. Participation In Board of Guilherme Frazão Nadalin. 2013 - Faculdade de Direito da USP.

34. GUERREIRO, José Alexandre Tavares. Participation In Board of Plínio José Lopes Shiguematsu. 2013 - Faculdade de Direito da USP.

35. FRONTINI, P. S.; PELA, J. K.; GUERREIRO, José Alexandre Tavares. Participation In Board of Maria Fernanda Calado de Aguiar Ribeiro Cury. 2012.

36. FRANCA, E. V. A. E. N.; GUERREIRO, José Alexandre Tavares. Participation In Board of Luís Felipe Spinelli. 2012.

37. FRANCA, E. V. A. E. N.; GUERREIRO, José Alexandre Tavares. Participation In Board of José Romeu Garcia do Amaral. 2012.

38. PELA, J. K.; MUNHOZ, E. S.; GUERREIRO, José Alexandre Tavares. Participation In Board of Camilla Ribeiro Martes. 2012.

39. GUERREIRO, José Alexandre Tavares. Participation In Board of Norlan Moreira Navarro. 2012.

40. GUERREIRO, José Alexandre Tavares. Participation In Board of Rodrigo Vinícius Dufloth. 2012 - Faculdade de Direito da USP.

41. LUCCA, N.; FORGIONI, P. A.; GUERREIRO, José Alexandre Tavares. Participation In Board of Angélica Ramos de Frias. 2012 - Faculdade de Direito da USP.

42. GUERREIRO, José Alexandre Tavares. Participation In Board of Angela Rita Franco Donaggio. 2011 - Faculdade de Direito da USP.

43. FORGIONI, P. A.; SOUZA JUNIOR, F. S.; GUERREIRO, José Alexandre Tavares. Participation In Board of Mariana Conti Craveiro. 2011.

44. CHIARA, José Tadeu; BERCOVICI, G.; GUERREIRO, José Alexandre Tavares. Participation In Board of Marina Palma Copola. 2011.

45. GUERREIRO, José Alexandre Tavares. Participation In Board of Eduardo Henrique Pinto de Carvalho. 2011.

46. VERCOSA, H. M. D.; SOUZA JUNIOR, F. S.; GUERREIRO, José Alexandre Tavares. Participation In Board of Daniel Kalansky Ponczek. 2010.

47. FORGIONI, P. A.; GUERREIRO, José Alexandre Tavares. Participation In Board of Marco La Rosa de Almeida. 2007.

## Improvement/Specialization Monography

1. GUERREIRO, José Alexandre Tavares. Participation In Board of Marcela Claudia Salinas Araya. 2010. Monography (Improvement/Specialization in LL.em Direito) - Insper Instituto de Ensino e Pesquisa.

## Graduation Course Conclusion Paper

1. PELA, J. K.; GUERREIRO, José Alexandre Tavares. Participation In Board of Luciano Gomes Cardim Mendes de Oliveira. 2018 - Faculdade de Direito da USP.

2. PELA, J. K.; GUERREIRO, José Alexandre Tavares. Participation In Board of Milton Barossi Filho. 2017 - Faculdade de Direito da USP.

3. GUERREIRO, José Alexandre Tavares. Participation In Board of Raphaela Boffe Palma. 2015 - Faculdade de Direito da USP.

4. DINIZ, G. S.; GUERREIRO, José Alexandre Tavares. Participation In Board of Lucas Fulanete Gonçalves Bento. 2015.

5. GUERREIRO, José Alexandre Tavares. Participation In Board of Amanda Cristina Siqueira da Costa. 2014.

6. GUERREIRO, José Alexandre Tavares. Participation In Board of Henrique Morato D'Angelo. 2014 - Faculdade de Direito da USP.

7. GUERREIRO, José Alexandre Tavares. Participation In Board of Guilherme S. M. e A. Garcia. 2014.

8. GUERREIRO, José Alexandre Tavares. Participation In Board of Ana Luísa Gusmão de Lima. 2014.

9. GUERREIRO, José Alexandre Tavares. Participation In Board of Tomas Kim. 2013 - Faculdade de Direito da USP.

10. GUERREIRO, José Alexandre Tavares. Participation In Board of Renata de Campos Nogueira. 2013.

11. GUERREIRO, José Alexandre Tavares. Participation In Board of Eduardo Romeu Ferraz. 2012.

12. GUERREIRO, José Alexandre Tavares. Participation In Board of Fernando Barbosa Rubin. 2012 - Faculdade de Direito da USP.

