WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020-1095
(212) 819-8200
John K. Cunningham
Gregory M. Starner
Ricardo M. Pasianotto (*pro hac vice*)

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Richard S. Kebrdle (*pro hac vice*)

*Attorneys for Antonio Reinaldo Rabelo Filho,*
*as Petitioner and Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 23-10092 (MEW) |
| Americanas S.A., *et al.*,[1] | Chapter 11 |
| Debtors in a Foreign Proceeding. | Chapter 15 |
| | (Joint Administration Requested) |

**DECLARATION OF THE FOREIGN REPRESENTATIVE IN SUPPORT OF THE**
**FOREIGN REPRESENTATIVE'S OBJECTION TO MOTION OF SABLON PARTNERS**
**LTD. FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004**
**AUTHORIZING THE EXAMINATION OF DEBTORS AMERICANAS AND B2W**
**DIGITAL AND THIRD PARTY**

I, Antonio Reinaldo Rabelo Filho, pursuant to 28 U.S.C. § 1746, hereby declare under

penalty of perjury under the laws of the United States that the following is true and correct.

1.      I am the duly-authorized foreign representative (the "**Foreign Representative**") of

Americanas S.A. ("**Americanas**"), JSM Global S.à.r.l. ("**JSM Global**"), and B2W Digital Lux

---

[1]      The debtors in these chapter 15 cases, along with the last four digits of each debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Americanas S.A. (06-60 - Brazil); JSM Global S.à.r.l. (5670 – Grand Duchy of Luxemburg); and B2W Digital Lux S.à.r.l. (8659 – Grand Duchy of Luxemburg).

S.à.r.l. ("**B2W Digital**," together with Americanas and JSM Global, the "**Chapter 15 Debtors**")

in the jointly-administered judicial reorganization (*recuperação judicial* or "**RJ**") proceeding (the

"**Brazilian RJ Proceeding**") of the Chapter 15 Debtors and certain of their affiliated debtors

(collectively, the "**RJ Debtors**" or the "**Americanas Group**"), pursuant to a precautionary lawsuit

filed on January 12, 2023 subsequently amended on January 19, 2023 under Federal Law No.

11.101 of February 9, 2005 (as modified, the "**Brazilian Bankruptcy Law**"), of the laws of the

Federative Republic of Brazil ("**Brazil**"), pending before the 4th Business Court of Rio de Janeiro

(the "**Brazilian RJ Court**").

2.      I submit this declaration (the "**Declaration**") in support of the *Foreign

Representative's Objection to Motion of Sablon Partners Ltd. for Entry of an Order Pursuant to

Bankruptcy Rule 2004 Authorizing the Examination of Debtors Americana's and B2W Digital and

Third Parties* (the "**Objection**"),[2] filed contemporaneously herewith, which seeks entry of an order

denying the requested relief in the *Motion of Sablon Partners Ltd. for Entry of an Order Pursuant

to Bankruptcy Rule 2004 Authorizing the Examination of Debtors Americanas and B2W Digital

and Third Parties* [Dkt. No. 42] (the "**Motion**").[3]

3.      Unless otherwise indicated, all facts set forth in this Declaration are based upon:

(a) my review of relevant information, data and documents (including oral information) furnished

to me by the Chapter 15 Debtors and its legal advisors; (b) information supplied to me by the

Chapter 15 Debtors' officers, directors, employees, and professionals; or (c) my analyses of the

information I have received on the Chapter 15 Debtors' operations and financial condition.  I have

---

2    Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion, Objection, or
     the Verified Petition, as applicable.

3    The case number for the Brazilian RJ Proceeding before the Brazilian RJ Court is 0803087-20.2023.8.19.0001.

also been kept abreast of major discussions with stakeholders, including the Chapter 15 Debtors'

primary financial creditors and its shareholders.  I am an individual over the age of 18.  If I am

called to testify, I will do so competently and based on the facts set forth herein.

### THE CHAPTER 15 DEBTORS AND THE ALLEGED FRAUD IN BRAZIL

4.      Information regarding the Chapter 15 Debtors' businesses and affairs, capital

structure and prepetition indebtedness, and the events leading to the chapter 15 petition, can be

found in the Verified Petition, which is incorporated here by reference.  Some information

previously provided in the Verified Petition is included in the Declaration for the convenience of

the Court.

