WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020-1095
(212) 819-8200
John K. Cunningham
Gregory M. Starner
Ricardo M. Pasianotto (*pro hac vice*)

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Richard S. Kebrdle (*pro hac vice*)

*Attorneys for Antonio Reinaldo Rabelo Filho,
as Petitioner and Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Americanas S.A., *et al.*,[1]<br><br>          Debtors in a Foreign Proceeding. | Case No. 23-10092 (MEW)<br><br>Chapter 15<br><br>(Joint Administration Requested) |

**DECLARATION OF FRANCISCO SATIRO IN SUPPORT OF THE FOREIGN REPRESENTATIVE'S OBJECTION TO MOTION OF SABLON PARTNERS LTD. FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING THE EXAMINATION OF DEBTORS AMERICANAS AND B2W DIGITAL AND THIRD PARTIES**

I, Francisco Satiro de Souza Junior, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States that the following is true and correct:

1. I submit this declaration (the "**Declaration**") in support of the *Foreign Representative's Objection to Motion of Sablon Partners Ltd. for Entry of an Order Pursuant to Bankruptcy Rule 2004 Authorizing the Examination of Debtors Americanas and B2W Digital*

---

[1] The debtors in these chapter 15 cases, along with the last four digits of each debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Americanas S.A. (06-60 – Brazil); JSM Global S.à.r.l. (5670 – Grand Duchy of Luxembourg); and B2W Digital Lux S.à.r.l. (8659 – Grand Duchy of Luxembourg).

*and Third Parties* (the "**Objection**"),[2] filed contemporaneously herewith, which seeks entry of an order denying the requested relief in the *Motion of Sablon Partners Ltd. for Entry of an Order Pursuant to Bankruptcy Rule 2004 Authorizing the Examination of Debtors Americanas and B2W Digital and Third Parties* [Docket. No. 42] (the "**Motion**").[3]

2. To assist this Court in its consideration of the Motion and Objection, I submit this Declaration describing the relevant features of Brazilian law, especially as it relates to a *recuperação judicial* (the "**Judicial Reorganization**" or "**RJ**"), the Brazilian Federal Law no. 11.101/2005 (the "**Brazilian Bankruptcy Law**"), and the Brazilian Federal Law no. 13.105/2015 (the "**Brazilian Civil Procedure Code**") including but not limited to: (1) creditors' rights to participate in an RJ proceeding, including their rights to object to an RJ plan and their treatment under an RJ plan, (2) causes of action and other remedies that creditors in Brazil may take against a company and its shareholders based on an alleged fraud, including avoidance actions and derivative actions, and (3) procedures for obtaining discovery in Brazil, including creditors' rights and limitations with respect to obtaining discovery from other parties; as well as certain facts pertaining to the RJ proceeding of Americanas S.A. ("**Americanas**") and certain of its affiliates (collectively, the "**Americanas Group**" or the "**RJ Debtors**") currently pending in Brazil (the "**Brazilian RJ Proceeding**") before the 4th Business Court of Rio de Janeiro (the "**Brazilian RJ Court**").

**PARTICIPATION AND RIGHTS OF CREDITORS IN THE RJ PROCEEDING**

3. The RJ proceeding, as provided under the Brazilian Bankruptcy Law, is a court-supervised process which allows a debtor in financial distress to negotiate an RJ plan with its creditors. RJ proceedings can only be initiated by distressed debtors who meet specific

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion, Objection, or the Verified Petition, as applicable.

[3] The case number for the Brazilian RJ Proceeding before the Brazilian RJ Court is 0803087-20.2023.8.19.0001.

2

conditions set forth in the Brazilian Bankruptcy Law. In general, the Brazilian Bankruptcy Law provides the debtor with some support measures aimed at facilitating the restructuring of its assets and collectively negotiating the repayment of its debts.

