**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>AMERICANAS S.A., *et al.*,[1]<br><br>    Debtors in a Foreign Proceeding. | Case No. 23-10092 (MEW)<br><br>Chapter 15<br>(Jointly Administered) |

**SABLON PARTNERS LTD.'S REPLY IN FURTHER SUPPORT OF
ITS MOTION FOR ENTRY OF AN ORDER PURSUANT TO
BANKRUPTCY RULE 2004 AUTHORIZING THE EXAMINATION
OF DEBTORS AMERICANAS AND B2W DIGITAL AND THIRD PARTIES**

TO:    THE HONORABLE MICHAEL E. WILES
        UNITED STATES BANKRUPTCY JUDGE

---

[1] According to the Foreign Representative for the debtors in these chapter 15 cases (the "**Debtors**" or the "**Chapter 15 Debtors**"), those Debtors along with the last four digits of each Debtor's tax identification number in its applicable jurisdiction of incorporation, are as follows: Americanas S.A. (06-60 – Brazil) ("**Americanas**"); JSM Global S.a.r.l. (5670 – Grand Duchy of Luxembourg); and B2W Digital Lux S.a.r.l. (8659 – Grand Duchy of Luxembourg).

**Table of Contents**

Page

I. PROCEDURAL HISTORY ...................................................................................................1

II. INTRODUCTION ................................................................................................................1

III. ARGUMENT ........................................................................................................................4

    A. Sablon Has Standing to Bring the Motion ...................................................................4

    B. The Objectors Concede That Rule 2004 Applies in Chapter 15 .................................4

    C. Sablon's Discovery Requests Are Within the Proper Scope of Rule 2004 .................6

    D. Sablon Has Met Its Burden of Showing Good Cause .................................................8

    E. Sablon's Motion Does Not Circumvent Brazil Discovery or Litigation
       Procedures ..................................................................................................................12

IV. CONCLUSION ..................................................................................................................14

ii

# Table of Authorities

**Cases**                                                                                                             **Page(s)**

*I.T.T. Small Bus. Fin. Corp. v. Frederique*,
    82 B.R. 4 (E.D.N.Y. 1987) ................................................................................................ 6

*In re AOG Enm't Inc.*,
    558 B.R. 98 (Bankr. S.D.N.Y. 2016) ............................................................................... 8

*In re Cambridge Analytica LLC*,
    600 B.R. 750 (Bankr. S.D.N.Y. 2019) ........................................................................... 12

*In re China Med. Techs*,
    No 12-13736, Order, ECF No. 91 (Bankr. S.D.N.Y. June 27, 2018) ............................... 5

*In re Coffee Cupboard Inc.*,
    128 B.R. 509 (Bankr. E.D.N.Y. 1991) .......................................................................... 14

*In re Comair Ltd.*,
    No. 21-10298 (JLG), 2021 WL 5312988 (Bankr. S.D.N.Y. Nov. 14, 2021) ............. 6, 11

*In re Drexel Burnham Lambert Grp., Inc.*,
    123 B.R. 702 (Bankr. S.D.N.Y. 1991) ................................................................ 8, 9, 10

*In re Enron Corp.*,
    281 B.R. 836 (Bankr. S.D.N.Y. 2002) ..................................................................... 11, 12

*In re Farmer*,
    237 B.R. 210 (Bankr. M.D. Fla 1999) .......................................................................... 13

*In re Glitnir banki hf*,
    No. 08-14757, 2011 WL 3652764(4) (Bankr. S.D.N.Y. Aug. 19, 2021) ................... 6, 11

*In re Golden Sphinx*,
    No. 2:22-BK-14320-NB, 2023 WL 2823391 (Bankr. C.D. Cal. Mar. 31, 2023) ..... 5, 6, 7

*In re Hilsen*,
    No. 87-11261 (JMP), 2008 WL 2945996 (Bankr. S.D.N.Y. July 25, 2008) ................... 8

*In re Markus*,
    607 B.R. 379 (Bankr. S.D.N.Y. 2019) ............................................................................ 5

