UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>Americanas S.A., *et al.*,[1]<br><br>　　　Debtors in a Foreign Proceeding. | )<br>)<br>)  Case No. 23-10092 (MEW)<br>)<br>)  Chapter 15<br>)  (Jointly Administered)<br>) |

**DECISION AND ORDER GIVING FORCE AND EFFECT**
**TO THE BRAZILIAN RJ PLAN AND GRANTING RELATED RELIEF**

　　　This matter came before the Court upon the Motion (the "**Motion**" by Antonio Reinaldo Rabelo Filho, in his capacity as the foreign representative (the "**Foreign Representative**") for each of the debtors in these jointly administered chapter 15 cases (the "**Debtors**") [ECF No. 65] for entry of an Order giving effect within the United States to a joint plan of reorganization (the "**Brazilian RJ Plan**") and to an order of the 4th Business Court of Rio de Janeiro (the "**Brazilian RJ Court**"), dated February 26, 2024, that confirmed the Brazilian RJ Plan (the "**Brazilian Confirmation Order**").  The Foreign Representative also seeks supplemental relief in aid of the implementation and enforcement of the Brazilian RJ Plan.

　　　Under the Brazilian RJ Plan creditors were given various options as to how their claims were to be treated.  In order to qualify for some of those options the creditors had to agree to release their own claims against the debtors and against certain current and former directors, officers and affiliates of the debtors, certain shareholders who have agreed to provide additional funding to the debtors as part of the plan, and other creditors who had signed a plan support agreement.  The releases include claims relating to the accounting irregularities that necessitated the Brazilian

---

[1]　The debtors in these chapter 15 cases are Americanas S.A. (06-60 - Brazil); JSM Global S.à.r.l. (5670 – Grand Duchy of Luxemburg); and B2W Digital Lux S.à.r.l. (8659 – Grand Duchy of Luxemburg).

bankruptcy proceedings, but they do not apply to claims based on fraud and criminal behavior. The main options given to creditors included the following:

- Some creditors were entitled to participate in a "reverse auction" under which they could bid proposed discounts to their claims (with a minimum discount of 70%). The creditors bidding the highest discounts would be "partially or fully repaid in cash" up to $2 billion. The highest discount that was offered was 73.01%, and creditors who offered discounts of 73% of more will be paid on a *pro rata* basis.

- Creditors (including holders of NY Notes)[2] were entitled to elect to be paid in a combination of new equity and new debentures. Creditors who chose this option were required to grant the releases described above. I was informed that those creditors received recoveries that were equal in value to approximately 80% of their claims.

- Creditors could elect to receive payment in cash at a 70% discount to their claims. Those creditors who made this election were not required to grant releases. However, those creditors will have to wait 15 years (until January 31, 2039) to receive payments.

- Creditors who failed to make any election are not deemed to have granted releases. However, they will only receive cash payments at an 80% discount to their claim amounts, and they will have to wait 20 years (until January 31, 2044) to receive payments.

The debtors conducted a tender offer in New York in April 2024 in order to implement the foregoing options insofar as they relate to holders of certain New York noteholders.

---

[2]  Capitalized terms used but not defined herein have the meanings set forth in the Motion or in the Supplemental Memorandum of Law filed by the Foreign Representative [ECF No. 71].

Approximately 7% of the noteholders made no election, meaning they will only receive cash at an 80% discount to their claims and will not receive payment until January 31, 2044.

No objections to the Motion have been filed. However, I asked some questions about some of the Brazilian RJ Plan at a hearing on July 11, 2024.

<u>First</u>, I asked whether the New York noteholders included any "retail" investors who might not have had the sophistication to understand the options being presented to them. The Debtors have verified that the notes were not registered securities and were available for purchase in the United States only by qualified institutional buyers and accredited investors.

<u>Second</u>, I asked for clarification of the mechanics of the cancellation of NY Notes held by those NY Noteholders who made no elections. The Debtors have agreed to the language that is included in paragraph 13 of this Order to ensure that the NY Noteholders receive clear instructions and communications in this regard.

<u>Third</u>, I asked about the reasons for the large disparities between the recoveries for creditors who elected option 2 (who will receive 80% recoveries right away) and creditors who declined to grant releases (who will receive nominal recoveries of only 20% or 30% but who also will have to wait 15 to 20 years to receive them). The Debtors stated that the disparities are "incentives" for releases. The Debtors have also advised me that some creditors complained that the releases actually were "coercive" as a result of these disparities and that the proposed releases therefore violated Brazilian law, but that the Brazilian RJ Court overruled that objection. *See* Brazilian Confirmation Order at 20-24. [ECF No. 66-4].