13. GUERREIRO, José Alexandre Tavares. Participation In Board of Rodrigo de Salles Oliveira Malta Belda. 2010.

14. GUERREIRO, José Alexandre Tavares. Participation In Board of Juliana Karin Harumi Matsumoto. 2009.

15. GUERREIRO, José Alexandre Tavares. Participation In Board of Mirella Maria Sakamoto. 2008. Course Conclusion Paper (Graduation in Graduação em Direito) - Faculdade de Direito da Universidade de São Paulo.

16. GUERREIRO, José Alexandre Tavares. Participation In Board of Maria da Glória Ferraz de Almeida. 2008. Course Conclusion Paper (Graduation in Graduação em Direito) - Faculdade de Direito da Universidade de São Paulo.

17. GUERREIRO, José Alexandre Tavares. Participation In Board of Natália Diniz da Silva. 2008. Course Conclusion Paper (Graduation in Graduação em Direito) - Faculdade de Direito da Universidade de São Paulo.

18. GUERREIRO, José Alexandre Tavares. Participation In Board of Kristian Carneiro Orberg. 2008.

19. GUERREIRO, José Alexandre Tavares. Participation In Board of Mirella Maria Sakamoto. 2008.

20. GUERREIRO, José Alexandre Tavares. Participation In Board of Laila Cristina Duarte Ferreira. 2008.

21. GUERREIRO, José Alexandre Tavares. Participation In Board of Felipe Campana Padin Iglesias. 2006.

22. GUERREIRO, José Alexandre Tavares. Participation In Board of Ana Regina Roson. 2005. Course Conclusion Paper (Graduation in Direito) - Universidade de São Paulo.

23. GUERREIRO, José Alexandre Tavares. Participation In Board of Guilherme Luz Coelho Rocha. 2005. Course Conclusion Paper (Graduation in Direito) - Universidade de São Paulo.

24. GUERREIRO, José Alexandre Tavares. Participation In Board of Marina Dubois Fava. 2005. Course Conclusion Paper (Graduation in Direito) - Universidade de São Paulo.

25. GUERREIRO, José Alexandre Tavares. Participation In Board of Paloma dos Reis Coimbra. 2005. Course Conclusion Paper (Graduation in Direito) - Universidade de São Paulo.

26. GUERREIRO, José Alexandre Tavares. Participation In Board of Tamara Brandt. 2005. Course Conclusion Paper (Graduation in Direito) - Universidade de São Paulo.

## Events

Participation in events

1. Arbitration and judiciary: friend or foe?. 2023. (Participation In Events/ Congresses).

2. Arbitragem coletiva em companhias abertas. 2023. (Participation In Events/ Congresses).

3. O PL 2925/23 e o Sistema de Enforcement Societário Brasileiro. 2023. (Participation In Events/ Congresses).

4. XIV Seminário de direito empresarial. Análise jurídica da privatização das estatais. 2023. (Participation In Events/ Seminary).

5. Comissão Especial de Mercado de Capitais e da Comissão Especial de Direito SocietárioRelevância Dos Padrões Contábeis Internacionais ? IFRS. 2023. (Participation In Events/Other).

6. Painel de encerramento. 2022. (Participation In Events/ Congresses).

7. Palestra do Comercialista Homenageado e Entrega do Prêmio Osmar Brina. 2022. (Participation In Events/ Congresses).

8. Conflito de competência em arbitragem. 2022. (Participation In Events/ Congresses).

9. A responsabilidade de acionistas e administradores na arbitragem. 2022. (Participation In Events/ Congresses).

10. Seminário: Arbitragem e Judiciário. Confidencialidade - sobre a (in)constitucionalidade do artigo 189, IV do CPC. 2022. (Participation In Events/ Seminary).

11. Seminário Arbitragem e Judiciário. Confidencialidade. Constitucionalidade do artigo 189, IV, do CPC. Ação anulatória. Hipótese de S/A aberta. 2022. (Participation In Events/ Seminary).