**A.      The Chapter 15 Debtors' Business Operations and Shareholders Are In Brazil.**

5.      The Americanas Group's business activities are primarily located in Brazil.  In

recent years, the Americanas Group's online business has expanded into certain Latin American

countries, including Mexico, Chile, and Argentina.  The Americanas Group has not expanded to

the United States.  While two of the Chapter 15 Debtors—B2W Digital and JSM Global—are

Luxemburg-based subsidiaries, they do not engage in any business other than to support

Americanas' business in Brazil exclusively as special purpose entities formed to issue the NY

Notes, which is common practice for Brazilian companies accessing international debt markets.

Notably, none of the Chapter 15 Debtors have any offices or businesses in the United States.

6.      Americanas is a publicly-held corporation and its stocks are traded on B3, a stock

exchange located in São Paulo, Brazil.  Approximately 69.88% of its shares are held by thousands

of different parties (the vast majority of whom are located in Brazil), which approximately 52%

are held by individuals, approximately 15% by legal entities, and approximately 30.12% of the

shares of the Americanas Group are collectively held, directly or indirectly, by three Brazilian

individuals, Jorge Paulo Lemann, Marcel Herrmann Telles, and Carlos Alberto da Veiga Sicupira (the "**Reference Shareholders**"), all of whom are domiciled in Brazil.

       **B.**       **The Alleged Accounting Irregularities Occurred in Brazil.**

       7.       Prior to the discovery of certain accounting inconsistencies, the Americanas Group had been a financially healthy enterprise, generating substantial revenue, employing over 30,000 people and paying more than R$2.930 billion in taxes. As reflected in a published earnings presentation released on November 16, 2022, the net revenue of 2022 was R$22.809 billion, and the gross profits were R$5.024 billion.

       8.       Entering 2023, Americanas identified certain miscategorization of certain purchase financing debts as debts owed to suppliers in its financial statements from previous years. On January 11, 2023, Americanas published a "material fact" notice as required under Brazilian securities regulations (the "**January 11 Material Fact**"), informing the public that it detected inconsistencies in accounting entries that reduced the balance in the suppliers account related to previous fiscal years. Along with the disclosure of the January 11 Material Fact, on January 11, 2023, Americanas' former CEO Sérgio Rial and investor relations officer André Covre tendered their resignations. The board of directors of Americanas immediately formed an independent investigation committee (the "**Independent Committee**") to fully investigate and analyze the circumstances in which such accounting circumstances occurred.

       **C.**       **The Brazilian RJ Proceedings Commenced as a Result of the Alleged Fraud.**

       9.       The publication of the January 11 Material Fact and the revelation of the accounting inconsistencies triggered various Brazilian lenders to send notices of default and acceleration of their claims, freeze or setoff funds, and request the immediate repayment of the outstanding

balance of their claims, resulting in the Americanas Group filing for the Brazilian RJ Proceeding

on an emergency basis on January 19, 2023.

      10.     Following the filing and acceptance of the RJ Petition, and facing a quickly

deteriorating financial and liquidity situation and a severe risk of liquidation, the Reference

Shareholders agreed to provide a two-tranche unsecured debtor-in-possession financing of R$2

billion ("**DIP Financing**").  The purpose of the DIP Financing was to support Americanas'

normal course of business, provide the necessary liquidity for its operations, maintain the working

capital investments and make timely payments to suppliers and vendors.  On February 9, 2023,

the DIP Financing was approved by the Brazilian RJ Court.  Subsequently, the Reference

Shareholders funded R$1 billion under the first tranche of the DIP.  The Reference Shareholders

funded the second tranche of the DIP Financing in the amount of R$500,632,128.82 and received

certain common debentures in exchange.  Although Americanas extended the right to take part in

the DIP Financing to all of its creditors, no creditor expressed an interest in funding its activities

under such facility.

      11.     The total indebtedness subject to the Brazilian RJ Proceeding amounts to

approximately R$50 billion (approximately US$ 10 billion), including all creditors and

intercompany claims.