4. Creditors play a fundamental role in RJ proceedings. While all claims in a bankruptcy liquidation would be paid pursuant to a statutory priority rank under the Brazilian Bankruptcy Law, there is no strict hierarchy or priority in the payment of creditors in RJ proceedings.[4] Claims subject to an RJ proceeding are paid according to the terms of the RJ plan, which is freely negotiated between the creditors and the debtor, approved by the requisite majority of voting creditors, and confirmed by the RJ court, as provided by Section 59 of the Brazilian Bankruptcy Law.

5. As a rule, the debtor has the exclusive right to submit the initial proposal for an RJ plan. If no creditors object to the proposed RJ plan, it will be confirmed by the Bankruptcy Court. The Brazilian Bankruptcy Law allows any creditor to object to an RJ plan if such creditor disagrees with the debtors' proposal or otherwise believes that the proposed terms are unfair or illegal. If such an objection is filed, then a general meeting of creditors ("*Assembleia Geral de Credores*" or "**AGC**") is convened to discuss and vote on the debtor's proposed RJ plan. The creditors are divided into up to 4 (four) classes according to the nature of their claims for voting purposes pursuant to Section 41 of the Brazilian Bankruptcy Law. The RJ plan is approved by creditor votes if the minimum quorum thresholds are satisfied as to each class of creditors or, alternatively, by direct imposition of the bankruptcy court ("cram-down") if certain conditions established by the Brazilian Bankruptcy Law are met.

---

[4] The Brazilian Bankruptcy Code provides certain parameters that must be observed with respect to the payment terms of claims under Class 1 (labor related claims). Creditors must be paid within one to three years from the date of plan`s confirmation, and labor-related claims of a strictly wage nature, up to the limit of five (5) monthly "minimum wages" (an official amount regularly defined by the Brazilian Federal Government) per employee, must be paid within 30 days from the date of confirmation.

3

6.  Creditors may vote against the debtor's proposed RJ plan generally for any reason. For instance, creditors may reject the RJ plan if they believe that the proposed terms are not convenient, that the reorganization proposal is contrary to their interests or that their situation would be more favorable if the debtor were liquidated instead. Creditors are not limited to economic considerations in this analysis. Suspicion of fraud or general distrust of the company's management, as well as opposition to the proposed treatment of fraud claims are also valid reasons to oppose and vote against the RJ plan. A creditor's vote will be disregarded only if it is exercised to obtain an illegal advantage for itself or others, as provided under Section 39, §6º of the Brazilian Bankruptcy Law.

7.  Section 49 of the Brazilian Bankruptcy Law provides that all claims existing at the time of the filing of the debtor`s RJ petition (*i.e.*, "pre-petition claims") are subject to the judicial reorganization.[5] Pursuant to the Brazilian Bankruptcy Law, creditors that are subject to an RJ proceeding are entitled to seek relief in furtherance of their claims. Creditors whose claims are listed by the debtor or the court-appointed judicial administrator (the "**J.A.**") are automatically admitted as parties with standing to appear in the RJ proceeding. Creditors whose claims are not listed in the creditor matrix may file proofs of claim seeking to have their claims admitted in the RJ proceeding.

8.  In any case, once a general meeting of creditors is convened, creditors must satisfy additional procedures to ensure they are allowed to participate in the AGC, either in person or through a representative. Normally, participants must send proof of their identity and powers of attorney (if applicable) to the J.A. up to 24 hours before the AGC to be admitted.

---

[5] There are certain types of claims that are exempted from RJ proceedings, such as post-petition claims and some specific pre-petition claims (*e.g.*, taxes; claims secured by "fiduciary liens" or fiduciary sale of assets; claims deriving from leasing transactions (*arrendamento mercantil*); claims held by an owner or committed seller of real estate; and claims arising from advances under export or currency exchange agreements)

4

9.  With respect to holders of claims arising out of notes or bonds (either domestic or foreign) or other debt instruments that are freely tradeable in securities markets, courts have established different procedures to allow their individual participation in RJ and AGC proceedings, however, given the impossibility of identifying such creditors absent an affirmative appearance. Historically, Brazilian courts have allowed the relevant trustees of such debt instruments to be listed as indirect holders of the related claims and to cast votes as directed by the beneficial holders under the terms of their governing indentures. Some courts have determined, in fact, that only the trustees, not the individual holders, are allowed to participate directly in RJ proceedings. However, recently courts have granted individual noteholders the right to participate in RJ proceedings and to vote on the RJ plan at the AGC, provided some additional conditions or special identification procedures are met. [*E.g.*, Superior Tribunal of Justice - Special Appeal No. 1.670.096/RJ].