*In re Metiom*,
    318 B.R. 263 (Bankr. S.D.N.Y. 2004) ........................................................................ 7, 8

*In re MPM Silicones, LLC*,
    596 B.R. 416 (S.D.N.Y. 2019) ....................................................................................... 4

*In re Perforadora Oro Negro, S.de R.L. de C.V.*,
    No 18-11094, ECF No. 87 (Bankr. S.D.N.Y. June 27, 2018) ......................................... 5

*In re Platinum Partners Value Arbitrage Fund L.P.*,
  583 B.R. 803 (Bankr. S.D.N.Y. 2018) .............................................................................. 8

*In re SunEdison*,
  562 B.R. 243 (Bankr. S.D.N.Y. 2017) ............................................................................ 10

*In re Transbrasil S.A. Linhas Aéreas*,
  No. 19-23700-CIV, 2020 WL 10458631 (S.D. Fla. Mar. 16, 2020) ...................................... 11

*In re Wilson*,
  2009 WL 304672 (Bankr. E.D. La. Feb. 6, 2009) ................................................................ 7

*Markus v. Rozhkov*,
  607 B.R. 679 (S.D.N.Y. 2003) ........................................................................................... 5

*Martin v. Schapp Moving Systems, Inc.*,
  No. 97-5042, 1998 WL 405966 (2d Cir. April 20, 1998) .................................................... 12

*Quadrant Structured Prods. Co. v. Vertin*,
  No. C.A. No. 6990-VCL, 2013 WL 3233130 (Del. Ch. Ct. June 20, 2013) ........................... 4

*Snyder v. Society*,
  181 B.R. 40 (S.D. Tex. 1984) ........................................................................................... 12

**Statutes**

11 U.S.C. § 1501(a)(3)(4) ................................................................................................. 6, 13
11 U.S.C. § 1513(a) ................................................................................................................ 9
11 U.S.C. § 1521 ............................................................................................................ passim
11 U.S.C. § 1522 ..................................................................................................................... 5

**Rules**

Fed. R. Bankr. P. 1001 ........................................................................................................... 6
Fed. R. Bankr. P. 2004 ................................................................................................... passim

I. **PROCEDURAL HISTORY**

Sablon Partners Ltd. ("**Sablon**") filed its Motion (ECF No. 42),[2] supported by declarations from its Brazilian counsel in the Fidalgo Declaration, and the movant's principal in the Nigri Declaration, seeks this Court's assistance in obtaining information in advance of the critical meeting in Brazil regarding the RJ Plan submitted by the Chapter 15 Debtors. The Motion is opposed by Antonio Reinaldo Rabelo Filho (the "**Foreign Representative**") of the Chapter 15 Debtors (the "**Debtors' Objection**") (ECF No. 55), supported by declarations from the Foreign Representative ("**Foreign Representative Decl.**") (ECF No. 56) and Franciso Satiro ("**Satiro Decl.**") (ECF No. 57). LTS Trading Company LLC ("**LTS Trading**"), and Cedar Trading LLC ("**Cedar Trading**") (together with LTS Trading the "**Third Parties**") filed its objection (the "**Third Parties' Objection**" and together with the Debtors' Objection, the "**Objections**") (ECF No. 51), supported by declarations from American counsel, Mario O. Gazzola ("**Gazzola Decl.**") (ECF No. 52), Brazilian counsel, Marina Gaensly Blattner ("**Blattner Decl.**") (ECF No. 53), and a professor from the University of São Paulo, José Alexandre Tavares Guerreiro ("**Guerreiro Decl.**") (ECF No. 54).

II. **INTRODUCTION**

Sablon seeks to be treated as a creditor that wants information related to the Debtors' business operations in advance of critical events in Brazil. It has no meaningful recourse in Brazil to obtain such information. Indeed, the Objections make it clear that no creditor has actually received in full the type of discovery that Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") permits for domestic creditors. Given that Chapter 15 was

---

[2] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Motion.

1

enacted not just for the benefit of representatives of foreign debtors, but for all of its creditors, the Court should grant relief.