It does not appear that any creditors otherwise challenged the disparity in recoveries in Brazil. No creditors have raised issues in this Court regarding the disparate recoveries under the

Brazilian RJ Plan or regarding the proposed releases, and no creditors have objected to the enforcement in the United States of the Brazilian RJ Plan and the Brazilian Confirmation Order.

Based on the materials submitted to the Court, and the absence of any objection thereto,

**THIS COURT HEREBY FINDS AND DETERMINES THAT:**

A.  The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.  This Court has jurisdiction to consider this matter and enter this Order pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York dated January 31, 2012, Reference M-431, *In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012) (Preska, C.J.).

C.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (2)(P).

D.  Venue for this proceeding is proper before this Court pursuant to 28 U.S.C. § 1410.

E.  Pursuant to an order of this Court dated March 3, 2023, the Foreign Representative was duly recognized as the "foreign representative" of the Chapter 15 Debtors within the meaning of section 101(24) of the Bankruptcy Code, and the Brazilian RJ Proceeding was recognized as a "foreign main proceeding" of each of the Chapter 15 Debtors within the meaning of section 1502(4) of the Bankruptcy Code [ECF No. 32] (the "**Recognition Order**").

F.  The Foreign Representative, in his capacity as the Foreign Representative of the Chapter 15 Debtors, pursuant to the Recognition Order, has standing to file the Motion.

  G. No objections or other responses to the Motion have been filed.

  H. The terms of the Brazilian RJ Plan are not manifestly contrary to U.S. public policy.

  I. Absent the relief granted hereby, the Brazilian RJ Proceeding and the efforts of the RJ Debtors, their creditors, and other parties in interest to consummate the Brazilian RJ Plan could be impeded or harmed by the actions of certain creditors and/or other persons, a result that would be inconsistent with the purposes of chapter 15 of the Bankruptcy Code as set forth, *inter alia,* in section 1501(a) of the Bankruptcy Code.  If taken, such actions could threaten, frustrate, delay, and ultimately jeopardize the Brazilian RJ Proceeding and implementation of the Brazilian RJ Plan, and, as a result, the Chapter 15 Debtors, their creditors, and such other parties in interest would suffer irreparable harm for which there is no adequate remedy at law.

  J. The relief granted hereby: (i) is within this Court's jurisdiction; (ii) is appropriate to effectuate the purposes and objectives of chapter 15 of the Bankruptcy Code; (iii) is in the interests of international comity; and (iv) is available and warranted pursuant to sections 1507(a) and 1521(a) of the Bankruptcy Code.

  K. Appropriate notice of the filing of, and the setting of the Hearing on, the Motion was given to the parties listed in <u>Exhibit B</u> attached to the Motion, which notice is deemed adequate for all purposes, and no other or further notice need be given.

  **ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

  1. The Motion and the relief requested therein are granted to the extent set forth herein.

  2. The Brazilian Confirmation Order and the Brazilian RJ Plan, including, for the avoidance of any doubt, the Non-Litigation Clause and all annexes to the Brazilian RJ Plan, subject to all terms, conditions, and limitations set forth therein, are hereby recognized, granted comity, and given full force and effect, within the territorial jurisdiction of the United States and

for purposes of U.S. law with respect to each of the Chapter 15 Debtors, to the same extent that they are given effect in Brazil. Each of the Brazilian Confirmation Order and the Brazilian RJ Plan is binding on all creditors of the Chapter 15 Debtors, shareholders, and any other holders of claims or interests in the Chapter 15 Debtors, as well as the Directed Parties,[3] and any of their successors or assigns, and all persons having notice of the Motion.

3. All entities (as that term is defined in section 101(15) of the Bankruptcy Code), including all creditors, shareholders, and any other holders of claims or interests in the Chapter 15 Debtors, as well as the Directed Parties, are permanently enjoined from commencing, continuing, or taking any action or asserting any claim within the territorial jurisdiction of the United States that is in contravention or inconsistent with, or would interfere with, or impede the administration, implementation and/or consummation of the Brazilian RJ Plan, the Brazilian Confirmation Order, or the terms of this Order. No action may be taken within the territorial jurisdiction of the United States to confirm or enforce any award or judgement that would otherwise be in violation of this Order without first obtaining leave of this Court.

4. Nothing herein shall enjoin a police or regulatory act of a governmental unit, including a criminal action or proceeding.