12. Conexão Capital. Sociologia do poder e direitos das minorias. 2022. (Participation In Events/ Seminary).

13. Reorganização Societária. 2021. (Participation In Events/ Congresses).

14. Revisitando o Conflito de Interesses entre Partes Relacionadas. 2021. (Participation In Events/ Congresses).

15. Direito das Companhias na atual conjuntura: shareholderism x stakeholderism. 2020. (Participation In Events/ Congresses).

16. Direito das Companhias na atual conjuntura: shareholderism x stakeholderism. 2020. (Participation In Events/ Congresses).

17. Responsabilidade de administrador e acionista controlador - IDSA/CCBC. Responsabilidade de Acionista Controlador. 2020. (Participation In Events/ Seminary).

18. Dever de colaboração e boa-fé entre assinatura e fechamento (cláusula de melhores esforços ?best efforts clause?). 2019. (Participation In Events/ Congresses).

19. Companhias abertas e compliance. 2019. (Participation In Events/ Congresses).

20. Reuniões Prévias em Acordos de Acionistas e Acordos de Quotistas. 2019. (Participation In Events/ Congresses).

21. Companhias abertas e compliance. 2019. (Participation In Events/ Congresses).

22. . 2019. (Participation In Events/ Congresses).

23. Arbitragem e Questões Econômicas Complexas. Arbitragem societária no Brasil: efeitos da reforma legislativa nos investimentos e na morfologia do poder de controle. 2019. (Participation In Events/ Seminary).

24. Abuso da minoria. 2018. (Participation In Events/ Congresses).

25. San Tiago Dantas ? Homenagem Largo São Francisco. San Tiago Dantas e a renovação do Direito Privado. 2018. (Participation In Events/ Seminary).

26. Seminário Suporte a Arbitragem: Pessoas e Instituições. A perspectiva dos árbitros e notas conclusivas. 2018. (Participation In Events/ Seminary).

27. Responsabilidade da S/A perante seus acionistas por ilícitos dos administradores. 2017. (Participation In Events/ Congresses).

28. Palestra MP 784/2017: Novas normas para o processo administrativo sancionador do Bacen e da CVMMP 784/2017: Novas normas para o processo administrativo sancionador do Bacen e da CVM. 2017. (Participation In Events/Other).

29. O mercado de valores mobiliários em tempos de crise econômica. 2016. (Participation In Events/ Congresses).

30. Painel Especial: Os vinte anos da Lei de Arbitragem brasileira: entre o passado e o futuro. 2016. (Participation In Events/ Congresses).

31. Os Vinte Anos da Lei de Arbitragem brasileira: entre o Passado e o Futuro. 2016. (Participation In Events/ Congresses).

32. Voto conflitante do controlador nas Sociedades de Economia Mista. 2016. (Participation In Events/ Congresses).

33. Seminário Governança Corporativa e compliance na globalização. A Governança Corporativa como princípio essencial do direito empresarial global. 2016. (Participation In Events/ Seminary).

34. Abuso de controle em sociedade de economia mista. 2015. (Participation In Events/ Congresses).

35. A importância da história no conhecimento do Direito Comercial. 2015. (Participation In Events/ Congresses).

36. A responsabilidade administrativa dos administradores de sociedade anônima aberta. 2014. (Participation In Events/ Congresses).

37. III Simpósio de direito e economiaAbuso de poder econômico. 2014. (Participation In Events/ Symposium).

38. Interpretação dos contratos empresariais. 2013. (Participation In Events/ Congresses).

39. Projeto do Novo Código Comercial: Uma Análise Conceitual e Empírica da Proposta. Precisamos de um novo Código Comercial?. 2013. (Participation In Events/ Seminary).

40. Objeto do direito comercial: negócios, atividade ou mercado?. 2012. (Participation In Events/ Congresses).

41. Boa fé. 2012. (Participation In Events/ Congresses).

42. Comando das sociedades com capital disperso. 2011. (Participation In Events/ Congresses).

43. A Responsabilidade Societária e a Garantia de Credores. 2011. (Participation In Events/ Congresses).

44. Mercado de capitais e societário. 2011. (Participation In Events/ Congresses).

45. Debate Sanfran Jr. 2011. (Participation In Events/ Meetings).

46. Seminário Fusões e Aquisições - Aspectos jurídicos sobre a concentração empresarial. Aspectos jurídicos da cisão. 2009. (Participation In Events/ Seminary).

47. 5ª Seminário ANBID de direito do mercado de capitais. Debate: Relação entre controladores e minoritários. 2008. (Participation In Events/ Seminary).

48. Reunião da Comissão de Direitos Societários e Mercado de Capitais. Debate Parecer de Orientação CVM 34. 2007. (Participation In Events/ Seminary).

49. 3.º SEMINÁRIO JURÍDICO INTERNACIONAL DE ARBITRAGEM UNI-RIO & UNIVERSITÉ DE TOULOUSE. Arbitragem; alternativa para os conflitos judiciais; a extensão da cláusula arbitral às empresas do grupo societário. 2005. (Participation In Events/ Seminary).

**50.** Seminário - O Empresário, As Sociedades Comerciais e os Meios Alternativos de Resolução de Conflitos. O empresário individual em face da mediação e da arbitragem. 2005. (Participation In Events/ Seminary).

**51.** SEMINÁRIO INTERNACIONAL SOBRE ARBITRAGEM. Medidas cautelares: tratamento na legislação de Argentina, Brasil, Espanha, México e Estados Unidos. 2005. (Participation In Events/ Seminary).

**52.** A sociedade limitada: constituição, quotas e órgãos sociais. 2004. (Participation In Events/ Congresses).

**53.** Seminário Sociedades Anônimas Temas de processo no direito societário. Processo judicial e a garantia dos minoritários (Governança Corporativa). 2004. (Participation In Events/ Seminary).

**54.** WORKSHOP: ARBITRAGEM E MERCADO DE CAPITAISConfidencialidade e transparência. 2004. (Participation In Events/Other).

**55.** III Congresso internacional de Arbitragem Comercial. 2003. (Participation In Events/ Congresses).

**56.** As Influências das Convenções Internacionais para o Desenvolvimento da Arbitragem. 2002. (Participation In Events/ Congresses).

**57.** O Brasil a espera de um projeto global. 2002. (Participation In Events/ Congresses).

**58.** I Seminário internacional sobre direito arbitral. I Seminário internacional sobre direito arbitral. 2002. (Participation In Events/ Seminary).

**59.** CONFERÊNCIA ARBITRAGEM COMERCIAL INTERNACIONALExecução judicial de decisões arbitrais. 1988. (Participation In Events/Other).

---

**Academic Advisory**

Academic Advisory - concluded

### Ph.D. thesis

**1.** Guilherme Luz Coelho Rocha. 2005. Thesis (Ph.D. in Law) - Universidade de São Paulo, . *Advisor:* José Alexandre Tavares Guerreiro.

### Works of completion for Graduation

**1.** Juliana Karin Harumi Matsumoto. 2010. Course Conclusion Paper - Faculdade de Direito da Universidade de São Paulo. Advisor: José Alexandre Tavares Guerreiro.

**2.** Rodrigo de Salles Oliveira Malta. 2010. Course Conclusion Paper - Faculdade de Direito da Universidade de São Paulo. Advisor: José Alexandre Tavares Guerreiro.

**3.** Eduardo Romeu Ferraz. 2010. Course Conclusion Paper - Faculdade de Direito da Universidade de São Paulo. Advisor: José Alexandre Tavares Guerreiro.

**4.** Felipe Campana Padin Iglesias. 2006. Course Conclusion Paper - Universidade de São Paulo. Advisor: José Alexandre Tavares Guerreiro.

---

**Other Relevant Information**

Membro do Departamento de Direito Comercial.&#10;Membro do Instituto Brasileiro de Direito Comercial Comparado e Biblioteca Tullio Ascarelli.&#10;Membro do Instituto dos Advogados Brasileiros.&#10;Membro do Instituto dos Advogados de São Paulo.&#10;Associado da Associação dos Advogados de São Paulo.&#10;Árbitro da Câmara Brasil - Canadá, da International Court of Arbitration da Câmara de Comércio Internacional (Paris).&#10;Árbitro da American Arbitration Association.&#10;Árbitro da Câmara de Mediação e Arbitragem de São Paulo.&#10;Árbitro da Câmara de Arbitragem ANDIMA..