      **D.**     **RJ Plan Negotiations Result in a Consensual RJ Plan.**

      12.     The RJ Debtors filed their initial plan in the Brazilian RJ Proceeding on March 20,

2023 (the "**Initial RJ Plan**"), as required by Brazilian law.    Following the filing of the Initial

RJ Plan, the Americanas Group engaged in more than half a year of extensive negotiations with

various creditor groups, including its bank creditors,[4] to reach an agreement on a consensual plan that would improve the proposed payments and maximize the recovery to all creditors. On July 11, 2023, the Brazilian RJ Court entered an order extending the stay against creditor action in the Brazilian RJ Proceeding until January 6, 2023 to allow the Americanas Group to continue negotiations with its creditors. On November 21, 2023, the Brazilian RJ Court, by request of the Americanas Group, determined that the Americanas Group should hold a general creditors' meeting (*assembleia geral de credores*, or "**AGC**") for creditors to vote on the RJ Debtors' proposed plan on December 19, 2023 (first call) or January 22, 2024 (second call, to the extent creditors holding more than 50% of claims subject to the proceedings do not attend the first call).

13.    Ultimately, on November 27, 2023, the Americanas Group, the Reference Shareholders, and creditors holding more than 35% of its debt (excluding intercompany credits) ("**Supporting Creditors**")[5] executed a plan support agreement (the "**PSA**") regarding the proposed restructuring transactions in a revised RJ Plan (the "**RJ Plan**"). Certain other creditors who participated in the negotiation process (the "**Additional Creditors**") have also indicated their interest in joining the PSA and are seeking internal approval to sign onto the PSA. The Additional Creditors and the Supporting Creditors together represent more than 50% of

---

[4]    The bank creditors include Bradesco (holder of a claim in the amount of R$ 5.1 billion), Santander (R$ 3.6 billion), BTG Pactual (R$ 3.5 billion), Banco Vatorantim (R$ 206 million), Itau Unibanco (R$ 2.7 billion), Safra (R$ 2.5 billion), Bando de Brasil (R$ 1.3 billion) and Caixo Económica Federal (R$ 501 million) (collectively, the "**Bank Creditors**"), with total claims of approximately R$(19,407,000), accounting for nearly 50% of the total debts of the Americanas Group.

[5]    The Supporting Creditors include Banco Bradesco S.A., Itau Unibanco S.A., Itau Unibanco S.A. Nassau Branch, Banco Santander (Brasil S.A.), Banco BTG Pactual S.A and BTG Pactual Seguros S.A. *See* PSA at 4.

Americanas' prepetition debt, which shall be sufficient amount to approve the RJ Plan under Brazilian law. The Americanas Group filed the RJ Plan in court on November 27, 2023.

14.     The creditors subject to the Brazilian RJ Proceeding who satisfy the registration requirements pursuant to the Brazilian Bankruptcy Law, will have the opportunity to attend the AGC and vote on whether to accept or reject the RJ Plan.

15.     The RJ Plan consists of 3 classes: Class 1—labor related claims in the amount of approximately R$82.9 million; Class 3—unsecured claims from financial creditors, including the NY Notes, in the amount of R$42.3 billion and claims from suppliers of R$5.5 billion; and Class 4—claims from micro or other small companies in the amount of R$ 180.2 million. Creditors in Class 1 and Class 4 will receive full recovery in cash within 30 days following the approval of the RJ Plan. Class 3 creditors with claims up to R$12,000 may elect to receive full payment of their claims in cash within 60 days following the approval of the RJ Plan. Class 3 creditors with claims exceeding R$12,000 may elect to receive their pro rata share of R$40 million in cash.

16.     Generally, Class 3 financial creditors have the option to choose among three alternative restructuring and repayment options, which are as follows:

    a.   **Reverse Auction**:  Unsecured creditors may opt for full or partial repayment of claims at a discount of no less than 70% through a reverse auction process. The RJ Debtors shall allocate R$ 2 billion toward repayment of claims under the Reverse Auction. The Reverse Auction option requires creditors to agree with broad releases, including with respect to the Reference Shareholders. Creditors who are not paid in the Reverse Auction must then select an alternative payment option for their claims.

    b.   **Option 1**:  The balance of unsecured claims post Reverse Auction shall be reduced by 70%, first with respect to interest, and then principal. Principal is to be repaid on one instalment on January 31, 2039. The RJ Debtors may choose at their discretion to prepay the balance in part or in whole, based on a present value formula, and as long as the debentures to be issued under Option 2 have been repaid. This option does not require broad releases.

    c.  **Option 2**: Claimants electing Option 2 shall receive payment in respect of remaining claims post Reverse Auction in the form of new equity shares, simple and priority debentures, or cash corresponding to the amount of unsecured claims repurchased. The debentures shall be issued for the lesser of R$ 1.875 billion and the remaining unsecured claims post capitalization, and shall be issued in two simple and two priority series: (1) Simple Debentures consisting of (a) the Simple Debentures BRL facilitating a bullet repayment 60 months following issuance, with an interest rate of 128% of CDI, and PIK for the first 24 months, and (b) the Simple Debentures USD facilitating a bullet repayment 60 months following issuance, with an interest rate of 8.35%, and PIK for the first 24 months; and (2) Priority Debentures consisting of (a) the Priority Debentures BRL (up to R$1.839 billion) facilitating a bullet repayment 48 months after issuance, an interest rate of 127% of CDI, PIK for the first 24 months, which can be exchanged into from simple debentures one-to-one, and (b) the Priority Debentures USD facilitating a bullet repayment 48 months following issuance, with an interest rate off 8.35%, PIK  for the first 24 months, which can be exchanged into from simple debentures one-to-one. Option 2 also requires creditors to agree with broad releases, including with respect to the Reference Shareholders.

17.    Claimants who, among other situations, fail to otherwise affirmatively select another payment plan option shall receive their claims in a single bullet repayment on January 31, 2044. The RJ Plan additionally designates certain specific recovery amounts for various suppliers.[6]

18.    Additionally, under the PSA and the RJ Plan, the Americanas Group will issue new shares amounting to the Reference Shareholders in exchange for R$1 billion contributed by the Reference Shareholders under the DIP financing and as an additional new equity infusion. The Americanas Group will also issue shares valued at up to R$12 billion to other creditors, who agree to equitize their claims under Option 2 of the RJ Plan. The Supporting Creditors have agreed to provide bank guarantees and judicial guarantee insurance of up to R$1.5 billion to support the reorganized RJ Debtors business going forward.

---

[6]    The RJ Plan provides that technology supplier claims will receive in aggregate R$100 million of repayment, partner suppliers will receive in aggregate R$3.7 billion of repayment; supplier with unsecured claims above R$12,000 will receive a 48-month installment payments with a 50% discount of recovery.

19.     The RJ Plan does not impose any absolute non-consensual third-party releases on the RJ Debtors' creditors.  To select certain of the payment options above, however, in consideration for the support provided by the Reference Shareholders, as well for specific concessions granted by the Americanas Group in connection with litigated matters in the Brazilian RJ Proceeding, creditors are required to provide a consensual release of claims against the RJ Debtors, its managers and officers, subsidiaries, and other non-debtor affiliated third-parties, such as the Reference Shareholders.

### E.     The Only Connections to the United States Are Through Indentures Governed By New York Law and the Chapter 15 Cases.

20.     The Chapter 15 Debtors are obligors under two unsecured notes issuances, denominated in U.S. Dollars, with an aggregate principal amount of US$1 billion (plus accrued interest) and governed by New York law indentures (the "**NY Notes**" or the "**Indentures**"), which were automatically accelerated upon the filing of the Brazilian RJ Proceeding.  The terms of the NY Notes, in relevant part, are as follows:

a.  **4.375% Notes due 2030**: The senior notes issued by B2W Digital in the aggregate principal amount of US$500,000,000 (the "**B2W Digital Notes**"), which are governed by that certain Indenture dated as of November 24, 2020 (the "**B2W Indenture**")[7] by and between B2W Digital, as issuer, B2W – Companhia Digital (later acquired by Americanas), as guarantor, and Deutsche Bank Trust Company Americas ("**Deutsche Bank**" or "**Indenture Trustee**") as trustee, registrar, paying agent, and transfer agent.  The B2W Digital Notes mature on December 20, 2030 and are guaranteed by Americanas.

b.  **4.750 % Notes due 2030**: The senior notes issued by JSM Global in the aggregate principal amount of US$500,000,000 (the "**JSM Global Notes**"), which are governed by that certain Indenture dated October 6, 2020 (the "**JSM Indenture**"[8] and together with the B2W Indenture, the "**Notes Indentures**") by and between JSM Global, as issuer, Americanas, as guarantor, and Deutsche

---

[7]    The B2W Indenture is attached hereto as **Exhibit A**.

[8]    The JSM Indenture is attached hereto as **Exhibit B**.

Bank, as trustee, registrar, paying agent, and transfer agent.  The JSM Global Notes mature October 20, 2030 and are guaranteed by Americanas.

21.    The Chapter 15 Debtors commenced chapter 15 cases primarily to receive stay protection under sections 1519 and 1520 of the Bankruptcy Code against potential creditor action in the United States, mainly under the NY Notes, during the Brazilian RJ Proceeding.

## INVESTIGATIONS ASSESSING POTENTIAL FRAUD IN BRAZIL

22.    Since the discovery of the accounting inconsistencies, various investigations have taken place in Brazil, including an internal investigation determined by the Independent Committee appointed by Americanas' board of directors, three separate investigations initiated by the Brazilian government (one initiated and led by the Federal Prosecutors Office, one by a Federal House of Representatives Commission, the "*CPI da Câmara de Deputados*", and one by the Brazilian Securities and Exchange Commission – the CVM), and one judicial investigation ordered by the Brazilian RJ Court.  Further, creditors of Americanas, including Bradesco—Americanas' largest bank lender—have sought, and in some cases received, discovery in other Brazilian courts related to the inconsistencies in parallel with the Brazilian RJ Proceeding.  To date, however, Sablon has not requested to take discovery from Americanas other than before this Court.

A.    **The Investigations by the Independent Committee Concluded That the Accounting Irregularities Occurred Entirely In Brazil.**

23.    The Americanas Group has proactively undertaken an extensive investigation into the accounting inconsistencies which led to its financial crisis.  On January 12, 2023, Americanas' board of directors established the Independent Committee to investigate the circumstances that

caused the accounting inconsistencies.[9]   Following receipt of certain relevant documents presented by the Independent Committee and its analysis by Americanas attorneys, along with other evidence that Americanas identified, Americanas issued two "Material Fact" notices on June 13, 2023 ("**June 13 Material Fact**"), attached hereto as **Exhibit C**, and June 14, 2023 ("**June 14 Material Fact**"), attached hereto as **Exhibit D**, detailing the results of the investigations.

24.    Specifically, Americanas disclosed certain specific irregular conduct by the former officers, including: (1) artificial creation of advertising budget agreements and similar contracts that "reduced" costs without actual contracts with any suppliers; and (2) entry into financial arrangements without proper corporate approvals, such as incurring purchase financing obligations and certain working capital financing obligations.  These transactions were incorrectly recorded on the "suppliers' account," resulting in inaccurate records of the indebtedness level over time.  The June 13 Material Fact clearly stated that "the Company's financial statements were being fraudulently altered by the previous board of officers of Americanas . . . the previous board of officers of Americanas [hid] from the Board of Directors and the market in general the real situation of the Company's results and assets," and that the improper accounting resulted in incorrect "determination of the Company's indebtedness level over time."  *See* Ex. B, June 13 Material Fact, at 2.  The June 13 Material Fact identified the individuals—all now former employees—responsible for the irregularities, including: (1) former CEO Miguel Gutierrez,[10] (2)

---

[9]    In a "Material Fact" published on January 11, 2023, the Americanas provides that "[t]he Board of Directors decided to create an independent committee to investigate the circumstances that led to the aforementioned accounting inconsistencies, which will have the necessary powers to conduct their work."

[10]    Miguel Gutierrez was removed from the office on December 31, 2022.

11

former officers Anna Christina Ramos Saicali, José Timótheo de Barros[11] and Márcio Cruz Meirelles, and (3) former executives Fábio da Silva Abrate, Flávia Carneiro and Marcelo da Silva Nunes (collectively, the "**Implicated Parties**").[12]

25.    The Implicated Parties caused an inaccurate increase in Americanas' income by R$25.3 billion and a "decrease" in gross financial debt by R$20.6 billion.  *See* Ex. C, June 14 Material Fact.[13]  All of the alleged conduct at issue—the accounting irregularities, including the unauthorized incurrence of financial obligations, the artificial creations of supplier contracts, and the fraudulent alterations of financial statements—occurred at the headquarters of Americanas in Brazil, and all of the relevant records are maintained in Brazil.  To Americanas' knowledge, none of the Implicated Parties resides in the United States or has any specific connections to the United States.

26.    There were no findings that the Reference Shareholders were involved in the alleged conduct at issue.

### B.    The Brazilian Government's Investigation

27.    Brazilian government-sponsored investigations are also taking place in Brazil. Among others, there are at least three government-sponsored investigations relating to the accounting inconsistencies: (1) the investigation conducted by the CVM (Comissão de Valores Imobiliários – Brazil's equivalent to the United States Securities and Exchange Commission) ("**CVM Investigation**"); (2) the investigation conducted by the Brazilian Parliamentary Inquiry

---

[11]   José Timótheo de Barros was removed from his executive duties on February 3, 2023.

[12]   Anna Christina Ramos Saicali, Mr. Márcio Cruz Meirelles, Mr. Fábio da Silva Abrate, Mrs. Flávia Carneiro and Mr. Marcelo da Silva Nunes were all removed from their executive duties in the Company since February 3, 2023.

[13]   The "fraud architecture" was also analyzed in the earnings presentation released by Americanas on November 16, 2023.

Commission ("**CPI**"), a sector of the Brazil's Congress (the "**CPI Investigation**"); and (3) the

investigation conducted by the Federal Prosecutors Office and the Brazilian Federal Police.

    a.  <u>**CVM Investigations**</u>: The CVM regulates Brazil's capital market and sanctions behaviors that violate corporate and securities laws, as well as to its violations of its regulations. The CVM initiated several investigations against Americanas, its board members, fiscal council members, board committees members, officers, including a majority of the Implicated Parties, and the independent auditors for the accounting inconsistencies, misstatements in financial statements, lack of compliance with fiduciary duties and the surrounding circumstances. The CVM Investigation remains ongoing.[14]

    b.  <u>**CPI Investigation**</u>: The CPI is part of the legislative branch of the Brazilian government with broad investigative powers. Generally, the CPI has a limited mandate to investigate a particular matter for 120 days, subject to further renewal. Upon the conclusion of the investigation, the CPI may produce a report and make recommendations to the Brazilian Public Prosecutor's Office to take necessary measures to identify or punish wrongdoers. The CPI commenced an investigation against Americanas, and the mandate for its investigation expired on September 26, 2023.[15] Americanas' current CEO Leonardo Coelho, who was appointed after the initial reports of accounting issues, was invited to speak and fully cooperated with the CPI. At that time, Mr. Coelho stated that Americanas is fully committed and available to assist in any investigation held by the competent authorities. Consequently, Americanas also provided all information and documents it had under its control to the CPI, while replying to several information and documents requests. The Implicated Parties who were summoned to depose in the CPI did not cooperate with the CPI. In its final report, the CPI identifies Americanas' former officers and directors (including the Implicated Parties) as potentially involved in the misconduct, but concluded that the evidence gathered up to that point was insufficient to recommend indictments.

    c.  <u>**Federal Prosecutors Investigation**</u>: The Federal Prosecutors Office in Brazil is currently investigating potential crimes committed in relation to the accounting inconsistencies, willful misstatements in financial statements, and other crimes against the popular economy and the securities markets. During his deposition before the CPI, Federal Prosecutor, Mr. José Maria Castro Panoeiro, stated that investigations were advanced and that some of the people who were assisting the investigation were negotiating leniency agreements with

---

[14] On November 8, 2023, B3 suspended Americanas from the Novo Mercado segment for an indefinite period of time and sanctioned Americanas and several of its former and current directors for breaches committed after the Material Fact dated January 11, 2023. Americanas will be appealing the sanctions.

[15] The CPI is tasked with investigating the issues and proposing legislative improvements to inhibit other occurrences such as the one that took place in Americanas.

the Federal Prosecutors Office.  If such agreements were reached, they shall be kept confidential under Brazilian law and may only be made public upon a decision by the competent court.  Americanas has not been a part of any such agreements and has no knowledge of the contents of any such agreement. The Federal Prosecutors Office Investigation remains ongoing.

**C.    The Investigation by the Brazilian RJ Court**

28.    On February 9, 2023, the Brazilian RJ Court also ordered an investigation (the "**RJ Investigation**") into the accounting inconsistencies that had led to commencement of the Brazilian RJ Proceeding.  The RJ Investigation was conducted by the judicial administrator ("**J.A.**"), who had been appointed by the Brazilian RJ Court as determined by the Brazilian Bankruptcy Law to assist in monitoring the RJ Debtors' business activities and assessing the claims subject to the Brazilian RJ Proceeding.  After reviewing "85 portfolio of documents, divided into 294 files . . . totaling more than 38,000 working papers," the J.A. published a 452-page report covering various aspects of the accounting inconsistencies, Americana's financial stability and assessing the possibility of a successful emergence of the RJ Debtors from the Brazilian RJ Proceeding (the "**J.A. Report**").[16]  The J.A. Report did not indicate that any of the Reference Shareholders were involved in the accounting irregularities of the Americanas Group.

29.    After the J.A. Report was filed in the Brazilian RJ Proceeding, on August 8, 2023, the Brazilian RJ Court determined that the examinations conducted by the J.A. were sufficient, and ordered the conclusion of the investigations into the accounting irregularities.

**D.    Discovery by Brazilian Creditors**

30.    Creditors in Brazil have also sought discovery against the Chapter 15 Debtors related to the alleged fraud and accounting irregularities in various proceedings.  As of the date

---

[16]    The public version of the report consists of 452 pages after the removal of the confidential information. *See* Fidalgo Decl., Ex. A.

of this Declaration, five creditors have filed requests to take discovery from the Chapter 15

Debtors related to the alleged fraud and accounting irregularities, three of which were granted by

the Brazilian courts.

    a.   **Bradesco Discovery**[17]: On January 23, 2023, Bradesco, Americanas' largest bank creditor, requested expert accounting and forensic examination under articles 381–389 and 369–401 of the Civil Procedure Code from Americanas. The Brazilian court granted Bradesco's request and appointed Kroll Associates as the expert tasked with gathering and producing evidence. The expert evidence was completed after numerous meetings at Americanas' headquarters. The expert report is currently pending. The discovery process is suspended pursuant to settlement negotiations between the parties.

    b.   **Banco Santander Discovery**[18]: On January 24, 2023, Santander, a creditor holding a claim of approximately R$3.5 billion against the RJ Debtors, requested the search and seizure of Americanas' emails under articles 381, I and III, and 389, of the Civil Procedure Code. On January 27, 2023, the Brazilian court granted Santander's request and appointed Paulo Roberto Nascimento Meira Vasconcellos as the expert tasked with gathering evidence. The emails were seized, and the expert report is pending. The discovery process initiated by Santander is also suspended pursuant to settlement negotiations between the parties.

    c.   **Itaú Unibanco Discovery**[19]: On January 24, 2023, Itaú, a creditor holding a claim of approximately R$2.7 billion, sought discovery under article 381, I, II and III of Civil Procedure Code from Americanas. On February 10, 2023, the Brazilian court denied Itaú's request and dismissed the discovery proceeding. Itaú filed an appeal against the decision to with the State Court of Appeals, which remains pending. Itaú's appeal has been suspended pursuant to settlement negotiations between the parties.

    d.   **Banco Safra Discovery**[20]: On January 28, 2023, Safra, a creditor holding a claim of approximately R$2.5 billion, sought discovery under articles 381 to 384 and 369 to 404 of Civil Procedure Code from Americanas. The court did not analyze Safra's request because the parties entered into a settlement agreement pursuant to which the discovery process was suspended.

---

[17] Nº 1000147-05.2023.8.26.0260

[18] Nº 1007039-22.2023.8.26.0100

[19] Nº 1007203-84.2023.8.26.0100

[20] Nº 1000151-42.2023.8.26.0260

e. **Caixa Econômica Federal Discovery**[21]: On February 2, 2023, Caixa, a creditor holding a claim of approximately R$500 million, sought discovery under article 381, I, II and III of Civil Procedure Code from Americanas.  On March 3, 2023, the Brazilian court granted Caixas's request.  Americanas filed an appeal against the decision with the State Court of Appeals, which issued an injunction suspending the March 3, 2023 decision from the lower court.  The discovery process and Americanas' appeal have both been suspended pursuant to settlement negotiations between parties.

31.     As a result of Bradesco's and Santander's discovery requests, thousands of documents have already been produced as evidence before Brazilian courts.  Notably, Sablon could have conducted similar discovery, but unlike the creditors noted above, chose not to for whatever reason.

## SABLON'S CLAIMS AND INACTION IN BRAZIL

32.     Sablon purports to hold US$1 million of the JSM Global Notes, which corresponds to approximately 0.01% of the total indebtedness owed by the Americanas Group.  The JSM Global Notes are senior notes issued by JSM Global in the aggregate principal amount of US$500 million, and are guaranteed by Americanas.  The B2W Notes are issued on a pari passu basis.  Sablon therefore holds US$1 million of US$1 billion of Americanas' NY Notes.

33.     As currently contemplated under the RJ Plan, for each US$1.00 it holds, Sablon's claim is expected to receive the following treatment: , between (i) approximately US$0.42 in claims to be converted to equity[22], US$0.07 in new debt instruments, and US$0.24 in a cash repurchase (Option 2 of the RJ Plan)[23], (ii) a cash repurchase of up to US$0.30 (reverse auction) or (iii) a single bullet payment of US$0.20 (the default recovery under the RJ Plan) on its claim.

---

[21]   Nº 5013615-94.2023.4.02.5101

[22]   The market value of such converted claims is dependent on the Americanas Group future performance and will be subject to market conditions.

[23] Illustrative scenario assumes full reverse auction at 70% discount and c. R$28.5bn claims electing Option 2.

34.     An immense amount of time and effort on the part of the Chapter 15 Debtors, their employees and professionals would be required to satisfy Sablon's broad discovery request.  Such amount of work would be disruptive and undoubtedly interfere with the RJ Proceeding.  Key individuals and professionals would be distracted from the AGC at a critical juncture of the Brazilian RJ Proceeding, redirecting valuable resources meant for creditor recoveries to the payment of professional fees, and potentially prejudicing claims Americanans might later assert on behalf of all stakeholders.

35.     Again, as of the date of this Declaration, Sablon has not sought discovery in Brazil, either through the Brazilian RJ Proceeding or otherwise.  Moreover, Sablon has not appeared in the Brazilian RJ Proceeding or otherwise taken any steps to ensure that it will be eligible to participate on the vote for or against the RJ Plan.  Indeed, as noted above, the Brazilian RJ Court entered an order providing specific procedures to allow Bondholders like Sablon to individualize their claims by November 29 in the Brazilian RJ Proceeding and participate independently in the AGCs.  However, I am unaware if Sablon has complied with the applicable procedures in a timely and/or suitable manner or if it requested specific relief before the Brazilian RJ Court.  Moreover, whereas an ad hoc group of holders of the NY Notes was formed by several holders with, in aggregate, approximately 25% of the NY Notes (the "**AHG**") to engage with the RJ Debtors in a more streamlined fashion to facilitate restructuring negotiations, the Americanas Group is not aware of Sablon approaching or otherwise interacting with the AHG in any capacity.

17

I certify under penalty of perjury pursuant to 28 U.S.C. § 1746 under the laws of the United

States that the foregoing is true and correct.

Executed on December 5, 2023 in São Paulo, State of São Paulo, Brazil.

Respectfully submitted,

_____

*Antonio Reinaldo Rabelo Filho*

*Foreign Representative*
*of the Chapter 15 Debtors*

## Exhibit A

**B2W Indenture**

**Exhibit B**

**JSM Indenture**

## Exhibit C

**June 13 Material Fact**

## **Exhibit D**

**June 14 Material Fact**