10.  In the Brazilian RJ Proceeding of the Americanas Group, the Brazilian RJ Court ruled that to participate in the AGC scheduled for December 19, 2023, noteholders had to file an administrative claim with the J.A. requesting the individualization of their claims by November 29, 2023. To satisfy the individualization requirements, noteholders were ordered to include the following: (i) a declaration of the holder stating the ownership and value of its claim (the "**Beneficial Holder Declaration**"), (ii) documents confirming the authority of the creditors' representative to execute the Beneficial Holder Declaration, and (iii) a certificate or statement issued by a broker or custodian of securities (or an equivalent document proving the amount of the claim held by the noteholder at the time of the administrative request, the amount of securities held, and the identity of the noteholder). In accordance with the decision of the Brazilian RJ Court, a notice was published in the official gazette on October 23, 2023 to inform all interested creditors, including the noteholders, of the above procedure and its deadlines. The notice also stated that noteholders who failed to comply with the above requirements by

the stated deadline would only be permitted to individualize their claims upon seeking an injunction from the Brazilian Bankruptcy Court in a proceeding ancillary to the Brazilian RJ Proceeding.

11. Specifically, with respect to Sablon Partners Ltd. ("**Sablon**"), although it purports to hold the equivalent of US$1 million of JSM Global Notes, I am unaware if Sablon has complied with the applicable procedures in a timely and/or suitable manner or if it requested specific relief before the Brazilian RJ Court. As a result, if Sablon has failed to comply with such applicable procedures, it is my understanding that, unless the Brazilian Bankruptcy Court grants an injunction to Sablon prior to the date of the AGC, Sablon will not be permitted to individually participate in the AGC or to vote directly on the Americanas Group's RJ Plan. In the absence of proper individualization, the rights with respect to the notes held by Sablon shall be exercised by the indenture trustee in accordance with the terms of the governing indenture.

12. In addition to being allowed to vote on the debtor's proposed RJ plan, creditors are able to, among others: (i) challenge the classification or the amounts of any other claims against the debtor; (ii) request information of the debtor's business activities and financial status; (iii) form a creditors' committee to oversee the debtor's operations and the assessment of claims subject to the RJ proceeding; and (iv) propose an alternative RJ plan if the debtor's proposal is rejected by the creditors or the debtor fails to propose an RJ plan within the statutory deadline of the Brazilian Bankruptcy Law. Moreover, creditors in the same class have the right to be treated equally under the RJ plan (the "*par conditio creditorum*" or "*pari passu*" rule) except if there is an economic justification for treating a subclass creditor differently, and no individual creditor may be favored over others in the same class. In furtherance of this rule, the São Paulo State Court has ruled that the "*principle of equality of creditors' is the*

6

*cornerstone of the entire collective insolvency process*" (Interlocutory Appeal No. 2076834-78.2021.8.26.0000).

13. The bankruptcy court presiding over an RJ proceeding also has the power to order the J.A. to investigate any allegations of fraud or misconduct that are raised in connection with the debtor, as well as the authority to compel the debtor to produce information or related evidence if such fraud or misconduct could otherwise impact the outcome of the restructuring or affect claims subject to the RJ proceeding.

14. Aside from the affirmative rights mentioned above, the Brazilian Bankruptcy Law also imposes certain limitations on the debtor's ability to restructure claims pursuant to its RJ plan. For example, absent the consent of a specific creditor, the RJ plan may not (a) release such creditor's security interests or otherwise authorize the non-consensual use of collateral; (b) impose a non-consensual release of guarantees against affiliated or related third parties; (c) convert the currency of the claims subject to the RJ proceeding; or (d) impose a non-consensual waiver of rights against the debtor or related third parties that are unrelated to the claims subject to the judicial reorganization, which may include individual fraud claims against the debtor or its shareholders and officers. If the bankruptcy court finds that some of the RJ plan provisions are unlawful, it may refuse to confirm the RJ plan or impose limitations, even if the RJ plan is approved by a majority of the creditors at the creditors' meetings.

15. Unlike the commencement of a bankruptcy liquidation proceeding in Brazil, the commencement of an RJ proceeding does not impact the debtor's ability to conduct its business. Accordingly, the RJ proceeding does not create a bankruptcy estate out of the debtor's property and interests that must be administered for the benefit of its creditors. As a result, in RJ proceedings, creditors do not have the ability to pursue claims or bring derivative actions against third parties on behalf of or in the interest of the debtor. Similarly, creditors do not have the ability, in the context of an RJ proceeding, to investigate or take discovery on the

debtor in furtherance of potential claims against third parties but retain the prerogative to pursue such claims independently, as explained below.

**CAUSES OF ACTION AND OTHER REMEDIES AVAILABLE TO CREDITORS**

16. The Brazilian Bankruptcy Law only provides for specific avoidance actions in liquidation proceedings, which can be filed when the debtor has been declared bankrupt. Sections 130 and 132 of the Brazilian Bankruptcy Law provide that any creditor, the public prosecutor, or the judicial administrator may file a revocatory action to avoid transfers made by the debtor to third parties within three (3) years of the commencement of liquidation, if such transfer is harmful to the debtor or the estate. If the bankruptcy court grants those requests it will order "*the return of the assets to the bankruptcy estate in kind, with all accessories, or at their market value*" (Section 135 of the Brazilian Bankruptcy Law).

17. Furthermore, the Brazilian Bankruptcy Law also provides that some transfers are subject to avoidance in liquidation proceedings as a matter of law, regardless of whether the third party was aware of the debtor's financial distress and whether the debtor intended to defraud creditors. In addition, the Brazilian Bankruptcy Law allows the bankruptcy court to determine a claw-back period, or "legal term," up to ninety (90) days prior to either the commencement of the debtor's liquidation or the date of the first "*protesto*" (official declaration of default) filed by a creditor, during which certain transfers by the debtor are subject to scrutiny. Those transfers include (i) payments of debts not yet due, (ii) payments of debts that were due but paid in a manner inconsistent with the terms provided in the governing agreement, and (iii) the creation of liens or any other *in rem* property interest in connection with a previously incurred debt for no additional consideration.

18. This is not the case with RJ proceedings. As a rule, the RJ proceeding is not an appropriate venue for avoiding transfers. Therefore, the bankruptcy court will not consider the cause of the debtor's financial crisis or those responsible for it, nor will the court order the

8

avoidance of certain transactions and the collection of assets, even in connection with the confirmation of an RJ plan. However, the Brazilian Bankruptcy Law does not prevent interested parties from seeking relief outside the RJ proceeding for any fraud committed by the debtor.

## **DISCOVERY PROCEDURES UNDER BRAZILIAN LAW**

19. In Brazil, parties in interest, including creditors, may obtain evidence from their adversaries through rather robust discovery-like mechanisms established by the Brazilian Civil Procedure Code.

20. First, during the evidentiary phase of any civil proceeding under Brazilian law, Brazilian courts have authority to order *sua sponte* the disclosure of any documents or objects in the possession of one of the parties (Section 396 of the Brazilian Civil Procedure Code) or even third parties (Sections 401 et seq. of the Brazilian Civil Procedure Code). This order may be quite broad and may require any party to produce any technical, documentary or testimonial evidence pursuant to Section 370 of the Brazilian Civil Procedure Code, regardless of any specific request by the parties in this sense. It is widely accepted in Brazilian case law that judges are the final recipients of the evidence presented during the proceedings, unlike other legal systems where evidence is presented by and for the parties.[6]

21. In addition, pursuant to Section 397 of the Brazilian Civil Procedure Code, parties also have the right to request the court to compel the disclosure of any documents or other items during the evidentiary phase of any civil proceeding. Such a request must comply with minimum requirements, namely (i) a description of the document or object, (ii) the reasons why such documents or items would be material to the claim of the requesting party, and (iii)

---

[6] Among others: STJ, AgInt no AREsp n. 2.136.746/SP, relator Ministro Paulo Sérgio Domingues, Primeira Turma, julgado em 2/10/2023, DJe de 5/10/2023; STJ, AgInt no AREsp n. 2.345.199/RO, relatora Ministra Nancy Andrighi, Terceira Turma, julgado em 18/9/2023, DJe de 20/9/2023; and STJ, AgInt no REsp n. 1.931.678/SP, relatora Ministra Nancy Andrighi, Terceira Turma, julgado em 21/11/2023, DJe de 23/11/2023

the circumstances indicating the existence, and the adversary's possession, of the requested documents or items (Section 397, I, II, III, of the Brazilian Civil Procedure Code).

22. The main feature of this mechanism is to allow parties to request whole categories of documents or objects, instead of identifying specific documents or items in the discovery process (Section 397, of the Brazilian Civil Procedure Code). The purpose of these provisions is to facilitate the production of evidence under Brazilian procedural law, to reduce the burden of detailing each piece of evidence requested, and thus to ensure that efforts to conceal relevant information will not prevent a party from obtaining information needed to support its causes of action.

23. In any case, if a party fails to comply with a disclosure order, either at the request of another party or at the court's own initiative, the court may infer negative conclusions and assume that the facts intended to be proved by the undisclosed document are true (Section 400 of the Brazilian Civil Procedure Code). Separately, if a third party fails to comply with an order to produce evidence, the court may order a compulsory search of the document, if necessary, with the assistance of the police (Section 403 of the Brazilian Civil Procedure Code).

24. Finally, another available mechanism is a preparatory action for the production of evidence (a "**Preparatory Action**"), which is a separate action whose sole purpose is the production of evidence and the disclosure of documents. Pursuant to Section 381 of the Brazilian Civil Procedure Code, prior to filing a main action, a party may file a Preparatory Action for the sole purpose of requesting the production of evidence that would be relevant to the main action. There are no legal restrictions on the scope of evidence that may be requested in this type of action.[7]

---

[7] This is also the understanding of most scholars on this matter: "The Preparatory Evidence Production action, governed by Sections 381 to 383 of the Code of Civil Procedure, is a set of procedural activities aimed at gathering information on legally relevant facts, without waiting for the moment or procedural phase ordinarily appropriate for this. It can, depending on the case, be carried out pending litigation, before litigation or even, depending on the case, without there even being the prospect of litigation" (DINAMARCO, Cândido Rangel. Instituições de Direito Processual Civil. 7 ed. São Paulo: Malheiros, 2017, V. III, n. 975, p. 112).

25. However, some requirements must be met by the claimant. The interested party must demonstrate that (i) there is a risk that the requested evidence will perish over time and become unavailable once the main action is commenced, (ii) the prior knowledge of the facts related to the requested evidence is essential to confirm the need to commence the main action or to avoid its commencement, or (iii) the prior production of evidence may lead the parties to reach a settlement agreement.

26. In any case, the request must also meet an additional requirement under Section 382 of the Brazilian Civil Procedure Code: the interested party must assert in its initial complaint the need for such evidence in order to prove certain facts of legal relevance. The court may not rule on whether the alleged facts are true, or whether there is merit to the plaintiff's claims (Section 392, §2º, of the Brazilian Civil Procedure Code). The Brazilian Civil Procedure Code also prohibits the defendant in such proceedings from presenting a defense on the merits, since it is not a proceeding related to the merits of a given dispute (Section 392, §4º, of the Brazilian Civil Procedure Code).[8]

27. As with any discovery-like procedure, Brazilian procedural law attempts to curb any kind of fishing expeditions by the parties. However, this does not undermine the parties' ability to seek evidence or in any way severely limit any potential discovery. In this regard, I respectfully disagree with the Mr. Fidalgo Declaration's assertion that requesting parties must specifically identify what is sought (Fidalgo Decl. ¶ 56). As noted above, the requesting party is only required to identify the facts it intends to prove with the evidence sought, and not the specific piece of evidence or document that needs to be disclosed if the discovery is granted.

28. It is also not true that Brazilian authorities would be unable to subpoena parties located outside of Brazil to produce documents or testify (Fidalgo Decl. ¶ 55). Any judge may

---

[8] TJSP, Agravo de Instrumento nº 2172853-78.2023.8.26.0000, Rel. Des. Francisco Loureiro, 1ª Câmara Reservada de Direito Empresarial do TJSP, j. em 04.08.2023.

11

decide to issue a letter rogatory so that a foreign authority can enforce the Brazilian decision through cooperation mechanisms (Section 237, II, of the Brazilian Civil Procedure Code).

29. As an example of the effectiveness of the discovery procedure in Brazil, Bradesco S.A. ("**Bradesco**"), Americanas' largest bank creditor, was able to obtain a court order granting full access to ten years of records contained in the inboxes of: (i) all current and former directors and officers of Americanas; (ii) current and former members of the Board of Directors and the Audit Committee; and (iii) all employees who work or have worked in the finance and accounting departments. The order was upheld by the Brazilian Federal Supreme Court ("**STF**"), with the sole exception of privileged attorney-client communications. Furthermore, the court granted Bradesco the right to take depositions of the former CEOs of Americanas, Miguel Gutierrez and Sergio Rial, and the former CFO of Americanas, André Covre.

30. However, the full production of evidence was never completed, as Bradesco and Americanas entered negotiations and requested a stay of the procedure. Similarly, other creditors have also obtained favorable rulings in their evidentiary proceedings against Americanas. The court granted Itaú Unibanco S.A. the right to take the depositions of thirteen stakeholders, including former executives, members of the board of directors and audit committee, among others. A similar order for production of documents was granted in favor of Banco Santander (Brasil) S.A., another bank creditor of Americanas. All the proceedings, however, have been stayed at the mutual requests of the parties.

31. It is important to emphasize that the ability of creditors or interested parties to conduct discovery, although very broad, is subject to certain limitations that may be imposed by Brazilian courts. Brazilian courts generally will not allow discovery if the sole purpose of

the proceeding is to investigate the activities of the defendant, without first alleging any facts whatsoever that would support an independent cause of action[9].

32.    In any case, information obtained illegally or through illegitimate channels would be rejected. This is consistent with the fact that under Brazilian law the court is the final recipient of the evidence produced, and, therefore, even the evidence produced in a Preparatory Action is not final and will be reviewed over the course of the main lawsuit "if and when" it is commenced by the interested party.[10]

---

[9] "Indeed, and as was correctly explained in the decision rendered, the appellant is not seeking to know the content of facts material to determining his/her legal position *vis-a-vis* the defendants. What is sought, rather, is the initiation of a broad investigative process against the defendants, to investigate alleged irregularities and wrongdoing […] a purpose for which the action for the early production of evidence is not suitable. The requests made in the initial claim led to a "fishing expedition", with a speculative search for elements capable of attributing civil liability to someone". [TJSP, Apelação Cível nº 1075717-26.2022.8.26.0100, Rel. Des. Fortes Barbosa, 1ª Câmara Reservada de Direito Empresarial do TJSP, j. em 29.09.2023]. And TJSP, Apelação Cível nº 1019524-25.2021.8.26.0003, Rel. Des. Ricardo Negrão, 2ª Câmara Reservada de Direito Empresarial do TJSP, j. em 08.09.2023.

[10] TJSP, Agravo de Instrumento nº 2070452-93.2021.8.26.0000, Rel. Des. Jayme Oliveira, 29ª Câmara de Direito Privado do TJSP, j. em 31.08.2021.

I certify under penalty of perjury pursuant to 28 U.S.C. § 1746 under the laws of the United States that the foregoing is true and correct.

Executed on December 5, 2023 in São Paulo, State of São Paulo, Brazil.

Respectfully submitted,

*Francisco Satiro*