The Objections make several arguments against any discovery. They argue, incorrectly, that Sablon lacks standing to bring this discovery motion pursuant to a no-action clause in the JSM Global Indenture, but this argument is misguided. The Motion is not being brought under the JSM Indenture, to enforce or avoid the provisions of the indenture or to compel an action by the trustee. Thus, the no-action clause is inapplicable, and Sablon has standing as a creditor.

Second, both Objections argue that Chapter 15 of Title 11 of the United States Code ("**Bankruptcy Code**") permits only the Foreign Representative to seek discovery, relying on Section 1521(a)(4) of the Bankruptcy Code. Sablon, however, has not brought the Motion pursuant to that provision. Sablon does not dispute that the Foreign Representative may take discovery pursuant to Section 1521(a)(4), but the referenced language in Sections 1521(a)(4) and 1507(a) does not limit other interested parties from seeking discovery under the Bankruptcy Rules. Indeed, the Objections cite no direct authority to support their position, and the argument has been explicitly rejected by other courts.

Third, both Objections argue that Sablon's discovery request exceeds the scope of a Rule 2004 motion and does not comport with chapter 15. Such arguments are unavailing, as Sablon's request for discovery is a two-pronged effort to seek discovery to investigate: (i) The Fraud that has pervaded Americanas financial statements for years through discovery from the Chapter 15 Debtors and affiliated entities; and (ii) the role of three shareholders commonly referred to as the "**Reference Shareholders**," who currently hold 30.12% of Americanas shares through requests to U.S. companies they used to control the Chapter 15 Debtors. Sablon as a creditor seeks to use Rule 2004 to seek discovery on the belief that fraudulent transactions are not being meaningfully

2

investigated by the Foreign Representative or by the Chapter 15 Debtors in any other jurisdiction. Sablon seeks to use this pre-litigation tool to quickly and efficiently learn about the Chapter 15 Debtors, the third parties that have a relationship with the Chapter 15 Debtors and their roles in any such transactions are proper subjects of Rule 2004 discovery.

Fourth, the Objections argue that Sablon failed to demonstrate that good cause existed for this discovery request, that it was merely an attempt to waste resources, and, on balance, is a burdensome request that amounts to harassing the Objectors. Sablon has demonstrated, however, that good cause exists here on two fronts: (i) The underlying evidence is necessary for Sablon, and potentially other creditors, to evaluate the claims they may have related to the Fraud and Reference Shareholders; and (ii) a denial of the requested discovery would create an undue hardship in Sablon's effort to obtain this discovery. Sablon's Rule 2004 and the discovery it seeks is not an effort to harass the Objectors and both Objections fail to cite case law to support this position – but rather it is an attempt to get evidence that is *necessary* to evaluate whether they, and other similarly situated creditors, have claims against the Objectors. On balance the necessity of the evidence by Sablon and other creditors outweighs the alleged "burden."

Fifth, both Objections allege that Rule 2004 discovery would conflict with Brazilian law, but this is incorrect. Brazil permits discovery in an ancillary civil proceeding while the RJ Proceeding is pending but not in the RJ Proceeding itself. If obtained, such discovery may prove helpful for creditors to consider, among other things, whether each wants to join the RJ Plan and surrender legal rights pursuant to a non-litigation clause. Using Rule 2004 differs little from what many creditors have attempted unsuccessfully to do in Brazil. Just as such foreign ancillary discovery is considered complimentary to the RJ Proceeding, so too is Rule 2004 request.

For the reasons set forth in the Motion, the Court should grant the relief requested.

3

### III.   ARGUMENT

#### A. Sablon Has Standing to Bring the Motion.

Sablon has standing as a creditor of the Chapter 15 Debtors. Sablon holds one million U.S. dollars of senior unsecured notes issued by JSM Global. Chapter 15 Debtors argue Sablon lacks standing to bring this Rule 2004 discovery motion because the JSM Indenture has a no-action clause. Debtors' Objection at 25. This argument is without merit. The JSM Indenture's no-action clause states, in relevant part, that "[a] Holder may not institute any proceeding, judicial or otherwise, with respect to this Indenture or the Notes, or for the appointment of a receiver or trustee, or for any other remedy under this Indenture or the Notes." Foreign Representative Decl., Ex. B (JSM Indenture) § 6.06. This discovery motion dispute may implicate the terms of the JSM Indenture, but it is not being brought under it. *See Quadrant Structured Prods. Co. v. Vertin*, No. C.A. No. 6990-VCL, 2013 WL 3233130, at *13 (Del. Ch. Ct. June 20, 2013) (holding that they no-action clause applied "only to claims under the Indenture and does not extend to claims that rely on other sources of law."). Where the language of an indenture does not expressly bar a creditor from participating in a bankruptcy proceeding, creditors' have a right to be heard. *See In re MPM Silicones, LLC*, 596 B.R. 416, 431-32 (S.D.N.Y. 2019).

#### B. The Objectors Concede That Rule 2004 Applies in Chapter 15.

Chapter 15 Debtors and the Third Parties' Objections concede that Rule 2004 applies but argue that only the foreign representative has access to it. They assert that Section 1521(a)(4) prohibits any other interested party from seeking discovery pursuant to Rule 2004 in a chapter 15 proceeding. *See* Third Parties' Objection at 14-16; Debtors' Objection at 20-22. The argument misconstrues the Bankruptcy Code and the applicability of the Bankruptcy Rules. While it is

4

true that a foreign representative is entitled to conduct discovery under Section 1521(a)(4), it does not automatically follow that this Section prohibits creditors from seeking discovery under Rule 2004.

Critically, omitted from Section 1521 is a prohibition on other interested parties obtaining discovery or language to support the argument that Section 1521 is the exclusive authority. This Court has already declined to read limitations into Section 1521(a)(4) where none exists. *See In re Marku*s, 607 B.R. 379, 390 (Bankr. S.D.N.Y. 2019), *rev'd in part, vacated in part, and remanded on other grounds*, *Markus v. Rozhkov*, 607 B.R. 679 (S.D.N.Y. 2003) (holding that unlike Section 1521(a)(5), the absence of a jurisdictional limitation in section 1521(a)(4) indicates that Congress did not intend to limit chapter 15 discovery to the United States alone). Moreover, the foreign representative in *In re Golden Sphinx* decision made – unsuccessfully – the same argument when objecting to a creditors Rule 2004 motion. *See* No. 2:22-BK-14320-NB, 2023 WL 2823391, at *2 (Bankr. C.D. Cal. Mar. 31, 2023) ("The Foreign Representative contends that section 1521(a)—not Rule 2004(a)—governs the scope in a chapter 15 case . . . [t]his Court is not persuaded.").

The Third Parties' Objection fails to cite any authority on point that supports their argument.[3] Similarly, the Debtors' Objection is also lacking authority to support its contention.

---

[3] *In re China Med. Techs.*, No 12-13736, Order, ECF No. 91 (Bankr. S.D.N.Y. June 27, 2018) cited by the Third Parties is of little support as there the court denied a shareholders discovery request exercising its discretion and explicitly declining to reach decide Rule 2004's applicability. *See* Gazzola Decl. Ex. C, Hr'g Tr. at 17:5-19 ("I'm denying this as a matter of discretion rather than imposing a hard and fast rule that non-foreign representatives must always be denied discovery in Chapter 15 cases in the U.S . . . I do not need to decide whether other parties-in-interest must always be denied discovery in Chapter 15 cases"). The citation to *In re Perforadora Oro Negro, S.de R.L. de C.V.*, No 18-11094, Hr'g Tr. at 214:9-10, ECF No. 87 (Bankr. S.D.N.Y. June 27, 2018), is equally unavailing as the bondholders in that case moved under Section 1522(b) for an order imposing conditions on a debtor's business operations. *In re Perforadora Oro Negro, S.de R.L. de C.V.*, No 18-11094, Interested Parties Motion, ECF No. 65,

The case of *In re Glitnir banki hf*, involved a foreign representative seeking discovery pursuant to Section 1521(a)(4) and the interplay between it and Rule 2004; but it did not address a situation involving another interested party. *See* No. 08-14757, 2011 WL 3652764, at *6 (Bankr. S.D.N.Y. Aug. 19, 2021) (viewing Rule 2004 as complementing Section 1521(a)(4) in defining a foreign representative's discovery requests' scope). Moreover, multiple bankruptcy courts have disagreed with *Glitnir banki's* reasoning. *See In re Comair Ltd.*, No. 21-10298 (JLG), 2021 WL 5312988, at *9 n.19 (Bankr. S.D.N.Y. Nov. 14, 2021) (collecting cases disagreeing with *Glitnir's* analysis).

Rule 2004 does not contain language limiting its use in chapter 15. It provides that "[o]n motion of **any** party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004 (emphasis added). Rule 1001 also provides that "[t]hese rules shall be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every case and proceeding." Fed. R. Bankr. P. 1001. The Court should reject the use of Section 1521(a)(4) to limit Rule 2004's scope when no such limitation exists. *In re Golden Sphinx*, 2023 WL 2823391, at *2. *See I.T.T. Small Bus. Fin. Corp. v. Frederique*, 82 B.R. 4 (E.D.N.Y. 1987) ("where one section of the Bankruptcy Code explicitly governs an issue, another section should not be interpreted to cause an irreconcilable conflict").

C. **Sablon's Discovery Requests Are Within the Proper Scope of Rule 2004.**

The purpose of a Chapter 15 includes "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor" and the "protection and maximization of the value of the debtors' assets." 11 U.S.C.

---

at 10 (Bankr. S.D.N.Y. June 1, 2018). Rule 2004 was neither cited in the Bondholders motion nor did they argue for 2004 discovery. *Id.*

6

§ 1501 (a)(3)(4).  Sablon's request for discovery is a two-pronged effort to seek discovery to investigate: (i) the accounting inconsistencies and Fraud that has pervaded Americanas financial statements for years through discovery from the Chapter 15 Debtors'; and (ii) the role, if any, of the Reference Shareholders, who currently hold 30.12% of Americanas shares through requests to U.S. companies they used to control the Chapter 15 Debtors.  Fidalgo Del. at 4-9, 12-13.  Creditors have serious concerns about the so-called "independent" committee ("**Board Committee**") appointed by the Americanas Board of Directors ("**Board Members**") to investigate the accounting inconsistencies due to:  (i) The Board Committee's limited mandate – solely focusing on accounting inconsistencies; (ii) clarity about whether the Board Committee is investigating the Board Members' potential involvement in the Fraud; (iii) the actual or potential conflicts that arise from the fact that Reference Shareholders, who control the board, received significant dividends due to the Fraud; and (iv) the Board Committee will neither present a final report detailing their findings – which may or may not be written – to creditors nor will they give them access to the evidence they reviewed.  Fidalgo Decl. 6-8.

Sablon seeks discovery based on its belief that sufficient grounds are present to suspect the existence of fraudulent transfers that no foreign representative or estate fiduciary is pursuing, either here or in Brazil.  *In re Golden Sphinx*, 2023 WL 2823391, at \*3 (enumerating four instances where a creditor would be permitted to pursue discovery including if a creditor "were to present sufficient grounds to suspect the existence of a fraudulent transfer claim that the foreign representatives were wrongfully refusing to pursue.").  Rule 2004 is a "pre-litigation discovery device" available to parties-in-interest seeking to "learn quickly about the debtor's entity," to "maximize the realization of the debtors' estate and discover the existence and location of assets of the estate." *In re Wilson*, 2009 WL 304672, at \*5 (Bankr. E.D. La. Feb. 6, 2009); *In*

7

re *Metiom*, 318 B.R. 263, 270 n.6 (Bankr. S.D.N.Y. 2004). Sablon is seeking to use as intended this "broad discovery tool . . . to assist in . . . discover[ing]" financial assets or claims that remain undisclosed. *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 708 (Bankr. S.D.N.Y. 1991) (emphasis added).

Courts allow the examination of "[a]ny third party who has a relationship with a debtor," and this Court has been granted the examination of third parties by a Foreign Representative pursuant to Rule 2004. *In re Hilsen*, No. 87-11261 (JMP), 2008 WL 2945996, at *4 (Bankr. S.D.N.Y. July 25, 2008); *In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 810 (Bankr. S.D.N.Y. 2018) (granting third party discovery under Rule 2004 in a chapter 15 proceeding and recognizing that "in the proper context the Court may authorize the examination of third parties that possess knowledge of the debtor's acts, conduct, liabilities or financial condition which relate to the administration of the bankruptcy estate.") (internal citation omitted). Here, it appears that the Third Parties operated at the direction and control of the Reference Shareholders and were used to receive large dividends potentially linked to the Fraud, and to participate in the financial management of the Chapter 15 Debtors. Fidalgo Decl. at 9.

### D. **Sablon Has Met Its Burden of Showing Good Cause.**

Sablon bears the burden for showing good cause. *In re AOG Enm't Inc.*, 558 B.R. 98, 109 (Bankr. S.D.N.Y. 2016). Good cause is shown by demonstrating that Rule 2004 discovery "is necessary to establish the claim of the party seeking the examination or if the denial of such request would cause undue hardship." *Id.* Sablon has demonstrated that good cause exists here on two fronts: (i) The underlying evidence is necessary for Sablon, and other creditors, to evaluate the claims they may have related to the Fraud and Reference Shareholders; and (ii) a denial of the requested discovery would create an undue hardship in Sablon's effort to obtain this

8

discovery. Objectors have repeatedly referenced the various investigations in Brazil in an effort to minimize Sablon's discovery request, but these proceedings have not resulted in real benefits to Americanas creditors, further underscoring the hardship that Sablon faces absent this Rule 2004 request. None have yielded discovery that has become available to all Americanas creditors,[4] and of such discovery requests initiated by the creditors, none of these proceedings have yielded discovery that is available to the Americanas creditors, nor does the fact that Sablon could bring a discovery proceeding or an adversarial proceeding in the future preclude the application of Rule 2004. *See In re Drexel*, 123 B.R. at 712 (finding good cause existed where a movant would be entitled to discovery in a potential future adverse proceeding); *see also* 11 U.S.C. 1513(a) ("Foreign creditors have the same rights regarding the commencement of, and participation in, a case under this title as domestic creditors.").

The Objections insinuate that the purpose of seeking this discovery is to make the other creditors aware of actions under Brazil law that could be taken, but this is inaccurate. The Motion attempts to use Rule 2004, a pre-litigation tool, to quickly and efficiently: (i) Gain more information and provide more information to the Americanas Creditors who are currently set to vote on the RJ Plan; and (ii) evaluate whether claims exist at Brazilian law for Sablon and other similarly situated creditors to bring. Sablon seeks this discovery so that it may get the underlying evidence – that has been provided to various entities but the creditors – so that Sablon and other creditors may assess the viability or any cause of action after receiving the underlying evidence. Fidalgo Decl. at 16. This is vital in light of the vote to adopt the proposed RJ Plan, which

---

[4] Fidalgo Decl. at 6-11 (discussing the other investigations into the Fraud were deficient and Americanas creditors could not rely on them because of the difference in legal actions contemplated, and the failure to provide documents to the creditors.).

9

contains a non-litigation clause.[5] Further, Sablon seeks this discovery to assist them in their determination of whether to vote on approving the RJ Plan[6] or propose an alternative plan upon the proposed RJ Plan's failure. Fidalgo Decl. at 12. *In re Drexel*, 123 B.R. at 712 (holding "[t]he more knowledge that [the creditor] has about these claims the better.").

Rule 2004 requires that the Court "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought in the examination." *Id.* On balance the necessity of this evidence for Sablon, and other Americas creditors, to a determination about claims that may arise under Brazil law, which would directly impact whether they could support the proposed RJ Plan outweighs the alleged "burdens" Objectors raise. As an initial matter, Rule 2004 is applicable to any party in interest, it does not set a financial threshold. *See* Fed. R. Bankr. P. 2004. An order granting discovery would be the first time Americanas creditors actually receive full discovery responses, distinguishing the scenario in the Chapter 15 Debtors citation to *In re SunEdison*. *See* 562 B.R. 243, 250 (Bankr. S.D.N.Y. 2017) (discussing proportionality when noting that Rule 2004 movants were small when viewed in the context with the Chapter 11 case, but holding good cause did not exist because Debtors *had already produced 1,200 pages of responsive information* resolving any issues between Rule 2004 movants and the debtors).

---

[5] Adopting the RJ Plan would subject creditors to a non-litigation clause that would result in the Americanas Creditors "withdraw[ing] any current lawsuit and not file new suits against the company, its directors, and primary shareholders." Por Fernanda Guimarães, Talita Moreira, Americanas sign agreement with major creditors after long negotiations, International Valor (Nov. 28, 2023), Americanas sign agreement with major creditors after long negotiations | Business | valorinternational (globo.com)

[6] The Debtors' Objection notes that Sablon did not individualize our claims to vote to accept or reject the claim. Regardless, the information remains valuable in order to evaluate whether claims exist for Sablon and similarly situated creditors that would be actionable, including demanding that any indenture trustee take action on behalf of all noteholders.

Moreover, assertion that preparing responses would require an intense amount of effort and monetary resources contradicts arguments made elsewhere in the Objections as the opposing parties admit that the evidence Sablon seeks has been produced to and evaluated by multiple government investigations and the Board Committee. *See* Foreign Representatives Decl. at 11-16. Allowing creditors to obtain evidence that was already collected, reviewed, and produced to others cannot be prohibitively more time consuming and expensive. In fact, Sablon's demands are not burdensome, but narrowly tailored and confined to a handful of discovery requests, *see* Motion Ex. B at 4-5 (one to four requests for production of documents per party) and Motion Ex. C at (providing one to five topics of examination per party), but to the extent the Court is concerned with the breadth of requests, it is within the Judge's discretion to grant a narrowed version. *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (holding a court has discretion over the scope Rule 2004 discover when deciding whether to grant or deny a request).

The Chapter 15 Debtors argue that these requests amount to a "improper fishing expedition" relying on *In re Glitnir banki*, 2011 WL 3652764. *Glitnir's* holding, however, relies on an interpretation of the interplay between Rule 2004 and Section 1521(a)(4) that, as discussed above, has been rejected by nearly every other court considering the issue. *In re Comair*, 2021 WL 5312988, at *6 n.19 (citing *In re Transbrasil S.A. Linhas Aéreas*, No. 19-23700-CIV, 2020 WL 10458631, at *5 (S.D. Fla. Mar. 16, 2020) (the court analyzed the interplay between Bankruptcy Rule 2004 and Section 1521(a) and found that it "can find [no authority] approving the holding in *In re Glitnir* with respect to the issue of whether section 1521(a)(4) limits discovery otherwise available under Rule 2004(b).").

Good cause exists to grant discovery as it does not constitute harassment. In asserting harassment, the Objections rely on bankruptcy cases where the courts held the movant's intent

11

behind their Rule 2004 discovery request was to improperly get discovery in a pending proceeding to which they were already a party. The cases do not support the principle that the discovery sought by Sablon amounts to harassment. *See In re Enron Corp.*, 281 B.R. 836 (S.D.N.Y. 2002) (denying Rule 2004 discovery where the creditor sought discovery not for "the purpose of asserting their rights as a party in interest to the bankruptcy case," but for a **pending** securities action) (emphasis added); *Snyder v. Society*, 181 B.R. 40, 42 (S.D. Tex. 1984), *aff'd sub nom.*, *In re Snyder*, 52 F.3d 1067 (5th Cir. 1995) (denying Rule 2004 discovery where the party seeking discovery had a pending proceeding in Michigan state court); *Martin v. Schapp Moving Systems, Inc.*, No. 97-5042, 1998 WL 405966, (2d Cir. April 20, 1998) (denying Rule 2004 discovery sought by a creditor upon the conclusion of an adversary proceeding that the creditor was a party pertaining to subject matter covered by the prior adversary proceeding); *In re Cambridge Analytica LLC*, 600 B.R. 750 (Bankr. S.D.N.Y. 2019) (denying a Rule 2004 discovery motion where the creditor, who had a pending derivative action in Delaware Chancery Court, purchased a claim initially filed by another creditor for the purpose of seeking Rule 2004 discovery for a pending proceeding). Under the pending proceeding rule, "once an adversary proceeding or contested matter is commenced" discovery should be sought pursuant to the rules of the contested matter. *In re Enron*, 281 B.R. at 840. The Objectors cannot argue that the Rule 2004 motion is barred by the pending proceeding rule or that Sablon was a party to a pending proceeding.

E. **Sablon's Motion Does Not Circumvent Brazil Discovery or Litigation Procedures.**

Objectors contend that the purpose of an RJ Proceeding is to "promote the rapid negotiations between a debtor and its creditors" as an apparent reason why the RJ Proceeding does not contain a discovery mechanism. *See, e.g.*, Third Parties' Objection at 20. Thus, the

12

Objections argues that any discovery order of this Court would be supplanting the purposes of the main insolvency proceeding, which does not have a mechanism for such discovery, and the request should therefore be denied.

That argument fails on its face as the Objections acknowledge that a creditor may still seek the same type of discovery in an ancillary proceeding in Brazil while the RJ Proceeding is active.  *See* Foreign Representative Decl. at 14-16.  What the Objections fail to explain is why creditors do not supplant the RJ Proceeding when seeking ancillary discovery in non-bankruptcy forums in Brazil (unfortunately, without real success) to assist in the rapid negotiation of the RJ Plan, but taking the same action in this Court, a forum where the Chapter 15 Debtors voluntarily invoked jurisdiction, would supplant the RJ Proceeding.

Denying relief also runs counter to the purpose of a chapter 15, which includes "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities" and the "protection and maximization of the value of the debtors' assets."  11 U.S.C. § 1501(a)(3)(4).  Further if the Chapter 15 Debtors are "seeking relief under the Bankruptcy Code, the debtor must accept both the burdens as well as the benefits of [their] decision."  *In re Farmer,* 237 B.R. 210, 212 (Bankr. M.D. Fla 1999).  Sablon's interest is pursuing information that may lead to value for itself and all creditors by investigating the Fraud and the Reference Shareholders knowledge or involvement.  Armed with access to all underlying information and evidence, creditors can decide whether to support the RJ Plan.

The Third Parties argue that even if Sablon were to obtain discovery, any evidence or information obtained is of little value as actions cannot be initiated in the RJ Proceeding against the Third Parties.  According to the Objections, the "purpose of Chapter 15 is to provide ancillary support for a foreign main bankruptcy proceeding, not other unrelated proceedings."  Third

13

Parties' Objection at 24 (citing *In re Coffee Cupboard Inc.*, 128 B.R. 509, 516 (Bankr. E.D.N.Y. 1991)). Thus, according to the Objections, even if Sablon were to gather evidence that can be used in civil proceedings outside of the Brazilian reorganization, it is of no value. Therefore, Rule 2004 discovery is incompatible with Brazilian law,

The Objections miss a crucial step. Sablon and similarly situated creditors are keen on determining whether evidence exists to support causes of action because the proposed RJ Plan has a non-litigation clause that would prevent them from bringing suit if adopted. Sablon and other creditors are using an ancillary proceeding, as can be done in Brazil in parallel to the RJ Proceeding, to assist in the determination of whether they want to support the RJ Plan and forfeit such rights, a determination that directly implicates the RJ Proceeding.

## IV.   CONCLUSION

**WHEREFORE,** Sablon's Motion should be granted and such other relief as is just and proper.

Dated:   December 8, 2023
         New York, New York

Respectfully submitted,

*/s/ James N. Lawlor*
James N. Lawlor
Hunter G. Waters

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, NY 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
jlawlor@wmd-law.com
hwaters@wmd-law.com

*Counsel for Sablon Partners Ltd.*