5. Nothing herein shall enjoin or restrict the pursuit of claims against non-Debtors that have not been released under the terms of the Brazilian RJ Plan and the Brazilian Confirmation Order.

6. Subject to the continuing effectiveness of the Brazilian RJ Plan and Brazilian Confirmation Order and the continuing rights of NY Noteholders to receive distributions directly under the Brazilian RJ Plan, Election Solicitation, and Reverse Auction Tender Offer, the Notes

---

[3] Collectively, the "**Directed Parties**" are DTC and the Indenture Trustee.

6

Indentures and the outstanding NY Notes and Temporary Notes, instruments, certificates, and other documents evidencing the NY Noteholders' claims and rights related thereto shall be deemed satisfied, discharged, cancelled, and of no force or effect automatically upon entry of this Order. All remaining positions on account of the NY Notes or Temporary Notes on the books and records of the Indenture Trustee and the DTC shall be terminated.

7. The Directed Parties are directed to, and the Foreign Representative and the Chapter 15 Debtors are authorized to, subject to the terms of the Brazilian RJ Plan, take any and all lawful actions necessary to give effect to and implement the Brazilian RJ Plan, as approved by the Brazilian Confirmation Order, and the transactions contemplated thereunder, and shall fully cooperate and facilitate distributions of shares or cash, as applicable and provided under the Brazilian RJ Plan, as well as cancellation of the NY Notes and Temporary Notes, as applicable, pursuant to the Brazilian RJ Plan. Further, the Directed Parties, their agents, attorneys, successors, and assigns are hereby authorized and directed to take any other lawful actions as instructed by, and at the expense of, the Chapter 15 Debtors that may be necessary to cancel the NY Notes and Temporary Notes.

8. As a condition precedent to the cancellation of the NY Notes and Temporary Notes, the Chapter 15 Debtors shall pay or reimburse the reasonable and documented fees, costs and expenses (including attorneys' fees, costs and expenses) of the Indenture Trustee, and any predecessors thereto, incurred in its capacity as Indenture Trustee in connection with the Brazilian RJ Proceeding, these Chapter 15 Cases, and the implementation of the transactions provided for in Brazilian RJ Plan and this Order when and as would be required by the respective Notes Indentures.

9. The Chapter 15 Debtors are authorized to use any property and to continue operating any businesses within the territorial jurisdiction of the United States.

10. The Foreign Representative, the Chapter 15 Debtors, and each of their respective successors, agents, representatives, advisors, and counsel shall be entitled to the protections contained in sections 306 and 1510 of the Bankruptcy Code, and no action taken by any such party in preparing, disseminating, applying for, implementing, or otherwise acting in furtherance of, or in connection with, the Brazilian RJ Proceeding, the Brazilian RJ Plan, or any order entered in these Chapter 15 Cases or in any adversary proceedings or contested matters in connection therewith, shall be deemed to constitute a waiver of the rights or benefits afforded such parties under sections 306 and 1510 of the Bankruptcy Code.

11. Notwithstanding any provision in the Bankruptcy Rules to the contrary: (a) this Order shall be effective immediately and enforceable upon entry; (b) other than as expressly provided in this Order, the Foreign Representative is not subject to any stay of the implementation, enforcement, or realization of the relief granted in this Order; (c) this Order shall constitute a final order within the meaning of 28 U.S.C. § 158(a); and (d) the Foreign Representative is authorized and empowered, and may, in his discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of the Brazilian RJ Plan and this Order.

12. A copy of this Order, confirmed to be true and correct, shall be served, within seven business days of entry thereof, by electronic mail or overnight express delivery, upon all Notice Parties listed in Exhibit B attached to the Motion. Such service shall be good and sufficient service and adequate notice for all purposes.

13. Prior to cancelling the NY Notes and Temporary Notes, the Foreign Representative shall cause notice to be sent to the NY Noteholders through DTC detailing the steps required from

8

the NY Noteholders to obtain their recovery once the NY Notes and Temporary Notes are cancelled and providing relevant contact information.

14. This Order is without prejudice to the Foreign Representative requesting any additional relief in these Chapter 15 Cases.

15. This Court shall, and hereby does, retain exclusive jurisdiction with respect to all matters arising from or in relation to the implementation, effect, interpretation, enforcement, amendment, or modification of this Order and all matters arising in and under, and related to, these Chapter 15 Cases, including any requests for additional relief or any adversary proceeding brought in and through these Chapter 15 Cases.

Dated: New York, New York
July 22, 2024

/s/ **Michael E. Wiles**
HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE